**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRYAN RAUCH, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VALE S.A., FABIO SCHVARTSMAN, and LUCIANO SIANI PIRES,<br><br>Defendants. | Case No: 1:19-cv-00526<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Bryan Rauch ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Vale S.A. ("Vale" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that

1

substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Vale securities between April 13, 2018 and January 28, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Vale securities during the Class Period and was economically damaged thereby.

7. Defendant Vale is a mining and metals company headquartered in Rio de Janeiro, Brazil. The Company is incorporated in Brazil. During the Class Period, the Company's securities traded on the NYSE under the ticker symbol, "VALE."

8. Defendant Fabio Schvartsman ("Schvartsman") has served as the Company's Chief Executive Officer ("CEO") since May 2017.

9. Defendant Luciano Siani Pires ("Pires") has served as the Company's Chief Financial Officer ("CFO") since August 1, 2012.

10. Defendants Schvartsman and Pires are collectively referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

    (a)    directly participated in the management of the Company;

    (b)    was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)    was privy to confidential proprietary information concerning the Company and its business and operations;

    (d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. Vale is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Vale under *respondeat superior* and agency principles.

14. Defendants Vale and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

15. In November 2015, the Fundão tailings dam, joint-owned by Vale and BHP Billiton Brasil Ltda., had burst, releasing tailings downstream, flooding communities and negatively impacting property and the environment. This dam failure resulted in 19 fatalities. Vale purportedly took steps to provide relief to those affected and prevent such a catastrophe from occurring in the future.

16. On January 25, 2019, news articles reported Vale's tailings dam at its Feijão iron ore mine in Brumadinho, Brazil had burst. Mining debris and mud flooded the city. Several people were killed, including Vale's workers. Hundreds of others were reported as missing.

**Materially False and Misleading
Statements Issued During the Class Period**

17. On April 13, 2018, Vale filed a Form 20-F with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2017 (the "2017 20-F"). The 2017 20-F was signed by Defendants Schvartsman and Pires. The 2017 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Schvartsman and Pires attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18. The 2017 20-F stated the Company was committed to keeping its workplace safe and minimizing environmental damage after its joint-owned Fundão tailings dam had burst in 2015. The 2017 stated, in relevant part:

*Commitment to sustainability*

We are committed to becoming a sustainability benchmark through a comprehensive approach based on systematic planning and execution, prioritizing risk and impact management (seeking to achieve zero harm to our employees and surrounding communities) and establishing a positive social, economic and environmental legacy in the places where we operate. Below is a list of measures illustrating our commitment to sustainability:

- Since 2013, environmental and social actions are directly incorporated into our strategic planning. In 2017, we joined the International Council on Mining and Metals (ICMM), the most important association in the mining industry, reaffirming our commitment to sustainable development. Also in 2017, we joined the Task Force on Climate-related Financial Disclosures (TCFD). The purpose of the TCFD is to create a set of recommendations to improve the quality of voluntary disclosure of climate-related information.

- We are committed to reducing water use in our activities by investing in technologies and initiatives to control total water withdrawal, especially by promoting water reuse. In 2017, we withdrew a total of 276.3 billion liters of water, and used 179.5 billion liters in our operations (including discontinued operations), with the balance being allocated to third parties. From the total volume of water used in 2017, 83% or 148.9 billion liters was reused.

- We are committed to improving the health and safety of our workers. Our total recordable injury frequency performance in 2017 was 2.0 per million hours

5

    worked, slightly higher than the frequency of 1.89 per million hours worked recorded in the previous year, although demonstrating a 24% improvement over the last five years.

- We follow standards for social action in accordance with international guidelines, including principles on business and human rights, which are based on the Guiding Principles on Business and Human Rights of the United Nations Human Rights Council.

- In July 2016, we, together with Samarco and BHPB, established the Fundação Renova to develop and implement remediation and compensation programs over many years, in order to support the recovery of the areas and communities affected by the failure of Samarco's dam.

19. The 2017 20-F stated how the Company monitored and inspected its dams as part of being subject to Brazilian mining and environmental regulations, stating in relevant part:

*Brazilian regulation of mining dams*. In May 2017, the DNPM (predecessor to the ANM) created new obligations for companies operating mining dams in Brazil, primarily:

- *Audit*: Companies operating mining dams must conduct two annual stability audits for each dam and prepare a stability condition report. Specifically in the State of Minas Gerais, these audits and reports must be prepared by external auditors.

- *Periodic Safety Reviews*: The stability condition report must include detailed analysis of all dam's documentation impacts on surrounding communities, including hazards and failure impact studies. Companies operating mining dams classified as high associated potential damage (DPA) must complete these studies by June 2018, while those for medium-DPA mining dams must be completed by December 2018 and those for low-DPA mining dams must be completed by June 2019.

- *Emergency Action Plan Training*: Companies operating high-DPA mining dams must conduct two annual emergency action plan training sessions for their employees.

- *Monitoring*: Video monitor must be implemented for all high-DPA mining dams by June 2019.

6

20. On May 30, 2018, the Company filed a Form 6-K with the SEC, detailing how the Company monitored and inspected its dams as part of being subject to Brazilian mining and environmental regulations, stating in relevant part:

- Brazilian regulation of mining dams. In May 2017, DNPM (predecessor of ANM) created new obligations (Ministerial Order DNPM n[degree] 70.389/2017) for companies that operate mining dames in Brazil, mainly:

- *Audit:* Companies that operate mining dams must conduct two annual audits (March and September) for each dam that falls within the National Dams Security Policy (PNSB), with the issuance of the respective Stability Condition Statement (DCE), and the September audit must be carried out by an external consultant. . . .

