**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Movant and Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRYAN RAUCH, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VALE S.A., FABIO SCHVARTSMAN, AND LUCIANO SIANI PIRES,<br><br>Defendants. | **CASE No.: 1:19-cv-00526-MKB-CLP**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MOSTACO CORP. TO: (1) CONSOLIDATE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFF; AND (3) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br>**CLASS ACTION** |
| RICHARD EPSTEIN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VALE S.A., FABIO SCHVARTSMAN and LUCIANO SIANI PIRES,<br><br>Defendants. | **CASE No.: 1:19-cv-00793-RJD-SJB**<br><br>**CLASS ACTION** |

Plaintiff Mostaco Corp. ("Movant") respectfully submits this memorandum of law in support of its motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)     consolidating the above-captioned actions;

(b)     appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of Vale S.A. ("Vale" or the "Company") securities between June 7, 2016 through February 6, 2019, both dates inclusive (the "Class Period")[1]; and

(c)     approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

The *Rauch* Action was commenced on January 28, 2019 against the Company and certain of its officers, and directors, for violations under the Exchange Act. That same day, The Rosen Law Firm, P.A. issued an early notice pursuant to the PSLRA advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Ex. 1 hereto. The related action, *Epstein v. Vale S.A., et al.*, Case No. 1:19-cv-00793-RJD-SJB (E.D.N.Y.) (the "*Epstein* Action") was filed on Febuary 8, 2019, alleging the same Exchange Act allegations against the same defendants. The class period in the *Epstein* Action from April 13, 2018 through January 28, 2019, inclusive.

---

[1] The initial complaint filed on January 28, 2019 in the first-filed action, *Rauch v. Vale S.A., et al.,* Case No. 1:19-cv-00526 (E.D.N.Y.) ("*Rauch* Action"), had a class period of from April 13, 2018 through January 28, 2019, both dates inclusive. On March 28, 2019, the First Amended Class Action Complaint for Violations of the Federal Securities Laws was filed in the *Rauch* Action which expanded the Class Period. The most inclusive, longer class period is favored at the lead plaintiff stage. *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367-SI, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage.).

1

Vale is a mining and metals company headquartered in Rio de Janeiro, Brazil. In November 2015, the Fundão tailings dam, joint-owned by Vale and BHP Billiton Brasil Ltda., burst, releasing tailings downstream, flooding communities and negatively impacting property and the environment. This dam failure resulted in 19 fatalities. Vale purportedly took steps to provide relief to those affected and to prevent such a catastrophe from occurring in the future. The complaints allege that during the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose that: (1) Vale had failed to adequately assess the risk and damage potential of a dam breach at its Feijão iron ore mine; (2) Vale's programs to mitigate health and safety incidents were inadequate; (3) Vale was not committed to the health and safety of its workers and the communities in which it operated after its 2015 Fundão tailings dam disaster; (4) Vale continued to fail to adequately invest in preventive policies to minimize risk and protect workers; (5) Vale improperly monitored and maintained its dams in the wake of its 2015 dam disaster; (6) consequently, several people were killed and hundreds more were reported as missing after Vale's dam at its Feijão iron ore mine was breached in 2019; (7) the aforementioned misconduct would cause Vale to halt production at certain mining facilities; and (8) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

On January 25, 2019, *Reuters* reported that Vale's tailing dam had burst at its Feijão iron ore mine with "torrent of sludge tore through the mine's offices, including a cafeteria during lunchtime." There were several fatalities as a result of the dam burst and many people reported missing. On this news, shares of Vale fell $1.20 per share or over 8% to close at $13.66 per share on January 25, 2019. The following day, *BBC News* reported that hundreds of people affected by the dam's breach were still missing which was a result, in part, due to the dam's alarm system failing at the time of the accident. A report by a Folha de S. Paulo newspaper stated "the risk of

2

collapse of the dam had been mentioned in a 'tense meeting' that approved its license last month[.]" That same day, *Reuters* reported that Brazil's National Mining Agency ordered Vale to suspend operations at its Corrego de Feijão iron ore mining facility as a result of the dam burst. In another article pushed on January 26, 2019, *Reuters* reported that Brazil's environmental agent fined Vale $66.32 million for various violations relating to its Feijão tailings dam.

On January 28, 2019, *Reuters* reported that "Brazil's top prosecutor said on Monday she will pursue criminal prosecutions after the collapse of a tailings dam operated by mining giant Vale SA killed at least 58 people and left hundreds missing, and that executives may be punished." *Reuters* reported in another article that day that "Brazilian securities industry regulator CVM has opened a probe into miner Vale SA's filings related to a burst tailings dam in the town of Brumadinho[.]" On this news, shares of Vale plunged $2.46 per share or 18% to close at $11.20 per share on January 28, 2019.

Then, on February 4, 2019, *Bloomberg* reported that Vale announced that it was "temporarily halting some operations at its Brucutu mine . . . in compliance with a Brazilian court order issued to help improve safety after one of Vale's tailings dam in Minas Gerais state collapsed in late January, killing more than 130 people and leveling part of a town." On this news, shares of Vale fell $0.42 per share or 3.34% to close at $12.15 per share on February 4, 2019.

Finally, on February 6, 2019, *The Wall Street Journal* reported that Vale was warned by inspectors that "faulty water drainage and monitoring systems represented a potential risk of failure" at its Córrego do Feijão dam in Brumadinho, Brazil. On this news, shares of Vale fell $0.75 per share or 6.19% to close at $11.36 per share on February 6, 2019.

3

## ARGUMENT

### I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

Each of the above-captioned related actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

### II.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

## A. Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that it is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

## B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that …has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the Lax/Olsen-styled[2] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by

---

[2] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005). To calculate financial loss, the last-in-first-out ("LIFO") methodology is the preferred method. *Bo Young Cha v. Kinross Gold Corp.*, No. 12 CIV. 1203 PAE, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses."); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) ("courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff.").

When using the LIFO methodology, Movant lost $4,540,287.45 in connection with its purchases of Vale securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Vale securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is

6

sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1.   Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about Vale's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.   Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between its claims and those asserted on behalf of the Class. Movant also

sustained financial losses from investments in Vale securities and is therefore, extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against it that would render Movant inadequate to represent the Class.

### III. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has been actively researching Movant's and Class Plaintiffs' claims, including initiating this action, as well as reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history

8

bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff of the Class; (3) approving the Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: March 29, 2019                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Movant and Class*

9

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim

10