**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRYAN RAUCH, Individually and on Behalf of All Others Similarly Situated, | No.: 1:19-cv-00526-MKB-CLP |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ROMICA MIHAESCU FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |
| v. | |
| VALE S.A., MURILO FERREIRA, FABIO SCHVARTSMAN, and LUCIANO SIANI PIRES, | |
| Defendants. | |
| RICHARD EPSTEIN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | No.: 1:19-cv-00793-RJD-SJB |
| v. | |
| VALE S.A., FABIO SCHVARTSMAN and LUCIANO SIANI PIRE, | |
| Defendants. | |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......................................................................................................1

STATEMENT OF FACTS ..............................................................................................................1

ARGUMENT...................................................................................................................................4

      A.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
           PURPOSES ..............................................................................................................4

      B.     Mihaescu SHOULD BE APPOINTED LEAD PLAINTIFF ................................5

           1.     Mihaescu is Willing to Serve as a Class Representative ............................6

           2.     Mihaescu Has the "Largest Financial Interest"..........................................6

           3.     Mihaescu Otherwise Satisfies the Requirements of Rule 23 of the
                 Federal Rules of Civil Procedure ...............................................................7

           4.     Mihaescu Will Fairly and Adequately Represent the Interests of
                 the Class and is Not Subject to Unique Defenses .....................................9

      C.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
           APPROVED .............................................................................................................10

CONCLUSION..............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,
216 F.R.D. 567 (D. N.J. 2003)........................................................................................7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................9

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ..............................................................................................8

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) ...................................................................................5

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) ......................................................................................8, 9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ...................................................................................4

*Danis v. USN Communs., Inc.*,
189 F.R.D. 391 (N.D. Ill. 1999).....................................................................................8

*Fischler v. Amsouth Bancorporation*,
176 F.R.D. 583 (M.D. Fla. 1997)...................................................................................8

*Gluck v. Cellstar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997).................................................................................8

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) ...................................................................................8

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
2004 U.S. Dist. LEXIS 10200 (E.D. Pa. Jun. 3, 2004) .................................................7

*In re Comverse Tech., Inc., Sec. Litig.*,
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007).................................................7

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009)............................................4, 5

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp.2d 286 (E.D.N.Y. 1998)...............................................................................7, 8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ..................................................................................8

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .................................................................................4

*In re Vicuron Pharms., Inc. Sec. Litig.*,
   225 F.R.D. 508 (E.D. Pa. 2004)..................................................................................7

*Janovici v. DVI, Inc.*, No. 03-4795,
   2003 U.S. Dist. LEXIS 22315 (E.D.Pa. Nov. 25, 2003) ...........................................7

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)......................................................................................4

*Lax v. First Merch. Acceptance Corp.*,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ............................................6

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993) .......................................................................................4

*Osher v. Guess ?, Inc.*,
   2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ..........................................10

*Riordan v. Smith Barney*,
   113 F.R.D. 60 (N.D. Ill. 1986)....................................................................................9

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)..............................................................................*passim*

## **Rules**

Federal Rules of Civil Procedure Rule 23..............................................................*passim*

Federal Rules of Civil Procedure Rule 42 ........................................................... 1, 4, 8

Movant Romica Mihaescu ("Mihaescu") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Fed. R. Civ. P. 42, for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Mihaescu as Lead Plaintiff on behalf of all persons and entities that purchased or otherwise acquired the securities of Vale S.A. ("Vale" or the "Company") between April 11, 2017 and January 28, 2019, both dates inclusive (the "Class Period"); and (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel.

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   Mihaescu, with losses of approximately $48,189 on a first-in-first-out ("FIFO") basis, and $21,718 on a last-in-first-out ("LIFO") basis in connection with his purchases of Vale securities during the Class Period, has the largest financial interest in the relief sought in this action.   Mihaescu further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as he is an adequate representative with claims typical of the other Class members. Accordingly, Mihaescu respectfully submits that he should be appointed Lead Plaintiff.

## STATEMENT OF FACTS

As alleged in the Complaints in the Related Actions, Vale together with its subsidiaries, produces and sells iron ore and iron ore pellets for use as raw materials in steelmaking in Brazil

1

and internationally. It operates through Ferrous Minerals, Coal, and Base Metals segments. The Ferrous Minerals segment produces and extracts iron ore and pellets, manganese, ferroalloys, and others ferrous products and services, as well as engages in the provision of related railroad, port, and terminal logistics services. The Coal segment is involved in the extraction of metallurgical and thermal coal; and provision of related logistic services. The Base Metals segment produces and extracts nonferrous minerals, including nickel; and its by-products, such as ferro-nickel, cobalt, gold, silver, copper, precious metals, and others. The Company was formerly known as Companhia Vale do Rio Doce and changed its name to Vale S.A. in May 2009. Vale was founded in 1942 and is headquartered in Rio de Janeiro, Brazil.

Vale has a history involving dam failure in connection with its mining activities. On November 5, 2015, Brazilian authorities reported that an iron-ore mine operated by Samarco Mineração SA ("Samarco") (jointly owned by Vale and BHP, another mining entity) burst, killing dozens of people and devastating the local community. The cause of the collapse was the failure of a tailings dam, used to hold water and discarded minerals from the nearby iron-ore mine.

