**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRYAN RAUCH, Individually and on behalf of all others similarly situated, <br><br>              Plaintiff, <br><br>      v. <br><br> VALE S.A., FABIO SCHVARTSMAN, and LUCIANO SIANI PIRES, <br><br>              Defendants. | Civ. A. No. 1:19-cv-00526-RJD-SJB |
| RICHARD EPSTEIN, Individually and on behalf of all others similarly situated, <br><br>              Plaintiff, <br><br>      v. <br><br> VALE S.A., FABIO SCHVARTSMAN and LUCIANO SIANI PIRES, <br><br>              Defendants. | Civ. A. No. 1:19-cv-00793-RJD-SJB |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE COLLEGES OF APPLIED ARTS AND TECHNOLOGY PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................ii

I.     PRELIMINARY STATEMENT .................................................................................. 1

II.    ARGUMENT ............................................................................................................... 6

      A.      MOSTACO IS A "NET SELLER" AND SUBJECT TO A
            DISQUALIFYING UNIQUE DEFENSE .................................................... 6

      B.      CAAT PENSION PLAN HAS THE LARGEST FINANCIAL
            INTEREST IN THE RELIEF SOUGHT BY THE CLASS ................................. 8

      C.      CAAT PENSION PLAN SATISFIES THE REQUIREMENTS OF
            RULE 23 ........................................................................................................ 9

            1.      CAAT Pension Plan Fulfills the Typicality Requirement ........................10

            2.      CAAT Pension Plan Fulfills the Adequacy Requirement.........................11

      D.      ALL OTHER MOTIONS SHOULD BE DENIED ........................................... 12

III.   CONCLUSION ........................................................................................................... 12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrada v. Atherogenics, Inc.,*
2005 WL 912359 (S.D.N.Y. Apr. 19, 2005)................................................................................. 6

*Borochoff v. Glaxosmithkline PLC*,
246 F.R.D. 201 (S.D.N.Y. 2007) ................................................................................................. 6

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.,*
269 F.R.D. 291 (S.D.N.Y. 2010) ................................................................................................. 2

*City of Warren Police v. Foot Locker, Inc.,*
325 F. Supp. 3d 310 (E.D.N.Y. 2018) ....................................................................... 8, 9, 10, 11

*Deering v. Galena Biopharma, Inc.,*
2014 WL 4954398 (D. Ore. Oct. 3, 2014) ................................................................................. 7

*Ferrari v. Gisch*,
225 F.R.D. 599 (C.D. Cal. 2004)............................................................................................... 11

*Foley v. Transocean Ltd.,*
272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................................ 3

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982).................................................................................................................... 10

*In re Bausch & Lomb Inc. Sec. Litig.*,
244 F.R.D. 169 (W.D.N.Y. 2007)................................................................................................ 6

*In re Cable & Wireless, PLC, Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. 2003) ................................................................................................. 7

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992)....................................................................................................... 10

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) .................................................................................................. 9

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
2004 U.S. Dist. LEXIS 27043 (N.D. Ohio May 12, 2004)......................................................... 6

*In re McKesson HBOC, Inc., Sec. Litig.,*
97 F. Supp. 2d 993 (N.D. Cal. 1999) ......................................................................................... 7

*In re NASDAQ Market-Makers Antitrust Litig*.,
   172 F.R.D. 119 (S.D.N.Y. 1997) ...................................................................................... 10

*In re Pfizer Inc. Sec. Litig*.,
   233 F.R.D. 334 (S.D.N.Y. 2005) ........................................................................................ 9

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ...................................................................................... 8, 9

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
   2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) .................................................................. 9

*Landry v. Price Waterhouse Chartered Accountants*,
   123 F.R.D. 474 (S.D.N.Y. 1989) ....................................................................................... 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...................................................................................... 10

*Sequans Comms. S.A. Sec. Litig.*,
   289 F. Supp. 3d 416 (E.D.N.Y. 2018) ....................................................................... 2, 8, 10, 11

*Sofran v. LaBranche & Co., Inc.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) .................................................................................... 9, 12

*TDH Partners LLP v. Ryland Group, Inc.*,
   2006 WL 8437050 (N.D. Tex. 2006) ................................................................................. 8

*Thompson v. Shaw Group, Inc.*,
   2004 WL 2988503 (E.D. La. Dec. 14, 2004)..................................................................... 9

*Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)............................................................................ 2, 8

