UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
BRYAN RAUCH,

                                 Plaintiff,

          -against-

VALE S.A.,
MURILO FERREIRA,
FABIO SCHVARTSMAN,
LUCIANO SIANI PIRES,

                             Defendants.
--------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
19-CV-526-RJD-SJB

**BULSARA, United States Magistrate Judge:**

This case, *Rauch v. Vale S.A.* ("*Vale I*"), is a putative class action filed on January

28, 2019 by Bryan Rauch ("Rauch") on behalf of investors who purchased publicly

traded securities of Vale S.A. ("Vale") from April 13, 2018 to January 28, 2019.  (Compl.

dated Jan. 28, 2019, Dkt. No. 1 ("Original *Vale I* Compl.")).  On March 27, 2019, Rauch

amended his Complaint to expand the class period to June 7, 2016 to February 6, 2019

and to add an additional defendant.  (Am. Compl. dated Mar. 27, 2019, Dkt. No. 5 ("*Vale

I* Compl.")).  The Amended Complaint alleges violations of Sections 10(b) and 20(a) of

the Securities Exchange Act of 1934 ("the Exchange Act") and Securities and Exchange

Commission ("SEC") Rule 10b-5 by Vale, its Chief Executive Officers Murilo Ferreira

("Ferreira") and Fabio Schvartsman ("Schvartsman"), and its Chief Financial Officer

Luciano Siani Pires ("Pires").  (*Id.* ¶¶ 8-10).  In a separate action commenced on

February 8, 2019, *Epstein v. Vale S.A.* ("*Vale II*"), Plaintiff Richard Epstein brought the

same Exchange Act and Rule 10b-5 claims against Vale, Schvartsman, and Pires on

behalf of investors who purchased Vale stock from April 13, 2018 to January 28, 2019. (Compl. dated Feb. 8, 2019, No. 19-CV-793, Dkt. No. 1 ("*Vale II* Compl."))[1]

Pending before the Court is an unopposed motion by the Colleges of Applied Arts and Technology Pension Plan ("CAAT") for consolidation of the two cases, appointment as Lead Plaintiff, and appointment of Class Counsel. (*See* Mot. to Consolidate by CAAT dated Mar. 29, 2019, Dkt. No. 6 ("CAAT Mot.")). Four other motions for consolidation, appointment as Lead Plaintiff, and appointment of Class Counsel were filed by Mostaco Corp. ("Mostaco"), the Firemen's Retirement System of St. Louis ("St. Louis Retirement"), the Boston Retirement System ("Boston Retirement"), and Romica Mihaescu ("Mihaescu"); the motions by Mostaco and St. Louis Retirement were withdrawn and the motions by Boston Retirement and Mihaescu were supplemented with notices of non-opposition. (*See* Mot. to Consolidate by Mostaco dated Mar. 29, 2019, Dkt. No. 12 ("Mostaco Mot.") (withdrawn by Notice dated Apr. 30, 2019, Dkt. No. 33 ("Mostaco Withdrawal")); Mot. to Consolidate by St. Louis Retirement dated Mar. 29, 2019, Dkt. No. 9 ("St. Louis Retirement Mot.") (withdrawn by Notice dated Apr. 4, 2019, Dkt. No. 22 ("St. Louis Retirement Withdrawal")); Mot. to Consolidate by Boston Retirement dated Mar. 29, 2019, Dkt. No. 14 ("Boston Retirement Mot.") (supplemented by Notice dated Apr. 8, 2019, Dkt. No. 26 ("Boston Retirement Non-Opposition")); Mot. to Consolidate by Mihaescu dated Mar. 29, 2019, Dkt. No. 17 ("Mihaescu Mot.")

---

[1] There was a third action filed in the Southern District of New York, *Mihaescu v. Vale S.A.*, that also alleged violations of the Exchange Act on behalf of those who purchased Vale stock from April 11, 2017 through January 28, 2019. (Compl. dated Feb. 20, 2019, No. 19-CV-1610, Dkt. No. 1; *see* Mem. of Law in Supp. of CAAT Mot., Dkt. No. 7 ("CAAT Mem.") at 1 n.1). That case was voluntarily dismissed on April 11, 2019. (Notice of Voluntary Dismissal, No. 19-CV-1610, Dkt. No. 33; *see* Opp'n of CAAT, Dkt. No. 29 ("CAAT Resp.") at 5 n.9).

