**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                         :

In re Vale S.A. Securities Litigation      :        No. 19 Civ. 526 (RJD) (SJB)
                         :

                         :        **ORAL ARGUMENT REQUESTED**
                         :

                         :

-----------------------------------------------------------x

**DEFENDANT VALE S.A.'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**
**THE CONSOLIDATED CLASS ACTION COMPLAINT**

<br>

GIBSON, DUNN & CRUTCHER LLP

Mark A. Kirsch
Randy M. Mastro
Christopher M. Joralemon
Mary Beth Maloney
David M. Kusnetz
200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

*Attorneys for Vale S.A.*

**TABLE OF CONTENTS**

Page

DISCUSSION ...........................................................................................................1

I.      PLAINTIFF'S OPPOSITION CONFIRMS THE COMPLAINT'S MISAPPREHENSION AND MISCHARACTERIZATION OF KEY DOCUMENTS.......................................................................................1

II.      PLAINTIFF'S OPPOSITION FURTHER EXPOSES THE ABSENCE OF ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS IN THE COMPLAINT ...........................................................................4

         A.      Plaintiff Offers No Justification for Its Claims Based on Puffery. ...............4

         B.      Plaintiff Fails to Address the Point that Vale Had No Duty to Disclose All Information Relating to Dam 1. .............................7

III.      THE OPPOSITION ASKS THE COURT TO DISREGARD THE PSLRA AND BESPEAKS CAUTION DOCTRINE BY ALLOWING PLAINTIFF'S CLAIMS BASED ON FORWARD-LOOKING STATEMENTS TO PROCEED ................................................................8

IV.      THE OPPOSITION CONFIRMS PLAINTIFF'S FAILURE TO ALLEGE FACTS THAT GIVE RISE TO A STRONG INFERENCE OF SCIENTER ...........................................................................9

         A.      Plaintiff Has Not Adequately Alleged that Defendants Had Access to Adverse Information. ..................................................9

         B.      Plaintiff's Theory of a "Scheme" Among Low-Level Employees to Obtain Safety Certifications Does Not Remedy the Complaint's Failure to Adequately Plead Scienter.............................................11

V.      THE OPPOSITION FURTHER EXPOSES PLAINTIFF'S FAILURE TO PLEAD LOSS CAUSATION..................................................13

CONCLUSION.......................................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aceto Corp. Sec. Litig.*,
   2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)................................................................9

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ...........................................................................................4, 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...........................................................................................11

*Barilli v. Sky Solar Holdings, Ltd.*,
   389 F. Supp. 3d 232 (S.D.N.Y. 2019)..........................................................................6

*In re Barrick Gold Corp. Sec. Litig.*,
   341 F. Supp. 3d 358 (S.D.N.Y. 2018)..............................................................7, 14, 15

*City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173 (2d
   Cir. 2014) ...................................................................................................................5, 6

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
   2020 WL 248729 (S.D.N.Y. Jan. 15, 2020) ...................................................7, 10, 11

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018)..........................................................................11

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)...........................................................................................6

*Emerson v. Mut. Fund Series Tr.*,
   393 F. Supp. 3d 220 (E.D.N.Y. 2019) .........................................................................13

*Foley v. Transocean Ltd.*,
   861 F. Supp. 2d 197 (S.D.N.Y. 2012)........................................................................2, 8

*Gissin v. Endres*,
   739 F. Supp. 2d 488 (S.D.N.Y. 2010)............................................................................9

*Gross v. GFI Grp., Inc.*,
   784 F. App'x 27 (2d Cir. 2019) .................................................................................4, 5

*Janbay v. Canadian Solar, Inc.*,
   2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ..........................................................4, 13

*Johnson v. Siemens AG*,
  2011 WL 1304267 (E.D.N.Y. Mar. 31, 2011) ..........................................................................10

*Katyle v. Penn Nat'l Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) ...................................................................................................13

*Lefkowitz v. Synacor, Inc.*,
  2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019)...........................................................................8

*In re Liberty Tax, Inc. Sec. Litig.*,
  2020 WL 265016 (E.D.N.Y. Jan. 17, 2020) ............................................................................14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)....................................................................................................13

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
  277 F. Supp. 3d 500 (S.D.N.Y. 2017)........................................................................................6

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014).................................................................................................5, 7

*Nardy v. Chipotle Mexican Grill, Inc.*,
  2019 WL 3297467 (D. Colo. Mar. 29, 2019) ..........................................................................15

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ..................................................................................................13

*Orlan v. Spongetech Delivery Sys., Inc.*,
  2017 WL 1131900 (E.D.N.Y. Mar. 24, 2017)........................................................................13

*Pavelic & LeFlore v. Marvel Entm't Grp.*,
  493 U.S. 120 (1989)...................................................................................................................1

*In re Petrobras Sec. Litig.*,
  116 F. Supp. 3d 368 (S.D.N.Y. 2015).................................................................................6, 7

