

Kaplan Fox & Kilsheimer LLP
850 Third Avenue
New York, NY  10022
phone  212.687.1980
fax  212.687.7714
email  mail@kaplanfox.com
www.kaplanfox.com

March 6, 2020

The Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    *In re: Vale S.A. Securities Litigation*, No. 19 Civ. 526 (RJD) (SJB)

Dear Judge Dearie:

On behalf of Lead Plaintiff in the above-referenced action and pursuant to Your Honor's Order dated February 21, 2020, we submit this letter brief in support of Lead Plaintiff's motion for an order modifying the stay of discovery under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B). Lead Plaintiff seeks partial relief from the discovery stay in order to obtain the documents and transcripts of testimony Defendant Vale has produced, or will produce, to several government entities investigating or prosecuting Vale in connection with the collapse of Dam 1 of the Córrego do Feijão mine.[1]

Lead Plaintiff will be unduly prejudiced if the stay is not partially lifted, as this matter will fall further behind the other investigations and litigation concerning the Dam 1 collapse, in which discovery is proceeding. Because Vale has produced, or will produce, the requested documents and testimony to the government entities, producing those same documents to Lead Plaintiff will impose minimal, if any, burden. Furthermore, Lead Plaintiff's request is sufficiently "particularized" within the meaning of the PSLRA, and will not frustrate the policy underlying the statute. For all of these reasons, as further described below, we respectfully request that the Court grant Lead Plaintiff's motion to partially lift the discovery stay so we may obtain the documents Vale has produced to government entities in connection with investigations and/or litigation regarding the Dam 1 failure.

---

[1] Those entities include, but are not limited to, the Brazilian Federal Prosecutor's Office, the Federal Police, the Minas Gerais State Prosecutor's Office, the Federal Senate's Parliamentary Commission of Inquiry (Federal CPI), the State Assembly's Parliamentary Commission of Inquiry (State CPI), the Controllership General of the State of Minas Gerais, the Parliamentary Commission of Inquiry of the Brumadinho City Council, and the National Mining Agency. Additionally, to the extent documents have been, or will be, produced to the U.S. Securities and Exchange Commission ("SEC"), Lead Plaintiff is seeking those as well.





## 1. Background

This case concerns the collapse of Dam 1 on January 25, 2019, which had devastating effects on the surrounding community and severely impacted Vale's business. Following Dam 1's catastrophic failure, news reports revealed that Vale was previously aware of numerous indications of Dam 1's instability, and that Defendants had been specifically forewarned about the dam's fragility in the year prior to its collapse. This information starkly contradicted Defendants' repeated prior statements that its dams were stable and maintained in accordance with the strictest international standards, and that the Company put the health and safety of its workers and communities above all else. In response to Dam 1's collapse and subsequent disclosures, the price of Vale's Securities fell precipitously, and a raft of government investigations were immediately commenced.

On October 25, 2019, Lead Plaintiff filed its Consolidated Class Action Complaint (the "Complaint") (ECF No. 47), which asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The gravamen of the Complaint is that Defendants violated the federal securities laws by misrepresenting and failing to disclose the following highly material facts: (1) that at least one of Vale's high-hazard tailings dams, Dam 1, had a high probability of failure; (2) that Vale's dam safety management and risk management policies and practices were not being implemented as described with respect to Dam 1, and; (3) that Defendants were not conducting business in accordance with their purported commitment to safety and their repeated claims that "safety is our top priority."

Like the present litigation, Vale's Dam 1 safety management and risk management policies and its public disclosures about dam safety are at issue in the proceedings and investigations commenced by Brazilian state and federal prosecutors, the municipal, state, and federal CPIs, and the National Mining Agency, among others, all of which have sought and obtained extensive discovery, including documents and sworn testimony, from Vale and other Defendants named in this action. Indeed, state prosecutors recently filed a massive, 477-page complaint charging Defendant Fabio Schvartsman and ten other Vale executives with homicide and environmental crimes, and Vale with environmental crimes, which includes references to significant, new evidence that has not been publicly released. Similarly, the federal prosecutors' investigation is ongoing, and federal criminal charges may follow based on discovery materials the federal prosecutors have obtained from Defendants. There are also credible reports of an investigation by the U.S. SEC, in which documents may have been produced by Vale.

