**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
                                                          :
In re Vale S.A. Securities Litigation                     :                    No. 19 Civ. 526 (RJD) (SJB)
                                                          :
                                                          :                    <u>ORAL ARGUMENT REQUESTED</u>
                                                          :
                                                          :
                                                          :
----------------------------------------------------------x

# DEFENDANT VALE S.A.'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

GIBSON, DUNN & CRUTCHER LLP

Mark A. Kirsch
Randy M. Mastro
Christopher M. Joralemon
Mary Beth Maloney
David M. Kusnetz

200 Park Avenue
New York, NY  10166-0193
Telephone:     212.351.4000
Facsimile:     212.351.4035

*Attorneys for Vale S.A.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

DISCUSSION ...............................................................................................................................3

I.     INTERVENING SECOND CIRCUIT PRECEDENT MANDATES DISMISSAL OF PLAINTIFF'S SURVIVING CLAIMS......................................3

II.     THE ORDER CONTAINS MANIFEST ERRORS ARISING FROM THE COMPLAINT'S "CONFLICT-OF-INTEREST" ALLEGATIONS ......................8

     A.     The DCEs Belie A Strong Inference Of Scienter Under *Jackson* ..............8

     B.     The Court Should Dismiss All Pre-June 2018 Statements Challenged In The Complaint For Failure To Adequately Plead Falsity...........................................................................................................9

III.     THE ORDER MISTAKENLY CONFLATES MATERIALITY AND FALSITY .............................................................................................................12

IV.     THE COURT DID NOT APPLY THE PROPER STANDARDS UNDER THE PSLRA AND BESPEAKS CAUTION DOCTRINE .................................13

CONCLUSION............................................................................................................................16

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Aceto Corp. Sec. Litig.*,
  2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)....................................................................14, 15

*Acito v. IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ........................................................................................................11

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)................................................................................................12, 13

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
  2020 WL 248729 (S.D.N.Y. Jan. 15, 2020) ...............................................................................6

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)..................................................................................................5, 12

*Foley v. Transocean Ltd.*,
  861 F. Supp. 2d 197 (S.D.N.Y. 2012)........................................................................................8

*In re Gilat Satellite Networks, Ltd.*,
  2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) .........................................................................15

*Gondola v. City of New York*,
  2020 WL 1433874 (E.D.N.Y. Mar. 24, 2020)............................................................................3

*Gray v. Wesco Aircraft Holdings, Inc.*,
  2020 WL 1904019 (S.D.N.Y. Apr. 16, 2020)....................................................................14, 15

*Gross v. GFI Grp., Inc.*,
  784 F. App'x 27 (2d Cir. 2019) ...............................................................................................12

*Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*,
  620 F.3d 137 (2d Cir. 2010)......................................................................................................14

*Jackson v. Abernathy*,
  2020 WL 2755690 (2d Cir. May 27, 2020) ................................................1, 3, 4, 5, 6, 7, 8

*Jackson v. Avanos Med., Inc.*,
  2019 WL 1437517 (S.D.N.Y. Mar. 31, 2019), *aff'd sub nom. Jackson v.*
  *Abernathy*, 2020 WL 2755690 (2d Cir. May 27, 2020).............................................................5

*Johnson v. Siemens AG*,
  2011 WL 1304267 (E.D.N.Y. Mar. 31, 2011)...........................................................................7

ii

**TABLE OF AUTHORITIES**
*(continued)*

<u>Page(s)</u>

*Kolel Beth Yechiel Mechil of Tartkov, Inc. v. YLL Irrevocable Trust*,
   729 F.3d 99 (2d Cir. 2013)...................................................................................................3

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
   513 F.3d 702 (7th Cir. 2008) ..............................................................................................4

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)...........................................................................................7, 12

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007).................................................................................7

*SEC v. Espuelas*,
   579 F. Supp. 2d 461 (S.D.N.Y. 2008).................................................................................9

*SEC v. Amerindo Inv. Advisors, Inc.*,
   2014 WL 405339 (S.D.N.Y. Feb. 3, 2014).........................................................................3

*Singh v. Cigna Corp.*,
   918 F.3d 57 (2d Cir. 2019)..................................................................................................1

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)...........................................................................................6, 14

