**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE VALE S.A. SECURITIES LITIGATION | CIVIL ACTION NO. 19-cv-526-RJD-SJB<br><br>CLASS ACTION |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT VALE'S MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     ARGUMENT ............................................................................................................. 2

        A.      Legal Standard ............................................................................................... 2

        B.      There Has Been No Change in the Controlling Law of Scienter ............................ 3

        C.      The Court Correctly Found Scienter was Supported by Vale's Pattern and Practice of Pressuring Dam Auditors to Issue DCEs and Unduly Influencing Audit Reports ................................................................................ 8

                1.      The Court Properly Rejected Vale's Claim of Good-Faith Reliance on the DCEs ................................................................................ 8

                2.      The DCE and Other Allegations Support Scienter and Falsity for Pre-June 2018 Statements ................................................................ 9

        D.      The Court Properly Found that Materiality and Falsity Were Adequately Alleged for the Operational Risk Mitigation Statements .................. 11

        E.      The Court Properly Concluded that the Statements Are Not Protected by the PSLRA Safe Harbor or Bespeaks Caution Doctrine ................................. 13

III.    CONCLUSION ...................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Grp, Inc.*,
   47 F.3d 47 (2d Cir. 1995) ........................................................................................... 10, 11

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012) ................................................................................................. 2

*Ceparano v. Suffolk Cnty. Dep't of Health*,
   No. 09-CV-558 (SJF) (AKT), 2014 WL 4385360, (E.D.N.Y. Sept. 4, 2014)........................ 2

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
   701 F. Supp. 2d 506 (S.D.N.Y. 2010) ................................................................................. 6

*City of Pontiac Policemen's & Firemen's Re. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) ....................................................................................... 11, 12

*Freudenberg v. E\*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) ......................................................................... 10, 13

*Gross v. GFI Grp., Inc.*,
   784 F. App'x 27 (2d Cir. 2019) ........................................................................................ 12

*In re BP p.l.c. Sec. Litig.*,
   843 F. Supp. 2d 712 (S.D. Tex. 2012)................................................................................ 6

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
   No. 10 CIV. 3461 PAC, 2014 WL 2815571 (S.D.N.Y. June 23, 2014)................................. 3

*In re Salix Pharm., Ltd.*,
   No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) .............................. 6

*In re Vale S.A. Sec. Litig.*,
   No. 19-CV-526-RJD-SJB, 2020 WL 2610979 (E.D.N.Y. May 20, 2020)..................... *passim*

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016) .............................................................................................. 14

*Jackson v. Abernathy*,
   No. 19-cv-1300, 2020 WL 2755690 (2d Cir. May 27, 2020)......................................... 1, 3, 4

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
   729 F.3d 99 (2d Cir. 2013) ................................................................................................. 2

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ........................................................................................ 11, 13

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) ................................................................................................ 2

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
531 F.3d 190 (2d Cir. 2008) .............................................................................................. 3

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991)........................................................................................................ 13

Lead Plaintiff Colleges of Applied Arts and Technology Pension Plan ("Plaintiff" or "CAAT Pension Plan") respectfully submits this memorandum of law in opposition to Defendant Vale's motion for reconsideration (the "Motion") of the Court's May 20, 2020 Memorandum and Order (ECF No. 74) (the "Order")[1] upholding the Complaint (ECF No. 47).

## I.  PRELIMINARY STATEMENT

Vale claims to present supervening authority that clarifies the standard for pleading corporate scienter, and additionally posits that the Court made numerous manifest errors. In reality, Vale's Motion does nothing more than take a second bite at the apple, rehashing arguments Vale made—and lost—in its motion to dismiss ("MTD") (ECF No. 64). The Second Circuit opinion upon which Vale relies, *Jackson v. Abernathy*, No. 19-cv-1300, 2020 WL 2755690 (2d Cir. May 27, 2020), concerns the standard for pleading corporate scienter where the scienter of individual defendants *was not* established. It is therefore of limited value to this case, in which the scienter of *all five* Individual Defendants was adequately alleged. Moreover, *Jackson* does not alter the scienter pleading standard in any way.

