# EXHIBIT D

**Robbins Geller Rudman & Dowd LLP**

| | | |
|---|---|---|
| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

February 1, 2021

<u>VIA ECF</u>

The Honorable Louis L. Stanton,
U.S. District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Courtroom 21C
New York, NY 10007

    Re:    *In re Grupo Televisa Sec. Litig.*, No. 1:18-cv-01979-LLS (S.D.N.Y.)

Dear Judge Stanton:

    Your Honor has ordered discovery to determine whether "RG was originally aware or can be fairly charged with knowledge of" what the January 21 order refers to as "CAAT's Arrowstreet profits." ECF 183 at 1-2.[1] To expedite the resolution of this matter and facilitate the resolution of the class claims on their merits, Robbins Geller was originally aware (*i.e.*, prior to CAAT's lead plaintiff motion) that CAAT had an ownership interest in a third-party fund, that the third-party fund (not CAAT) held a short position in Grupo Televisa, and can be fairly charged with knowledge of "CAAT's Arrowstreet profits" at that stage of the litigation.[2] *See id.*

    Robbins Geller believed in good faith then, and still does today, that based on legal authorities CAAT's investment in "units" of a third-party pooled investment fund, which itself held hundreds of security positions that CAAT neither owned nor controlled, are legally irrelevant to CAAT's Exchange Act claims and, therefore, to CAAT's typicality.[3] *See* ECFs 112 at 50-59, 113-2, 113-3, 113-4, 131 at 23-25, ECF 87 (12/4/19 Hr'g Tr.) at 12:22-16:22, 19:20-21:10. Defendants took another view and used the information provided to them in discovery to defeat CAAT's class certification motion. In the wake of the Court's June 8, 2020 order finding CAAT atypical, legal commentators observed that the decision broke "new ground." Ex. A (6/29/20 Law360 article) at 2.

    Throughout this case, Robbins Geller has vigorously pursued the best interests of the Class. Fact discovery is nearly complete, and Robbins Geller has put together a compelling case for trial. We take our responsibilities to this Court very seriously and made this submission to answer the Court's inquiry directly. While we believe the legal support for Robbins Geller's position

---

[1]    ECF pinpoint cites are to the page numbers automatically generated by the CM/ECF system.

[2]    Robbins Geller continues to dispute Defendants' calculations of "profits" as legally and logically unsound for the reasons previously explained. *See, e.g.*, ECF 112 at 54-55 (citing sworn declarations of CAAT, third-party Arrowstreet, and former SEC counsel Douglas Scheidt). Defendants have argued the information we provide here is not privileged. *See* ECF 177 at 2. By responding to the Court's inquiry, Robbins Geller does not waive its client's privilege or other privilege or protection.

[3]    CAAT's decision to step aside to allow this case to move forward apace for the benefit of the Class after the June 8, 2020 order should not be misconstrued for a concession that it was atypical, and it continues to reserve its appellate rights. And while Defendants made the same false accusations against Robbins Geller concerning the third-party short position in their Rule 23(f) petition, the Second Circuit declined to entertain their assertions not once, but twice. App. ECF 64; App. ECF 74.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Louis L. Stanton
February 1, 2021
Page 2

confirms our qualifications to serve as Class Counsel in this case, we understand that is for the Court to determine.

If the Court has any further questions about our good faith, we stand ready to address them.

Respectfully submitted,

DARREN J. ROBBINS                    RACHEL L. JENSEN
(*pro hac vice* application pending)

cc: All Counsel of Record via ECF

# EXHIBIT A

Case 1:19-cv-00526-EK-CLP Document 101-15 Filed 02/04/21 Page 52 of 85 PageID #: 2894



Portfolio Media. Inc. | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Cert. Denial In Televisa May Embroil 3rd-Party Asset Managers

By **Eva Carman, Alexander Simkin and Patrick Roath** (June 29, 2020, 5:58 PM EDT)

The U.S. District Court for the Southern District of New York's recent refusal to grant class certification on "typicality" grounds in a stock-drop case may lead to additional third-party discovery burdens for asset managers.

