**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                          :
In re Vale S.A. Securities Litigation     :      No. 19 Civ. 526 (RJD) (SJB)
                                          :
                                          :      <u>ORAL ARGUMENT REQUESTED</u>
                                          :
                                          :
                                          :
---------------------------------------------------------x

**DEFENDANTS' OBJECTIONS TO**
**MAGISTRATE JUDGE BULSARA'S REPORT AND RECOMMENDATION**
**CONCERNING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
**<u>AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL</u>**

GIBSON, DUNN & CRUTCHER LLP

Mark A. Kirsch
Randy M. Mastro
Christopher M. Joralemon
Mary Beth Maloney
David M. Kusnetz

200 Park Avenue
New York, NY 10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

PROCEDURAL HISTORY....................................................................................4

STANDARD OF REVIEW ....................................................................................4

DISCUSSION ........................................................................................................4

I. CONTROLLING SECOND CIRCUIT AUTHORITY PRECLUDES THE
R&R'S FINDING OF MARKET EFFICIENCY ...................................................4

    A. Plaintiff Has Not Met Its Burden to Show the Market for Vale
ADSs Was Efficient................................................................................5

    B. Plaintiff Has Not Met Its Burden to Show the Market for Vale
Notes Was Efficient ...............................................................................8

II. THE R&R DEFIES SECOND CIRCUIT AUTHORITY REQUIRING
PLAINTIFF TO SATISFY PREDOMINANCE WITH RESPECT TO
THE DOMESTICITY OF VALE NOTE TRANSACTIONS..............................11

III. THE R&R FAILS TO ADDRESS ON-POINT AUTHORITY DENYING
CLASS CERTIFICATION BASED ON FLAWS IDENTICAL TO
THOSE IN PLAINTIFF'S "DAMAGES MODEL" ...........................................13

IV. THE R&R'S ADEQUACY FINDING FAILS TO ADDRESS
PLAINTIFF'S INVOLVEMENT IN AN ADJUDGED FRAUD ........................14

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Angley v. UTi Worldwide Inc.*,
   311 F. Supp. 3d 1117 (C.D. Cal. 2018) .................................................................6

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988).................................................................................................4

*Betances v. Fischer*,
   304 F.R.D. 416 (S.D.N.Y 2015) ...........................................................................14

*Brokop v. Farmland Partners Inc.*,
   2021 WL 4913970 (D. Colo. Sept. 30, 2021) ........................................................8

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) ...........................................................................4

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)................................................................................................14

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   407 F. Supp. 3d 422 (S.D.N.Y. 2019)..................................................................12

*George v. China Auto. Sys., Inc.*,
   2013 WL 3357170 (S.D.N.Y. July 3, 2013) ...............................................4, 5, 7, 8

*In re Glob. Brokerage, Inc.*,
   2021 WL 1160056 (S.D.N.Y. Mar. 18, 2021),
   *report and recommendation adopted sub nom.*
   *In re Glob. Brokerage, Inc. f/k/a FXCM Inc. Sec. Litig.*,
   2021 WL 1105367 (S.D.N.Y. Mar. 23, 2021) ........................................................9

*In re Groupo Televisa Sec. Litig.*,
   2020 WL 3050550 (S.D.N.Y. June 8, 2020) ........................................................14

*In re Grupo Televisa Sec. Litig.*,
   2021 WL 2000005 (S.D.N.Y. May 19, 2021) .................................................3, 14

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) .......................................................................4, 5

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
   2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ........................................................15

Page(s)

*MJC Supply, LLC v. Powis*,
    2019 WL 1429625 (E.D.N.Y. Mar. 29, 2019) .......................................................4

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010) ...............................................................................................11

*In re NII Holdings, Inc. Sec. Litig.*,
    311 F.R.D. 401 (E.D. Va. 2015) .............................................................................9

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
    2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ......................................3, 6, 13, 14

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017) .........................................................................2, 12, 13

*Plaut v. Goldman Sachs Grp. Inc.*,
    2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ......................................................15

*In re Sanofi-Aventis Sec. Litig.*,
    293 F.R.D. 449 (S.D.N.Y. 2013) ..........................................................................12

*Savino v. Computer Credit, Inc.*,
    164 F.3d 81 (2d Cir. 1998) ....................................................................................14

