**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE VALE S.A. SECURITIES LITIGATION | Case No.: 19-cv-526 (RJD) (SJB)<br><br>JURY TRIAL DEMANDED |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE BULSARA'S REPORT
AND RECOMMENDATION TO GRANT LEAD PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT......................................................................................................................4

    I.    THE R&R CORRECTLY APPLIED CONTROLLING SECOND CIRCUIT AUTHORITY TO FIND VALE SECURITIES TRADED IN EFFICIENT MARKETS. ...........................................................................................4

        A.    Vale ADSs Easily Satisfy This Circuit's Market Efficiency Standards...........................................................................................5

        B.    The Vale Notes Also Satisfy This Circuit's Market Efficiency Standards...........................................................................................8

    II.    THE R&R CORRECTLY APPLIED SECOND CIRCUIT AUTHORITY IN FINDING INDIVIDUAL DOMESTICITY ISSUES DO NOT PREDOMINATE. ............................................................................................10

    III.    THE R&R'S APPROVAL OF LEAD PLAINTIFF'S DAMAGES MODEL FOLLOWS THE WEIGHT OF AUTHORITY IN THIS JURISDICTION. ...............................................................................................12

    IV.    THE R&R CORRECTLY REJECTED DEFENDANTS' STRAINED ADEQUACY ARGUMENTS BASED ON A FALSE SMEAR OF CAAT's CHARACTER.................................................................................14

CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)............................................................................................... 4, 9

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
    310 F.R.D. 69 (S.D.N.Y. 2015) ......................................................................... 6, 7, 13

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)...................................................................................................... 12

*Di Donato v. Insys Therapeutics, Inc.*,
    333 F.R.D. 427 (D. Ariz. 2019) .................................................................................... 6

*Första AP-Fonden v. St. Jude Med., Inc.*,
    312 F.R.D. 511 (D. Minn. 2015).............................................................................. 7, 8

*In re Dynex Cap., Inc. Sec. Litig.*,
    2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) ............................................................... 10

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................................... 10

*In re Groupo Televisa Sec. Litig.*,
    2020 WL 3050550 (S.D.N.Y. June 8, 2020) ............................................................. 14

*In re JPMorgan Chase & Co. Sec. Litig.*,
    2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015)............................................................ 7

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016) ....................................................................... 6, 9, 10

*In re Petrobras Sec. Litig.*,
    317 F. Supp. 3d 858 (S.D.N.Y. 2018)........................................................................ 11

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)................................................................................ *passim*

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................................... 13

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2019 WL 3001084 (S.D.N.Y. July 10, 2019) ......................................................... 3, 13

ii

*In re Teva Sec. Litig.*,
    2021 WL 872156 (D. Conn. Mar. 9, 2021) .................................................................. 5, 9, 13

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    2021 WL 148752 (S.D.N.Y. Jan. 15, 2021) ..................................................................... 11

*In re Vale S.A. Sec. Litig.*,
    2019 WL 11032303 (S.D.N.Y. Sept. 27, 2019)................................................................. 5

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)........................................................................................... 11

*McIntire v. China MediaExpress Holdings, Inc.*,
    38 F. Supp. 3d 415 (S.D.N.Y. 2014)............................................................................... 13

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    328 F.R.D. 86 (S.D.N.Y. 2018) ........................................................................................ 6

*Monroe Cty. Employees' Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019)..................................................................................... 13

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). ............................................. 11

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
    2018 WL 3861840 (N.D. Ohio Aug. 14, 2018)........................................................... 6, 13

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
    327 F.R.D. 38 (S.D.N.Y. 2018) ................................................................................... 9, 13

*Sicav v. Wang*,
    2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ................................................................... 13

*Strougo v. Barclays PLC*,
    2015 WL 13505645 (S.D.N.Y. July 24, 2015) ............................................................... 12

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)........................................................................................ *passim*

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)................................................................. 13

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................... 1

Fed. R. Civ. P. 23(b)(3)......................................................................................................... 1, 4

**Other Authorities**

7 William B. Rubenstein,
   Newberg on Class Actions § 22:81 (5th ed.) .............................................................................. 13

Lead Plaintiff Colleges of Applied Arts and Technology Pension Plan ("Lead Plaintiff" or "CAAT") respectfully submits this memorandum of law in response to Defendants' objections (ECF No. 111) ("Defs.' Obj.") to Magistrate Judge Bulsara's report and recommendation (ECF No. 110) (the "R&R") that Lead Plaintiff's motion be granted to certify this case as a class action, appoint Lead Plaintiff as class representative, and appoint Kaplan Fox & Kilsheimer, LLP as class counsel (ECF Nos. 96-97).