- *Periodic Dam Safety Review (RPSB):* The RPBS shall submit a report containing the detailed and adequate inspection of the dam, the reassessment of existing projects, the performance of new stability analyzes as well as their category of risk and damage potential, associated with the updating of hydrological studies, reassessment of operating procedures, maintenance, instrumentation and monitoring tests, reassessment of operating procedures, maintenance, instrumentation and monitoring tests, reassessment of PAEBM (when applicable), and issuance of a Stability Condition Statement (DCE). Companies operating mining dams classified as Associated Potential Damage (DPA) should complete these studies by June 2018, while studies of average DPA mining dams should be completed by December 2018 and those of mining dams Low DPA should be completed by June 2019.

- *Emergency Action Plan Training*: Companies operating high DPA mining dams should conduct internal training at most every six months and maintain records of activities.

21. The statements contained in ¶¶17-20 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Vale had failed to adequately assess the risk and damage potential of a dam breach at its Feijão iron ore mine; (2) Vale's programs to mitigate health and safety incidents were inadequate; (3) consequently, several people were killed and hundreds more were reported as missing after Vale's dam at its Feijão iron ore mine was breached; and (4) as a

7

result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**THE TRUTH BEGINS TO EMERGE**

22. On January 25, 2019, *Reuters* reported that Vale's tailings dam had burst at its Feijão iron ore mine. A "torrent of sludge tore through the mine's offices, including a cafeteria during lunchtime." Several people were killed. Rescuers were searching for hundreds of others who were missing.

23. On this news, shares of Vale fell $1.20 per share or over 8% to close at $13.66 per share on January 25, 2019.

24. Then, on January 26, 2019, *BBC News* reported that hundreds of people affected by the dam's breach remained missing, in part because the dam's alarm system failed at the time of the accident. A report by a Folha de S. Paulo newspaper stated "the risk of collapse of the dam had been mentioned in a 'tense meeting' that approved its license last month[.]"

25. That same day, *Reuters* reported that Brazil's National Mining Agency ordered Vale to suspend operations at its Corrego de Feijão iron ore mining facility as a result of the dam burst. The article also stated that "State prosecutors . . . [seek] $1.3 billion [] in Vale's accounts for handling damages . . . adding that [prosecutors] expect[] more funds to be frozen in the future."

26. In a separate January 26, 2019 article, *Reuters* reported that Brazil's environmental agency had fined Vale $66.32 million for various violations relating to its Feijão tailings dam.

27. On January 28, 2019, *Reuters* reported "Brazil's top prosecutor said on Monday she will pursue criminal prosecutions after the collapse of a tailings dam operated by mining

giant Vale SA killed at least 58 people and left hundreds missing, and that executives may be punished."

28. That same day, *Reuters* reported that "Brazilian securities industry regulator CVM has opened a probe into miner Vale SA's filings related to a burst tailings dam in the town of Brumadinho[.]"

29. On this news, shares of Vale plunged during intraday trading on January 28, 2019, trading at $11.28 around the time of the filing of this complaint.

30. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Vale securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Vale, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vale securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

9

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Vale;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Vale to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of Vale' securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Vale shares met the requirements for listing, and were listed and actively traded on NYSE, a highly efficient and automated market;

- As a public issuer, Vale filed periodic public reports with the SEC and NYSE;

- Vale regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Vale was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

38. Based on the foregoing, the market for Vale securities promptly digested current information regarding Vale from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Vale securities during the Class Period.

12

44. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Vale were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Vale, their control over, and/or receipt and/or modification of Vale's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Vale, participated in the fraudulent scheme alleged herein.

45. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Vale personnel to members of the investing public, including Plaintiff and the Class.

46. As a result of the foregoing, the market price of Vale securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Vale securities during the Class Period in purchasing Vale securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

47. Had Plaintiff and the other members of the Class been aware that the market price of Vale securities had been artificially and falsely inflated by Defendants' misleading

statements and by the material adverse information which Defendants did not disclose, they would not have purchased Vale securities at the artificially inflated prices that they did, or at all.

48. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

49. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Vale securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. During the Class Period, the Individual Defendants participated in the operation and management of Vale, and conducted and participated, directly and indirectly, in the conduct of Vale's business affairs. Because of their senior positions, they knew the adverse non-public information about Vale's misstatement of revenue and profit and false financial statements.

52. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Vale's financial condition and results of operations, and to correct promptly any public statements issued by Vale which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Vale disseminated in the marketplace during the Class Period concerning Vale's results of operations. Throughout the Class Period, the Individual Defendants

exercised their power and authority to cause Vale to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Vale within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Vale securities.

54. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Vale.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 28, 2019             Respectfully submitted,

                                                         **THE ROSEN LAW FIRM, P.A.**

                                                         By: /s/Phillip Kim
                                                         Phillip Kim, Esq. (PK 9384)
                                                         Laurence M. Rosen, Esq. (LR 5733)

             275 Madison Avenue, 34th Floor
             New York, NY 10016
             Telephone: (212) 686-1060
             Fax: (212) 202-3827
             Email: pkim@rosenlegal.com
               lrosen@rosenlegal.com

*Counsel for Plaintiff*