The November dam burst resulted in Vale and BHP settling a civil suit with Brazilian public authorities for 20 billion real (US$5.3 billion) and additional fines to be levied in the future. Vale also agreed to community participation in decisions related to remediation and compensation programs and greater corporate compliance.

On January 25, 2019, *Reuters* reported that Vale's tailings dam had burst at its Feijão iron ore mine. A "torrent of sludge tore through the mine's offices, including a cafeteria during lunchtime." On this news, shares of Vale fell $1.20 per share or over 8% to close at $13.66 per share on January 25, 2019.

2

Then, on January 26, 2019, *BBC News* reported that hundreds of people affected by the dam's breach remained missing, in part because the dam's alarm system failed at the time of the accident.  A report by a Folha de S. Paulo newspaper stated "the risk of collapse of the dam had been mentioned in a 'tense meeting' that approved its license last month[.]"

That same day, *Reuters* reported that Brazil's National Mining Agency ordered Vale to suspend operations at its Corrego de Feijão iron ore mining facility as a result of the dam burst. The article also stated that "State prosecutors . . . [seek] $1.3 billion [] in Vale's accounts for handling damages . . . adding that [prosecutors] expect[] more funds to be frozen in the future."

On January 28, 2019, *Reuters* reported "Brazil's top prosecutor said on Monday she will pursue criminal prosecutions after the collapse of a tailings dam operated by mining giant Vale SA killed at least 58 people and left hundreds missing, and that executives may be punished."

That same day, *Reuters* reported that "Brazilian securities industry regulator CVM has opened a probe into miner Vale SA's filings related to a burst tailings dam in the town of Brumadinho[.]"

On this news, shares of Vale plunged by $2.46 per share, or approximately 18%, to close at $11.20 per share on January 28, 2019.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Mihaescu and other Class members have suffered significant losses and damages.

3

## ARGUMENT

**A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).  *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing—namely, that defendants issued materially

4

false and misleading statements and omissions that artificially inflated the price of the Company's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133), at \*5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.    MIHAESCU SHOULD BE APPOINTED LEAD PLAINTIFF

Mihaescu should be appointed Lead Plaintiff because he has the largest financial interest in the consolidated action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

5

(cc) otherwise satisfies the requirements of Rule 23 of the Federal
Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Mihaescu satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.      Mihaescu is Willing to Serve as a Class Representative

On January 28, 2019, counsel for plaintiff in the first of the Related Actions to be filed caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors in Vale securities that they had 60 days—*i.e.*, until March 29, 2019—to file a motion to be appointed as Lead Plaintiff.  *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A.

Mihaescu has filed the instant motion pursuant to the Notice, and he has attached a Certification attesting that he is willing to serve as a representative for the Class, and provide testimony at deposition and trial, if necessary.  *See* Lieberman Decl., Ex. B.  Accordingly, Mihaescu satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.      Mihaescu Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, Mihaescu believes that he has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8

6

(N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1] The most critical among the Lax Factors is the approximate loss suffered. *See*, *e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *Janovici v. DVI, Inc.*, No. 03-4795, 2003 U.S. Dist. LEXIS 22315, at \*39 (E.D.Pa. Nov. 25, 2003); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 10200, at \*2–3 (E.D. Pa. Jun. 3, 2004); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D. N.J. 2003).

During the Class Period, Mihaescu: (1) purchased 21,751 shares of Vale common stock; (2) expended $314,391 on his purchases of Vale securities; (3) retained 19,827 shares of common stock; and (4) as a result of the disclosures of the fraud, suffered a loss of $48,189 on a FIFO basis and $21,718 on a LIFO basis in connection with his Class Period purchases of Vale securities.  *See* Lieberman Decl., Ex. C.  Because Mihaescu possesses the largest financial interest in the outcome of this litigation, he may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.    Mihaescu Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

---

[1] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at \*22-\*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of Mihaescu are typical of those of the Class. Mihaescu alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should

have known were false or misleading statements of material facts concerning the Company, or omitted to state material facts necessary to make the statements they did make not misleading. Mihaescu, as did all members of the Class, purchased Vale securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Mihaescu is an adequate representative for the Class. There is no antagonism between the interests of Mihaescu and those of the Class, and his losses demonstrate that he has a sufficient interest in the outcome of this litigation. Finally, Mihaescu has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### 4.   Mihaescu Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses

The presumption in favor of appointing Mihaescu as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

9

> (aa)    will not fairly and adequately protect the interest of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of Mihaescu to fairly and adequately represent the Class has been discussed above.  Mihaescu is not aware of any unique defenses defendants could raise that would render him inadequate to represent the Class.  Accordingly, Mihaescu should be appointed Lead Plaintiff for the Class.

## C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Mihaescu has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See* Lieberman Decl., Ex. D.  As a result of the firm's extensive experience in litigation involving issues similar to those raised in the Related Actions, Mihaescu's counsel have the skill and knowledge which will enable them to prosecute a consolidated action effectively and

10

expeditiously. Thus, the Court may be assured that by approving the selection of Lead Counsel by Mihaescu, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Mihaescu respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Mihaescu as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated: March 29, 2019                         Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Movant and*
*Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email:  peretz@bgandg.com
*Additional Counsel for Movant*

11