*Weisz v. Calpine Corp.*,
   2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002)................................................ 7

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ..................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)..................................................................................... 9

**Rules**

Fed. R. Civ. P. 23.............................................................................................................*passim*

Fed. R. Civ. P. 41(a)(1)(A) ..................................................................................................... 5

iii

## I.    PRELIMINARY STATEMENT

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), the Court is to appoint the investor that has the largest financial interest in the relief sought by the class and that otherwise satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  Of the two pending motions for appointment as lead plaintiff, the Colleges of Applied Arts and Technology Pension Plan ("CAAT Pension Plan"), has the largest financial interest, is not subject to any disqualifying unique defenses, and therefore is the presumptive lead plaintiff.[1]

Mostaco Corp. ("Mostaco"), the only other remaining movant, is disqualified from serving as lead plaintiff because it is subject to unique defenses and, therefore is, not typical or adequate. Mostaco is a "net seller" of Vale shares during the Class Period—it sold 888,000 more Vale shares than it purchased during the Class Period and has a ***net profit*** of $7,107,700 on its Class Period purchases and sales of Vale securities.[2]  Courts in the Second Circuit and throughout the country have found that net sellers that have net gains, like Mostaco, have typicality and adequacy issues that render them incapable of representing a class of investors.  *See infra* Section II.A.  When Mostaco's transactions are properly calculated under the "last-in first-out" or LIFO accounting

---

[1] Citations to "ECF No. __" reference filings in the *Rauch* Action.  On March 29, 2019, five lead plaintiff motions were filed. ECF Nos. 6, 9, 12, 14, 17.  On April 4, 2019, Firemen's Retirement System of St. Louis withdrew its motion.  ECF No. 22.  On April 8, 2019, The Boston Retirement System filed a notice of non-opposition.  ECF No. 26.  On April 9, 2019, Romica Mihaescu filed a notice of non-opposition to the lead plaintiff motions.  ECF No. 27.

[2] During the Class Period (June 7, 2016 through February 6, 2019) Mostaco purchased 2,547,749 Vale shares expending $29,962,412.19 and sold 3,435,749 Vale shares for proceeds of $37,070,111.90.

1

method, it has a ***LIFO gain of $237,325.47***.[3]   The Court should follow the courts in the Second Circuit that refuse to appoint net sellers as lead plaintiffs and find that Mostaco is not qualified to serve as lead plaintiff because it is subject to a unique defense.

In addition to being an inadequate net seller, Mostaco does not have the largest financial interest.  Under three of the four "*Lax/Olsten* Factors" considered by courts in the Second Circuit in determining financial interest, CAAT Pension Plan has the largest financial interest for the Class Period:[4]

**"*Lax/Olsten* Factor" Analysis Chart**

| Movant | Shares Purchased | Net Shares Purchased or (Net Seller) | Net Expenditures or (Net Seller) | Approximate LIFO Loss (or Profit) |
|---|---|---|---|---|
| CAAT Pension Plan | 611,999 | 611,999 | $8,605,783.58 | $912,956.15 |
| Mostaco Corp. | 2,547,749 | (888,000) | ($7,107,700) | ($237,325.47) |

While Mostaco purports to have a larger LIFO loss than CAAT Pension Plan, Mostaco's claimed LIFO loss of $4.5 million is illusory, hides its true financial interest in this litigation and does not, in fact, apply the LIFO methodology.  LIFO "assumes that the last stocks to be sold are

---

[3] CAAT Pension Plan's counsel retained a financial consultant to analyze Mostaco's transactions who confirmed that Mostaco has a LIFO gain.  *See* analysis of Mostaco's transactions in Vale shares, attached as Exhibit A to the Declaration of Frederic S. Fox in Further Support of the Motion of the Colleges of Applied Arts and Technology Pension Plan for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel, dated April 12, 2019 ("4/12 Fox Declaration.").