(supplemented by Notice dated Apr. 9, 2019, Dkt. No. 27 ("Mihaescu Non-Opposition"))).

For the reasons stated below, CAAT's motion to consolidate, for appointment as Lead Plaintiff, and for appointment of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Class Counsel is granted.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Vale, formerly known as Companhia Vale do Rio Doce, is a Brazilian corporation that "produces and sells iron ore and iron ore pellets for use as raw materials in steelmaking." (*Vale I* Compl. ¶ 7; *Vale II* Compl. ¶ 6). It is traded on the New York Stock Exchange under the ticker symbol "VALE." (*Vale I* Compl. ¶ 7). Vale owns Samarco Mineração SA jointly with another Brazilian company, BHP Billiton Brasil Ltda. ("BHP"); together they operated the Fundão tailings dam.[2] (*Id.* ¶ 16; *Vale II* Compl. ¶ 11). On November 5, 2015, the dam burst, killing 19 people. (*Vale I* Compl. ¶ 16; *Vale II* Compl. ¶ 11). As a result, Vale and BHP settled a civil suit with Brazilian authorities for $5.3 billion dollars and were required to participate in remediation and compliance programs. (*Vale II* Compl. ¶ 12). On January 25, 2019, another tailings dam owned by Vale, at Feijão, collapsed, killing hundreds of people. (*Vale I* Compl. ¶ 17; *Vale II* Compl. ¶ 13).

Ferreira served as Vale's CEO from 2011 to May of 2017, and Schvartsman has served as CEO since May 2017. (*Vale I* Compl. ¶¶ 8-9; *Vale II* Compl. ¶ 7). Pires has served as Vale's CFO since August 2012. (*Vale I* Compl. ¶ 10; *Vale II* Compl. ¶ 8). According to both Complaints, these individuals allegedly made false representations to

---

[2] Tailings are refuse and materials remaining after mineral extraction from ore mining.

the public through several documents submitted to the SEC, as described below.  (*Vale I* Compl. ¶¶ 12, 28; *Vale II* Compl. ¶¶ 9, 22).[3]

Vale made several filings with the SEC from 2015 to 2017 pertaining to the company's commitment to safety, each either approved or certified by one of the individual Defendants.  (*Vale I* Compl. ¶¶ 18-19, 22-25, 27; *Vale II* Compl. ¶¶ 18-19, 21).[4] For example, Vale's 2015 Form 6-K contained a sustainability report describing the corporation's value of "[l]ife matters most" and stating that "all dams . . . are monitored, audited and maintained usually under the same criteria and safety standards [as described earlier in the report]." (*Vale I* Compl. ¶¶ 18-21).  Vale's 2017 Form 20-F, which provided the company's financial results, also stated Vale was "committed to improving the health and safety of [its] workers" and described the regulation and safety reviews required by the Brazilian government.  (*Vale I* Compl. ¶¶ 24-26; *Vale II* Compl. ¶¶ 18-20).  Vale's 2017 Form 6-K also described similar commitments including periodic safety reviews of the dam.  (*Vale I* Compl. ¶ 27; *Vale II* Compl. ¶ 21).  These statements were allegedly false and misleading because they failed to disclose that Vale did not adequately assess the potential risk of breach at the Feijão tailings dam, failed to provide or invest in adequate programs to protect workers and the community, and failed to adequately monitor its dams.  (*Vale I* Compl. ¶ 28; *Vale II* Compl. ¶ 22).[5]

---

[3] The *Vale II* Complaint makes these allegations against Schvartsman and Pires only, whereas the *Vale I* Complaint makes the allegations against Schvartsman, Pires, and Ferreira.

[4] Both Complaints contain allegations pertaining to SEC forms filed in 2017.  In addition, *Vale I* also contains allegations pertaining to SEC forms filed in 2015 and 2016.