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
  777 F. App'x 726 (5th Cir. 2019) ...........................................................................................15

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
  898 F. Supp. 2d 673 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013)........................15

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007)......................................................................................10

*Rose v. Garritt*,
  2018 WL 443752 (S.D.N.Y. Jan. 16, 2018) ..............................................................................4

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019).....................................................................................4, 5

*In re Supercom Inc. Sec. Litig.*,
2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018)......................................................6, 8, 9

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)........................................................................11

*In re Tempur Sealy Int'l, Inc. Sec. Litig.*,
2019 WL 1368787 (S.D.N.Y. Mar. 26, 2019) ..........................................................15

*Thomas v. Shiloh Indus., Inc.*,
2018 WL 4500867 (S.D.N.Y. Sept. 19, 2018)...........................................................12

*In re UBS AG Sec. Litig.*,
2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom., City of Pontiac
Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173 (2d Cir. 2014).........................2

*Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*,
2014 WL 7179989 (S.D.N.Y. Dec. 10, 2014) ..........................................................12

*In re Vivendi*,
838 F.3d 223 (2d Cir. 2016).........................................................................................9

*VNB Realty, Inc. v. Bank of Am. Corp.*,
2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013)............................................................1

*In re Winstar Commc'ns*,
2006 WL 473885 (S.D.N.Y. Feb. 27, 2006)..............................................................14

**Rules**

Fed. R. Civ. P. 11(b) ......................................................................................................2

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

As set forth in Vale's Opening Brief, the Complaint fails to state a claim for securities fraud for at least six independent reasons:  (1) Plaintiff abdicated its responsibility to conduct an inquiry into the truth of its allegations; (2) none of the alleged misstatements is false or otherwise actionable, and nearly all are too generic to invite reasonable reliance; (3) Vale had no duty to disclose allegedly omitted facts about its dam management; (4) the PSLRA and the "bespeaks caution" doctrine preclude Plaintiff's claims premised on forward-looking statements; (5) the Complaint fails to plead facts giving rise to a strong inference of scienter; and (6) the Complaint fails to plead a cognizable theory of loss causation.  For each—or any—of these reasons, the Court should dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## DISCUSSION

## I.   PLAINTIFF'S OPPOSITION CONFIRMS THE COMPLAINT'S MISAPPREHENSION AND MISCHARACTERIZATION OF KEY DOCUMENTS

By relying almost entirely on two reports issued by political bodies in Brazil ("the CPI Reports"), Plaintiff "is attempting to rely on the substance of [the CPI Reports'] allegations without being held responsible for certifying that they are supported by some factual basis, or at least that" the documents cited in those reports were interpreted correctly.  *VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at *7 (S.D.N.Y. Sept. 16, 2013).  "Such reliance is impermissible, particularly in light of counsel's 'personal, non-delegable responsibility' under Rule 11 to 'validate the truth and legal reasonableness of the papers filed.'"  *Id.* (quoting *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989)).

Indeed, Plaintiff's Opposition to Vale's Motion to Dismiss ("Opposition" or "Opp.") provides no explanation for the Complaint's multitude of basic errors and mischaracterizations

---

[1]  Defined terms have the meanings given to them in Vale's opening brief, dated December 13, 2019 ("Opening Brief" or "MTD").

regarding verifiable facts identified by Vale in its opening brief. *See* MTD at 6–11. These transgressions—which Plaintiff could have avoided simply by confirming the specifics of *the actual documents* cited in the CPI Reports—demonstrate that Plaintiff failed to conduct even a cursory investigation of the allegations they copied verbatim from third parties. Plaintiff also offers no representation that it contacted the CPI Reports' authors before filing the Complaint. Instead, the Opposition (at 6–7) reveals that Plaintiff likely only reviewed *for the first time* the documents cited in the Complaint when Vale attached them as exhibits to its motion to dismiss. Because this failure to investigate violates Plaintiff's duty to conduct an inquiry into the truth and legal reasonableness of its allegations, *see* Fed. R. Civ. P. 11(b), the Court should strike or disregard allegations that rely on the CPI Reports. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *17 n.17 (S.D.N.Y. Sept. 28, 2012) ("[T]he Court . . . need not consider parroted allegations for which counsel has not conducted independent investigation."), *aff'd sub nom., City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173 (2d Cir. 2014).

The Opposition fails to rebut Vale's argument that Plaintiff variously has misunderstood or mischaracterized the purported information that underpins its allegations. In fact, Plaintiff makes several concessions further confirming its claims have no merit. First, Plaintiff concedes that "there was no particular Factor of Safety required for Vale's stability certifications under Brazilian law." Opp. at 6. As such, Plaintiff cannot contend that the safety factor for Dam 1—a Brazilian dam operated by a Brazilian company—was not in compliance with Brazilian law.[2]

---

[2]   In an effort to avoid the consequences of its concession, Plaintiff cites to an undefined "international standard" allegedly adopted by Vale. Opp. at 6. But Plaintiff "omits key information from the context" of the reference to an international standard. *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 218 (S.D.N.Y. 2012). In the cited disclosure, Vale "emphasiz[ed] that the Brazilian dam safety legislation is . . . *based on* good international practices." Ex. 1 ¶ 188 (emphasis added). In short, there was nothing misleading about this disclosure referencing Brazilian dam safety legislation and unspecified "international practices" in the context in which it was given. *Foley*, 861 F. Supp. 2d at 220; *see* MTD at 14–15 (statements concerning risk management "best practices" are inactionable).