Finally, in addition to the governmental investigations and litigation, there is a Brazilian shareholder action underway, which is not subject to the PSLRA discovery stay.

## 2. Argument

The PSLRA provides that, in a private securities action, discovery "shall be stayed during the pendency of any motion to dismiss, ***unless the court finds*** upon the motion of any party that ***particularized discovery is necessary*** to preserve evidence or ***to prevent undue prejudice*** to that party." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). In determining whether to lift the stay,



"[c]ourts weigh the burden to defendants against the potential prejudice to plaintiffs, focusing on the production costs to defendants and plaintiffs' need for early review of the documents." *In re Bank of Am. Corp. Sec., Derivative, & Employment Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at \*2 (S.D.N.Y. Nov. 16, 2009) (citing cases).

### a. *Lead Plaintiff Will Be Unduly Prejudiced Without a Partial Lifting of the Discovery Stay*

The discovery stay should be partially lifted to prevent the undue prejudice that will result if this case falls further behind the parallel proceedings and investigations concerning the same matters.[2] "District courts have construed 'undue prejudice' to mean 'improper or unfair treatment amounting to something less than irreparable harm.'" *In re Bank of Am. Corp.*, 2009 WL 4796169, at \*2. Undue prejudice has frequently been found where, as here, there are parallel investigations or litigation in which discovery is proceeding. *See, e.g., id.* at \*3 (lifting stay because "[d]iscovery is moving apace in parallel litigation" and "[w]ithout access to documents produced in these other proceedings, plaintiffs . . . will be unduly prejudiced and will be less able to make informed decisions about litigation strategy."); *Westchester Putnam Counties Heavy & Hwy Laborers Local 60 Benefit Funds v. Sadia S.A.*, No. 08-cv-9528, 2009 WL 1285845, at \*1 (S.D.N.Y. May 8, 2009) (lifting stay because, "[g]iven the existence of parallel litigation, without access to the report [produced in parallel Brazilian litigation], plaintiffs are disadvantaged vis-à-vis Brazilian litigants"); *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004) (lifting stay where "the SEC and NYSE investigated and are continuing to investigate the precise schemes alleged by Lead Plaintiffs in the Complaint" and Lead Plaintiffs will "be prejudiced by their inability to make informed decisions about their litigation strategy in this rapidly shifting landscape"); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (lifting stay and holding that "[w]ithout access to documents already made available to the [government agencies], [Lead Plaintiff] would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape"); *see also Singer v. Nicor, Inc.*, No. 02-cv-5168, 2003 WL 22013905, at \*2 (N.D. Ill. Apr. 23, 2003) (lifting stay because "[p]laintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have, during the pendency of the motion to dismiss").

As in these cases, without access to the documents that have been made available to governmental entities investigating or prosecuting Defendants for the Dam 1 collapse, Lead Plaintiff will be unduly prejudiced by its inability to make informed decisions about litigation strategy in a rapidly shifting landscape. As the government investigations proceed, new facts about the dam failure have been, and will undoubtedly continue to be, revealed, and new claims may well be brought. Likewise, the prosecution of criminal charges that have been, or may yet be,

---

[2] Indeed, even if Vale's motion to dismiss (ECF No. 63) is decided at the earliest possible juncture—at the oral argument on April 17, 2020—it will be months before Lead Plaintiff obtains the requested documents, as the parties must hold a Rule 26(f) conference before Lead Plaintiff may propound document requests, then Defendant will have 30 days to provide responses and objections, and a meet-and-confer will inevitably follow.



propounded will have ramifications for the litigation strategy here. Indeed, while Lead Plaintiff began the process of serving the Complaint on the Individual Defendants in Brazil under the Hague Convention protocols, Defendant Schvartsman, was criminally charged by state prosecutors. Likewise, Lead Plaintiff's ability to recover from certain Defendants could be adversely affected by a judgment or settlement in any proceedings that have been, or may be, brought against them. Lead Plaintiff will fall significantly behind these government entities, who are in a far more favorable position than the class precisely because they are not subject to the discovery stay. Accordingly, if Lead Plaintiff does not have access to the documents provided to the government entities, Lead Plaintiff will be in the untenable position of continuously having to assess its claims without the benefit of discovery.