*In re Supercom Inc. Sec. Litig.*,
   2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018) ..................................................................14

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008)................................................................................................7

*In re Vale S.A. Sec. Litig.*,
   2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ..................................................................15

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016)..............................................................................................13

Pursuant to Local Civil Rule 6.3, Defendant Vale S.A. respectfully submits this memorandum in support of its motion for reconsideration of the Court's May 20, 2020 Memorandum and Order (the "Order") to the extent the Order denied in part Vale's motion to dismiss (the "Motion") Plaintiff's Complaint.[1]

## PRELIMINARY STATEMENT

Nobody disputes that the breach of Dam 1 in Brumadinho, Brazil on January 25, 2019 was a tragic accident that left many victims in its wake.  With all due respect to Plaintiff here, a purportedly "defrauded" investor in the high-risk global mining industry is not among them.  As the Court of Appeals for the Second Circuit has made abundantly clear in recent years, district courts—at the motion to dismiss stage—must remain vigilant in rooting out "creative attempt[s] to recast corporate mismanagement as securities fraud."  *Singh v. Cigna Corp.*, 918 F.3d 57, 59–60 (2d Cir. 2019).  Exactly one week after this Court issued the Order, the Second Circuit again revisited the issue in a *per curiam* opinion that emphasizes the exacting pleading burden a plaintiff must meet to establish the requisite strong inference that a defendant acted with scienter. *Jackson v. Abernathy*, 2020 WL 2755690, at *1 (2d Cir. May 27, 2020) (per curiam) (cautioning that where the defendant "is a corporation, . . . a plaintiff must show that the misstatement was not a case of mere mismanagement, but rather the product of collective fraudulent conduct").  In short, the Complaint here does not come close to meeting the standard set forth in this intervening precedent.

---

[1]  Defined terms have the meanings given to them in Vale's opening brief, dated December 13, 2019 ("MTD").

Vale also respectfully submits that the Order contains several manifest errors based on the misapplication of well-settled principles of federal securities law and of certain allegations in the Complaint.

First, the Court mistakenly applied to all of the alleged misstatements at issue Plaintiff's allegation that stability declarations (or "DCEs") prepared by third-party auditors were tainted by a conflict of interest. The Complaint, however, only alleges a conflict involving TÜV SÜD, which did not begin issuing DCEs for Vale until *June 2018*. See Compl. ¶¶ 70 & nn.18–19, 72 & n.20, 90, 94. Thus, Vale respectfully urges the Court to reconsider its scienter and falsity analysis in light of the undisputed fact that such conflict-of-interest allegations do not impact any statements made *prior to* June 2018.

Second, the Order erroneously conflates the concepts of falsity and materiality, causing the Court to mistakenly allow certain patently immaterial statements (under the Court's own reasoning) to remain in the case.

Third, Vale respectfully submits that the Court failed to articulate and apply the correct standards established by the PSLRA and bespeaks caution doctrine with respect to certain forward-looking statements challenged in the Complaint, and thus overlooked that such statements should have been dismissed as inactionable because they were accompanied by meaningful cautionary language and/or were immaterial as a matter of law.

Based on the foregoing, Vale respectfully requests that the Court reconsider the Motion and amend the Order to dismiss the Complaint in its entirety and with prejudice, or at a minimum, further narrow the purportedly actionable misstatements that remain in this case.

## DISCUSSION

### I.   INTERVENING SECOND CIRCUIT PRECEDENT MANDATES DISMISSAL OF PLAINTIFF'S SURVIVING CLAIMS

"A strong likelihood of reversal exists, and thus reconsideration should be granted, where there is 'an intervening change of controlling law, . . . new evidence, or [a] need to correct a clear error or prevent manifest injustice.'"  *SEC v. Amerindo Inv. Advisors, Inc.*, 2014 WL 405339, at *3 (S.D.N.Y. Feb. 3, 2014) (alterations in original) (quoting *Kolel Beth Yechiel Mechil of Tartkov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 108 (2d Cir. 2013)); *see also Gondola v. City of New York*, 2020 WL 1433874, at *1 (E.D.N.Y. Mar. 24, 2020) (granting motion for reconsideration in light of intervening Supreme Court and Second Circuit decisions).  Here, the Second Circuit's recent decision in *Jackson* compels the Court's reconsideration of the Order— and the issuance of a new order dismissing the Complaint—because Plaintiff has failed to adequately allege any "connective tissue" between the Vale employees with purported knowledge of problems at Dam 1, and the Individual Defendants allegedly responsible for making the challenged statements, to establish the requisite strong inference of scienter.  2020 WL 2755690, at *4.