Nevertheless, Vale uses the case to argue the Court erred in finding scienter based, in part, on: (1) the Business Risk Matrix reports (which showed several dams with unacceptable risk levels and were provided to the Individual Defendants and board of directors on a monthly basis), (2) the *admissions* by Defendants Poppinga and Schvartsman of knowledge of Class Period dam conditions, and (3) Poppinga's emails and other evidence of Individual Defendants' direct involvement in managing dam safety while they were lying to the public about dam conditions and risk management. Vale's arguments that these allegations do not support scienter were properly rejected on Defendant's MTD and fail the stringent standard applicable here for reconsideration.

---

[1] Citations to the Order will use the Westlaw reference, *In re Vale S.A. Sec. Litig.*, No. 19-CV-526-RJD-SJB, 2020 WL 2610979 (E.D.N.Y. May 20, 2020).

Vale further argues that the claims should be trimmed if not dismissed entirely based on purported errors in the Court's analysis of: (1) the allegations about DCE improprieties (Mot. at 8-12); (2) the standard for finding materiality (*id*. at 12-13); and (3) the standard for applying safe harbor protection (*id*. at 13-16). But these arguments are based on Vale's misreading of the allegations and the caselaw, and fail to raise any clear error or intervening caselaw by which reconsideration could be granted. Therefore, as further discussed below, Vale's motion should be denied in its entirety.

## II.   ARGUMENT

### A.  Legal Standard

A motion for reconsideration is not a tool "for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal citation omitted). The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Thus, "[i]n determining a motion for reconsideration, the court should consider: (1) whether there has been 'an intervening change of controlling law;' (2) whether there is new evidence presented that was not previously available on the original motion; and (3) whether there is a 'need to correct a clear error or prevent manifest injustice.' " *Ceparano v. Suffolk Cnty. Dep't of Health*, No. 09-CV-558 (SJF) (AKT), 2014 WL 4385360, at *1 (E.D.N.Y. Sept. 4, 2014) (*quoting Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)).

Because Vale has failed to present any intervening change in controlling law or any clear error, the Motion should be denied in its entirety.

2

**B. There Has Been No Change in the Controlling Law of Scienter**

*Jackson* does not change the law of corporate scienter, but merely applies the existing law to facts unlike the ones presented here.[2] The *Jackson* Court evaluated whether the knowledge of three lower-level employees could be imputed to the corporation and found there was an insufficient basis to do so because there was "no connective tissue between those employees and the alleged misstatements." *Jackson*, 2020 WL 2755690, at *4. Where, as here, the individuals who allegedly had knowledge are also alleged to have made the false statements, the issue plainly does not apply.

Indeed, the Order is perfectly consistent with *Jackson*. The *Jackson* Court stated that "the 'most straightforward' way to raise a strong inference of corporate scienter is to impute it from an individual defendant who made the challenged misstatement." *Jackson*, 2020 WL 2755690, at *3 (*quoting Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc*., 531 F.3d 190, 195 (2d Cir. 2008)). It further noted that the scienter of other officers and directors may be imputed to the corporation "even if they themselves were not the actual speaker." *Id*. In accordance with these standards, the Court here found that "[b]ecause Plaintiff alleges scienter as to senior leadership, scienter may also be imputed to the corporation." *In re Vale S.A. Sec. Litig.*, No. 19-CV-526-RJD-SJB, 2020 WL 2610979, at *17 (E.D.N.Y. May 20, 2020).

The Court's finding of sufficient scienter allegations as to Vale and the Individual Defendants was based on substantial supporting evidence. *See id.* at *16-17; *see also* Pl.'s Opp. MTD (ECF No. 65) at 9-11, 14-20. Additionally, the Court's finding of corporate scienter was based on the numerous "red flags that should have put the officers on notice," including, as the

---

[2] "[R]econsideration is not warranted when an appellate court merely applies the existing standard to a new set of facts." *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 CIV. 3461 PAC, 2014 WL 2815571, at *4 (S.D.N.Y. June 23, 2014) (internal quotation omitted).

Court summarized, the "warnings from auditors, low factor of safety assessments, problematic dam behavior risk curves showing multiple dams with unacceptable failure probabilities, and alarming PIESEM findings as to Dam 1's stability." *In re Vale*, 2020 WL 2610979, at \*16. Such allegations and findings clearly support corporate scienter and distinguish this case from *Jackson*.[3] Indeed, subsequent to the filing of the Complaint, substantial additional evidence of Defendants' wrongdoing and scienter has emerged. Most significantly, criminal homicide charges have been leveled against Defendant Schvartsman and ten other Vale employees, and Vale has been charged with environmental crimes.