In the case In re: Grupo Televisa Securities Litigation, a federal court recently denied class certification in a stock-drop securities case after finding that the purported class representative was not typical of a putative class because the named plaintiff, a pension fund, had invested in a pooled investment fund, which had shorted the defendant's stock, meaning that the purported class representative had actually, albeit indirectly, gained more than it lost when the defendant's stock tumbled.[1]

While this outcome is consistent with previous decisions that had netted out the gains and losses experienced by named plaintiffs to assess typicality under Federal Rule of Civil Procedure 23, the decision appears to extend that principle to consider gains and losses in a pooled investment fund managed by a third-party asset manager that the named plaintiff invested in but does not control.



Eva Carman

The Televisa court's denial of class certification on this basis will likely amplify the efforts of class action defendants to undermine certification through discovery into the investment positions held by named plaintiffs, including those in pooled investment vehicles managed by third-party asset managers.



Alexander Simkin

This is likely to lead to additional third-party discovery targeted at asset managers, as many named plaintiffs may be unable to identify the underlying assets and investments in all of the funds they have invested in.

Accordingly, and as discussed in greater detail below, an indirect consequence of this legal development may be a greater cost burden on third-party asset managers in dealing with third-party discovery that may also implicate confidentiality concerns.



Patrick Roath

## Background

Grupo Televisa SAB is a Mexican media conglomerate. In October 2017, the New York Times ran a detailed exposé linking Televisa to a bribery scheme related to World Cup broadcast rights, without explicitly accusing the company's officers or directors of participating in a bribery scheme.

In mid-November 2017, Televisa was referenced repeatedly by an Argentine businessman testifying in the federal criminal trial of FIFA officials on bribery grounds. The witness testified that Televisa participated in a coordinated partnership with a sports marketer to bribe FIFA officials. These references attracted increased media attention and precipitated a material downturn on the company's stock price over several days.

In January 2018, Televisa filed a disclosure with the U.S. Securities and Exchange Commission, alerting investors that its accountants had found material weaknesses in its internal controls, and that the financial reporting portions of its 2016 annual report should no longer be relied upon.

Stock-drop litigation ensued. Colleges of Applied Arts and Technology Pension Plan, or CAAT, a Canadian pension fund invested in Televisa, sued, bringing claims under the federal securities laws and seeking to represent a class of similar investors who had been harmed by Televisa's allegedly fraudulent efforts to prevent investors from learning of its participation in the bribery scheme.

CAAT filed in the U.S. District Court for the Southern District of New York. The complaint survived a motion to dismiss in March 2019, and the parties commenced discovery while engaging in motion practice over whether the court should certify CAAT's proposed class of plaintiffs.

## The Court's Class Certification Decision

The court denied class certification on June 8, 2020, finding that CAAT could not serve as a class representative, as it was not typical of the class it was attempting to represent within the meaning of Federal Rule of Civil Procedure 23(a)(3).[2]

The court rejected the defendants' other argument that there was no statistically significant drop in the price of Televisa shares after public disclosure of Televisa's alleged involvement in the FIFA bribery scheme, so the court's typicality finding was outcome-dispositive.[3]

The court first observed that CAAT claimed losses of $968,000 due to the volatility of Televisa's stock, and "other class members, at the same market prices, must have suffered similar losses."[4]

But the court went on to conclude that "CAAT had something the other members did not," finding that CAAT had separately invested in a pooled investment fund managed by a third-party asset manager that had effectively shorted Televisa's stock, producing an indirect economic gain for CAAT that was roughly three times the size of CAAT's loss attributable to its Televisa holdings.[5]

On this basis, the court ruled that "CAAT's interest in the short sales ... enriched CAAT's overall economic position vastly more than it was injured by losses in its own long holdings of Televisa," meaning that, "[a]s an economic reality, the price drop which injured the other class members enriched CAAT thrice what it cost CAAT," and that CAAT therefore was "not typical of the class."[6]

In so finding, the court rejected CAAT's argument that the short sales should not be considered because they were made by a third-party fund that CAAT had no control over, instead focusing on the overall impact of CAAT's net worth.[7] The court dismissed this argument, noting that CAAT was the economic beneficiary of the gains realized from the short positions, and had a 75% stake in the third-party pooled investment fund.[8]

## The Court's Decision in Context

The court's decision appears to enhance the viability of legal defenses that draw on a fuller picture of a named plaintiff's investment portfolio in an attempt to undermine its status as a putative class representative.