*Sicav v. Wang*,
    2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) .........................................................14

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2019 WL 3001084 (S.D.N.Y. July 10, 2019) .........................................................9

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    333 F.R.D. 39 (S.D.N.Y. 2019) .............................................................................6

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) ........................................................................ *passim*

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ......................................................13

**Statutes**

28 U.S.C. § 636(b)(1)(C) ..........................................................................................1, 4

Page(s)

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................3

Fed. R. Civ. P. 23(b)(3) .....................................................................................................3

Fed. R. Civ. P. 72(b)(3) .....................................................................................................4

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(C), Defendants Vale S.A. ("Vale"), Murilo Ferreira, Fabio Schvartsman, Luciano Siani Pires, Peter Poppinga, and Luiz Eduardo Froes do Amaral Osorio (collectively, the "Defendants") respectfully object to the January 11, 2022 Report and Recommendation ("R&R") of the Honorable Sanket J. Bulsara, United States Magistrate Judge, on Plaintiff Colleges of Applied Arts and Technology Pension Plan ("CAAT" or "Plaintiff")'s motion for class certification and appointment of class representatives and class counsel (the "Motion"). Dkt. 110.

## PRELIMINARY STATEMENT

The R&R contains no less than four material errors, each of which independently warrants denial of class certification, in whole or substantial part.

*First*, Plaintiff is not entitled to a "fraud on the market" presumption of reliance because it has failed to meet its burden of showing that Vale American Depositary Shares ("ADSs") and Notes traded in an efficient market during the proposed class period. Indeed, the R&R itself reaches the damning conclusion that the market efficiency event study offered by Plaintiff's expert was "black box-like, unverifiable, standardless, and subjective." Dkt. 110 at 25. But the R&R then commits a fatal error by disregarding controlling Second Circuit precedent, which requires courts to adopt a holistic approach in assessing efficiency, including consideration of both indirect factors (*i.e.*, structural aspects of the security that allow for an efficient market) and direct evidence provided via an expert event study. *See Waggoner v. Barclays PLC*, 875 F.3d 79, 97–98 (2d Cir. 2017) (allowing that a plaintiff "need not always present direct evidence of price impact through event studies," but *only if*: (a) all the indirect factors "so clearly" point to efficiency; and (b) there are no indications of inefficiency that would require scrutiny of direct evidence). Indeed, *Waggoner* explains that direct evidence becomes "*more critical*" when other evidence is "less

compelling," and in these circumstances a court cannot simply presume efficiency based on indirect evidence. *Id*. at 98 (emphasis added).

Defendants' Opposition and the Rebuttal Expert Report of Dr. Walter Torous together detail at length the evidence demonstrating that Plaintiff has not—and cannot—meet its burden here, including a lack of price reaction in Vale ADSs and Notes on earnings dates and collective event studies that "suggest[] market *inefficiency*." Dkt. 106 at 10–12; *see also* Dkt. 107-1 (Torous Rep.) ¶¶ 43–59, 75–82. Running afoul of *Waggoner* and its progeny, the R&R ignores all of this compelling evidence. Instead, the R&R erroneously claims that Defendants did not offer evidence that the market was inefficient. *See* Dkt. 110 at 19 (conceding that "it would be a different story if Defendants presented evidence that the market for Vale ADSs was *inefficient*"). But Defendants did just that. Thus, the R&R's own words and reasoning should compel the denial of class certification based on Plaintiff's failure to show market efficiency.

With respect to the Notes, the R&R's error is even more egregious because several of the indirect factors also do not suggest efficiency. Indeed, the R&R's reasoning is unprecedented, as it appears to be the *only* post-*Waggoner* decision *ever* to conclude that a plaintiff is not required to provide any direct evidence, even though several indirect factors do not weigh in favor of efficiency.

*Second*, Plaintiff's proposed class of Vale Notes purchasers fails for the independent reason that Plaintiff has not met its "robust" burden to demonstrate that common questions will predominate regarding the domesticity of bond transactions. *In re Petrobras Sec.*, 862 F.3d 250, 274 (2d Cir. 2017) (vacating grant of class certification because determining domesticity for over-the-counter bond transactions required individualized inquiries). On this point, the R&R erroneously transforms Plaintiff's burden into Defendants' obligation to *disprove* predominance

under Fed. R. Civ. P. 23(b)(3).  It is undisputed that the proposed class contains an indeterminate number of over-the-counter purchasers.  Resolving questions of domesticity for those transactions, however, would require highly individualized evidence.  Plaintiff's failure to demonstrate that individualized questions of domesticity for these over-the-counter transactions will not predominate precludes class certification for the Notes.