**PRELIMINARY STATEMENT**

The R&R correctly concludes that every element of Fed. R. Civ. P. 23(a) and 23(b)(3) is established here with substantial support, recommending that Lead Plaintiff's motion for class certification and appointment of class representative and counsel be granted. These findings are strongly supported by the evidence presented, including significant evidence that is undisputed.[1] Nevertheless, Defendants argue that Judge Bulsara committed four material errors and that class certification should be denied on these grounds. Their arguments are belied by the extensive record on all points raised.

*First*, Defendants claim that Judge Bulsara failed to properly apply binding precedent in finding the markets for Vale Securities traded efficiently during the Class Period based on *Cammer* factors 1-4 and *Krogman* factors 1-3. Their arguments misstate the law and the facts. The binding Second Circuit authority referenced, *Waggoner v. Barclays PLC*, 875 F.3d 79, 97 (2d Cir. 2017) ("*Waggoner*"), plainly holds that courts can certify a class where the indirect factors supporting market efficiency are sufficiently established (*Cammer* factors 1-4 and *Krogman* factors 1-3) without regard to the sole direct factor (*Cammer* factor 5). The R&R properly applies this

---

[1] Additionally, Defendants have not disputed that the Rule 23(a) requirements of numerosity and commonality are met, that the proposed Class is ascertainable, or that Kaplan Fox satisfies the requirements for appointment as Class Counsel.

precedent and, like *Waggoner*, finds that the indirect factors, standing alone, demonstrate market efficiency for both the Vale ADS and Notes.

Indeed, the market efficiency findings are strongly supported by the evidence. Vale Securities trade on the NYSE with market capitalizations in the top ten percent of all companies listed on U.S. exchanges and are widely followed by analysts and news outlets. These facts, encapsulated in Lead Plaintiff's evidence on *Cammer* factors 1-4 and *Krogman* factors 1-3, are ample evidence to prove market efficiency for the Vale Securities. ***Defendants do not dispute*** that Vale ADS satisfy all of these factors, and the Vale Notes were found to satisfy five of the seven factors. Numerous courts have found market efficiency based on comparable evidence, as discussed further below.

Nevertheless, Defendants argue that this is insufficient because Lead Plaintiff's evidence on *Cammer* factor 5, an event study that Defendants' expert criticized, reveals purported indications of market inefficiency. Yet Defendants' expert explicitly stated that he ***did not*** "evaluat[e] whether the market for Vale ADRs or notes was inefficient" and accordingly, he ***did not*** opine that the Vale Securities markets were inefficient. *See* Torous Dep. at 23:7-20 (ECF No. 101-3). If Defendants' own expert did not consider the purported evidence of inefficiency sufficiently compelling to opine that the Vale Securities markets were inefficient, Defendants can hardly fault Judge Bulsara for declining to do so. R&R at 32, 39.

***Second***, Defendants argue that the R&R erred by not crediting their unsubstantiated speculation that domesticity issues would predominate with respect to Vale Notes, precluding class certification. But there is no dispute that Vale ADRs and Vale Notes purchased on the NYSE are domestic transactions. And the R&R correctly found that there is no evidence to suggest the amount of over-the-counter Notes purchases potentially in the Class is so substantial that

2

individual issues of domesticity would predominate over common issues. R&R at 42. To the extent any individualized domesticity issues do arise in the future, the Court has many tools for dealing with such issues, as noted below and in the R&R at 41-42. Thus, Defendants' hypothetical domesticity issues do not predominate.