[4] Courts in this Circuit apply four *Lax/Olsten* factors that analyze the following: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.  *See In re Sequans Comms. S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 420 (E.D.N.Y. 2018) (Bulsara, M.J.); *Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*, 589 F. Supp. 2d 388, 394–95 (S.D.N.Y. 2008).

the stocks purchased most recently prior to that sale." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.,* 269 F.R.D. 291, 295 (S.D.N.Y. 2010).[5]   LIFO accounts for gains attained through the sale of shares during the class period when share prices were inflated.   "'The main advantage of LIFO is that . . . it takes into account gains that might have accrued to plaintiffs during the class period due [to] the inflation of the stock price.'" *Id.*

Mostaco's loss analysis (ECF No. 13-3) is inconsistent with these well-established LIFO principles.  As identified below on Mostaco's loss chart, Mostaco matched the sale of Vale shares on April 7 (739,000 Vale shares) and April 10, 2017 (329,000 Vale shares), with Vale shares that Mostaco purchased during the Class Period.  However, at the time of the April 7 and 10, 2017 sales, Mostaco had not purchased any Vale shares during the Class Period.  Therefore, under LIFO, Mostaco's sale of Vale shares on April 7 and 10, 2017 should be matched to shares purchased most recently *prior to* those sales, which are Vale shares that Mostaco purchased before the Class Period.

**Vale S.A. Loss Chart**
**Class Period of June 27, 2016 through February 6, 2019**

| Date Purchased | Shares | Price per share | Total | Date Sold | Shares | Price per Share | Total | S |
|---|---|---|---|---|---|---|---|---|
| Opening Position | 1,877,000 | | | 2/7/2019 | 825,000 | Matched to Opening Position | | |
| | | | | 7/9/2018 | 437,749 | Matched to Opening Position | | |
| | | | | 5/24/2018 | 420,000 | Matched to Opening Position | | |
| | | | | 9/21/2017 | 194,251 | Matched to Opening Position | | |
| | | | | | | | | |
| 4/21/2017 | 341,000 | ($8.93) | ($3,045,130.00) | 9/21/2017 | 945,749 | $10.26 | $9,703,384.74 | |
| 4/27/2017 | 360,000 | ($8.42) | ($3,031,200.00) | 9/21/2017 | 370,000 | $10.25 | $3,792,500.00 | |
| 10/13/2017 | 857,749 | ($10.31) | ($8,843,392.19) | 4/10/2017 | 329,000 | $9.14 | $3,007,060.00 | |
| 10/8/2018 | 825,000 | ($15.21) | ($12,548,250.00) | 4/7/2017 | 319,000 | $9.34 | $2,979,460.00 | |
| 10/8/2018 | 164,000 | ($15.21) | ($2,494,440.00) | 4/7/2017 | 420,000 | $9.23 | $3,876,600.00 | |
| | | | | | | | | |
| | 2,547,749 | | ($29,962,412.19) | | 2,383,749 | | $23,359,004.74 | |

By removing Mostaco's April 7 and 10, 2017 sales under a proper LIFO analysis, Mostaco's sales on May 24 and July 9, 2018, and February 7, 2019 should be matched with Class

---

[5] *See also Foley v. Transocean Ltd.,* 272 F.R.D. 126, 129 (S.D.N.Y. 2011) ("LIFO calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale.").

Period purchases.[6]  The reason Mostaco ignored LIFO accounting principles is clear—the average sales price of the April 2017 sales (approximately $9.24 per share) is lower than the average sales price of Mostaco's sales on May 24 and July 9, 2018, and February 7, 2019 (approximately $12.44 per share).[7]  Thus, by matching Class Period purchases with sales of Vale shares with a lower average sales price, Mostaco inflated its purported loss.  Indeed, when each of Mostaco's purchases of Vale shares during the Class Period are properly matched with an equal number of shares sold nearest in time, as required under LIFO, Mostaco's actual financial interest in Vale shares is a *LIFO gain of $237,325.47*, as set forth below:[8]

**Pre-Class Period Holdings** — 1,877,000

| | Shares | Transaction Type | Trade Date | Price | Shares | Total | Shares Retained | Gain/Loss |
|---|---|---|---|---|---|---|---|---|
| Holdings | 319,000 | Sale | 04/07/2017 | $ 9.340 | 319,000 $ | 2,979,460.00 | 0 | $ - |
| Holdings | 420,000 | Sale | 04/07/2017 | $ 9.230 | 420,000 $ | 3,876,600.00 | 0 | $ - |
| Holdings | 329,000 | Sale | 04/10/2017 | $ 9.140 | 329,000 $ | 3,007,060.00 | 0 | $ - |
| Holdings | 809,000 | Sale | 09/21/2017 | $ 10.260 | 809,000 $ | 8,300,340.00 | 0 | $ - |
| **Total Pre-Class Period Holdings** | **1,877,000** | | | | **1,877,000 $** | **18,163,460.00** | **0** | **$ -** |