[5] In addition, the *Vale II* Complaint alleges these forms also failed to disclose a conflict of interest between Vale and its auditor, failed to disclose an internal report on

On January 25, 2019, *Reuters* reported the Feijão tailings dam burst and that hundreds of people were missing; Vale stock fell over 8% the same day. (*Vale I* Compl. ¶¶ 29-30; *Vale II* Compl. ¶ 23). The next day, *BBC News* and *Reuters* reported the dam's alarm system had failed, that operations at the dam had been suspended, and that Vale would be fined for various violations related to the dam. (*Vale I* Compl. ¶¶ 31-33; *Vale II* Compl. ¶¶ 24-25). On January 28, 2019, *Reuters* reported that Vale would be facing criminal prosecution and that investigations would be launched into the company; Vale stock fell 18% the same day. (*Vale I* Compl. ¶¶ 34-36; *Vale II* Compl. ¶¶ 26-28).[6] On February 6, 2019, the *Wall Street Journal* reported that Vale had been warned by inspectors about the risk of failure at the Feijão dam; Vale stock fell more than 6% that day. (*Vale I* Compl. ¶¶ 39-40; *Vale II* Compl. ¶ 30).[7] The drops in market value of Vale stock allegedly caused significant damage to class members. (*Vale I* Compl. ¶ 41; *Vale II* Compl. ¶ 29).

The Complaints in *Vale I* and *Vale II* assert the same two causes of action: violations of (1) Section 10(b) of the Exchange Act and Rule 10b-5 by Vale, Schvartsman, and Pires, (*Vale I* Compl. ¶¶ 51-60; *Vale II* Compl. ¶¶ 44-54); and (2) Section 20(a) of the Exchange Act by Schvartsman and Pires, (*Vale I* Compl. ¶¶ 61-65; *Vale II* Compl.

---

the stability of the Feijão tailings dam, and failed to disclose that the dam was at risk of liquefaction, which had caused the 2015 collapse of the Fundão tailings dam. (*Vale II* Compl. ¶ 22).

[6] The *Vale I* Complaint also alleges a drop in stock price on February 4, 2019 after *Bloomberg* reported that Vale was temporarily shutting down other mines pursuant to a court order. (*Vale I* Compl ¶¶ 37-38).

[7] The *Vale II* Complaint also cites another *Wall Street Journal* article that indicated the dam's safety auditors felt pressure from Vale to attest to the dam's stability, allegedly demonstrating Vale knew their statements about the dam's safety were false. (*Vale II* Compl. ¶¶ 31-32).

¶¶ 55-60).  Additionally, the *Vale I* Complaint names Ferreira, Vale's CEO from 2011 to May 2017, in both claims.  (*Vale I* Compl. ¶¶ 51-65).  Both Complaints seek damages sustained by class members, interest, and costs and fees associated with the actions.  (Prayer for Relief, attached to *Vale I* Compl., Dkt. No. 5 ("*Vale I* Prayer for Relief") at 18-19; Prayer for Relief, attached to *Vale II* Compl., Dkt. No. 1 ("*Vale II* Prayer for Relief") at 19-20).

On March 29, 2019, five class members filed motions asking the Court to consolidate *Vale I* and *Vale II*, appoint them as Lead Plaintiff, and approve their choice of Class Counsel.  (*See* Mostaco Mot.; CAAT Mot.; St. Louis Retirement Mot.; Boston Retirement Mot.; Mihaescu Mot.).  Two of these motions were withdrawn and two were supplemented by Notices of Non-Opposition.  (*See* Mostaco Withdrawal; St. Louis Retirement Withdrawal; Boston Retirement Non-Opposition; Mihaescu Non-Opposition).  There remains, therefore, only the unopposed motion by CAAT.[8]

DISCUSSION

I.    Consolidation

"Consolidation is 'a valuable and important tool of judicial administration' that should be 'invoked to expedite trial and eliminate unnecessary repetition and confusion.'"  *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 394 (S.D.N.Y. 2014) (quoting *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)).  Under Federal Rule of Civil Procedure 42, a court may consolidate multiple actions that "involve a common question of law or fact."  Fed. R. Civ. P. 42(a)(2).  Absent prejudice to the defendants, "[c]onsolidation of multiple actions

---

[8] CAAT filed its motion papers twice, once in *Vale I* and once in *Vale II*.  The filings are identical.