2

Second, Plaintiff doubles down on its misreading of Geoconsultoria's July 2016 reports by baldly claiming Geoconsultoria's analysis "impl[ied] a roughly 50% probability of collapse." Opp. at 4, 6. Instead of warning of an imminent risk of collapse, however, Geoconsultoria explicitly characterized as "remote" the risk of a dam rupture, Ex. 11 at 10, and further commended Vale for implementing practices to improve stability, *id*. ("a double advantage for stability").[3] Geoconsultoria further concluded that, during 2016—and indeed, over the previous ten years—Dam 1's "behavior . . . has been the *best it could possibly be*." *Id*. at 10 (emphasis added). The Court should reject Plaintiff's frivolous attempt to spin this conclusion as somehow insinuating "it was a miracle the dam had not already collapsed." Opp. at 6 n.10.

Third, Plaintiff, apparently only now having reviewed the November 2017 slideshow cited throughout its Complaint, Ex. 1 ¶¶ 75–77, concedes that Vale's "business risk matrix" (allegedly presented to Vale's executive officers) expressly *excluded* Dam 1 from its coverage. *See* Opp. at 7; MTD at 10 (citing Ex. 13 at 23).[4] Nor does Plaintiff now dispute that the November 2017 slideshow repeatedly concluded that Dam 1's failure probability was at or below the $1 \times 10^{-4}$ "tolerable risk limit." MTD at 9 (citing Ex. 13 at 10–14, 19–20, 25–27).

In sum, Plaintiff's *post hoc* concessions and blatant misreading of the documents allegedly underpinning its entire case make clear the folly inherent in parroting unverified allegations. Indeed, upon (belatedly) recognizing the allegations contained in the CPI Reports

---

[3] Plaintiff also argues that the October 2018 PIESEM report "*suggested* an unacceptably high probability of failure." Opp. at 7 (emphasis added). But the 67-page report says nothing of the sort. To the contrary, the report found that "Dam I is well maintained" and recommended "no other action be taken" beyond resuming the installation of additional drains until a new stability assessment was carried out. MTD at 10 (quoting Ex. 14 at 23–24).

[4] Plaintiff attempts to pivot from this fatal concession by now arguing that Defendants should have disclosed information on *other* dams included in the business risk matrix. The Court need not entertain this frivolous argument, as Plaintiff does not—and cannot—allege with any particularity that Defendants had a duty to disclose every item on an internal business risk matrix. *See* MTD at 18–22.

"cannot establish the particularized facts necessary to support this securities fraud claim," *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at \*5 (S.D.N.Y. Mar. 30, 2012), Plaintiff now impermissibly argues that a recent criminal complaint filed in Brazil provides different evidence purportedly supporting Plaintiff's allegations, which Plaintiff claims "could be used in an amended complaint." Opp. at 3–4 n.5; *see also id*. at 1–2 & n.4, 3–4 n.5, 9, 11, 20 (multiple impermissible references to post-Complaint developments in Brazil); *Rose v. Garritt*, 2018 WL 443752, at \*5 n.8 (S.D.N.Y. Jan. 16, 2018) ("Plaintiff's opposition makes additional factual allegations not in the Complaint to attempt to fill some . . . gaps, but the Court will not consider them at the Motion To Dismiss stage."). Because Plaintiff failed to seek leave to amend (even after it had a preview of Vale's arguments in a pre-motion letter (Dkt. 49)), the Court should dismiss the Complaint with prejudice and not afford Plaintiff another opportunity to craft non-actionable theories of liability based on unadjudicated and unverified allegations.

## II. PLAINTIFF'S OPPOSITION FURTHER EXPOSES THE ABSENCE OF ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS IN THE COMPLAINT

Plaintiff's Opposition fails to address the binding Second Circuit precedent that compels dismissal of 41 out of the 48 alleged misstatements. MTD at 13. In *Singh v. Cigna Corp.*, the Second Circuit held that "banal and vague corporate statements" do not invite reasonable reliance, and are therefore inactionable puffery. 918 F.3d 57, 60 (2d Cir. 2019). Here, as in *Singh*, nearly every alleged misstatement is too vague to invite such reliance. Plaintiff also fails to address binding authority that confirms Vale had no duty to disclose additional information about Dam 1. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52–53 (2d Cir. 1995).