Additionally, Lead Plaintiff's need for early access to the requested documents and testimony is amplified by the fact that most of the materials will likely be in Portuguese, which will require considerable time to translate, and cause this action to fall further behind the other investigations and criminal litigation.

Early production of the requested materials is further supported by the fact that production would impose a minimal, if any, burden on Defendant. Given that Lead Plaintiff is only seeking the same documents and testimony that have been or will be collected and produced to the government entities, there is virtually no burden to Defendant in producing this material to Lead Plaintiff. *See Westchester Putnam Counties Heavy & Hwy Laborers*, 2009 WL 1285845, at *1 ("[B]urden is slight when a defendant has already found, reviewed and organized the documents.") (internal quotation omitted); *In re Bank of Am. Corp.*, 2009 WL 4796169, at *3 (lifting stay where defendants "have already collected, reviewed, and organized the documents for production in other proceedings, and the burden of making another copy for plaintiffs here will be slight").

### b. The Limited Discovery Sought is Sufficiently Particularized

In accordance with the requirements of the PSLRA, Lead Plaintiff is requesting *particularized* discovery of the documents and transcripts of testimony that Defendant Vale has provided, or will provide, to government entities in connection with their investigations or litigation concerning the Dam 1 failure.

Courts have commonly found that such requests for materials produced to government entities or other litigants are sufficiently "particularized" to satisfy the PSLRA. *See, e.g., N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) (discovery is particularized because "[i]t is limited to materials that have been produced already and which will be produced in the MDL Litigation"); *In re Royal Ahold, N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) (request for documents that had been produced to governmental, regulatory, or self-regulatory agencies is particularized because it "describes a clearly defined universe of documents" which was not unreasonably voluminous in light of the lengthy allegations); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL NO. 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003) ("discovery is 'particularized' because it is limited to the discovery documents that have already been produced to others").

**KAPLAN FOX**

### c.  *Partially Lifting the Discovery Stay Will Not Frustrate the Policy Rationale of the PSLRA*

The rationale for the PSLRA stay does not support maintaining the stay here. "[C]ourts have modified the discovery stay in securities class actions when doing so would not frustrate Congress's purposes in enacting the PSLRA." *In re Bank of Am. Corp.*, 2009 WL 4796169, at *1. As Judge Cote explained in *WorldCom*, 234 F. Supp. 2d at 305, "[t]he legislative history of the PSLRA indicates that Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint."

Where, as here, plaintiffs are seeking discovery neither to bolster an otherwise frivolous complaint, nor to coerce defendants to settle the matter, the PSLRA discovery stay serves no rational purpose, but rather serves only to prejudice plaintiffs with non-frivolous claims. *See Turocy v. El Pollo Loco*, No. SA CV 15-1343 (DOC), 2017 WL 2495172, at *2 (C.D. Cal. May 10, 2017) (lifting discovery stay where "the maintenance of the stay . . . does not further the policies enumerated above"); *In re WorldCom*, 234 F. Supp. 2d at 305 (lifting stay where plaintiff "has clearly not filed the complaint to initiate a 'fishing expedition' in search of sustainable claims or to force defendants to settle an otherwise frivolous class action"); *In re Royal Ahold*, 220 F.R.D. at 252 (lifting stay and holding that "the apparent strength of the plaintiffs' case may be a factor in the court's determination of the necessity of discovery under the PSLRA").

\* \* \*

For these reasons, Lead Plaintiff respectfully requests that the PSLRA discovery stay be partially lifted to allow production to Lead Plaintiff of the documents and testimony Vale has produced, or will produce, to government entities in connection with investigations and/or litigation concerning the Dam 1 failure.

Respectfully submitted,

/s/ *Frederic S. Fox*

cc:    All Counsel of Record (via ECF)