In *Jackson*, plaintiff alleged that "defendants—two manufacturers of medical equipment—intentionally misled shareholders about the quality of one of their surgical gown products through a series of fraudulent misstatements," and argued that defendants' scienter was "clear because a handful of employees internally raised alarm that the surgical gown had failed several quality-control tests."  *Id.* at *1.  In a published *per curiam* opinion, however, the Second Circuit made clear that "general allegations . . . are not sufficiently particularized to raise a strong inference of scienter against any individual, much less one whose knowledge may be imputed to the Corporate Defendants."  *Id.* at *3.  Applying this standard, the Second Circuit

3

concluded that the complaint merely "sets forth allegations that three employees knew of problems with [a surgical] gown, but it provides no connective tissue between those employees and the alleged misstatements." *Id.* at *4.  This disconnect left the Court in the untenable position of "only guess[ing] what role" senior executives—those responsible for the alleged misstatements—played in the purportedly fraudulent scheme. *Id.* at *3–4 ("Ascribing a state of mind to a corporate entity is a difficult and sometimes confusing task[] . . . because 'the hierarchical and differentiated corporate structure' often muddies the distinction between a deliberate fraud and an unfortunate (yet unintentional) error caused by mere mismanagement." (quoting *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 707 (7th Cir. 2008) (Posner, J.))).

Respectfully, the intervening *Jackson* decision brings into stark relief the Court's error in assessing the adequacy of Plaintiff's scienter allegations here, which suffer from the identical fatal flaws identified by the Second Circuit.  Indeed, lacking the clear guidance of this controlling decision, the Court overlooked Plaintiff's failure here to identify any "connective tissue" between Defendants and the purportedly adverse information identified in the Complaint.  Instead, the Court erred by accepting as sufficient Plaintiff's improper and unsupported speculation. *Id.* at *4.

Take, for example, the Court's heavy reliance on Plaintiff's allegation that Vale's executive directors received monthly reports from the "the Business Risk Management group," which included "a risk matrix depicting Vale's tailings dam breach risk."  Compl. ¶¶ 64–65, 77; *see* Order at 4, 6, 23, 30–31.  According to the Order, these "general allegations" concerning the risk matrix were "sufficiently particularized to raise a strong inference of scienter against any [I]ndividual [Defendant]." *Jackson*, 2020 WL 2755690, at *3; *see* Order at 17 n.12, 30–31

4

(speculating that the "risk matrix . . . was *or should have been shown*" to Individual Defendants (emphasis added)).  The *Jackson* Court, however, rejected *virtually identical allegations* as insufficient.  *See* 2020 WL 2755690, at *2 (marketing director "testified that he 'prepared documents for senior Kimberly-Clark executives that detailed manufacturing problems and resulting product compliance failures,' which were 'presented to senior management, including to [the CEO]'").  Indeed, according to the Second Circuit, these "general allegations of warnings made to unidentified senior executives . . . are not sufficiently particularized to raise a strong inference of scienter against any individual, much less one whose knowledge may be imputed to the Corporate Defendants."  *Id.* at *3.[2]

The Court's acceptance of Plaintiff's additional assumptions and speculations concerning the state of mind of each Individual Defendant similarly does not pass muster under *Jackson* and other controlling Second Circuit decisions.  With respect to Mr. Poppinga, the Court states that he was "included and referenced in emails discussing issues with Dam 1, and he testified as to his familiarity with the dealings of the Geotechnical Management team."  Order at 30.  Not one of the paragraphs cited in the Order, however, alleges that Mr. Poppinga was sent an email