Nonetheless, Vale ignores many of the allegations on which the scienter finding was made, arguing that the Order and Plaintiff's allegations suffer from "the identical fatal flaws" identified in *Jackson* because certain of the allegations—concerning the Business Risk Management reports, the emails and sworn testimony of Defendant Poppinga, and statements by Defendant Schvartsman—are "improper and unsupported speculation" which the Court erred in crediting. Mot. at 4. These arguments are meritless.

First, Vale argues that the alleged Business Risk Matrix reports do not support scienter, claiming they are like a report the *Jackson* Court found insufficient to support scienter. *Jackson*, 2020 WL 2755690, at \*3. They are not. The report in *Jackson* was prepared by a lower-level employee who testified that the report was distributed to ***unidentified*** "senior management," which the employee ***assumed*** included the CEO. *Id.*, at \*2. By contrast, the reports here were created by a group run by Defendant Siani (the CFO, whose knowledge is imputed to Vale), and were

---

[3] Plaintiff maintains that the scienter allegations in the Complaint satisfy all applicable pleading standards, but notes that further evidence of scienter, including evidence supporting criminal charges against Vale, Defendant Schvartsman, and other Vale management, has been revealed since the filing of the Complaint, which could be added to an amended complaint should the Court reconsider any part of its ruling regarding scienter. Thus, Plaintiff requested the opportunity to file an amended complaint if the Court dismisses the Complaint in its entirety. Pl.'s Opp. MTD at 3, fn. 5.

distributed on a monthly basis to Vale's board of directors and executive officers, according to Defendant Poppinga's sworn testimony. These reports included a dam risk matrix which showed several of Vale's dams were in the unacceptable risk zone. Indeed, Vale submitted a November 2017 dam risk matrix with their MTD which showed six of Vale's dams in the unacceptable risk zone at that time.[4] Thus, the allegations about the Business Risk Management reports are not based on "speculation," but rather, the sworn testimony of Defendants as well as internal Vale documents quoted in government investigative reports.

Second, Vale argues that finding Defendant Poppinga's scienter based on his emails and testimony was error because his emails do not contain information "that would have rendered Vale's public statements false when made." Mot. at 6. But Poppinga's emails show he knew of very serious doubts about Dam I's stability requiring the shut down of the dam in July 2016, and indeed, testing completed the same month showed Dam I had a high probability of failure. *See* Pl.'s Opp. MTD at 17. Vale never disclosed this information; they did not correct any pre-Class Period statements about their dams, and they continued throughout the Class Period to tout their "impeccable" dam conditions, their adherence to the "strictest international practices" for dam safety and risk management, and their commitment to safety. *Id*. at 2. Vale's argument that Poppinga's knowledge of the dire condition of Dam I does not render those statements materially false or misleading is simply not credible.

---

[4] Vale argues that the risk matrix "*never even mentioned* Dam 1" (Mot. at fn. 2 (emphasis in original)), and that Plaintiff conceded this point. We did no such thing. Rather, we acknowledged that the November 2017 purported risk matrix Defendant submitted with its MTD (Ex. 13, p. 23) did not show Dam I in the intolerable risk zone, but showed six other Vale dams in that zone. Pl.'s Opp. MTD at 7. Plaintiff noted that "[i]f Dam 1 was, in fact, excluded from Vale's risk matrix then, it plainly violated Vale's risk management policy" and that the document "highlights the fact that there were *at least six dams in the unacceptably high-risk zone*" which was never disclosed, bolstering Plaintiff's allegations that Defendants misrepresented the true risk of its dams. Moreover, the fact that Vale is arguing about the meaning of the information conveyed in these reports only confirms that Vale knows exactly what reports Plaintiff has alleged, and that the allegations are therefore amply specific to satisfy pleading standards.

Moreover, their contention that Defendant Poppinga's email, which ordered the immediate shut down of Dam I and assessment of reinforcement measures, should be viewed as a "good faith effort[] to uncover problems [which] undermine[s] an inference of scienter" (Mot. at 6) ignores the fact that Poppinga was not a low level employee, as were the employees who flagged problems in *Jackson*.[5] Defendant Poppinga was a corporate executive whose knowledge is directly imputed to Vale, and neither he, nor Vale, ever disclosed the problems with Dam I. Rather than trying to "uncover problems," Defendant Poppinga and Vale endeavored to ***cover up*** the problems. Indeed, Poppinga was alleged to be personally involved in the cover up through his efforts to obtain DCEs for Dam I and other unstable dams during the Class Period. *See* Pl.'s Opp. MTD at 10, 17.