While courts have previously netted out gains and losses to assess a class representative's typicality in the context of a certification motion, the Televisa decision appears to break new ground in extending this logic to include all gains and losses attributable to investment decisions made by third parties that benefit the would-be class representative.

In briefing, defendants advanced cases rejecting the notion that "a plaintiff may recover for losses, but ignore his profits, where both result from a single wrong," Abrahamson v. Fleschner,[9] and cited more specific cases establishing that:

> As a general rule, plaintiffs cannot claim damages where the same fraud alleged to be the cause of a loss also permitted a countervailing gain. ... For instance, losses resulting from a

securities fraud are netted against recovered gains where both follow from a single disclosure. [10]

In response, CAAT argued that defendants "fail[ed] to cite a single case in which a security purchased and owned by a third party played any role in class certification," asserting that "a third party's gains or losses play no role in calculating a plaintiff's damages."

In its order, the court relied primarily on the general proposition that Rule 23 requires that a "class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."[11]

Applying this proposition, the court concluded in relatively short order that the gains experienced by CAAT resulting from its indirect exposure to parallel short positions disqualified it from serving as class representative.[12]

## Potential Implications for Asset Managers

The Televisa decision appears to expand the universe of investment positions a court may consider in assessing the typicality of a named plaintiff to include investments in pooled funds overseen by third-party asset managers.

From the perspective of a defendant, developing an argument that such investments should be included has obvious tactical appeal: many pension funds purporting to be named plaintiffs have broadly distributed investment portfolios providing ample fodder for discovery, and uncovering evidence that a named plaintiff netted an economic outcome that diverges from other class members could fully prelude class certification.

The decision may, therefore, invite additional scrutiny by defendants in class actions into plaintiffs' investment in pooled investment funds. Such a development, in turn, could create additional work for asset managers who may be compelled to respond to third-party subpoenas seeking intrusive discovery into the nature of their clients' investment positions.

Additionally, civil subpoenas could generate confidentiality issues for asset managers who may be asked to disclose sensitive information, including (1) their investments, (2) the reasons for their investments, and (3) the plaintiff's proportionate share of such investments. Asset managers may have grounds for resisting such third-party discovery through appropriate objections and the meet and confer process.

In the event an asset manager is compelled to produce sensitive information and it is filed with the court, the asset manager may also attempt to take steps to have its confidential information sealed so that it is not available on the public docket, where it could potentially be exploited by competing asset managers or others.

All that said, there are reasons to believe Televisa may be an outlier, or otherwise cabined to its own facts. For one, the court found that CAAT owned 75% of the fund it was invested in.[13] The court relied on that fact to distinguish CAAT's investment in the asset manager's pooled investment fund from other pooled investments, such as mutual funds.[14]

In addition, the short positions that CAAT benefited from were uncommonly remunerative: CAAT's gains dwarfed its losses by a factor of three. Thus, this case may present a relatively unique fact pattern that is unlikely to be frequently repeated.

---

*Eva C. Carman is a partner, Alexander B. Simkin is counsel and Patrick T. Roath is an associate at Ropes & Gray LLP.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of the firm, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

1/24/2021 Case 1:19Case01526dcv01973rtLLeSialOnDroevmisaMa4Ehtool5ro FilePbly02A25sets/Ivlahagers PFaggess5oo03PageID #:
2897

[1] No. 18 CIV. 1979 (LLS), 2020 WL 3050550, at *7–8 (S.D.N.Y. June 8, 2020).

[2] Televisa, 2020 WL 3050550, at *7–8.

[3] Id. at *7.

[4] Id. at *7.

[5] Id.

[6] Id. at *7–8.

[7] Id. at *7.

[8] Id.

[9] 568 F.2d 862, 878 (2d Cir. 1977)

[10] Bausch & Lomb Inc. Sec. Litig. 🔴 , 244 F.R.D. 169, 173 (W.D.N.Y. 2007)

[11] Televisa, 2020 WL 3050550, at *7 (quoting East Texas Motor Freight System Inc. v. Rodriguez 🔴 , 431 U.S. 395, 403 (1977))

[12] See id. at *7–8.

[13] See id. at *7.

[14] Id.

---

All Content © 2003-2021, Portfolio Media, Inc.