*Third*, the R&R erroneously concludes that the cursory "damages model" described by Plaintiff's expert was sufficient without addressing an on-point, out-of-circuit decision that denied class certification because of the same flaws in the same damages analysis offered by the same expert.  *See* Dkt. 110 at 42–47 (failing to address *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.* ("*OPERS*"), 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018)).  The R&R also fails to acknowledge the understandable reluctance of courts in this circuit generally to certify damages methodologies where an expert fails to specify any valuation tools or methods.  *Id.* at 44.  When this Court reviews Dr. Steven Feinstein's damages model, it will see, consistent with the *OPERS* decision, that it is woefully insufficient to demonstrate how damages can possibly be calculated on a class-wide basis.

*Fourth*, the R&R fails to grapple at all with the clear evidence demonstrating that Plaintiff has not met Fed. R. Civ. P. 23(a)'s adequacy requirement.  The R&R does not even acknowledge *In re Grupo Televisa Sec. Litig.*, 2021 WL 2000005 (S.D.N.Y. May 19, 2021), an instructive case in which Judge Stanton found that CAAT's counsel—with CAAT's knowledge—engaged in conduct that was the "definition of fraud."  *Id.* at *3.  Adding insult to injury, CAAT also has failed to update its Private Securities Litigation Reform Act ("PSLRA") certification in this matter after CAAT was booted as class representative in *Grupo*.

## PROCEDURAL HISTORY

On June 4, 2021, Plaintiff moved to certify a class of persons who purchased Vale ADSs and Notes. Dkt. 110 at 3. After Defendants served their Opposition to the Motion, Plaintiff requested an additional ten pages for their reply brief to "adequately respond to the voluminous arguments presented in Defendants' opposing brief and their supporting expert report." Dkt. 95. Once the Motion was fully briefed, this Court referred the matter to Magistrate Judge Sanket J. Bulsara. *See* Order Referring Mot., June 8, 2021. Judge Bulsara held oral argument on the Motion on November 17, 2021. On January 11, 2022, Judge Bulsara issued the R&R, recommending that the Court grant the Motion.

## STANDARD OF REVIEW

"When a party objects to a magistrate judge's R&R, the district court makes a '*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *MJC Supply, LLC v. Powis*, 2019 WL 1429625, at *2 (E.D.N.Y. Mar. 29, 2019) (quoting 28 U.S.C. § 636(b)(1)(C)). As part of this review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## DISCUSSION

### I.  CONTROLLING SECOND CIRCUIT AUTHORITY PRECLUDES THE R&R'S FINDING OF MARKET EFFICIENCY

In order to avail itself of the presumption of reliance found in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), Plaintiff bears the "burden of showing market efficiency by a preponderance of the evidence." *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *12 (S.D.N.Y. July 3, 2013). Courts within the Second Circuit evaluate market efficiency using the factors described in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286–87 (D.N.J. 1989) and *Krogman v. Sterritt*, 202 F.R.D.

467, 478 (N.D. Tex. 2001).  Under controlling Second Circuit precedent, evidence "suggest[ing] the inefficiency of the market" makes the importance of *Cammer* factor 5 even "greater." *Waggoner*, 875 F.3d at 97; *see also George*, 2013 WL 3357170, at *13 (plaintiffs must show direct evidence when there are results "supportive" of inefficiency).

Here, the R&R finds that Plaintiff submitted a "black box-like, unverifiable, standardless, and subjective" event study that is "entitled to no weight."  Dkt. 110 at 25, 38.  We agree. Inexplicably, however, the R&R for some reason also concludes that Defendants did not present evidence of inefficiency.  Dkt. 110 at 19.  This is incorrect.  Indeed, Defendants' Opposition extensively details such evidence, which includes collective event studies conducted by Defendants' expert, Dr. Torous, that found "no difference . . . on news days versus non-news days." Dkt. 106 at 10–12; *see also* Dkt. 107-1 ¶¶ 43–59, 75–82.