*Third*, Defendants claim that the R&R's approval of Lead Plaintiff's damages model was erroneous because the model is not sufficiently detailed and Judge Bulsara did not address an out-of-circuit case that required more detail. Contrary to their arguments, Lead Plaintiff's damages model easily satisfies this jurisdiction's standard for class certification. *Comcast* and Second Circuit authority merely require that a plaintiff's "damages model . . . track his theory of liability," *Waggoner*, 875 F.3d at 106, which this model does by showing that the class suffered damages when the allegedly misrepresented and omitted truth about Vale dam safety was revealed. Nearly identical damages models are routinely approved in this circuit, and it is "the generally accepted method for measuring damages in a securities fraud class action." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *20 (S.D.N.Y. July 10, 2019).

*Fourth* and finally, Defendants claim that the R&R erroneously found CAAT is an adequate class representative despite a purported "fraud" they ascribe to CAAT from the *In re Groupo Televisa Sec. Litig.*, No. 18-cv-1979-LLS (S.D.N.Y.) matter. But as the R&R correctly explained in rejecting this argument, the *Groupo* court did not find that CAAT was dishonest or otherwise inadequate, and "[i]t would be curious indeed for this Court to conclude now that CAAT made a misrepresentation to another tribunal or that CAAT was an inadequate class representative when the other tribunal itself did not reach such a conclusion." Defendants' further argument that CAAT should be rejected for failing to update its lead plaintiff certification—a requirement Defendants have invented without any statutory or jurisprudential authority—does not suggest any

3

error in the R&R.

For these reasons, as further described below, the Court should accept the recommendations of the R&R.

## ARGUMENT

**I.    THE R&R CORRECTLY APPLIED CONTROLLING SECOND CIRCUIT AUTHORITY TO FIND VALE SECURITIES TRADED IN EFFICIENT MARKETS.**

Defendants argue that "controlling Second Circuit authority precludes the R&R's finding of market efficiency" as required to invoke the *Basic* presumption of reliance[2] and thereby satisfy the Rule 23(b)(3) predominance requirement. Defs.' Obj. at 4. This argument mischaracterizes both the relevant authority (*Waggoner*) and its proper application, which plainly support the analysis and findings of Judge Bulsara.

In *Waggoner*, the Second Circuit held that a district court need not consider *Cammer* factor 5 (i.e., direct evidence of market efficiency, usually in the form of an event study) where the other factors provide sufficient support for market efficiency:

> All seven of the indirect factors considered by the district court . . . weighed so clearly in favor of concluding that the market for Barclays' ADS was efficient that the Defendants did not even challenge them . . . . Under the circumstances here, the district court was not required to reach a conclusion concerning direct evidence of market efficiency.

875 F.3d at 97. Indeed, the *Waggoner* Court forcefully rejected the argument that *Cammer* 5 is the definitive test of market efficiency: "[w]e have repeatedly—and recently—declined to adopt a particular test for market efficiency." *Id*. at 94.[3] Rather, *Waggoner* endorsed "a holistic analysis based on the totality of the evidence presented." *Id*. at 97.

---

[2] *See generally*, *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).

[3] *See also*, *In re Petrobras Sec.*, 862 F.3d 250, 278 (2d Cir. 2017) ("We never suggested . . . that [an event study] was the *only* way to prove market efficiency; indeed, we explicitly declined to adopt any particular test for the market efficiency of stocks or bonds.") (internal quotation omitted).

Here, just like in *Waggoner*, all seven indirect factors supported market efficiency for Vale ADS, and at least five of the seven indirect factors supported market efficiency for the Vale Notes. This evidence is sufficient, standing alone, to find the markets for Vale Securities traded efficiently during the Class Period.

Against this record, Defendants submitted an expert report that criticized Lead Plaintiff's expert analysis of the direct *Cammer* factor, but importantly, Defendants' expert ***did not*** opine that the markets for Vale Securities were inefficient. It is no mystery why Defendants' expert side-stepped the central issue of market efficiency: overwhelming evidence establishes that the markets for both Vale ADS and Vale Notes were efficient during the Class Period.