**Class Period Purchases**

| Transaction Type | Trade Date | Price | Shares | Total Cost | Transaction Type | Trade Date | Price | Shares | Total Proceeds | Shares Retained | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Purchase | 04/21/2017 | $ 8.930 | 341,000 $ | 3,045,130.00 | Sale | 09/21/2017 | $ 10.250 | 341,000 $ | 3,495,250.00 | 0 | $ 450,120.00 $ | - |
| Purchase | 04/21/2017 | $ 8.420 | 29,000 $ | 244,180.00 | Sale | 09/21/2017 | $ 10.250 | 29,000 $ | 297,250.00 | 0 | $ 53,070.00 $ | - |
| Purchase | 04/21/2017 | $ 8.420 | 331,000 $ | 2,787,020.00 | Sale | 09/21/2017 | $ 10.260 | 331,000 $ | 3,396,060.00 | 0 | $ 609,040.00 $ | - |
| Purchase | 10/13/2017 | $ 10.310 | 420,000 $ | 4,330,200.00 | Sale | 05/24/2018 | $ 14.330 | 420,000 $ | 6,018,600.00 | 0 | $ 1,688,400.00 $ | - |
| Purchase | 10/13/2017 | $ 10.310 | 437,749 $ | 4,513,192.19 | Sale | 07/09/2018 | $ 13.020 | 437,749 $ | 5,699,491.98 | 0 | $ 1,186,299.79 $ | - |
| Purchase | 10/08/2018 | $ 15.210 | 825,000 $ | 12,548,250.00 | Sale | 02/07/2019 | $ 11.170 | 825,000 $ | 9,215,250.00 | 0 | $ (3,333,000.00) $ | - |
| Purchase | 10/08/2018 | $ 15.210 | 164,000 $ | 2,494,440.00 | | | | | | 164,000 | $ (416,604.32) $ | - |
| **Total Class Period Purchases** | | | **2,547,749 $** | **29,962,412.19** | | | | **2,383,749 $** | **28,121,901.98** | **164,000** | | **237,325.47** |
| **Total** | | | | | | | | **4,260,749 $** | **46,285,361.98** | **164,000** | | |

---

[6]  In addition, Mostaco improperly matched 1,315,749 shares sold on September 21, 2017 at $10.25-26 per share to Class Period purchases, when under LIFO, only 701,000 of those sales are properly matched to Class Period purchases.  *See infra*, LIFO analysis chart.

[7] To calculate the average sales price per share for Mostaco's April 7 and 10, 2017 sales, the total proceeds from the sales ($9,863,120) are divided by the total number of shares sold (1,068,000). Similarly, to calculate the average sales price per share for Mostaco's sales on May 24 and July 9, 2018, and February 7, 2019, the total proceed from the sales ($20,933,341.98) are divided by the total number of shares sold (1,682,749).

[8] *See also* 4/12 Fox Declaration, Ex. A

Accordingly, Mostaco does not have the largest LIFO loss and its motion should be denied.

Finally, Mostaco should not be appointed lead plaintiff because it, as well Mr. Leon Simon who signed its certification (ECF No. 13-2), are shrouded in mystery, and have failed to provide the Court and the parties basic information about their ability or fitness to serve as lead plaintiff. Indeed, there is virtually no publicly available information about Mostaco or Mr. Siman, the nature of Mostaco's business, where it is incorporated, or even if Mostaco exists. In sharp contrast, CAAT Pension Plan is a sophisticated and experienced institutional investor with approximately $8.2 billion in assets that is jointly governed by its Board of Trustees and Sponsor's Committee, and is managed by experienced investment professionals. CAAT Pension Plan is precisely the type of investor that Congress sought to empower when it enacted the PSLRA.

To assist CAAT Pension Plan and the Court in evaluating the fitness of Mostaco to serve as lead plaintiff, CAAT Pension Plan's counsel sent a request to Mostaco's counsel for information about Mostaco. *See* Apr. 4, 2019 Letter from CAAT Pension Plan's counsel to Mostaco's counsel, attached as Ex. B to the 4/12 Fox Declaration. Tellingly, Mostaco's counsel did not respond. Undoubtedly, if the Court were to appoint Mostaco as lead plaintiff, defendants would devote significant time and resources to exploring unique defenses to which CAAT and other members of the proposed class are not subject.