6

alleging securities fraud is appropriate where those actions relate to the same public statements and reports," *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004) (quotations omitted), and "the actions need not be identical to allow for consolidation," *Reitan*, 68 F. Supp. 3d at 394; *Pinkowitz v. Elan Corp., PLC*, No. 02-CV-4948, 2002 WL 1822118, at \*3 (S.D.N.Y. July 29, 2002) ("Neither Rule 42 nor the PSLRA [(Private Securities Litigation Reform Act)] demands that actions be identical before they may be consolidated.") (quotations omitted).  In fact, "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (entering consolidation order despite different class periods), *reconsidered on other grounds sub nom. In re IMAX Sec. Litig.*, 2009 WL 1905033 (June 29, 2009).  Such "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998) (consolidating cases with different, but overlapping, class periods).

*Vale I* and *Vale II* certainly contain common questions of law and fact.  Both allege violations of Section 10(b) of the Exchange Act and Rule 10b-5 by Vale and its officers and violations of Section 20(a) by its officers based on the 2017 Form 20-F and 2017 Form 6-K filed with the SEC.  (*See Vale I* Compl. ¶¶ 24-27; *Vale II* Compl. ¶¶ 18-21).  Both seek damages, interest, and costs and fees.  (*See Vale I* Prayer for Relief; *Vale II* Prayer for Relief).  That *Vale I* has a longer class period, and thus contains additional allegations pertaining to Vale's 2015 and 2016 20-F Forms, does not render

consolidation inappropriate.  The purported class periods end about a week apart, and the additional two years of allegations in *Vale I*—encompassing earlier SEC filing from 2015 and 2016—do not weigh against consolidation, since the allegations about misstatements are similar, although couched in different filings, and the same pattern of alleged misconduct is present over both class periods.  *See, e.g.*, *Kaplan*, 240 F.R.D. at 92 ("[T]he difference in start dates [of the class periods] results in parties' reliance upon different financial statements in their pleadings.  Of course, to the extent that the class periods overlap, the factual allegations overlap.  However, even for the non-overlapping period, all plaintiffs and movants rely on a common pattern in their allegations: that defendants' statements to the investing public misrepresented or omitted to state material facts about the financial status of IMAX.  Further, these matters share a common legal question: whether defendants' misrepresentations violated federal securities laws."); *In re Olsten Corp.*, 3 F. Supp. 2d at 292-93 ("The court finds that consolidation of the four actions is appropriate. . . .  Although the class period in Weichman begins before and ends during the class periods alleged in the other three actions, the allegations in the later three actions are based upon disclosures that concern facts common to all four actions.").  In any event, "the filing of a consolidated complaint and the determination of class certification each offer opportunities to resolve remaining issues concerning the differing class periods."  *Kaplan*, 240 F.R.D. at 92 (citation omitted).

Nor does the presence of an additional Defendant in *Vale I*, Ferreira, render consolidation inappropriate, because Ferreira was simply the predecessor of Schvarstman, a Defendant in both *Vale I* and *Vale II*.  *See Pinkowitz*, 2002 WL 1822118, at *3 ("[C]onsolidation is not barred simply because the actions to be consolidated allege

claims against different parties.") (quotations omitted); *see, e.g.*, *Dolan v. Axis Capital Holdings Ltd.*, No. 04-CV-8564, 2005 WL 883008, at *2 (S.D.N.Y. Apr. 13, 2005) ("[B]oth complaints rest on the same fundamental allegations that defendants made material misrepresentations regarding Axis' participation in allegedly illegal contingent commission agreements that were the subject of an investigation by New York's Attorney General. Although Schimpf asserts claims against an additional insider defendant, the complaints are almost identical, and the class periods are coextensive. Accordingly, the Actions involve common issues of law and fact, and are hereby consolidated pursuant to Rule 42(a).") (quotations and citation omitted); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004) ("Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. That certain defendants are named in only one or some of the complaints does not require a different result. Nor do differences among the class periods proposed preclude consolidation. Accordingly, the four above-captioned cases are hereby consolidated[.]") (citations omitted) (collecting cases).