### A. Plaintiff Offers No Justification for Its Claims Based on Puffery.

The vague and aspirational statements at issue here are inactionable puffery, as they do not serve as "a guarantee of some concrete fact or outcome." *Gross v. GFI Grp., Inc.*, 784 F.

4

App'x 27, 29 (2d Cir. 2019) (citation omitted).  Plaintiff argues Vale's general statements regarding dams and risk management are actionable because they were "very detailed and specific."  Opp. at 25.  Take, for example, the challenged statement that Vale "conducted extraordinary audits on the stability conditions of our upstream dams, and no anomalies were identified."  Ex. 1 ¶¶ 135, 157.  Plaintiff, however, fails to explain how a reasonable investor could rely on this statement, when the term "*anomalies*" is neither defined nor reflects "an assertion of falsifiable facts or a guarantee of certain outcomes."  *See Gross*, 784 F. App'x at 30.[5]

Plaintiff also argues that Vale's risk management statements are actionable, mistakenly citing to "simple and generic" statements concerning Vale's policies and procedures.  *Singh*, 918 F.3d at 63–64.  For example, Plaintiff cites to the statement that Vale's dams use "advanced engineering techniques, following strict controls, monitoring their performances in a systemic way, and evaluating safety conditions through annual external audits."  Opp. at 25–26 (citing Ex. 1 ¶ 150).  Plaintiff omits the beginning of the sentence, however, which states that "Vale *aims* to operate its dams using" the above-referenced strategies.[6]  Ex. 1 ¶ 150 (emphasis added).  This omitted language is an indisputable example of "explicitly aspirational" puffery.  *See Pontiac*, 752 F.3d at 183.  Additionally, even the misleadingly truncated excerpt of this statement stands in stark contrast to the statement found actionable in the case on which Plaintiff principally relies, *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014), where "the company described its compliance mechanisms in confident detail, including references to 24-hour monitoring teams, [and] specific compliance equipment."  *Singh*, 918 F.3d at 63.  Vale's

---

[5]  And Plaintiff's attempt to define the term "anomalies" with the equally vague term "irregularities" is not only nonsensical, but further confirms the entire statement is too vague to be actionable.

[6]  Plaintiff also selectively quotes language from Ex. 1 ¶ 133 (incorrectly cited as ¶ 132) by omitting the next sentence, which provides crucial context, that Vale "seeks to have a clear view of its major risks . . . and the effectiveness of the controls in place."  Ex. 1 ¶ 133.  This omitted portion shows that Vale was not guaranteeing that there would be no risk in its operations.

statement does not "describe specific regions," mention individual dams, or "make any assurances of efficacy."[7] *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 512–13 (S.D.N.Y. 2017). Unsurprisingly, the remaining alleged risk management misstatements are even more vague than those selectively quoted in the Opposition. *See* Opp. at 8 n.13–14.

Plaintiff does not seriously contest that Vale's statements concerning its commitment to safety are quintessential puffery. Instead, Plaintiff resorts to the argument that if a defendant repeats vague and banal statements often enough, they somehow become actionable. Opp. at 28–29. The cases Plaintiff cites for this fanciful proposition are inapposite. In *In re Petrobras Sec. Litig.*, the disclosures at issue were made to reassure the public about the company's integrity, at a time when management was aware of corruption within the company. 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015). Here, Plaintiff does not allege that Vale made these assurances to conceal known risks that had already materialized, nor do they contest that Vale "disclosed the current [risks of mining], which included [dam-related incidents], and the risk that [Vale] would not completely remedy these [risks]." *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 254 (S.D.N.Y. 2019).[8] That these statements may concern an important topic does not automatically render them actionable. "Plaintiff[] conflate[s] the importance of [Vale's commitment to safety] with the materiality of [Vale's] statements regarding its [commitment]." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009).

---

[7] Vale's statements broadly describing its dams as "impressive" and "impeccable" are quintessential puffery. *See, e.g.*, *In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at *22 (S.D.N.Y. Oct. 10, 2018) (finding statements that a company's sales pipeline was "just amazing" to be inactionable).

[8] Moreover, the mere fact that Vale made statements concerning its commitment to safety does not vitiate the requirement that the statements at issue "must be sufficiently specific for an investor to reasonably rely on [them] as [] guarantee[s] of some concrete fact or outcome." *Pontiac*, 752 F.3d at 185. None of the statements at issue contain such guarantees.

Even if almost all of Vale's challenged statements were not immaterial puffery, Plaintiff's claims still would fail, as the Complaint contains no facts showing that *any* of the statements were false or misleading when made. *See In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 371 (S.D.N.Y. 2018) ("Fraud depends on the state of events when a statement is made, not on what happens later."); MTD at 16–22.