---

[2]  Apart from the clear legal error illuminated by the *Jackson* decision, the Court's reliance on the risk matrix to conclude Plaintiff adequately alleged scienter is further undermined by the fact that the risk matrix *never even mentioned* Dam 1.  *See* Opp. at 7 (conceding the point).  Thus, the Court further erred by finding that the risk matrix could have put Defendants on notice of Dam 1's purported risk of failure.  *See* Order at 30–31.  And even if Dam 1 had appeared in the risk matrix, Plaintiff's threadbare allegations force the Court "to assume that the [matrix] contained information that identified an objective 'danger,' such that [an Individual Defendant's] failure to respond . . . was 'highly unreasonable' and 'represent[ed] an extreme departure from the standards of ordinary care.'"  *Jackson v. Avanos Med., Inc.*, 2019 WL 1437517, at *4 (S.D.N.Y. Mar. 31, 2019) (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009)), *aff'd sub nom. Jackson v. Abernathy*, 2020 WL 2755690 (2d Cir. May 27, 2020).  But Plaintiff does not allege that the Individual Defendants "fail[ed] to respond" and take action to mitigate the risk once a dam appeared in the risk matrix.  Plaintiff only alleges that Defendants failed to respond to purported red flags pertaining to *Dam 1*.

5

discussing issues with Dam 1 that would have rendered Vale's public statements false when made. *See* Compl. ¶¶ 10, 23, 64, 68, 70–72, 82–83. And to the extent these paragraphs allege any connective tissue between Mr. Poppinga and Dam 1, they do so only in relation to an email he sent about *shutting down* the Dam years before its collapse as a result of an unspecified "doubt that arose," Order at 5, a decision lauded by Geoconsultoria, MTD at 9, and one reflecting "a prudent course of action that weakens rather than strengthens an inference of scienter," *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 2020 WL 248729, at *19 (S.D.N.Y. Jan. 15, 2020) (citation omitted). The *Jackson* Court reaffirmed the principle that "good faith efforts to uncover problems *undermine* an inference of scienter." 2020 WL 2755690, at *3 (emphasis added) (citing *Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010)) (finding that steps taken "to raise concern about the MicroCool gown's testing failures belie any inference of fraudulent intent"). Here, as in *Jackson*, Plaintiff's "reliance on the knowledge of [Mr. Poppinga] is misplaced." *Id.* Under *Jackson*, Mr. Poppinga's knowledge of a "doubt" concerning Dam 1 is insufficient to support a strong inference of scienter because "the steps [he] took to raise concern about the [Dam]," *id.*, such as—to quote from his email—"immediately shut[ting] down production activities at this dam until we conclude all the tests and additional calculations that are in progress" and "to assess reinforcement measures that can be implemented in a preventive manner," Order at 5 (quoting Compl. ¶ 68), "belie any inference of fraudulent intent," *Jackson*, 2020 WL 2755690, at *3. As such, "speculat[ion] about what precisely [Mr. Poppinga] was told and whether those warnings were sufficiently obvious as to" infer Mr. Poppinga possessed scienter is clear error and in conflict with binding Second Circuit precedent. *Id.* at *2.

6

As for Mr. Schvartsman, the Court relied on his "public representations *suggesting* familiarity with dam conditions," an assertion that he "*likely* viewed the risk matrix," that the "risk matrix, [] was or *should have* been shown to him," and Mr. Poppinga's general observation "that [Mr.] Schvartsman was kept abreast of 'serious problems.'"  Order at 17 n.12, 30–31 (emphasis added).  This holding is in direct conflict with long-standing unambiguous Second Circuit precedent because Plaintiff did not actually identify any specific adverse information received by Mr. Schvartsman.  *See Jackson*, 2020 WL 2755690, at *3 ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) and *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000))).  Thus, contrary to Second Circuit precedent, the Court improperly relied on mere speculation as to Mr. Schvartsman's mental state.  *Id*.

Finally, and respectfully, the Court's reasoning as to Messrs. Siani, Ferreira, and Osorio suffers from even deeper flaws.  The Court found Mr. Siani "received information on dam risks" as a result of his role as head of "the GRN unit" and as chair of the Executive Risk Committee. Order at 31.  But courts within this Circuit repeatedly have cautioned that "[s]cienter cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007) (citation omitted); *see also Johnson v. Siemens AG*, 2011 WL 1304267, at *15 (E.D.N.Y. Mar. 31, 2011) ("To establish an inference of scienter, lead plaintiff must do more than allege that the individual defendants . . . had or should have had knowledge of certain facts . . . simply by virtue of their high-level positions, their general responsibility for monitoring [the company's]

7

activities, and their access to inside information."). And as to Mr. Ferreira and Mr. Osorio, the Court concluded they possessed scienter based merely on the allegation that they received monthly risk reports (without a single specific allegation that they were given adverse information concerning Dam 1), and because both made public statements "*suggesting*" knowledge of dam safety. Order at 31. Again, these assumptions and suggestions led the Court to erroneously "engage in several layers of speculative inferences to find that [the Individual Defendants] acted recklessly." *Jackson*, 2020 WL 2755690, at *2.