Third, Vale argues that the Court's finding of Defendant Schvartsman's scienter is clear error because it is based on nothing but "speculation as to Mr. Schvartsman's mental state." Mot. at 7. But the Court's finding was based in part on Defendant Schvartsman's ***own assertions*** that he conducted a review of dam safety conditions and that the dams were all "impeccable." *In re Vale*, 2020 WL 2610979, at *17. Far from speculation, Defendant Schvartsman's assertions of familiarity with dam conditions are based on ***his*** personal knowledge of what he did, and courts commonly credit such statements in evaluating scienter. *See, e.g.*, *In re Salix Pharm., Ltd.*, No. 14-CV-8925 (KMW), 2016 WL 1629341, at *14 (S.D.N.Y. Apr. 22, 2016) (CFO's statement about knowledge of inventory supported scienter); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 516 (S.D.N.Y. 2010) (scienter adequately alleged where defendants "told the investing public that they monitored the value of their portfolio"); *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 782-83 (S.D. Tex. 2012) (defendants' repeated statements about safety supported inference

---

[5] Indeed, the *Jackson* Court noted that "allegations that senior officers ignored those employees' warnings could demonstrate that those officers acted fraudulently," (*id*. at *3), but here, it is the senior officers who had direct knowledge of the problems and failed to take appropriate actions or make necessary disclosures. *See, e.g.*, Pl.'s Opp. MTD at 4-5 (listing evidence of Dam I instability and describing Defendants' failure to take meaningful action).

of scienter regarding safety issues). The Court's finding of Defendant Schvartsman's scienter was also based on the allegations that he received the Business Risk Matrix reports and was informed of any serious problems with the dams. *In re Vale*, 2020 WL 2610979, at *17 (summarizing allegations and referencing the Complaint at ¶¶ 7, 9, 23, 66, 155).[6] As discussed above, the details of the Business Risk Matrix reports were sufficiently alleged to satisfy pleading standards and the Court did not err in finding these allegations supported Schvartsman's scienter. Thus, Vale's claim that the Court misapplied "long-standing unambiguous Second Circuit precedent" is just a second attempt at their failed MTD argument that the allegations do not support scienter. *See* MTD at 30.

Finally, Vale reasserts their MTD argument that the scienter of Defendants Siani, Osorio, and Ferreira was insufficiently alleged based ***solely*** on their positions, but the Court properly rejected this argument stating that the Complaint "makes specific allegations of various reasonably available facts, or red flags, that should have put the officers on notice that the public statements were false." *In re Vale*, 2020 WL 2610979, at *16. The Court also based its scienter finding on the allegations of Defendant Siani's responsibilities as head of the Business Risk unit "that analyzed dam risks and maintained the risk matrix, and allegedly received information on dam risks not only in this role, but also in monthly reports issued by the GRN to the Executive Risk Committee that Siani chaired." *Id*. at *17. Likewise, Ferreira's and Osorio's scienter was supported by allegations that they received the risk reports and of their statements indicating knowledge of dam safety or sustainability practices. *Id*. Thus, the Court's ruling was not based solely on the Individual Defendants' positions, but on their specific duties and information received in connection with performing their duties.

---

[6] All references to "¶" followed by a number are to paragraphs in the Complaint.

**C. The Court Correctly Found Scienter was Supported by Vale's Pattern and Practice of Pressuring Dam Auditors to Issue DCEs and Unduly Influencing Audit Reports**

***1. The Court Properly Rejected Vale's Claim of Good-Faith Reliance on the DCEs***

Vale argues that the Court erred in rejecting their argument of good-faith reliance on the DCEs because Plaintiff did not allege any high-level Vale executives were involved in pressuring auditors or altering auditors' reports. Mot. at 8-9. However, the Complaint alleges that Defendant Poppinga supervised the efforts to obtain DCEs, and that he and his subordinates sought and obtained DCEs for Dam I despite their knowledge that it was unstable. *See* Pl.'s Opp. MTD at 17; *id*. at 9-10; ¶¶ 70-72.[7] Moreover, the allegations describe a practice that, if not Company-wide, was at least division-wide with respect to dams in the Ferrous Metals division. *See* Pl.'s Opp. MTD at 19-20; *id*. at 10; ¶¶ 122-124 (all Ferrous Metals dams obtained DCEs in 2016, 2017, and 2018 despite admission in 2019 that numerous dams were unstable); ¶¶ 87-97 (efforts to obtain DCEs for Dam I and Forquilla III despite instability, subsequent revocation of DCEs for nine Vale dams).