In short, it was clear error for the R&R to conclude the market was efficient for both the ADSs and Notes given (1) the R&R finds no "direct evidence of an efficient market," Dkt. 110 at 32, and (2) the substantial evidence of inefficiency adduced by Defendants' expert, Dkt. 106 at 10–12.

A.     **Plaintiff Has Not Met Its Burden to Show
the Market for Vale ADSs Was Efficient**

The R&R correctly observes that "[t]he Court is left with no direct evidence of an efficient market."  Dkt. 110 at 32.  And the Second Circuit has made clear that even when evaluating "securities of large publicly traded companies[,] . . . the specific circumstances may *require* plaintiffs to present direct evidence of efficiency."  *Waggoner*, 875 F.3d at 99 n.29 (emphasis added).  *Waggoner* instructs that one such circumstance is when a defendant presents evidence that the market is inefficient.  *See id.* ("[D]efendants always have the opportunity to present their own event studies demonstrating that *Cammer* 5 is not satisfied.").  Indeed, courts across the

country have relied on *Waggoner* to find that scrutiny of *Cammer* factor 5 is necessary if a court is faced with evidence of inefficiency. *See, e.g.*, *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 54 (S.D.N.Y. 2019) (finding market efficiency "[g]iven that the results of [plaintiff's] event study do not indicate anything to the contrary"); *Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1126 (C.D. Cal. 2018) (finding that there is generally "no reason to burden the court with review of an event study" unless "defendants *present evidence . . . that the market was inefficient*" (emphasis added)).

Most notably, a recent decision applying *Waggoner* did not find market efficiency when presented with a flawed event study by *Plaintiff's expert here* that contained the *exact same deficiencies* as those presented here. *OPERS*, 2018 WL 3861840, at *15 n.14 (distinguishing facts in *Waggoner* where "all the structural *Cammer* factors ha[d] been overwhelmingly satisfied ***and there [we]re no 'specific circumstances' or a 'flawed' event study that weigh[ed] in favor of scrutinizing* Cammer *5*" (emphasis added)). Notwithstanding the Opposition's extensive discussion of *OPERS*, *see* Dkt. 106 at 2, 5, 7–10, the R&R inexplicably fails to grapple with that decision at all, relegating it to a passing reference in a single footnote. Dkt. 110 at 32 n.19.

The R&R commits further error by mistakenly concluding that Defendants did not present any evidence of inefficiency. *Id.* at 19 (incorrectly noting that Defendants only "offered a rebuttal report, attacking the methodology, analysis, and opinions of CAAT's expert").[1] To the contrary, Defendants offered substantial evidence of an inefficient market. *See* Dkt. 106 at 10–11; Dkt. 107-1 ¶¶ 43–59.

---

[1] The R&R mistakenly relies on an ambiguous question during Dr. Torous's deposition concerning whether he "*render[ed] any opinion* in []his report whether the market for Vale ADRs and notes is efficient or inefficient." Dkt. 101-3 (Torous Dep.) 23:7–9 (emphasis added). While Dr. Torous did not affirmatively opine that the market for Vale ADRs and Notes was inefficient, he nevertheless presented substantial evidence that the markets for those securities were inefficient. The R&R completely overlooks this analysis in Dr. Torous's Report, which details the event studies he performed based on Dr. Feinstein's regression results and the resulting evidence of inefficiency. Dkt. 107-1 ¶¶ 43–59, 75–82.

For example, as Defendants detailed in their Opposition, Dkt. 106 at 10–11, Dr. Torous ran two collective event studies using Dr. Feinstein's own regression results and found that Vale ADSs did not exhibit a statistically significant reaction to news. This is a quintessential marker of an inefficient market. *See* Dkt. 106 at 10; Dkt. 107-1 ¶¶ 43–46. The first event study tested all of Vale's earnings release dates and production data release dates:

> [T]he Vale ADRs *never* displayed a statistically significant price reaction on any of the 17 earnings or production dates during the Proposed Class Period, whereas the Vale ADRs had a statistically significant price movement on 4.4 percent of all other dates. Put differently, ***this analysis suggests that there is no difference (from a statistical perspective) between the Vale ADRs' price movements on news days versus non-news days.*** As such, Dr. Feinstein's own model suggests that the Vale ADRs did not respond to new, material information—***again suggesting market inefficiency***.