### A. Vale ADSs Easily Satisfy This Circuit's Market Efficiency Standards.

Defendants argue that the R&R erred by finding market efficiency for Vale ADSs based on the indirect *Cammer* and *Krogman* factors (Defs.' Obj. 5-8), but that is precisely the finding that was endorsed by the Second Circuit in *Waggoner*, 875 F.3d at 97. Similarly, the court in *In re Vale S.A. Sec. Litig.*, 2019 WL 11032303, at *14 (S.D.N.Y. Sept. 27, 2019) found that "[e]ven if Lead Plaintiffs had failed to satisfy the fifth *Cammer* Factor, the Court's conclusion that the market for Vale ADRs was efficient would remain unchanged" because "[t]he remaining four *Cammer* Factors and three *Krogman* Factors support a finding of market efficiency." As another court recently stated in analyzing market efficiency, "the Second Circuit has explained that *Cammer* 5 is least important when the indirect *Cammer* factors clearly point towards a conclusion of market efficiency." *In re Teva Sec. Litig.*, 2021 WL 872156, at *9 (D. Conn. Mar. 9, 2021).

Nevertheless, Defendants argue that the Court here must scrutinize *Cammer* factor 5 because the evidence on that factor "suggests inefficiency." Defs.' Obj. at 5. But Judge Bulsara did scrutinize, at length, the evidence presented on *Cammer* factor 5 by both parties (R&R at 21-

5

33), and determined it was inconclusive (*id*. at 32). While Lead Plaintiff disagrees with his decision not to rely on our expert's event study,[4] his finding that market efficiency was established by the indirect factors is nonetheless supported by caselaw. *See In re Petrobras Sec.*, 862 F.3d 250, 278–79 (2d Cir. 2017) ("[I]ndirect evidence is particularly valuable in situations where direct evidence does *not* entirely resolve the question. Event studies offer the seductive promise of hard numbers and dispassionate truth, but methodological constraints limit their utility in the context of single-firm analyses.") (emphasis in original); *see also*, *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 96–98 (S.D.N.Y. 2018) (finding "[t]his case fits comfortably within the *Waggoner* framework" although "[i]t is true that [plaintiffs' expert's event] study is flawed."); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 84 (S.D.N.Y. 2015) (noting that "courts have found market efficiency in the absence of an event study or where the event study was not definitive" and citing cases); *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 442 (D. Ariz. 2019) (finding market efficiency where indirect factors were undisputed but *Cammer* 5 was not satisfied because "the scarcity of 'news days' during the relevant period preclude[d] meaningful statistical analysis.").[5]

Defendants complain that Judge Bulsara "mistakenly concluded that Defendants did not present any evidence of inefficiency" (Defs.' Obj. at 6), but Judge Bulsara correctly noted that Defendants' expert, Professor Torous, ***did not*** opine that the market for Vale ADSs (or Notes) was ***inefficient***. R&R at 32 (quoting testimony that expert rendered no opinion on market efficiency).

---

[4] Lead Plaintiff's expert, Professor Feinstein, has prepared similar event studies that many courts have relied upon in finding market efficiency, such as in *In re Petrobras Sec. Litig.*, 312 F.R.D. 354 (S.D.N.Y. 2016), which ruling was affirmed in relevant part by the Second Circuit, 862 F.3d at 277.

[5] Defendants argue that the R&R "inexplicably fail[ed] to grapple with" a footnote in an out-of-circuit district court decision that read *Waggoner* more narrowly than it is applied in this circuit. Defs.' Obj. at 6 (referring to *OPERS*, 2018 WL 3861840, at *15 n.14 (N.D. Ohio Aug. 14, 2018)). But the R&R cited ample supporting caselaw within this jurisdiction and was not required to address every unpersuasive outside authority Defendants mentioned.

6

Professor Torous explicitly testified that "evaluating whether the market for Vale ADRs or notes was inefficient or not was not a task that I was assigned, so *that was not something that I investigated in this report*." Torous Dep. at 23:7-17 (ECF No. 101-3); *id*. at 23:18-20 (confirming he did not opine on market efficiency). Defendants' attempt to use their expert's report to argue that the markets were inefficient when *the expert himself would not do so* was thus properly rejected by Judge Bulsara. *See In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *6 (S.D.N.Y. Sept. 29, 2015) ("As Defendants' expert offers no opinion on market efficiency through an event study of his own, the fifth *Cammer* factor can only weigh against Defendants or be neutral."); *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 521 (D. Minn. 2015) (rejecting argument that plaintiff's expert proved market inefficiency where "Defendants' expert did not opine that [plaintiff's] analyses proved inefficiency," and noting that "[a] study's failure to conclusively prove efficiency . . . is different from proving inefficiency.").