CAAT Pension Plan has the largest financial interest and is not subject to unique defenses, and therefore is the presumptive lead plaintiff. Accordingly, CAAT Pension Plan's motion should be granted, and Mostaco's motion should be denied.[9]

_____

[9] None of the movants oppose consolidation of the *Rauch* and *Epstein* Actions pending before this Court. On April 11, 2019, a related action pending in U.S. District Court for the Southern District of New York, *Mihaescu v. Vale, S.A., et al.*, 19-cv-1610, pending before District Judge Victor Marrero, was voluntarily dismissed under Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure. *Mihaescu v. Vale, S.A., et al.*, 19-cv-1610 (S.D.N.Y.) (ECF No. 33). CAAT Pension

5

## II.   ARGUMENT

### A.   MOSTACO IS A "NET SELLER" AND SUBJECT TO A DISQUALIFYING UNIQUE DEFENSE

Mostaco is a net seller and is an inadequate lead plaintiff because it sold 888,000 more Vale shares during the Class Period than it purchased, and it has a net profit of $7,107,700. *See supra*, *Lax/Olsten* Factor chart. Net sellers are susceptible to the unique defense that they did not suffer a loss, but may have even benefited, from the defendant's fraud. *See In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 03CV2166, 2004 U.S. Dist. LEXIS 27043, at *4 (N.D. Ohio May 12, 2004) (noting that net sellers seeking lead plaintiff appointment "undoubtedly will face motions to dismiss and/or for judgment as a matter of law on the ground that certain losses suffered by them were not caused by the alleged fraud").

For this reason, courts across the country and in the Second Circuit have refused to appoint net sellers as lead plaintiffs. *See, e.g., Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (rejecting proposed lead plaintiff because it was a net seller); *Andrada v. Atherogenics, Inc.,* No. 05 Civ. 00061(RJH), 2005 WL 912359, at *4 (S.D.N.Y. Apr. 19, 2005) (stating "there is substantial merit" to the argument that movant who sold more shares than they purchased actually profited from the alleged artificial price inflation and therefore has no legally cognizable financial interest in the action); *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 174 (W.D.N.Y. 2007) ("I agree with the rationale of those courts finding that net sellers and net gainers, . . . are ill-suited to serve as lead plaintiffs. If nothing else, its status as a net gainer may 'subject [it] to unique defense that render such plaintiff incapable of adequately representing the class.'"); *see also Weisz v. Calpine Corp.*, No. C 02-1200, 2002 U.S. Dist. LEXIS 27831, at *7

---

Plan is unaware of any other related actions pending in judicial districts outside the Eastern District of New York.

(N.D. Cal. Aug. 19, 2002) (rejecting lead plaintiff applicant of net seller who may have profited); *In re McKesson HBOC, Inc., Sec. Litig.,* 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999) (stating "net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares and has been left 'holding the bag' when the fraudulent inflation is revealed"); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 378 (E.D. Va. 2003) ("The fact that [the movant] sold more shares than it purchased during the class period 'undermines [the movant's] contention that it has the largest financial interest in the case.'") (citations omitted).

Indeed, counsel for Mostaco know that net sellers are inadequate to serve as lead plaintiffs to represent a proposed class of investors.  In *Deering v. Galena Biopharma, Inc.*, Nos. 3:14-cv-00367-SI, 2014 WL 4954398, at *11 (D. Ore. Oct. 3, 2014), counsel for Mostaco, The Rosen Law Firm, successfully argued that a net seller was an inadequate lead plaintiff.  *See Deering v. Galena Biopharma, Inc.*, Nos. 3:14-cv-00367-SI, (D. Ore.) (ECF No. 33 at 15-16) (dated June 9, 2014) (Rosen Law Firm arguing competing group "would be inadequate to represent the Class because courts around the country have consistently rejected applications for lead plaintiff made by such net sellers and net gainers, recognizing the difficulty of proving damages at trial.").  The court in *Deering* agreed that a net seller was inadequate to represent the class and adopted The Rosen Law Firm's argument: "courts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial." *Deering*, Nos. 3:14-cv-00367-SI, 2014 WL 4954398, at *11.  The Court should follow *Deering* and the numerous other cases that have rejected net sellers as lead plaintiff.