Also, since there is no law firm or party competing with CAAT to serve as Lead Plaintiff, it would make little sense to keep two separate cases on the docket. As a practical matter, CAAT will be—as discussed below—directing the prosecution of both actions, since no party has opposed consolidation. The Court can also conceive of no prejudice to the Defendants from the consolidation. It is therefore appropriate to consolidate *Vale I* and *Vale II* into a single case. *See, e.g.*, *Constance Sczesny Tr.*, 223 F.R.D. at 322 ("Here, the gravamen of the complaints in each of the related actions is the same allegedly fraudulent accounting treatment of certain tax credits and expenses in Polaroid's public securities filings issued in the spring of 2001. Therefore, crucial

factual and legal questions are common to all the related actions. . . . Moreover, it is clear that consolidation would not prejudice the defendants, who have not opposed the motions for consolidation. Accordingly, this Court finds that it is appropriate to consolidate the nine pending related securities actions.").

II.     Lead Plaintiff

"In consolidated securities litigations, the PSLRA recommends courts to make the decision regarding the appointment of the 'most adequate' plaintiff as the lead plaintiff for the consolidated actions '[a]s soon as practicable after [the consolidation] decision is rendered.'" *Constance Sczesny Tr.*, 223 F.R.D. at 322 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(ii)).

A.     Notice to Class

The PSLRA requires a plaintiff who files a complaint to publish, in a widely circulated business-oriented publication or wire service, a notice advising members of the purported class of "the pendency of the action, the claims asserted therein, and the purported class period" and permits that, "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff[.]" 15 U.S.C. § 78u-4(a)(3)(A). Although no party has objected to the adequacy of the notice here, "in deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005) (quotations omitted).

On January 28, 2019, the Rosen Law Firm, P.A., counsel for Mostaco, published a notice about the pendency of the action in *Business Wire*, informing potential class

members of their right to move for appointment of lead plaintiff within 60 days.  (*See* PSLRA Early Notice, attached as Ex. 1 to Mem. in Supp. of Mostaco Mot. ("Mostaco Mem."), Dkt. No. 13 ("PSLRA Notice")).  "*Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published."  *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 403.  However, the published notice identifies the class period as April 13, 2018 through January 28, 2019, which is the class period asserted in the original Complaint, (PSLRA Notice at 1; Original *Vale I* Compl. ¶ 1); the Amended Complaint expanded the class period to June 7, 2016 through February 6, 2019 and added Ferreira as a Defendant, as he was Vale's CEO during part of the expanded class period, (*Vale I* Compl. ¶¶ 1, 8).  The Court must therefore determine whether republication is required in light of the Amended Complaint.

"[C]ourts typically disfavor republication when a complaint is amended" unless "the amended complaint substantially alters the claims or class members."  *Waldman v. Wachovia Corp.*, No. 08-CV-2913, 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009). "[R]epublication is generally appropriate where an amended complaint asserts new theories or legal claims."  *Bombardier Inc.*, 2005 WL 1322721, at *2.  However, "[i]n cases encompassing the same claims and securities, but somewhat different class periods, courts have generally found that the efficiency cost of republication outweighs the marginal fairness gains of notifying class members of an extended class period.  In such cases, most potential lead plaintiffs are probably eligible under either class period, and, at the very least, have been alerted to the pendency of a case involving the securities they hold, if not the exact period in which they held them."  *Id.*  The same conclusion is appropriate when the only difference in the amended complaint is to raise allegations against an additional defendant.  *See Greenberg v. Bear Stearns & Co.*, 80 F.

Supp. 2d 65, 69 (E.D.N.Y. 2000) ("[N]either case law nor the provisions of the PSLRA require a second notice to be published when the complaint was amended to add [an] additional defendant."). Therefore, changes accompanying the Amended Complaint do not affect the sufficiency of notice in this case and do not warrant republication, because the legal claims are the same and the factual allegations are substantially similar between the original and amended Complaints.[9]

The 60-day period in which any member of the proposed class could apply for lead plaintiff status elapsed on March 29, 2019; CAAT's motion, filed on that day, was thus timely. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

B. Appointment of Lead Plaintiff

The PSLRA requires the court to appoint as "lead plaintiff" the member of the class that it determines to be the "most adequate plaintiff," *i.e.* the member "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The court must "adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that": (1) "has either filed the complaint or made a [timely] motion" to be appointed as lead plaintiff(s); (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

---

[9] The Amended Complaint does make additional factual allegations pertaining to documents filed with the SEC and news articles that allegedly caused Vale stock to drop in price. (*See Vale I* Compl. ¶¶ 18-23, 37-40). However, these allegations reflect substantially the same misconduct as the original Complaint for which notice was issued, just for different years corresponding with the expanded class period. These additions certainly do not assert "entirely new factual and legal allegations" that cause "entire classes of potential lead plaintiffs [to be] left out of the notice procedure," and thus do not necessitate republication. *Bombardier Inc.*, 2005 WL 1322721, at *2 (quotations omitted).