**B.      Plaintiff Fails to Address the Point that Vale Had No Duty to Disclose All Information Relating to Dam 1.**

Plaintiff's entire Complaint rests on the notion that, because Vale "elected to speak" on topics concerning Company-wide risk management and dam safety policies, it somehow had a duty to disclose all information concerning the safety, stability, and other risk-related facts concerning Dam 1. *See, e.g.*, Ex. 1 ¶ 126. This premise contravenes binding authority, which makes clear that it would have been "unduly burdensome and impractical [for Vale] to publicly disseminate" every issue identified in the routine maintenance of Dam 1 (a single facility among nearly 400 dams Vale operated worldwide). *See Acito*, 47 F.3d at 52–53; MTD at 19–20.

Plaintiff's Opposition simply fails to address this argument or make any effort to distinguish any of the authorities cited by Vale. Instead, Plaintiff relies on *Meyer* and *Petrobras*, two inapposite cases that provide no basis for finding a duty to disclose here. In both of those cases, the defendants expressed optimism that they could avoid certain risks—such as regulatory violations and corruption—that had *already materialized*. *Meyer*, 761 F.3d at 250; *Petrobras*, 116 F. Supp. 3d at 380–81. In contrast, Dam 1 remained intact and stable at the time of the statements at issue, and, as Plaintiff admits, two independent auditors, Tractebel and TÜV SÜD, repeatedly classified Dam 1 as "low" risk. *See Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 2020 WL 248729, at *11 (S.D.N.Y. Jan. 15, 2020) (finding no duty to disclose the risk a CEO might be ousted, when an internal "investigation concluded, apparently in error, that there

7

was no cause for concern").  "[T]o allow [] Plaintiff's claims to proceed because certain undisclosed safety issues *may* have contributed to the [dam collapse], would be to permit a claim based on 'fraud by hindsight.'"  *Foley*, 861 F. Supp. 2d at 212 (emphasis added).

**III.   THE OPPOSITION ASKS THE COURT TO DISREGARD THE PSLRA AND BESPEAKS CAUTION DOCTRINE BY ALLOWING PLAINTIFF'S CLAIMS BASED ON FORWARD-LOOKING STATEMENTS TO PROCEED**

Plaintiff's Opposition fails to challenge the vast majority of the statements Defendants identified as forward-looking.  *Compare* MTD at 22–23, *and* App'x A, *with* Opp. at 32.  Instead, Plaintiff cites only five statements to argue that "many" of the challenged misstatements are "mixed statements of present or historical fact" not subject to dismissal under the PSLRA safe harbor and bespeaks caution doctrine.  *See* Opp. at 31–32.  At a minimum, this misguided argument fails to recognize that the Court can—and should—"sever[]" the "forward-looking elements" from the "non-forward-looking elements" and dismiss any alleged misstatements falling into the former category.  *Supercom*, 2018 WL 4926442, at *18 (citation omitted).

Severing statements would be particularly appropriate here given that Plaintiff's imprecise block pleading resulted in many distinct statements being grouped together.  *See* MTD at 39–40.  The Court should not countenance this tactical attempt to circumvent the PSLRA safe harbor and bespeaks caution doctrine.  For example, Plaintiff claims that ¶ 150 is not subject to the PSLRA safe harbor or bespeaks caution doctrine because it references "existing or historical facts" in "describing in detail Vale's dam safety management practices."  Opp. at 32.  This assertion selectively—and no doubt intentionally—omits the textbook aspirational and forward-looking language from the *same* paragraph in the Complaint describing what "Vale *aims* . . ." to achieve.  *See, e.g.*, *Lefkowitz v. Synacor, Inc.*, 2019 WL 4053956, at *9 (S.D.N.Y. Aug. 28,

2019) (finding statements about goals and targets forward-looking).[9]

Plaintiff also does not dispute that cautionary language "accompanied" all of the alleged misstatements. *See* MTD at 25–27. Instead, Plaintiff merely argues that the cautionary statements were not "meaningful" enough or "boilerplate." Opp. at 31, 33. Vale's cautionary language, however, "goes beyond 'mere boilerplate,'" *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *6 (E.D.N.Y. Aug. 6, 2019) and "acknowledge[s] the very risks that the . . . Complaint blames for investors' losses," *Supercom*, 2018 WL 4926442, at *26. *See also* MTD at 23–24; App'x C. Particularly in the wake of the 2015 Fundão Dam collapse, no reasonable investor could have dismissed as immaterial Vale's subsequent warnings concerning "accidents or incidents involving mines and associated infrastructure, such as dams." *See* App'x C. These disclosures also extensively discuss the Fundão Dam collapse's impact on Vale, which represents the realization of the same risks at issue here. *See* MTD at 23–25.[10]

## IV. THE OPPOSITION CONFIRMS PLAINTIFF'S FAILURE TO ALLEGE FACTS THAT GIVE RISE TO A STRONG INFERENCE OF SCIENTER

### A. Plaintiff Has Not Adequately Alleged that Defendants Had Access to Adverse Information.

Plaintiff's Opposition ignores black letter law that "[t]o establish an inference of scienter, lead plaintiff must do more than allege that the individual defendants . . . had or should have had knowledge of certain facts . . . simply by virtue of their high-level positions, their general

---

[9]  To the extent the Court finds that any mixed statements are not severable, the Court should find "the present-tense portion[s] of the statement[s] are too vague to be actionable," *Supercom*, 2018 WL 4926442, at *21, or "cannot meaningfully be distinguished from the future projection of which they are a part," *Gissin v. Endres*, 739 F. Supp. 2d 488, 505 (S.D.N.Y. 2010).