In sum, the *Jackson* decision makes clear that the speculative and general allegations offered by Plaintiff here are not sufficiently particularized to raise a strong inference of scienter against any of the Individual Defendants, let alone one whose knowledge may be imputed to Vale. *See id.* at *3. The Court should dismiss the Complaint in its entirety.

## II.    THE ORDER CONTAINS MANIFEST ERRORS ARISING FROM THE COMPLAINT'S "CONFLICT-OF-INTEREST" ALLEGATIONS

### A.    The DCEs Belie A Strong Inference Of Scienter Under *Jackson*

In support of its motion to dismiss, Vale contended that, because it had obtained DCEs for Dam 1 attesting to its safety, Vale could not have known of or recklessly disregarded any material risks. *See* MTD at 31–32; Reply at 10; *see also* Order at 5 (noting "that all dams in Poppinga's division received 2016 DCEs"); *id.* at 7 (noting the submission of stability declarations by Tractebel in 2017 and TÜV SÜD in 2018). While the Court acknowledged that "good faith reliance" on a third-party audit can be sufficient to undermine a strong inference of scienter, Order at 31 (citing *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 219 (S.D.N.Y. 2012)), the Court further observed that "Defendants' allegedly improper interference with audits and the auditor's conflict of interest undermines the claim that DCEs provided independent assurances," *id*.

What the Order fails to recognize, however, is that even if TÜV SÜD were impermissibly influenced (it was not), such an allegation still does not establish scienter here. The Complaint simply fails to draw any connection between the Individual Defendants and the alleged influence over the DCEs issued by TÜV SÜD, alleging instead the involvement of low-level employees. *See* Reply at 12 ("Plaintiff fails to allege that a single high-level Vale employee was involved in or had any awareness of this purported scheme" to pressure TÜV SÜD into filing false DCEs). This fatal flaw in the Complaint is on all fours with the Second Circuit's reasoning in *Jackson*. *See* Section I, *supra*. As such, there is no factual allegation from which a court reasonably may infer that any Defendant was aware of compromised reports from TÜV SÜD, and therefore on notice not to trust them. *See SEC v. Espuelas*, 579 F. Supp. 2d 461, 480–81 (S.D.N.Y. 2008) (rejecting scienter allegation as to an improper accounting method because the appropriate method was not "obvious").

**B.     The Court Should Dismiss All Pre-June 2018 Statements Challenged In The Complaint For Failure To Adequately Plead Falsity**

Setting aside the threshold mistake concerning the sufficiency of the conflict-of-interest allegations, the Court further errs in identifying their *impact on* of Plaintiff's surviving allegations. Specifically, there is no basis in the Complaint—none—for the Court to conclude that Vale did not in good faith rely on audit reports certifying the stability of Vale's dams *before June 2018*, which is when TÜV SÜD began issuing DCEs for Dam 1. *See* Order at 7; *see also* MTD at 19 ("But Plaintiff does not even allege that Vale's Dam 1 auditor from 2017 to March 2018, Tractebel, *see* [Compl.] ¶¶ 87 n.30, 90, had any sort of 'financial conflict of interest.' The only allegation of that nature concerns TÜV SÜD, whose tenure as Dam 1 auditor did not begin until June 2018."). Indeed, the Complaint fails to offer *any* particularized allegations that DCEs or "audits of [] stability conditions" issued by Dam 1's pre-TÜV SÜD auditors, such as Tractebel

9

and Geoconsultoria, were tainted by improper influence or any conflict of interest. *See* Compl. ¶¶ 70 & nn.18–19, 72 & n.20, 90, 94.