Finally, Vale's invocation of *Jackson* in support of its good faith argument fails because no individual defendants (or other senior management) had scienter in *Jackson*, whereas here, all five Individual Defendants knew of Vale's numerous unstable dams, many of which were depicted in the Business Risk matrix. Thus, Vale could not plausibly rely on third-party statements of stability, and the Court did not err in rejecting this defense.

---

[7] Indeed, as indicated in the Complaint, the Federal Police concluded from its review of audit report editing by various Vale employees that "the determination to mitigate the description of the dam weaknesses ***came from higher ranking officials*.**" ¶ 87 and fn. 30 (emphasis added).

### 2. *The DCE and Other Allegations Support Scienter and Falsity for Pre-June 2018 Statements*

Vale next argues that the Court erred in finding falsity for pre-June 2018 statements and rejecting their claim of good faith reliance on the DCEs for that period "because there is no basis in the Complaint—none—for the Court to conclude that Vale did not in good faith rely on audit reports . . . [before] TÜV SÜD began issuing DCEs for Dam 1" in June 2018. Mot. at 9. In so arguing, Vale attempts to reduce all DCE-related allegations down to the alleged conflict-of-interest of TÜV SÜD, but that was only one part of the basis upon which the Court properly rejected Vale's claim of good faith reliance. As the Court stated, "Defendants' allegedly improper interference with audits ***and*** the auditor's conflict of interest undermines the claim that DCEs provided independent assurances." *In re Vale*, 2020 WL 2610979, at *17 (emphasis added). That "improper interference" did not begin with TÜV SÜD in June 2018, but rather, is alleged to extend **at least** through 2017, with multiple instances of Vale improperly editing draft audit reports by Tractebel to make dam conditions sound better than the auditor had indicated. ¶ 87 and fn. 30. Additionally, Vale allegedly allowed Tractebel to use an unreliable test methodology to achieve a passing Factor of Safety score even after Vale was informed by PEISEM that the methodology was unreliable and should not be used. ¶¶ 88-90. Thus, Vale's improper interference with DCEs clearly began before June 2018.[8]

Moreover, Vale's argument that it should be able to rely on an auditor's statement of stability when Vale's own contemporaneous internal emails and analyses show that top corporate executives knew Dam I and other dams were not stable strains credulity. *See, e.g.*, Pl.'s Opp. MTD

---

[8] Indeed, as noted in the Complaint, although Vale's SEC filings indicate that multiple dams failed to obtain DCEs in the years before the Fundao dam collapse (on November 5, 2015), after that collapse, not a single dam failed to obtain the required DCEs in 2016, 2017, or 2018. ¶¶ 121-122. Then, after the Dam I collapse in January 2019, the DCEs for multiple dams were retracted (¶ 95), and further dams were found to be unstable and evacuated (¶¶ 96, 123-124). The most plausible inference of these allegations is that Vale increased its efforts to obtain DCEs for unstable dams in the wake of the Fundao collapse in 2016, 2017, and 2018.

9

at 4-5 (briefly summarizing allegations of dam instability); ¶¶ 73-77 (allegations of Defendants' knowledge of dam instability in 2017). Vale has not cited any authority for their extraordinary proposition that they should be exempt from liability for knowingly false statements so long as they obtained a third-party's sign-off on those statements.

Likewise, Vale's citation to *Acito v. IMCERA Grp, Inc.*, 47 F.3d 47 (2d Cir. 1995) for the proposition that there was no duty to disclose the issues with Dam I (Mot. at 11) does not support their argument. In *Acito*, the court found that the defendants had no duty to disclose two failed FDA inspections (which carried no negative consequences) because the information would not be material to a reasonable investor.[9] *Id*. at 52. By contrast, the misrepresented and concealed information about dam conditions alleged here—that Dam I (and multiple other Vale dams) had an unacceptably high probability of failure—and the statements about Vale's safety management practices, were highly material to investors. *See* Pl.'s Opp. MTD at 23-24. Indeed, Vale made numerous detailed statements in its Sustainability Reports and elsewhere to assure investors that its dams were stable. *See In re Vale*, 2020 WL 2610979, at *12 ("[B]ecause [Vale] repeatedly emphasized its commitment to such priorities, Vale 'put the topic at issue' such that the Court cannot say that, as a matter of law, investors would not find certain representations material."). *Acito* is therefore inapposite on this point.