Dkt. 107-1 ¶ 55 (emphases added). The lack of price movement on every earnings date throughout the multi-year class period is a highly unusual circumstance that sets this case far apart from those where efficiency might otherwise be presumed based on indirect, structural evidence. Indeed, the results of this routine test reveal that Vale ADSs did not react to news and "suggest[] market inefficiency." *Id.*

Dr. Torous's second event study used Vale's 6-K filings as event dates, excluding those that did not have new, material news. *Id.* ¶¶ 56–59. Again, this study found no statistically significant propensity for the Vale ADSs to react on news days as opposed to non-news days. *Id.* at ¶ 59. Dr. Torous concluded that there was "***evidence that the price of the Vale ADRs did not respond to company-specific information releases during the Proposed Class Period***"—the very definition of market inefficiency. *Id.* (emphasis added).

Based on the compelling evidence of inefficiency offered by Defendants, there can be no question that Plaintiff was required to proffer some direct evidence of efficiency under *Cammer* factor 5. *See, e.g.*, *George*, 2013 WL 3357170, at *13 (declining to find market efficiency because

evidence on *Cammer* factor 5 was "in fact more supportive than not of market inefficiency" even though all indirect factors favored efficiency); *Brokop v. Farmland Partners Inc.*, 2021 WL 4913970, at *4 (D. Colo. Sept. 30, 2021) (finding no efficiency for portion of the class where there was no significant price movement on news dates even though indirect factors were met). Here, "the numerous days during the Class Period when news events did not result in price movement . . . *cannot be ignored.*" *George*, 2013 WL 3357170, at *13 (emphasis added). Because Plaintiff has presented no direct evidence on *Cammer* factor 5, Defendants respectfully urge the Court to conclude that Plaintiff has failed to meet its burden to show market efficiency for the Vale ADSs.

**B.    Plaintiff Has Not Met Its Burden to Show the Market for Vale Notes Was Efficient**

The R&R commits an even clearer error in finding market efficiency for the Vale Notes, since even the indirect *Cammer* and *Krogman* factors do not uniformly and overwhelmingly weigh in favor of such a conclusion. *See Waggoner*, 875 F.3d at 97–99. *Waggoner's* holding that a court has discretion to disregard *Cammer* factor 5 applies only when "[a]ll seven of the indirect factors … *weigh*[] *so clearly* in favor" of finding market efficiency. *Id.* at 98 (emphasis added). Where the indirect factors are less compelling, scrutiny of *Cammer* factor 5 is even "more critical." *Id.* Moreover, as Defendants' Opposition extensively documents, there is additional evidence pointing to inefficiency, including a lack of trading of the Notes on significant news dates and inconsistent reactions among the Notes. *See* Dkt. 106 at 11–12; Dkt. 107-1 ¶¶ 75–82. Since the R&R concludes that the indirect factors for the Notes only "tip" in favor of efficiency, Dkt. 110 at 39, the Court cannot certify a class of Notes under controlling Second Circuit law without any evidence on *Cammer* factor 5.

Courts routinely decline to certify classes in cases where all the indirect factors do not point towards efficiency and direct evidence on *Cammer* factor 5 is weak or entirely lacking. *See, e.g.*,

*In re Glob. Brokerage, Inc.*, 2021 WL 1160056, at \*18 (S.D.N.Y. Mar. 18, 2021) (plaintiffs failed to meet their burden given an event study of "limited utility" and lack of support from several indirect factors), *report and recommendation adopted sub nom. In re Glob. Brokerage, Inc. f/k/a FXCM Inc. Sec. Litig.*, 2021 WL 1105367 (S.D.N.Y. Mar. 23, 2021). In *Waggoner* itself, the Second Circuit distinguished its prior decision in *Bombardier*, in which it found plaintiffs had not met their burden to show efficiency, for the precise reason that some indirect factors did not lean in favor. 875 F.3d at 97–98. Indeed, the *Waggoner* court explained that in *Bombardier*, the court "emphasized that *Cammer* 5's importance was *greater* because a number of the indirect *Cammer* factors suggested the inefficiency of the market" and declined to find efficiency in the absence of proof on that factor. *Id.* at 97 (emphasis added).