Nonetheless, Defendants specifically describe two analyses Professor Torous provided of Lead Plaintiff's event study which they say provides evidence of inefficiency: one in which Torous observed that none of the earnings or production announcements in Lead Plaintiff's regression analysis corresponded to statistically significant share price movements, and one that purported to consider only the dates with "new, material news." Defs.' Obj. at 7.[6] But Lead Plaintiff's expert, Professor Feinstein, explained in his report and testimony that these dates were not proper events for an event study because they did not contain new, material news or there was an offsetting mix of positive and negative news that would not be expected to cause a price reaction. *See* Feinstein

---

[6] Although Defendants describe Torous's discussions of these announcements as "event studies," the quoted portions of Torous's report clearly indicate that he was merely commenting on "***Dr. Feinstein's own model***." See Defs.' Obj. at 7 (block quote); *see also, Carpenters*, 310 F.R.D. at 94-95 (criticizing defense market efficiency expert for failing to perform his own event study). Indeed, as defense counsel succinctly stated at oral argument, Defendants contend that "plaintiffs put forward an expert that actually demonstrated market inefficiency." Nov. 17, 2021 Tr. at 38:4-6; R&R at 19.

Rep. at ¶¶ 179-218 (ECF No. 97-2) (discussing information released in each earnings announcement); Feinstein Rebuttal Rep. at ¶¶ 67-95 (ECF No. 101-2) (refuting Torous's analyses); Feinstein Dep. at 220:9-221:14 (ECF No. 101-4) (testifying that production data releases were not uniformly surprising relative to analysts' expectations); R&R at 21. Thus, the fact that Vale's security prices did not move significantly on these dates is "neither evidence for nor against market efficiency." Feinstein Rep. at ¶ 219 (ECF No. 97-2); *see also*, *Första AP-Fonden*, 312 F.R.D. at 521 (discussing "explanations for the lack of movement on news days that are consistent with market efficiency").

      **B.**      **The Vale Notes Also Satisfy This Circuit's Market Efficiency Standards.**

Defendants argue that the R&R erred in finding Vale Notes traded efficiently based on the findings that five of the seven indirect *Cammer* and *Krogman* factors support market efficiency.[7] Contrary to their claim, *Waggoner* does not ***only*** apply when all seven factors are met—indeed, the *Waggoner* Court expressly rejected the notion that there is one fixed test for market efficiency and emphasized that:

> [t]he *Cammer* and *Krogman* factors are simply tools to help district courts analyze market efficiency in determining whether the *Basic* presumption of reliance applies in class certification decision–making. But they are no more than tools in arriving at that conclusion, and certain factors will be more helpful than others in assessing particular securities and particular markets for efficiency.

875 F.3d at 98. The Second Circuit has also acknowledged, as did the R&R (at 33-34), that courts have modified these factors in analyzing bonds "with a recognition of the differences between the manner in which debt bonds and equity securities trade." *Petrobras*, 862 F.3d at 276. Thus, Defendants' claim that the R&R is a "striking outlier" misconstrues the caselaw examining market

---

[7] As described below, based on the evidence and caselaw submitted, the R&R could easily have found all *Cammer* factors were satisfied. Moreover, the only *Krogman* factor not satisfied was one for which the data was not available to perform the analysis. Thus, the indirect factors strongly support finding market efficiency.

efficiency for bonds, in which courts often consider different or modified factors and find efficiency where not all of the traditional *Cammer* or *Krogman* factors are satisfied.[8]

In accordance with these precedents, the R&R conducted a holistic analysis of the evidence presented and found that "the weight of the indirect evidence under *Krogman* and the first four *Cammer* factors, which tip in favor of efficiency, suggest that the Vale Notes, too, traded in an efficient market." R&R at 39. Specifically: (1) the Vale Notes were actively traded; (2) they were sold over-the-counter with at least 15 underwriters, including major investment banks, **and** sold on the NYSE—which is "the paradigmatic efficient market"[9]; (3) Vale was eligible to (and did) file F-3 registration statements (which supports efficiency because it indicates, *inter alia*, that the company has publicly disclosed all material information through timely filings with the SEC during the 12 prior months); (4) the Vale Notes had an aggregate par value of $12.05 billion— greater than the market capitalizations of at least 93% of all public companies listed on the NYSE, AMEX, NASDAQ, and ARCA during the Class Period—and individual par values larger than the market capitalization of many public companies; and (5) the Vale Notes' float, which is equal to the par value, was likewise supportive of market efficiency. These factors all strongly support market efficiency for the Vale Notes.[10]