Mostaco's first transactions in Vale securities during the Class Period occurred on April 7, 2017—when it sold 739,000 shares.  From that point through the end of the Class Period, Mostaco was a net seller—ending the Class Period having sold 888,000 more shares than it purchased.

Because of Mostaco's atypical selling pattern, defendants will raise significant challenges to whether it actually suffered a loss attributable to the fraud. Indeed, when analyzing whether Mostaco is subject to unique defenses, the relevant question is not whether defendants' defense ultimately would defeat its claims, but rather whether Mostaco was at least subject to a defense to which other class members were not. *See TDH Partners LLP v. Ryland Group, Inc.*, No. 04-CV-0073, 2006 WL 8437050, at \*6 (N.D. Tex. 2006) (citing *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989)).

In contrast, CAAT Pension Plan is not susceptible to the unique defenses that the Net Seller-Mostaco will face. CAAT Pension Plan purchased 611,999 shares of Vale securities shares during the Class Period and held all of them at the end of the Class Period. CAAT Pension Plan suffered the largest loss of any movant, is a net purchaser of Vale shares, and it does not suffer from the infirmities that make Net Seller-Mostaco an inadequate lead plaintiff.

**B.      CAAT PENSION PLAN HAS THE LARGEST FINANCIAL INTEREST IN THE RELIEF SOUGHT BY THE CLASS**

CAAT Pension Plan has the largest financial interest of any competing movant under three of the four *Lax/Olsten* factors. *See Sequans*, 289 F. Supp. 3d at 420; *City of Warren Police v. Foot Locker, Inc.,* 325 F. Supp. 3d 310, 315 (E.D.N.Y. 2018) (Bulsara, M.J.); *Varghese*, 589 F. Supp. 2d at 394–95; *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007). CAAT Pension Plan's LIFO loss of approximately $913,000 is larger than that of all other movants, CAAT is a net purchaser of Vale shares, and expended the most net funds. *See supra*, *Lax/Olsten* Factor chart.

Mostaco argued in its opening papers that its financial interest was approximately $4.5 million under LIFO. However, as set forth above, while purporting to use the LIFO methodology that is favored by courts in the Second Circuit, Mostaco employed a distorted method that is inconsistent with LIFO accounting principles, has no basis in economic reality, and appears to be

8

a manipulated calculation designed to produce the largest financial interest.[10]

Under LIFO, shares acquired most recently are assumed to be sold first. *Kaplan*, 240 F.R.D. at 94. "The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to inflation of the stock price." *In re eSpeed*, 232 F.R.D. at 101 (quoting *Thompson v. Shaw Group, Inc.*, No. Civ.A. 04-1685, 2004 WL 2988503, at *4 (E.D. La. Dec. 14, 2004) ("Under the LIFO approach, a plaintiff's sales of the defendant's stock during the class period are matched against the last shares purchased, resulting in an off-set of class-period gains from a plaintiff's ultimate loss.")). Under LIFO, Mostaco's actual financial interest is a profit, and therefore it arguably has no damages as a result of the alleged fraud—a unique defense that disqualifies Mostaco from serving as lead plaintiff.

## C.    CAAT PENSION PLAN SATISFIES THE REQUIREMENTS OF RULE 23

Once the court has identified the movant with the largest financial interest in the litigation, it next determines whether that plaintiff preliminarily meets the adequacy and typicality requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also City of Warren Police*, 325 F. Supp. 3d at 316; *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("Once . . . the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether [it] satisfies the other

---

[10] Mostaco does not dispute that LIFO is the proper methodology to use in determining financial interest under the *Lax/Olsten* factors for purposes of determining which lead plaintiff movant has the largest financial interest. Courts have preferred LIFO as an appropriate means of calculating losses in securities fraud cases. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005); *Kaplan*, 240 F.R.D. at 94 n. 7 ("Many courts have stated a preference for LIFO over FIFO . . . ."); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-7281 (JFK), 2008 WL 4974839, at *3 (S.D.N.Y. Nov. 24, 2008) ("To calculate losses, courts favor the LIFO accounting method over FIFO."); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 n.3 (S.D.N.Y. 2005) ("[FIFO] has fallen out of favor in this District because of its tendency to overstate the losses of institutional investors and to understate gains made from stock during the class period.").

statutory requirements.") (internal citation omitted).  CAAT Pension Plan has the largest financial interest and meets the typicality and adequacy requirements of Rule 23.  *See* Mem. of Law in Supp. of the Mot. of the Colleges of Applied Arts and Technology Pension Plan for Appointment as Lead Pl. and Approval of its Selection of Lead Counsel ("CAAT Br.") at 7-11 (ECF No. 7).