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted "only" by proof that the presumptively adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff.  *See Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-6130, 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017) ("Although the . . . motion is unopposed, the Court must still ensure that it is the most adequate plaintiff under the PSLRA.") (citing *Springer v. Code Rebel Corp.*, No. 16-CV-3492, 2017 WL 838197, at *1 (S.D.N.Y. Mar. 2, 2017)); *e.g.*, *City of Warren Police and Fire Retirement Sys. v. Foot Locker, Inc.,* 325 F. Supp. 3d 310, 314 (E.D.N.Y. 2018); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923, 2006 WL 1120619, at *2 (E.D.N.Y. Apr. 26, 2006).

As stated above, CAAT made a timely motion to be appointed as lead plaintiff. The Court therefore turns to the two remaining elements of the presumption of adequacy.

### i.  Largest Financial Interest

In assessing the financial interests of parties competing for lead plaintiff status, the Court will generally consider the following:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012) (referring to these factors as the "*Olsten* factors" and citing *In re Olsten Corp.*, 3 F. Supp. 2d at 295). The fourth factor, the approximate losses suffered, is considered to be the most important. *See Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008); *see also City of Warren Police*, 325 F. Supp. 3d at 315; *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 421 (E.D.N.Y. 2018).[10]

During the class period,[11] CAAT purchased 611,999 shares of Vale stock costing $8,605,783.58. (Loss Chart, attached as Ex. B to Decl. of Frederic S. Fox ("Fox Decl."), Dkt. No. 8 ("CAAT Loss Chart")). CAAT retained all of these shares during the class

---

[10] In its initial moving papers, CAAT calculated its losses using both the "last-in, first out" ("LIFO") method and the "first-in, first out" ("FIFO") method. (*See* CAAT Mem. at 2). "LIFO calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale. The alternative, 'first in, first out' ('FIFO'), assumes that the first stocks to be sold are the stocks that were acquired first." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011). "[R]ecently, courts have preferred LIFO and have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases. . . . The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price[,] [whereas] FIFO . . . ignores sales occurring during the class period and hence may exaggerate losses." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005). In CAAT's subsequent moving papers, it focuses solely on LIFO and states that "[c]ourts have preferred LIFO as an appropriate means of calculating losses in securities fraud cases." (CAAT Resp. at 9 n.10; *see generally* Reply in Supp. of CAAT Mot., Dkt. No. 32 ("CAAT Reply")). The Court thus uses CAAT's LIFO calculations in analyzing its losses.

[11] For the purposes of appointing lead plaintiff in cases involving two potential class periods, courts use the longer class period in the analysis. *Hom v. Vale, S.A.*, No. 15-CV-9539, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) ("[T]he use of the longer, more inclusive class period is proper for purposes of the present motion because the longer class period encompasses more potential class members and damages. A number of courts in this district have found it appropriate to rely on the more inclusive class for determining lead plaintiff because it encompasses more potential class members.") (quotations omitted) (collecting cases). The class period for the purposes of loss calculations is therefore June 7, 2016 to February 6, 2019.

period, making the number of net shares purchased (the difference between shares purchased and shares sold) 611,999 and the net funds expended (the difference between amount spent and amount received from sales) $8,605,783.58. (*See id.*). CAAT suffered $912,956.15 in losses, calculated by subtracting $7,692,827.43 (611,999 times $12.57, the 90-day average price per share as of March 28, 2019) from their original purchase cost of $8,605,783.58. (*See id.*).