[10]  Plaintiff also suggests the safe harbor and bespeaks caution doctrine should not apply because Plaintiff alleges Defendants knew or recklessly disregarded that their statements were false or misleading at the time they were made. Opp. 34 (citing *In re Vivendi*, 838 F.3d 223, 248–49 (2d Cir. 2016)). *Vivendi* specifically instructs, however, that a "defendant is not liable if . . . the plaintiff fails to prove that [the forward-looking statement] was made with *actual knowledge* that it was false or misleading." 838 F.3d at 245 (emphasis added). Here, the allegations do not support an inference of recklessness, much less *actual knowledge*. *See* MTD at 31 n.47.

responsibility for monitoring [the company's] activities, and their access to inside information."

*Johnson v. Siemens AG*, 2011 WL 1304267, at *15 (E.D.N.Y. Mar. 31, 2011); *see also* MTD at

28–31.[11]  Indeed, according to Plaintiff, certain documents purportedly should have been

"available" or "accessible" to Defendants by virtue of their titles or roles at Vale.  Opp. at 15–16.

But "conclusory statements that defendants 'were aware' of certain information or 'would have'

or 'should have' had such knowledge cannot support a strong inference of scienter."  *CBS*, 2020

WL 248729, at *19 (internal quotation marks omitted).

In any event, even if Plaintiff could allege that Defendants possessed the documents cited

in the Complaint, it has failed to demonstrate that those documents contained information

sufficient to support scienter.  Plaintiff relies on Vale's "business risk matrix" to advance its

scienter argument, alleging it was made available to Vale's executive officers and contained

adverse information concerning Dam 1.  Opp. at 16.  But that document expressly excluded Dam

1—which Plaintiff concedes earlier in its brief, *id*. at 7—and thus could not have put the

Defendants on notice of the Dam's purported risk of failure.  Ex. 13 at 23.  Plaintiff also claims

Mr. Poppinga's "own emails show that he:  (1) was aware of Dam 1's unstable condition"

because he "ordered the dam be closed in July 2016, and; (2) supervised efforts to obtain

stability certifications for all dams."  Opp. at 17.  Not so.  For one thing, the referenced

certifications each *reaffirmed* the stability of Dam 1.  *See* Exs. 7, 8 (Tractebel certifying Dam 1).

For another, Mr. Poppinga's order closing Dam 1 is only relevant to his awareness of risks

---

[11]  Not one of Plaintiff's cases stands for the proposition that a defendant's position alone supports a strong inference of scienter.  In *In re Refco, Inc. Sec. Litig.*, the court reaffirmed that "[s]cienter cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information."  503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007).  Indeed, in the cases cited by Plaintiff, the courts only inferred scienter where there were specific, non-conclusory allegations showing a strong likelihood that a defendant saw a particular document.

10

associated with Dam 1's remaining *open*.  Indeed, the decision to close Dam 1 was lauded by the very Geoconsultaria report cited in the Complaint.  Ex. 11 at 10–11.  In sum, Mr. Poppinga's remedial decision to close the Dam suggests "a prudent course of action that weakens rather than strengthens an inference of scienter."  *CBS*, 2020 WL 248729, at \*19 (citation omitted).

Plaintiff also "asks [the Court] to draw" inferences "too speculative even on a motion to dismiss."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 104 (2d Cir. 2007).  First, Plaintiff again points to Mr. Poppinga's July 2016 email to argue he was aware of the Geoconsultaria report that contained adverse information about Dam 1.  Opp. at 17.  But as Plaintiff concedes, *id*., that email was sent *over a week* before the Geoconsultaria report was issued, and therefore could not possibly have been relied on by Mr. Poppinga in connection with his July 2016 email.  *See* MTD at 30.  Next, Plaintiff argues that the Court should infer scienter from two generic statements made by Messrs. Schvartsman and Poppinga concerning Vale's dams.  Opp. at 17.  But neither statement even references Dam 1.  Ex. 1 ¶¶ 65, 174.  And Plaintiff does not allege that either Defendant was specifically aware of Dam 1's condition at the time.  Finally, Plaintiff suggests "leaves of absence, resignations, and/or terminations" give rise to an inference of scienter.  But "[r]esignations" and "terminations alone are insufficient to satisfy" scienter.  *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. 2018).[12]

**B.    Plaintiff's Theory of a "Scheme" Among Low-Level Employees to Obtain Safety Certifications Does Not Remedy the Complaint's Failure to Adequately Plead Scienter.**

Plaintiff's Opposition tries to cure the Complaint's scienter failings by arguing that four