Thus, while the Court did correctly reject as a basis of Plaintiff's claims 14 of the alleged misrepresentations because Plaintiff failed to adequately plead that such statements were false or misleading when made, *see* Order at 23–27, the Court erred in failing to also reject each alleged misstatement made before TÜV SÜD began its tenure as Dam 1 auditor in June 2018, *see* App. A. The Court erroneously found these pre-June 2018 statements to be misleading because of "Vale's omission of alleged facts suggesting . . . that DCEs were unduly influenced and certified for dams with insufficient factors of safety." Order at 26; *see also id.* at 27 ("[E]xternal auditors were unduly influenced to issue DCEs."); *id.* ("[F]ar from managing risks, the Geotechnical Risk Management Department acted to obtain DCEs for unstable dams."); *id.* at 23 (concluding that all statements not expressly addressed in opinion were misleading because "these third-party certifications 'gave [false] comfort to investors' when they were allegedly tainted by Vale's meddling" (quotation omitted)).

To reiterate, the Complaint contains no colorable allegations that Geoconsultoria or Tractebel had any conflict of interest or were otherwise unduly influenced. On the contrary, Plaintiff alleges that when the "Dam safety Audit for Dam 1 came due in September 2018, Tractebel informed Vale that the safety of Dam 1 could not be attested" and that "[i]n response, Vale promptly replaced Tractebel with TÜV SÜD." Compl. ¶ 94. In other words, Plaintiff alleges that Vale replaced Tractebel because it was *too* independent.[3] The statements made

---

[3] Plaintiff's speculative and bare insinuation that Tractebel may have been influenced by Vale's suggested and unspecified edits to an audit report, *see* Compl. ¶ 87 n.30, cannot be squared with its direct allegation—the linchpin of its Complaint—that Vale replaced Tractebel because of its refusal to be influenced into issuing improper stability certifications, *see id.* ¶ 94.

10

before June 2018 thus could not have misled investors by omitting a fact—that DCEs were unduly influenced—that was not even alleged to have existed at the time such statements were made.

Nor could the statements have misled investors by omitting "known issues with dams," Order at 26, when auditors independently certified the dams as stable from 2016 to March 2018, *see id.* at 5, 7.  In its Order, the Court noted that "[g]eneral statements about Vale's dams or risk management protocols would not necessitate disclosure of the specific problems with each of their several hundred dams."  *Id*. at 25.  It arrived at this conclusion by relying on the Second Circuit's decision in *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47 (2d Cir. 1995).  In the Court's words, *Acito* held that "[w]here defendant 'is a world-wide company engaged in heavily regulated businesses that produce over a thousand products in over thirty countries[, i]t would be unduly burdensome and impractical to publicly disseminate the results of every inspection of every plant.'"  Order at 25 (quoting *Acito*, 47 F.3d at 52–53).  But the *Acito* court went further. It held that there was no duty to disclose two failed FDA inspections, with *forty-eight total deficiencies*, because "one cannot infer that it was a 'foregone conclusion' that the Kansas City plant would fail [a third] inspection and adverse consequences would ensue."  *Id.* at 53.  The Court's holding that Vale had a duty to disclose the issues associated with Dam 1—when collapse and adverse consequences were far from a "foregone conclusion"—creates a rule of disclosure that the Second Circuit expressly rejected in *Acito*.  Despite Dam 1's alleged deficiencies, Vale's statements were not misleading when an independent third-party auditor repeatedly certified the Dam as stable.  Where, as here, "public statements are consistent with reasonably available data"—*i.e.*, independent stability certifications—"corporate officials need

11

not present an overly gloomy or cautious picture of current performance and future prospects."

*Novak*, 216 F.3d at 309.

In sum, the Court—at a minimum—should amend the Order to dismiss all pre-June 2018 statements identified in the Complaint based on Plaintiff's failure to adequately allege falsity. *See* App. A.

## III.   THE ORDER MISTAKENLY CONFLATES MATERIALITY AND FALSITY

It is well settled in this Circuit that "some statements [are] inactionable as a matter of law because they are 'too general to cause a reasonable investor to rely upon them.'" *Gross v. GFI Grp., Inc.*, 784 F. App'x 27, 29 (2d Cir. 2019) (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chi.*, 553 F.3d at 206). "This is particularly true where . . . the statements are explicitly aspirational, with qualifiers such as 'aims to,' 'wants to,' and 'should.'" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014).