Additionally, the *Acito* Court found no duty to disclose the possibility of a third FDA inspection failure because it was not a "foregone conclusion" that the failure would occur. But here, the Complaint alleges that Defendants misrepresented and failed to disclose the then-existing

---

[9] *See also, Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 193 (S.D.N.Y. 2010) (distinguishing *Acito*, which "concerned the materiality of omissions related to relatively minor aspects of the company's businesses and was a pure mismanagement case because there was no duty to disclose.").

10

material adverse conditions of Dam I which were known to them, not that they should have predicted Dam I would fail. Thus, there is no conflict between the Order and *Acito*.

Finally, Vale's reference to *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) for the proposition that "corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects" provided their "public statements are consistent with reasonably available data" (Mot. at 11-12) is likewise unhelpful here because Defendants' public statements *were not* consistent with the reasonably available internal data regarding Dam I.

### D. The Court Properly Found that Materiality and Falsity Were Adequately Alleged for the Operational Risk Mitigation Statements

Vale next argues that four statements regarding operational risk mitigation were too general to be actionable and that the Court erred in not dismissing them.[10] Vale claims that the Court's error lies in its supposed "conflation" of materiality and falsity, because the Court referenced certain allegations related to falsity in finding materiality sufficiently alleged. *See In re Vale*, 2020 WL 2610979, at *11 fn. 13 (upholding operational risk mitigation statements "particularly where Defendants allegedly disregarded warnings about Dam 1's stability and improperly obtained DCEs."). But Vale's argument ignores the standard of materiality, as well as language in the precedents they cited, which supports the relevance of falsity to the question of materiality.

Vale primarily relies on *City of Pontiac Policemen's & Firemen's Re. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014). In that case, the Second Circuit upheld the district court's ruling that alleged misrepresentations concerning defendant's "reputation, integrity, and compliance with

---

[10] The alleged misrepresentations at issue are: (1) "The main operational risks are periodically monitored, ensuring the effectiveness of preventative and mitigating key controls in place and the execution of the risk treatment strategy . . ." (¶¶ 133, 168); and (2) "We mitigate operational risk with new controls and improvement of existing ones, new mitigation plans and transfer of risk through insurance. We seek a clear view of the major risks we are exposed to, the cost-benefit on mitigation plans and the controls in place to closely monitor the impact of operational risks and to efficiently allocate capital to reduce it." (¶¶ 138 and 182). As with many of Vale's other arguments, Vale merely rehashes arguments it made, and the Court properly rejected, in its MTD that these statements are puffery or otherwise immaterial. *Compare* Mot. at 12-13 *with* MTD at 15-16.

ethical norms are inactionable 'puffery,'" particularly because "the statements are explicitly aspirational, with qualifiers such as 'aims to,' 'wants to,' and 'should.'" *Id*. at 183. In a quote Vale seizes upon, the court further stated that allegations the statements were "knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality." *Id*. This case does not support Vale's argument for several reasons.

First, the misrepresentations at issue here are nothing like those in *City of Pontiac*. Here, Plaintiff alleged concrete statements about operational risk management measures that are not cabined by aspirational language.[11] Such alleged misrepresentations fit squarely within the standard applied by the *City of Pontiac* Court, that a statement is material if it is "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some ***concrete fact or outcome*** which, when it proves false or does not occur, forms the basis for a § 10(b) fraud claim." *Id*. at 185. Moreover, this standard explicitly acknowledges that a "concrete fact or outcome" is one that may "prove[] false or [] not occur." *Id*. at 183. Thus, the *City of Pontiac* Court's ruling that the allegations of falsity did not fix the problem of immateriality there should not be read to suggest, as Vale urges, that falsity is wholly irrelevant to materiality.

Likewise, another case cited by Vale, *Gross v. GFI Grp., Inc.*, 784 F. App'x 27, 30 (2d Cir. 2019) (Mot. at 12), similarly acknowledges that falsity is relevant to materiality, contrasting the generic statement alleged there with an actionable "***assertion of falsifiable facts*** or a guarantee of certain outcomes."