By the same token, post-*Waggoner*, courts have found efficiency without direct evidence only when each and every one of the indirect factors weighed in favor of efficiency. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at \*13 (S.D.N.Y. July 10, 2019). To bolster its erroneous conclusion that Vale Notes traded in an efficient market, the R&R cites to *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401 (E.D. Va. 2015). Dkt. 110 at 39. Yet, the R&R fails to acknowledge that the court in *NII Holdings* found that the indirect factors all pointed towards market efficiency. *Id.* at 410–11. Thus, the R&R is a striking outlier. It appears to be the *only* decision relying on *Waggoner* to find that a market is efficient with no direct evidence even when all the indirect factors do not point overwhelmingly towards efficiency.

*Waggoner*'s holding regarding a court's discretion to discard *Cammer* factor 5 simply does not apply to the Notes, where all seven indirect factors do not "so clearly" weigh in favor of market efficiency. 875 F.3d at 98. To the contrary, one factor tilts only "slightly" toward finding market efficiency and another two do not favor efficiency at all. Dkt. 110 at 34–37. Regarding *Cammer*

factor 1, the R&R offers a cautious assessment:  because Dr. Feinstein's analysis may have "overstated" the trading volume, this factor pointed only "*slightly*" in favor of market efficiency. *Id.* at 34–35 (emphasis added).  Likewise, *Cammer* factor 2 "does not weigh in favor of a finding of market efficiency for the Vale Notes" because Plaintiff did not proffer any evidence that analysts covered Vale Notes specifically, as opposed to the company as a whole.  *Id.* at 35–36.  And Plaintiff's expert failed to analyze *Krogman* factor 2, the bid-ask spread, meaning that factor also did not weigh towards efficiency.  *See id.* at 37.  As such, the R&R concludes that the indirect factors alone merely "tip" towards efficiency.  *Id.*

Compounding the problem of weaker indirect evidence, as with Vale's ADSs, Defendants again presented additional evidence of market inefficiency for the Notes.  Dkt. 106 at 11–12.  And again, notwithstanding the extensive discussion of such evidence in the Opposition, the R&R entirely fails to address it.  That is clear error.  *See Waggoner*, 875 F.3d at 99 n.29.  ("[D]efendants always have the opportunity to present their own event studies demonstrating that *Cammer* 5 is not satisfied.").  One factor pointing to inefficiency is the Notes' lack of trading on significant news days, including some of the alleged corrective disclosure dates.  *See* Dkt. 106 at 11–12; Dkt. 107-1 ¶¶ 75–76.  Indeed, one of the Notes did not even trade on January 25, 2019, the day of the Dam collapse.  *See* Dkt. 106 at 11–12.  Moreover, the Notes showed "inconsistent price reactions to the same news . . . once again suggest[ing] market inefficiency."  Dkt. 107-1 ¶ 82.  And the majority of Vale notes—*four* out of seven—did not exhibit statistically significant price movements on either February 4 or February 6, *id.* ¶¶ 75, 79, which the R&R admits "certainly blunts the force of [Dr. Feinstein's] conclusions," Dkt. 110 at 36.

The R&R departs from controlling authority in *Waggoner* by finding market efficiency in the face of this evidence of inefficiency.  Here, "*Cammer* 5's importance was greater because a

number of the indirect *Cammer* factors" and additional evidence "suggested the inefficiency of the market." *Waggoner*, 875 F.3d at 97. Under this precedent, after correctly concluding that Dr. Feinstein's methodology for selecting event dates "was not . . . reliable" and that his "event study is entitled to no weight," the unavoidable conclusion is that Plaintiff has not met its burden to show that the market for Vale Notes was efficient. Dkt. 110 at 35, 36–38.

## II.     THE R&R DEFIES SECOND CIRCUIT AUTHORITY REQUIRING PLAINTIFF TO SATISFY PREDOMINANCE WITH RESPECT TO THE DOMESTICITY OF VALE NOTE TRANSACTIONS

The U.S. Supreme Court has made clear that Section 10(b) of the Exchange Act extends only to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 267 (2010). While Plaintiff seeks to certify a class limited to those who purchased Vale bonds "on the New York Stock Exchange ('NYSE') or other U.S. exchanges" or "in a U.S. transaction," Dkt. 96-1 at 9, it has provided no class-wide method for determining which transactions in fact occurred domestically, *see* Dkt. 96-3 (Feinstein Rep.) ¶ 249 (conceding that an unknown number of Notes were traded "in the over-counter market"); Dkt. 110 at 41 ("[O]ver-the-counter trades may include some transactions that occurred abroad.").