Defendants try to make much over the fact that two factors—*Cammer* 2 (analyst coverage)

---

[8] For instance, the district court in *Petrobras* applied "modified" *Cammer* factors in its bonds analysis, 312 F.R.D. at 366, which was affirmed by the Second Circuit, 862 F.3d at 279. Similarly, in *In re Teva*, 2021 WL 872156, at *21, the court found that *Cammer* 1, 2, and 4 and *Krogman* 1 and 2 supported market efficiency for the notes, while *Cammer* 3 weighed "slightly in favor" and *Krogman* 3 was inapplicable. On this basis, the court ruled that because of this "strong evidence of market efficiency . . .*Cammer* 5 takes on limited importance." *Id.*

[9] *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 44 (S.D.N.Y. 2018); *see also*, *Basic*, 485 U.S. at 249 n.29 (assuming shares traded on NYSE traded on a "well-developed, efficient, and information-hungry market").

[10] Additional empirical evidence of market efficiency for the Vale Notes, which was not discussed in the R&R, includes a regression analysis Professor Feinstein conducted showing all Vale Notes moved significantly on a day-to-day basis in response to news concerning market interest rates. Feinstein Rep. at ¶¶ 277-280 (ECF No. 97-2). This "day-to-day cause-and-effect relationship . . . between changes in market interest rates and the prices of the Vale Notes, proves that market participants did not ignore valuation-relevant information when pricing and trading the Vale Notes." *Id.* at ¶ 280. Defendants did not challenge these findings.

and *Krogman* 3 (bid-ask spread) were not found to be satisfied. Defs.' Obj. at 9-10. But regarding *Cammer* 2, Lead Plaintiff presented evidence that the Company was covered by at least 35 analysts and the Vale Notes were covered by the three major ratings agencies, which other courts—including *Petrobras*, affirmed by the Second Circuit—have found sufficient to satisfy *Cammer* 2. *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 366 (S.D.N.Y. 2016), *aff'd in relevant part,* 862 F.3d at 279; *see also, In re Dynex Cap., Inc. Sec. Litig.*, 2011 WL 781215, at *4–5 (S.D.N.Y. Mar. 7, 2011) (finding *Cammer* 2 satisfied based on similar evidence). Thus, the R&R could easily have found all *Cammer* factors satisfied, and the only *Krogman* factor not satisfied was one for which the data was not available to perform the analysis.

## II.    THE R&R CORRECTLY APPLIED SECOND CIRCUIT AUTHORITY IN FINDING INDIVIDUAL DOMESTICITY ISSUES DO NOT PREDOMINATE.

Defendants contend that the R&R erred by rejecting their speculation that individual proof of domesticity for potential over-the-counter Vale Notes purchases would predominate over common questions. But, as the R&R found, there is no evidence in the record to suggest that domesticity would present a substantial individual issue. R&R at 42. To the contrary, the Class is defined to exclude foreign transactions, and the majority of the Class is comprised of Vale ADS, which are undisputedly domestic transactions. Moreover, all seven of the Vale Notes were registered and traded on the NYSE, and such transactions are likewise plainly domestic. The R&R thus correctly concluded that "[a]bsent any evidence that the number of non-eligible transactions that might slip through, or which could not be easily handled through a claims administration or trial management process, is so numerous as to overwhelm the eligible transactions, the Court will not rely on mere speculation to conclude that predominance is defeated." R&R at 42; *see also, In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 350–51 (S.D.N.Y. 2015) (finding domesticity issues concerning "295 investors in a potential class of many thousands . . . does not

10

defeat predominance.").

Contrary to Defendants' further argument, Judge Bulsara did not shift the burden regarding predominance or domesticity to Defendants, but merely observed that Defendants had not "provided any quantification of the number of potential non-U.S. bond transactions at issue" (R&R at 42)—which they surely would have provided if it were a large number. There is no error in that observation.