### 1.    CAAT Pension Plan Fulfills the Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  Typicality exists if a plaintiff's claims "arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sequans*, 289 F. Supp. 3d at 422; *City of Warren Police*, 325 F. Supp. 3d at 316; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  Rule 23 does not require that the named plaintiff be identically situated with all class members.  It is enough if their situations share a common issue of law or fact.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 127 (S.D.N.Y. 1997).  A finding of commonality frequently supports a finding of typicality.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982) (noting how the commonality and typicality requirements "merge").

CAAT Pension Plan seeks to represent a class of purchasers of Vale shares who have identical, non-competing, and non-conflicting interests.  CAAT Pension Plan satisfies the typicality requirement because it: (1) purchased Vale shares at prices alleged to have been artificially inflated by defendants' materially false and misleading statements and/or omissions, and (2) suffered damages upon disclosure of the truth.  *See*  CAAT Br. at 9.  Thus, CAAT Pension Plan's claims are typical of those of other proposed Class members, since its claims and the claims of other proposed Class members arise out of the same course of events.

### 2.     CAAT Pension Plan Fulfills the Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Sequans*, 289 F. Supp. 3d at 423; *City of Warren Police*, 325 F. Supp. 3d at 317.

As detailed above, CAAT Pension Plan shares common questions of law and fact with proposed Class members, has claims that are typical of the claims of other proposed Class members, and suffers from no conflicts of interest with the proposed Class. Furthermore, CAAT Pension Plan has the largest known financial interest which gives it "an incentive to prosecute the case vigorously." *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004).

Finally, CAAT Pension Plan's attorneys, Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), have significant experience successfully prosecuting complex securities class actions, including successfully litigating securities actions against U.S. stock exchange-listed Brazilian companies on behalf of institutional investors. *See* Kaplan Fox Firm Resume, attached as Ex. C to the Declaration of Frederic S. Fox in Support of Motion of CAAT Pension Plan for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Choice of Lead Counsel, dated March 29, 2019 (ECF No. 8-4); *In re Petrobras Securities Litigation*, Civ. Action No. 14-cv-9662 (JSR) (S.D.N.Y.) (Kaplan Fox representing opt-out institutional plaintiff); *In re Eletrobras Secs. Litig.,* Case No. 15- cv-5754 (S.D.N.Y.) (Kaplan Fox representing institutional lead plaintiff and class). Further, Kaplan Fox has been appointed in this District to serve as lead counsel. *In re Gentiva Sec. Litig.*, 10cv5064 (ADS)(WDW) (E.D.N.Y.).

11

Thus, CAAT Pension Plan, in addition to having the largest financial interest, also satisfies the typicality and adequacy requirements of Rule 23 and, therefore, satisfies all of the prerequisites for appointment as lead plaintiff in this action pursuant to the PSLRA.  ECF No. 7 at 9.  Having established that it has the largest financial interest in the relief sought by the Class and that it satisfies the requirements of Rule 23, the Court should appoint CAAT Pension Plan as lead plaintiff in this litigation.

### D.    ALL OTHER MOTIONS SHOULD BE DENIED

None of the competing movants possesses the largest financial interest, *see supra* at 2, and there is no proof to rebut the presumption established by CAAT Pension Plan.  Accordingly, the competing motions should be denied.  *See Sofran*, 220 F.R.D. at 403.

### III.    CONCLUSION

For all of the foregoing reasons, CAAT Pension Plan respectfully requests that the Court: (1) appoint CAAT Pension Plan as lead plaintiff; (2) approve CAAT Pension Plan's selection of Kaplan Fox as lead counsel for the proposed Class; and (3) deny all competing motions.

Dated:  April 12, 2019

Respectfully submitted,

*/s/        Frederic S. Fox*

Frederic S. Fox
Donald R. Hall
Jeffrey P. Campisi
Pamela A. Mayer
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
jcampisi@kaplanfox.com
pmayer@kaplanfox.com

*Attorneys for Movant the Colleges of Applied
Arts and Technology Pension Plan*

13

## CERTIFICATE OF SERVICE

I, Frederic S. Fox, hereby certify that, on April 12, 2019, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

*/s/ Frederic S. Fox*
Frederic S. Fox