Each of the other movants, in their respective withdrawals or notices of non-opposition, recognize that they do not have the largest financial interest in the litigation. (*See* Mostaco Withdrawal at 2; St. Louis Retirement Withdrawal; Boston Retirement Non-Opposition at 1; Mihaescu Non-Opposition at 2). None has disputed CAAT's loss calculations. Mostaco indicated in its withdrawal that CAAT "has the largest financial interest" and that it supports the appointment of CAAT as lead plaintiff. (Mostaco Withdrawal at 2).[12] Under the *Olsten* criteria, CAAT has the largest financial interest. *See, e.g.*, *Springer*, 2017 WL 838197, at *1-2 ("Though Tran and Ybarra's motion is now unopposed, the Court nevertheless addresses the requirements under the [PLSRA.] . . . Tran and Ybarra represent that they purchased a total of 39,004 shares during the class period; that they purchased 27,032 net shares (subtracting the total sold from the total

---

[12] Mostaco's withdrawal came after it had fully briefed its motion to be appointed as lead plaintiff, in opposition to CAAT's motion. (*See* Opp'n of Mostaco, Dkt. No. 28 ("Mostaco Resp."); Reply in Supp. of Mostaco Mot., Dkt. No. 31 ("Mostaco Reply")). Mostaco, in those briefings, argued that it had "suffered the largest loss of any movant" as calculated under LIFO, namely $4,540,287.45. (Mostaco Resp. at 1-2; *see* Mostaco Reply at 1-3). Mostaco also objected to CAAT's argument that Mostaco had misapplied LIFO principles and actually profited during the class period. (*See* Mostaco Reply at 1-2; CAAT Resp. at 3 (arguing Mostaco had incorrectly matched sales of Vale stock in April 2017 with purchases of Vale stock in October 2017 and October 2018, thus purporting to have sold stock it had not yet purchased)). In light of Mostaco's subsequent withdrawal and its contention that CAAT has the largest financial interest, Mostaco no longer adheres to these positions.

purchased); that they expended $98,586.28 in net funds; and that they lost $97,775.32. The other plaintiffs, in withdrawing their respective motions, acknowledged that their financial interest was not as great. No additional plaintiff has come forward suggesting she has a greater financial interest in this litigation.") (citations omitted).

        ii.  <u>Rule 23</u>

The next step in identifying which plaintiff is entitled to the presumption of adequacy is to "ensure that the person (or persons) with the largest financial interest 'otherwise satisfies the requirements of Rule 23.'" *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956, 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)). In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a "preliminary showing" that two of Rule 23's requirements—typicality and adequacy—are satisfied. *See Ford v. Voxx Int'l Corp.*, No. 14-CV-4183, 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015) (adopting report and recommendation) (collecting cases); *see also Martingano v. Am. Int'l Grp., Inc.*, No. 06-CV-1625, 2006 WL 1912724, at *4 (E.D.N.Y. July 11, 2006) ("[A]t this stage in the litigation, one need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied.") (quotations omitted).

"Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923, 2006 WL 1120619, at *3 (E.D.N.Y. Apr. 26, 2006) (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). There is no dispute among the movants that each of their claims arise out of the same course of events—Vale's various SEC filings and the allegedly false and misleading statements contained therein—and that each will make similar legal

arguments (under the various provisions of the Exchange Act and Rule 10b-5 thereunder). Consequently, the Court concludes that CAAT, the class member with the largest financial interest, has satisfied the burden to make a preliminary showing of typicality. *See, e.g.*, *Dolan*, 2005 WL 883008, at *4 ("Dolan and Schimpf easily meet the typicality requirement here because their claims arise from the same course of events and each class member makes similar legal arguments to prove the defendants' liability even if there are minor variations in the factual allegations. In particular, both Dolan and Schimpf, like the other purported class members in this action, have asserted that they purchased Axis stock during the class period and were injured by false and misleading representations made by defendants in violation of the [Exchange] Act.") (quotations and citations omitted) (alterations omitted).

"Adequacy of a proposed lead plaintiff turns on whether that plaintiff 'will fairly and adequately protect the interests of the class.'" *Constance Sczesny Tr.*, 223 F.R.D. at 324 (quoting Fed. R. Civ. P. 23(a)). In analyzing the adequacy requirement in the context of appointing lead plaintiff, courts consider: "(1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims." *Id.* (quotations and citations omitted); *see also In re Symbol Techs.*, 2006 WL 1120619, at *3 (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)).