---

[12]  Plaintiff also alleges that an inference of scienter arises from Vale's allegedly false Sarbanes-Oxley certifications.  Opp. at 18.  The mere two paragraphs in the Complaint devoted to the issue, containing only conclusory allegations, cannot give rise to a strong inference of scienter.  Ex. 1 ¶¶ 145, 187; *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 304–05 (S.D.N.Y. 2008) (rejecting an inference of scienter because "a Sarbanes-Oxley certification is probative of scienter only if the complaint alleges specific contrary information"); *Das*, 332 F. Supp. 3d at 816.

low-level Vale employees purportedly pressured TÜV SÜD to provide stability certifications for Dam 1. Opp. at 19–20. This groundless theory rests on a single internal TÜV SÜD email, a plain reading of which in no way suggests Vale pressured TÜV SÜD into filing false DCEs, or that Dam 1 was unstable or at risk of imminent collapse. Ex. 1 ¶ 92. In any event, Plaintiff fails to allege that a single high-level Vale employee was involved in or had any awareness of this purported scheme. *See Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*, 2014 WL 7179989, at *4 (S.D.N.Y. Dec. 10, 2014) ("The allegations . . . do not support Plaintiffs' claim that Defendants actually knew that originators for the subject loans had abandoned their underwriting guidelines."). Three of the employees are not even identified on Plaintiff's purported organization chart, *id.* ¶ 67, and the fourth—Ms. Lopes—occupied the bottom-most rung of the chart, and did not report to the Individual Defendants or to any other high-level Vale executive. These employees were "not senior management, did not report to senior management, and [were] not involved in [Vale]'s public disclosure procedures." *Thomas v. Shiloh Indus., Inc.*, 2018 WL 4500867, at *4 (S.D.N.Y. Sept. 19, 2018) ("[T]he fact that an employee is not part of senior management weighs strongly against imputation.").[13]

The Complaint also fails to allege that Vale had a motive to influence TÜV SÜD, one of several different auditors to certify Dam 1's stability. Indeed, Tractebel, whom Plaintiff does not allege Vale pressured, repeatedly certified Dam 1. And PIESEM, Vale's independent panel of

---

[13]  Nor can Plaintiff rely on employees Lucio Cavalli and Alexandre Campanha—who were not senior management and were not involved in public disclosure procedures—to establish scienter here. Opp. at 19 n.21. As with Mr. Poppinga, none of the documents allegedly possessed by Messrs. Cavalli and Campanha show Dam 1 was at imminent risk of collapse. For example, Plaintiff cites to a June 2018 email allegedly received by the two that says all of Vale's dams received stability certifications and recommends remedial measures to "strengthen the structure." Ex. 1 ¶¶ 82–83. Not only does this email fail to indicate Dam 1 was at imminent risk of collapse, but it confirms the *accuracy* of Vale's April 2018 disclosure that all of Vale's dams in Brazil "were issued Statements of Stability Condition," and that Vale "will continue to improve its management of structures." *Id*. ¶¶ 191, 193.

safety experts, found the Dam "well maintained" just three months before its collapse, and at no point warned Defendants of an imminent risk.  Ex. 14 at 23–24.

**V.      THE OPPOSITION FURTHER EXPOSES PLAINTIFF'S FAILURE TO PLEAD LOSS CAUSATION**

Contrary to Plaintiff's plea that it must only meet the bare minimum required by the Rule 8 pleading standard to allege loss causation, the Complaint fails to plead loss causation with the requisite "specificity in order to satisfy the heightened pleading requirements of the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure." *Orlan v. Spongetech Delivery Sys., Inc.*, 2017 WL 1131900, at *3 (E.D.N.Y. Mar. 24, 2017).[14]  Plaintiff's Opposition compounds the Complaint's pleading infirmities by conflating the concepts of corrective disclosure and materialization of the risk, which are two "*distinct method[s]* of establishing loss causation." *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 255 (E.D.N.Y. 2019) (emphasis added). A corrective disclosure requires more than the existence of a disclosure merely "related to" or within the "zone of risk" of the alleged misrepresentation, *see* Opp. at 35; rather, the disclosure must "reveal [a] 'relevant truth' about the purported fraud." *Janbay*, 2012 WL 1080306, at *15.