Notwithstanding this guidance, the Court found that four "statements about Vale's operational risk mitigation" were not puffery "particularly where Defendants allegedly disregarded warnings about Dam 1's stability and improperly obtained DCEs." Order at 21 n.13 (citing Compl. ¶¶ 133, 138, 168, 182). Respectfully, this conclusion contravenes binding Second Circuit precedent that allegations of falsity do not bear on findings of materiality. *City of Pontiac*, 752 F.3d at 183 (cautioning that statements alleged to have been "knowingly and verifiably false when made does not cure their generality"). Such "generality" "is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *Id*. Here, the conflation error is particularly problematic because the considered allegation—that Vale "improperly obtained DCEs"—does not even apply to the statements at issue, all of which were made before June 2018. Compl. ¶¶ 133, 138, 168, 182; *see* App. A.

Setting aside their purported "falsity," it is clear these four statements are inactionable puffery under both Second Circuit precedent and the Order's holding that similar statements that contain "vague language about Vale's general attention to risk management cannot be reasonably understood as material."  Order at 20.  Indeed, with respect to the latter point, the Court dismissed eight of Vale's statements about dam safety and risk management policies and practices because they contained "vague language about Vale's general attention to risk management [that] cannot be reasonably understood as material."  Order at 20 (citing Compl. ¶¶ 131–32, 137, 167, 170–71, 178, 181).  Consistent with the Order's rationale for dismissal, these four statements are indistinguishable and should be dismissed as too vague because they contain precisely the sort of aspirational language the Second Circuit has found to be inactionable puffery.  *Compare City of Pontiac*, 752 F.3d at 183 ("aims to," "wants to," and "should"), *with* Compl. ¶¶ 133, 168 ("[T]he Company seeks to have a clear view of its major risks."), *and* ¶¶ 138, 182 ("We seek a clear view of the major risks we are exposed to . . . .").

**IV.     THE COURT DID NOT APPLY THE PROPER STANDARDS UNDER THE PSLRA AND BESPEAKS CAUTION DOCTRINE**

According to the Order, the PSLRA's safe harbor for forward-looking statements cannot apply "if defendants knew that their statements were false or misleading when made."  Order at 28.  Respectfully, this is plain error.  There are *three* prongs to the safe harbor provision, and satisfaction of *any one of them* provides an independent basis for dismissal.

Under the safe harbor, a defendant is not liable if *either*:  (1) "the forward-looking statement is identified and accompanied by meaningful cautionary language"; (2) the forward-looking statement "is immaterial"; *or* (3) "the plaintiff fails to prove that [the forward-looking statement] was made with actual knowledge that it was false or misleading."  *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245–46 (2d Cir. 2016).  "Because '[t]he safe harbor is written in the

13

disjunctive,' a forward-looking statement is protected under the safe harbor if any of the three prongs applies." *Id.* at 245–46 (quoting *Slayton*, 604 F.3d at 766); *see also Gray v. Wesco Aircraft Holdings, Inc.*, 2020 WL 1904019, at *19 (S.D.N.Y. Apr. 16, 2020) ("Either cautionary language or an absence of knowledge is alone sufficient to trigger the safe harbor.").

Thus, while the Court found the third prong of the safe harbor inapplicable, the Order failed to consider whether the challenged statements nonetheless were protected under either of the additional two prongs. Had the Court engaged in this analysis, it would have concluded that the remaining forward-looking statements must be dismissed because they were (1) accompanied by meaningful cautionary language,[4] and/or (2) immaterial.[5]

"[A] forward-looking statement accompanied by sufficient cautionary language is not actionable because no reasonable investor could have found the statement materially misleading." *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 141 (2d Cir. 2010). Here, Vale's cautionary language was clearly meaningful, as it went "beyond 'mere boilerplate,'" *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *6 (E.D.N.Y. Aug. 6, 2019) and "acknowledged the very risks that the . . . Complaint blames for investors' losses," *In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at *26 (S.D.N.Y. Oct. 10, 2018); *see also* MTD at 23–25; Dkt. 64-3. Particularly in the wake of the 2015 Fundão Dam collapse, no reasonable investor could have dismissed as immaterial Vale's subsequent warnings concerning "accidents or incidents involving mines and associated infrastructure, such as dams." *See* Dkt. 64-3. These disclosures also extensively discuss the Fundão Dam collapse's impact on Vale, which represents the realization of the precise risks at issue here. *See* MTD at 23–25; Dkt. 64-3.