---

[11] Vale focuses on one line in each of the alleged misrepresentations to argue that these statements contain aspirational language, ignoring the full statements alleged in the Complaint. Mot. at 13. Specifically, they note that each alleged misrepresentation incudes a sentence to the effect that the Company "***seeks*** to have a clear view of its major risks…" but ignore the balance of the alleged misrepresentations, which concern specific actions the Company is purportedly taking to mitigate operational risk (*see, e.g.,* ¶ 133 ("The main operational risks are periodically monitored, ensuring the effectiveness of preventative and mitigating key controls in place and the execution of the risk treatment strategy . . ."); ¶ 168 (same); ¶ 138 ("We mitigate operational risk with new controls and improvement of existing ones, new mitigation plans and transfer of risk through insurance.") ¶ 182 (same).

The Order here fully comports with these opinions, and with the long-standing Second Circuit rule that, "[w]hile statements containing simple economic projections, expressions of optimism, and other puffery are insufficient . . . defendants may be liable for misrepresentations of existing facts." *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (internal citations omitted) (rejecting puffery arguments where "the defendants stated that the inventory situation was 'in good shape' or 'under control' while they allegedly knew that the contrary was true"); *see also*, *Freudenberg*, 712 F. Supp. 2d at 189 ("[M]isstatements regarding risk management, discipline, monitoring and credit quality are not 'puffery' where, as alleged here, they were 'misrepresentations of existing facts.'").[12]

Vale also argues that the Court's purported error is "particularly problematic" because the Court drew a connection between the operational risk mitigation statements, which were made prior to June 2018, and the allegedly improperly obtained DCEs, which Vale claims is only alleged post-June 2018. Mot. at 12. Contrary to their argument, as discussed above, the Complaint alleges that Vale exerted improper influence on auditors and auditor's reports prior to June 2018, so there is no error in the Order.

For these reasons, Vale's reassertion of their argument that the alleged misrepresentations about operational risk mitigation are immaterial should again be rejected.

### E. The Court Properly Concluded that the Statements Are Not Protected by the PSLRA Safe Harbor or Bespeaks Caution Doctrine

Finally, Vale contends that the Court erred in ruling that the alleged misstatements are not protected by the PSLRA safe harbor or bespeaks caution doctrine because it only addressed one

---

[12] Similarly, in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1093 (1991), the Supreme Court rejected the argument that the terms "high value" and "fair" were too vague to be actionable because they "are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading".

of the three prongs by which protection may apply.[13] Mot. at 13. Contrary to Vale's claim, the Court addressed all three prongs in the Order. It directly addressed two of the prongs in the section on the safe harbor, finding the protections did not apply because there were sufficient "allegations that defendants knew their statements were false or misleading when made," and that many of the statements were not forward-looking. *In re Vale*, 2020 WL 2610979, at *16.

Additionally, in the section immediately prior to the safe harbor section, the Court found that Vale's "general warnings about operational risks" or the "possibility of a dam collapse and breach of risk management protocols" did not protect the Company from liability for the alleged misstatements and omissions. *In re Vale*, 2020 WL 2610979, at *14. Thus, even if some of the alleged misstatements were forward-looking, they were not accompanied by meaningful cautionary language, and are therefore not protected by the safe harbor or bespeaks caution doctrine. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 247 (2d Cir. 2016) ("To avail themselves of safe harbor protection under the meaningful cautionary language prong, defendants must demonstrate that their cautionary language was not boilerplate and conveyed substantive information.") (internal quotation omitted).

The final prong—materiality—was thoroughly addressed by the Court in section II.A. of the Order. *See In re Vale*, 2020 WL 2610979, at *10-12. The Court was not required to reiterate that analysis under another heading for those findings to apply.

### III.    CONCLUSION

For the foregoing reasons, we respectfully submit that Defendant's motion for reconsideration should be denied in its entirety.

---

[13] Under the safe harbor, "a defendant is not liable if (1) the forward-looking statement is identified and accompanied by meaningful cautionary language, (2) the forward-looking statement is immaterial, or (3) the plaintiff fails to prove that the forward-looking statement was made with actual knowledge that it was false or misleading." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016).

14

Dated: June 17, 2020
     New York, NY

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

*/s/   Frederic S. Fox*
Frederic S. Fox
Donald R. Hall
Jeffrey Campisi
Melinda Campbell
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the Class*