Plaintiff's failure to proffer any evidence concerning the percentage of the class comprised of over-the-counter bond transactions is fatal to class certification. *See In re Petrobas Sec.*, 862 F.3d 250, 272 (2d Cir. 2017) (explaining that evaluating domesticity of over-the-counter transactions would require an in-depth investigation of "facts concerning the formation of the contracts, the placement or [sic] purchase orders, the passing of title, or the exchange of money" (citation omitted)). The R&R mistakenly finds predominance satisfied because it improperly shifts Plaintiff's burden to Defendants, applying the flawed logic that "Defendants have not provided any quantification of the number of potential non-U.S. bond transactions at issue here." Dkt. 110

at 42.  This is clear error.  *See Petrobras*, 862 F.3d at 273 ("Plaintiffs bear the burden of showing that, more often than not, they can provide common answers [to questions of domesticity].");  *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 433 (S.D.N.Y. 2019) (denying class certification because of Plaintiff's failure to provide adequate "generalized proof" of class members' trading locations); *see also In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 457 (S.D.N.Y. 2013) ("[P]ost-*Morrison*, [plaintiffs] must demonstrate that their purchase of common shares was a 'domestic transaction in other securities.'").

The R&R also errs by misinterpreting Second Circuit authority and confusing the requirements for class ascertainability with the predominance inquiry.  According to the R&R, "[a]t this stage, a plaintiff need not 'provide adequate assurance that there can be "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."'"  Dkt. 110 at 42 (quoting *Petrobras*, 862 F.3d at 267).  *Petrobras*, however, was evaluating whether to apply a heightened *ascertainability* standard.  *See Petrobras*, 862 F.3d at 267–69 (declining to implement a heightened test because it "risks encroaching on territory belonging to the predominance requirement").  *Petrobras* makes clear that "[a]scertainability does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition, an issue that is already accounted for" in the predominance inquiry.  *Id.* at 269 (emphasis in original).  Thus, contrary to the R&R's finding, Plaintiff cannot satisfy the more "robust" predominance inquiry by offering vague assurances that their class definition is limited to only domestic transactions.  *Id.* at 274.

The R&R also wrongly asserts that issues of domesticity can be properly dealt with at a later stage of the litigation.  The Second Circuit has explicitly cautioned that "the possibility of post-certification procedural tailoring does not attenuate the obligation to take a 'close look' at

predominance when assessing the motion for certification itself." *Id*. A "close look" at Plaintiff's proposed class reveals no basis on which the Court can conclude that "the class members' *Morrison* inquiries will prevail or fail in unison." *Id.* at 273 (internal quotation marks omitted).

### III. THE R&R FAILS TO ADDRESS ON-POINT AUTHORITY DENYING CLASS CERTIFICATION BASED ON FLAWS IDENTICAL TO THOSE IN PLAINTIFF'S "DAMAGES MODEL"

Plaintiff's vague and unspecific damages model does not demonstrate that damages can be calculated on a class-wide basis. As discussed at length in Defendants' Opposition, the *OPERS* court rejected a nearly identical damages model offered by Plaintiff's expert Dr. Feinstein in that case. *See* Dkt. 106 at 20–27. As put succinctly by the *OPERS* court: A model that "simply asserts (as did Dr. Feinstein) that there are unspecified 'tools' available to measure damages . . . [is] 'no damages model at all[.]'" *OPERS*, 2018 WL 3861840, at *19 (citation omitted).