Defendants also argue that the R&R failed to take a "close look" at domesticity and merely deferred the issue to be dealt with later. Defs.' Obj. at 12-13. That is not correct. Because there is no evidence of current domesticity issues, the R&R addressed the possibility that individual issues of domesticity may arise in the future and found that the Court has ample tools based on Second Circuit authority to address them. R&R at 41-42 (citing *Petrobras*, 862 F.3d at 274 (where *Morrison* issues arise, "we emphasize that district courts are authorized to implement management strategies tailored to the particularities of each case[.]") and *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (discussing management tools available to courts dealing with individualized damages issues in class actions)); *see also*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 148752, at *9 (S.D.N.Y. Jan. 15, 2021) ("If *Morrison* issues become significant in the prosecution of this case, the Court will have the means to deal with them.").[11]

Finally, Defendants argue that the R&R confused the issue of predominance/domesticity with ascertainability (Defs.' Obj. at 12), but it did no such thing. Rather, at the end of its discussion of the management tools available to courts in the event individualized issues arise, the R&R noted that Lead Plaintiff is not required to prove the administrative feasibility of its defined Class at this

---

[11] Indeed, in *Petrobras*, the settlement class that was ultimately certified included a similar definition of U.S. transactions as the one here. *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 865–66 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019). Thus, it ultimately fell to the claims administrator to assess claimants' proof of domesticity.

11

stage of the litigation. R&R at 42. This is plainly a related issue to the question of whether the

Class definition sufficiently excludes foreign transactions,[12] and indeed, Judge Bulsara expressly

noted the relation of domesticity and ascertainability during the oral argument. Nov. 17, 2021 Tr.

at 60:10-18. Again, there is no error in the R&R on this point.

### III.    THE R&R'S APPROVAL OF LEAD PLAINTIFF'S DAMAGES MODEL FOLLOWS THE WEIGHT OF AUTHORITY IN THIS JURISDICTION.

Defendants argue that Lead Plaintiff's damages model is too vague to meet the low bar set

by *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) for approval at class certification, and that

the R&R is deficient for not addressing an out-of-circuit district court case. These arguments are

meritless.

*Comcast* and Second Circuit authority merely require that a plaintiff's "damages model . .

. track his theory of liability." *Waggoner*, 875 F.3d at 106. Moreover, "*Comcast* explicitly states

that '[c]alculations need not be exact.'" *Id*. Lead Plaintiff's damages model satisfies this

standard—just like the nearly identical damages model approved by the Second Circuit in

*Waggoner* (*see* Expert Report of Zachary Nye, Ph.D., *Strougo v. Barclays PLC*, 2015 WL

13505645 (S.D.N.Y. July 24, 2015))—by measuring shareholders' out-of-pocket damages based

on the share price drops when the allegedly misrepresented and omitted information was revealed.

Thus, "this is a case in which the Plaintiffs' proposed measure for damages is ... directly linked

with their underlying theory of classwide liability ... and is therefore in accord with the Supreme

Court's ... decision in *Comcast*." *Waggoner*, 875 F.3d at 105-06.

Similar damages models are routinely accepted by courts in this jurisdiction, and indeed,

---

[12] The Second Circuit has likewise noted the interplay of predominance and ascertainability in *Petrobras*, 862 F.3d at 268. There, the Court rejected requiring a heightened ascertainability test, in part, because the test "risks encroaching on territory belonging to the predominance requirement, such as classes that require highly individualized determinations of member eligibility." This is the issue on which the R&R was commenting.

this damages model is "the generally accepted method for measuring damages in a securities fraud class action." *In re Signet Jewelers*, 2019 WL 3001084, at \*20; *see also*, *In re Teva*, 2021 WL 872156, at \*41-42 (approving same type of damages model); *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 47 (S.D.N.Y. 2018) (same); *Carpenters*, 310 F.R.D. at 99 (same); *McIntire*, 38 F. Supp. 3d at 435 (same). Thus, Lead Plaintiff's damages model easily satisfies the standard for class certification. *See* 7 William B. Rubenstein, Newberg on Class Actions § 22:81 (5th ed.) (Westlaw 2021) ("Securities class actions rarely have trouble complying with ... *Comcast*'s insistence on a classwide methodology").