CAAT is represented by Kaplan Fox, which has submitted a firm resume detailing its experience as lead counsel in securities actions across the United States. (*See* Kaplan Fox & Kilsheimer LLP Firm Profile, attached as Ex. C to Fox Decl., Dkt. No. 8 ("Kaplan

Fox Resume") at 2-3). The Court concludes Kaplan Fox would generally be able to conduct this litigation. *See, e.g.*, *In re Symbol Techs.*, 2006 WL 1120619, at *3 ("The Pension Fund's counsel . . . has extensive experience litigating securities class actions and, therefore, has the ability to conduct the litigation effectively."). "Nothing about [CAAT's] interests appears to be antagonistic to the interests of the other class members; this appears to be a fairly common class action based on alleged violations of the Exchange Act where class members are relying on the same statements or omissions as the factual basis of their claims, and where the financial losses are tied to the drop in value that occurred after a specific statement or omission took place." *In re Sequans Commc'ns*, 289 F. Supp. 3d at 423. Finally, as noted earlier, CAAT suffered more than $900,000 in losses and thus has a sufficient financial interest in the case's outcome to suggest it will pursue the case with vigor. *See, e.g.*, *In re Gentiva*, 281 F.R.D. at 121 ("[T]here is no evidence that LACERS' interest would in any way conflict with those of other class members. They have a significant financial stake in the outcome of this litigation and this will motivate their vigorous pursuit of recovery for all other class members. Finally, LACERS has retained competent counsel . . . to assist them in zealously pursuing the claims of all class members."). CAAT is thus entitled to the presumption it should be lead plaintiff.

### iii. Rebuttal of Presumption of Adequacy

The presumption "may be rebutted only upon proof" that CAAT "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render [them] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *accord Constance Sczesny Tr.*, 223 F.R.D. at 323. There is no

suggestion that CAAT is subject to unique defenses,[13] and therefore CAAT is appointed lead plaintiff. *See, e.g.*, *In re Gentiva*, 281 F.R.D. at 121 ("[B]ecause there is no indication that LACERS is subject to unique defenses or will be unable to fairly and adequately protect the interests of the class th[e] presumption is not rebutted. Therefore, the motion by LACERS to be appointed lead plaintiff is granted.") (citations omitted).

III.    Lead Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); *see In re Sequans Commc'ns*, 289 F. Supp. 3d at 426. "The Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Bray v. Frontier Commc'ns Corp.*, No. 17-CV-1617, 2018 WL 525485, at *11 (D. Conn. Jan. 18, 2018) (quotations omitted); *see Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008) ("The PSLRA . . . evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quotations omitted).

"When making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience." *Reitan*, 68 F. Supp. 3d at 401 (collecting cases). CAAT is represented by Kaplan Fox, which, as discussed above, is experienced in securities class action litigation and has been appointed by other courts

---

[13] Even in its briefings that were later withdrawn, Mostaco nor any other party argued that CAAT was subject to unique defenses, nor did any party present evidence that CAAT would not adequately protect the interests of the class.

to serve as lead counsel.  (*See* Kaplan Fox Resume at 2-3).  There is no reason not to adhere to this choice, and the Court appoints Kaplan Fox & Kilsheimer LLP as class counsel.  *See, e.g.*, *Reitan*, 68 F. Supp. 3d at 401 ("Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions.  The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995.  Faruqi & Faruqi achieved successful outcomes in many of these cases.  The Court finds that Faruqi & Faruqi has the requisite experience necessary to serve as lead counsel, and thus will be able to effectively prosecute the consolidated action.") (citations omitted).

CONCLUSION

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, *Rauch v. Vale S.A.*, case No. 19-CV-526, and *Epstein v. Vale S.A.*, case No. 19-CV-793, are hereby consolidated as *In re Vale S.A. Securities Litigation*.  All relevant documents and submissions shall be maintained as one file under Master File No. 19-CV-526.  Any other securities class actions filed in, or transferred to, this District related to the facts alleged in the cases described above shall be consolidated into this action.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Court appoints the Colleges of Applied Arts and Technology Pension Plan as Lead Plaintiff and Kaplan Fox & Kilsheimer LLP as Class Counsel.  The other motions—namely those filed by Mostaco, St. Louis Retirement, Boston Retirement, and Mihaescu—are denied as moot in light of their notices of non-opposition or withdrawals.

SO ORDERED.

*/s/ Sanket J. Bulsara* May 13, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York