Here, Plaintiff does not—and cannot—refute the fact that none of the alleged corrective disclosures actually "reveal" anything about the purported fraud.  *Id*.  For example, Plaintiff argues that the "impacts of Dam 1's rupture" revealed on January 28, 2019 are a "partial corrective disclosure[]."  Opp. at 36.  But nowhere has Plaintiff alleged that Vale concealed the scope of potential *impacts* of a dam rupture.  To the contrary, Plaintiff concedes that Vale

---

[14]  There appears to be mixed authority within the Second Circuit as to whether a plaintiff must meet the heightened Rule 9(b) standard when pleading loss causation. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 182–83 (2d Cir. 2015) (noting that it is an "open" question). Other federal appellate courts, however, have concluded that Rule 9(b) applies. *See, e.g., Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014); *cf. Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 n.5 (4th Cir. 2011).

disclosed that "damages of a rupture would be high."  Opp. at 37 n.33; *see also In re Liberty Tax, Inc. Sec. Litig.*, 2020 WL 265016, at *10 (E.D.N.Y. Jan. 17, 2020) (executive's resignation did not disclose fraud where defendants had not "concealed the risk of [her] resignation").  And as for the alleged February 4, 2019 disclosure, even if there were alleged fraudulent misstatements concerning "the condition of Vale's dams" and "Vale's dam safety management and risk management policies and practices," Opp. at 21, they could not be corrected by a vague statement that does not even mention Vale's dams or policies.[15]

Plaintiff further argues that articles released on February 6 can be corrective even if they only contain mere speculation or opinion.  Opp. at 38–39.  The case relied upon by Plaintiff for this proposition, however, holds that "[i]t is the exposure of the falsity of the fraudulent representation that is the critical component" of a corrective disclosure.  *In re Winstar Commc'ns*, 2006 WL 473885, at *14 (S.D.N.Y. Feb. 27, 2006).  Here, Plaintiff does not allege that the myriad maintenance issues discussed in the articles (including a leak in 2018 that was immediately remedied (Ex. 28 at 2) and "the trampling of large animals" (Ex. 29 at 3)) had anything to do with Dam 1's collapse.  Because the connection between the articles and the cause of the collapse remains speculative and unsubstantiated, those articles did not "in fact expose[] the falsity" of any alleged misstatements.  *Winstar*, 2006 WL 473885, at *14.

Likewise, Plaintiff does not contest that the dam collapse itself was not corrective because the collapse does not bear on the accuracy of Vale's statements about policies and audits in prior years.[16]  *See Barrick Gold*, 341 F. Supp. 3d at 372 (finding a spill "irrelevant" to proving

---

[15]  The Complaint alleges that the February 4 disclosure stated only that Vale was "temporarily halting some operations at its Brucutu mine . . . in compliance with a Brazilian court order issued to help improve safety."  Ex. 1. ¶ 210.

[16]  Plaintiff's citations to *Massey* and *Transocean* are inapposite, Opp. at 36, as both only address the materialization of a concealed risk.

14

falsity of statements on past works to prevent spills at a mine).  In an obvious attempt to escape the import of *Barrick Gold,* Plaintiff focuses only on the court's alternative basis for its opinion (that the disclosure of the spill only affected the market the subsequent day).  *Id.* at 380.  But Plaintiff ignores that the court held that "the occurrence of the spill by itself cannot plausibly be considered a disclosure," given the "hindsight-inflected" nature of such a theory.  *Id.*  Here too.[17]

Finally, Plaintiff's loss causation theory based on materialization of a concealed risk fails for the simple reason that Vale expressly and repeatedly *disclosed* the risk of a dam collapse.  There is no merit to Plaintiff's contention that Vale's risk disclosures were too "generic" since Vale repeatedly warned of the precise risk that manifested, and there was no further duty to make more specific disclosures.  *See* MTD at 20–21.  Courts routinely reject similar claims that defendants "concealed" an "increased risk," where they warned of the risk at issue in their securities filings.  *See, e.g.*, *In re Tempur Sealy Int'l, Inc. Sec. Litig.*, 2019 WL 1368787, at *2, *15 (S.D.N.Y. Mar. 26, 2019); *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 685–86 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013).

## CONCLUSION

For each—*or any one*—of the foregoing reasons, Defendant Vale respectfully requests that the Court dismiss with prejudice the Complaint for failure to state any actionable claim under the federal securities laws.

---

[17]  Plaintiff's attempt to distinguish *Nardy* also misses the mark.  Indeed, Plaintiff unintentionally advances Vale's position in arguing that "the disclosure of a [single incident] [i]s not . . . indicative of the corporate-wide problem that was allegedly concealed."  Opp. at 37 n.32 (citing *Nardy v. Chipotle Mexican Grill, Inc.*, 2019 WL 3297467, at *13 (D. Colo. Mar. 29, 2019)).  Here, Dam 1 was only one of Vale's nearly 400 dam structures worldwide, and dams were only a small part of Vale's global operations.  *See* Ex. 2 at 67; *see also Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (5th Cir. 2019) ("broadly applicable" risk management statements are "not rendered false or misleading by the failures on [two pipelines], which constitute a small percentage . . . of the overall pipelines").

15

Dated:  New York, New York
February 21, 2020

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Mark A. Kirsch
Mark A. Kirsch
Randy M. Mastro
Christopher M. Joralemon
Mary Beth Maloney
David M. Kusnetz

200 Park Avenue
New York, NY  10166-0193
Telephone:      212.351.4000
Facsimile:       212.351.4035

*Attorneys for Vale S.A.*

16