---

[4]  As shown in App. A, these forward-looking statements are found in paragraphs 127, 129, 138, 147–48, 150, 153, 158, 161, 163–64, 182, and 184 of the Complaint.

[5]  Compl. ¶¶ 127, 138, 147–48, 161, 163–64, 182 and 184.

14

Plaintiff never disputed that this cautionary language "accompanied" all of the alleged misstatements. *See* Reply at 9. Here, many of the alleged misrepresentations are either in the exact same document as the cautionary statements or in documents that explicitly incorporate the cautionary statements by reference. *See* MTD at 25–27. As the Court recognized, cautionary language "need not be in the same document as the allegedly forward-looking statement where incorporated by reference, including in references to SEC filings." Order at 28 (citing *Aceto*, 2019 WL 3606745, at *6). And in any event, where reliance rests on the fraud-on-the-market presumption, cautionary language must "be treated as if attached to every one of [a company's] oral and written statements." *In re Gilat Satellite Networks, Ltd.*, 2005 WL 2277476, at *13 (E.D.N.Y. Sept. 19, 2005).

Courts in this Circuit routinely dismiss forward-looking statements accompanied by cautionary language, regardless of whether plaintiffs sufficiently alleged scienter. *See, e.g.*, *Gray*, 2020 WL 1904019, at *12 ("As long as the plaintiff fails to satisfy one of [the three safe-harbor] elements (*e.g.*, the statement is accompanied by meaningful cautionary language or is immaterial), the presence of one of the other elements (*e.g.*, the statement was known to be false or misleading) will not subject [] the defendant to liability."). And, in the securities class action arising out of the Fundão Dam collapse, the court found identical or substantially similar statements to be forward-looking. *Compare In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *10, *24 (S.D.N.Y. Mar. 23, 2017) (finding forward-looking the statement from 2013 Annual Report that "the company seeks to have a clear view of its major risks, the cost-benefit on mitigation plans and the controls in place to monitor the impact of operational risk closely"), *with* Compl. ¶¶ 138, 182 (nearly identical statements from 2016 and 2017 Annual Reports that remain in this action).

In addition, certain of the forward-looking statements should be dismissed under the PSLRA's second prong because they are immaterial. Generalized statements that Vale is "committed to becoming a sustainability benchmark" and "a leader in sustainability" are not material to investors, as is reflected in this Court's decision to dismiss similar "purely aspirational language." *Compare e.g.*, Order at 22–23 (dismissing Complaint ¶ 160 in its entirety, including the language "Finally sustainability . . . We want to become known as a benchmark in this sector"), *with* Compl. ¶¶ 161, 163–64, 184 (*e.g.*, "[A] leader in sustainability," "becoming a sustainability benchmark"). As many of the alleged misrepresentations squarely fall under the PSLRA's safe harbor, Vale respectfully requests that the Court amend its Order to include dismissal of these statements as nonactionable under well-settled law.

## CONCLUSION

For the foregoing reasons, Defendant Vale respectfully requests that the Court reconsider Defendant's Motion and the Court's May 20, 2020 ruling, and enter a judgment dismissing the Complaint in its entirety with prejudice based on Plaintiff's failure to establish a strong inference of scienter under the controlling standard established by the Second Circuit's intervening precedent in *Jackson*. To the extent any portion of the Complaint survives, Vale respectfully requests that the Court further dismiss as inactionable the alleged misstatements identified in Appendix A hereto for the reasons summarized therein.

16

Dated: New York, New York
June 3, 2020

Respectfully submitted,


GIBSON, DUNN & CRUTCHER LLP


By: */s/* Mark A. Kirsch
Mark A. Kirsch
Randy M. Mastro
Christopher M. Joralemon
Mary Beth Maloney
David M. Kusnetz

200 Park Avenue
New York, NY  10166-0193
Telephone:       212.351.4000
Facsimile:       212.351.4035

*Attorneys for Vale S.A.*

17