Notwithstanding this plainly relevant decision, the R&R again strikingly fails to engage with the *OPERS* decision at all. Dkt. 110 at 42–47. Instead, the R&R simply concludes that Dr. Feinstein's "four-step process" for calculating damages somehow was sufficiently detailed to satisfy the *Comcast* standard in the Second Circuit. *Id.* at 45–46. Not so. While it is true that courts have approved of similar, three-step damages models, it is not the case that courts in this circuit have regularly approved damages models that fail to specify the valuation tools and methods that will be used to compute damages. For example, the R&R's citation to *Wilson v. LSB Indus., Inc.* is readily distinguishable. There, the court found that Dr. Feinstein was not required to specify the valuation tools used because defendants had not cited any case holding otherwise. 2018 WL 3913115, at *17 (S.D.N.Y. Aug. 13, 2018). The *OPERS* case, which was decided one day after *Wilson* and involved the same expert, clearly demonstrates why Dr. Feinstein's damages

model must be rejected here.[2] Here, as in *OPERS*, the Court should deny class certification because Dr. Feinstein does not provide this Court with sufficient specificity for it to "understand, concretely, how plaintiffs propose to reliably establish damages." *Sicav v. Wang*, 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015); *see id.* at *4 (rejecting Dr. Feinstein's damages model for failing to "undertake a close analysis, or indeed any analysis, of the trading activity at issue *in this case*") (emphasis in original) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

## IV. THE R&R'S ADEQUACY FINDING FAILS TO ADDRESS PLAINTIFF'S INVOLVEMENT IN AN ADJUDGED FRAUD

A proposed lead plaintiff's "honesty and trustworthiness" is central to the "adequacy of representation" inquiry. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). The R&R ignores clear evidence impugning Plaintiff CAAT's honesty and trustworthiness. In a separate class action, Judge Stanton denied CAAT's bid to serve as class representative upon learning that CAAT concealed that it had reaped a profit on a short position in connection with the alleged fraud. *In re Groupo Televisa Sec. Litig.*, 2020 WL 3050550, at *7–8 (S.D.N.Y. June 8, 2020). Subsequently, in a stunning and widely reported decision, Judge Stanton disqualified Robbins Geller Rudman & Dowd LLP as class counsel and found that its decision not to disclose CAAT's short position in CAAT's class representative application was the "***definition of fraud.***" *In re Grupo Televisa Sec. Litig.*, 2021 WL 2000005, at *3 (S.D.N.Y. May 19, 2021) (emphasis added).

This finding—which was ignored by the R&R—bears on adequacy in *this* case in two ways. First, CAAT's Rule 30(b)(6) representative confirmed CAAT had full knowledge of

---

[2] The R&R's reliance on *Betances v. Fischer*, 304 F.R.D. 416 (S.D.N.Y 2015) is similarly misplaced. In that inapposite case, defendants criticized the plaintiffs' failure to provide a mathematical formula to calculate damages stemming from a deprivation of liberty due to the continued imposition of unlawful post-release supervision parole policies, and the court did not foreclose bifurcation of the class at a later date to account for differently injured plaintiffs. *Id.* at 421, 430–32.

Robbins Geller's "fraud" in *Grupo*. *See* Dkt. 107-4 (Rorwick Dep.) at 70:14–19; 72:20–23. CAAT was aware of the short position prior to applying to serving as lead plaintiff in *Grupo*, informed its counsel about the short position, and failed to disclose that information to Judge Stanton in its submission in support of appointment as lead plaintiff. *See id.*

Second, when CAAT's application to serve as class representative was denied in *Grupo*, it should have immediately updated its PSLRA certification in this matter, which incorrectly states that CAAT "**serves** as a lead plaintiff" in *Grupo*. Dkt. 8-1 ¶ 5 (emphasis added). CAAT's unwillingness to correct its PSLRA certification, despite being notified of the error, Dkt. 107-4 at 72:24–73:25, is another reason to dismiss Plaintiff. Dkt. 106 at 24; *see also Li Hong Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at *6 n.7 (S.D.N.Y. Dec. 5, 2019) (failure to disclose previously sought appointment in a prior action was a "clerical error" that "nonetheless speaks to a level of carelessness, and causes . . . doubt" regarding "adequacy and sophistication"); *Plaut v. Goldman Sachs Grp. Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court reject the R&R and deny Plaintiff's motion for class certification and appointment of class representatives and class counsel.


Dated: New York, New York
        January 25, 2022

GIBSON, DUNN & CRUTCHER LLP


By:  _/s/ Mark A. Kirsch_
     Mark A. Kirsch
     Randy M. Mastro
     Christopher M. Joralemon
     Mary Beth Maloney
     David M. Kusnetz

     200 Park Avenue
     New York, NY  10166-0193
     Telephone:     212.351.4000
     Facsimile:     212.351.4035

     *Attorneys for Defendants*