Against the weight of this circuit's jurisprudence, Defendants argue that Judge Bulsara erred by failing to follow the ruling in *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ("*OPERS*"), where the court found that the damages model must specify all economic tools used to calculate damages. But that decision is plainly out of step with the jurisprudence of this circuit,[13] and courts have repeatedly rejected similar arguments that an expert must "specify which 'valuation tools' he will use" to satisfy the class certification standard. *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at \*17 (S.D.N.Y. Aug. 13, 2018) (rejecting same argument and approving damages model by Feinstein); *see also, In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) ("[N]othing in *Comcast* requires an expert to **perform** his analyses at the class certification stage.") (citing cases) (emphasis in original).[14]

---

[13] Indeed, contrary to *OPERS*, a more persuasive outside authority that is consistent with the jurisprudence in this circuit is *Monroe Cty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 399 (N.D. Ga. 2019). There, the court rejected the same arguments proffered by Defendants here "[b]ecause the decision of which, if any, of those tools will be necessary to measure damages in this case depends on development of the fact record on the merits," and therefore, "it would be inappropriate for Professor Feinstein to conclusively state which he would use at this stage of the litigation."

[14] Defendants also cite *Sicav v. Wang*, 2015 WL 268855, at \*3 (S.D.N.Y. Jan. 21, 2015), but that case is inapposite. There, the plaintiffs' damages model was based on a gradual share price decline that was allegedly caused by insider selling—it was not a model based on corrective disclosures like the one here. As the *Sicav* Court noted, the plaintiffs faced "daunting precedent" because "claims of injury due not to corrective disclosures but rather to the mechanics by

## IV.   THE R&R CORRECTLY REJECTED DEFENDANTS' STRAINED ADEQUACY ARGUMENTS BASED ON A FALSE SMEAR OF CAAT's CHARACTER.

Defendants claim that the R&R "ignored" a finding against CAAT's former counsel in the *Groupo* matter and erred by not finding CAAT inadequate on that basis. Defs.' Obj. at 14. But that is wrong: Defendants' argument was properly heard and rejected by Judge Bulsara. *See* Nov. 17, 2021 Tr. at 56:17-57:20 (argument concerning conduct of Robbins Geller); R&R at 10-11. As the R&R correctly states in rejecting the argument, the *Groupo* court "did not conclude that CAAT displayed a lack of candor or engaged in impropriety," rather, it found CAAT atypical based on an investment in a third-party fund that shorted the subject stock. R&R at 10; *see also*, *In re Groupo Televisa Sec. Litig.*, 2020 WL 3050550, at *7-8 (S.D.N.Y. June 8, 2020). There is no basis on this record for finding CAAT is inadequate.

Defendants' further claim that CAAT "should have immediately updated its PSLRA certification in this matter" (Defs.' Obj. at 15) when its application to serve as class representative in *Groupo* was denied is baseless. CAAT's certification accurately disclosed on March 28, 2019 that CAAT was serving as lead plaintiff in the *Groupo* matter, and there is no legal, ethical, or even logical reason that CAAT should update this certification in perpetuity for events that occur years later. Defendants' only purported authority are two cases in which the lead plaintiff certifications were ***inaccurate when filed***, which is plainly not the case here. Thus, the R&R properly rejected Defendants' arguments against CAAT's adequacy.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully submits that Defendants' objections to the R&R should be overruled and the recommendations adopted to: (a) certify this action as a

---

which shares of stock were priced during a protracted period of open-market trading have almost always been held ill-suited to classwide resolution." *Id*. Thus, that case is not instructive here.

14

class action pursuant to Rule 23(a) and 23(b)(3); (b) certify Lead Plaintiff as Class Representative of the proposed Class; and (c) appoint Kaplan Fox as Class Counsel.

Dated: February 8, 2022

**KAPLAN FOX & KILSHEIMER LLP**

/s/ *Frederic S. Fox*
Frederic S. Fox
Donald R. Hall
Melinda Campbell
Aaron Schwartz
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
*Lead Counsel for Lead Plaintiff and the Class*


**THE ROSEN LAW FIRM, P.A.**
Brian Alexander, Esq.
Brent J. LaPointe, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
*Additional Counsel*

15