```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

In Re VALE S.A. SECURITIES LITIGATION            MEMORANDUM AND ORDER
                                                 19-CV-526 (RJD) (SJB)
------------------------------------------------------------ x
```

DEARIE, District Judge

      Lead Plaintiff Colleges of Applied Arts and Technology Pension Plan ("CAAT"), bringing claims against Defendants Vale S.A. and certain of its senior corporate executives, moves for class certification pursuant to Federal Rule of Civil Procedure 23. The motion was referred to Magistrate Judge Sanket Bulsara for a report and recommendation. On January 11, 2022, Judge Bulsara issued a thorough R&R recommending that CAAT's motion be granted. The Court now adopts the R&R and grants the Motion for Class Certification.

## BACKGROUND

      Vale is a multinational mining and metals company headquartered in Brazil. See Consolidated Complaint, ECF No. 47, ¶ 35. CAAT, a Canadian pension fund, brings this action claiming violations of United States securities laws in relation to alleged misstatements made before and immediately after the collapse of Dam 1 of Vale's iron ore mine in Minas Gerais, Brazil on January 25, 2019. Id. ¶¶ 2-3, 10-11, 27, 30, 34. Vale filed a Motion to Dismiss the complaint, which this Court denied in part. See ECF No. 74. The parties proceeded to discovery, which is ongoing.

      On June 4, 2021, CAAT moved for certification of a class consisting of all persons who purchased on the New York Stock Exchange ("NYSE") or other U.S. exchanges or in a U.S. transaction, between October 27, 2016 and February 6, 2019, the following Vale securities: (1) American Depositary Shares ("ADSs"); (2) 5.875% Guaranteed Notes due 2021; (3) 4.375% Guaranteed Notes due 2022; (4) 6.250% Guaranteed Notes due 2026; (5) 8.250% Guaranteed

Notes due 2034; (6) 6.875% Guaranteed Notes due 2036; (7) 6.875% Guaranteed Notes due 2039; and (8) 5.625% Notes due 2042. See Pl. Cert. Mot., ECF No. 96; Pl. Cert. Br., ECF No. 96-1, at 9. The motion also seeks appointment of CAAT as Class Representative and Kaplan Fox & Kilsheimer LLP as Class Counsel. Pl. Cert. Mot. at 1.

Judge Bulsara held oral argument on November 17, 2021. On January 11, 2022, Judge Bulsara issued his report recommending that CAAT's motion be granted based on his conclusion that CAAT has satisfied all requirements under Rule 23(a) and Rule 23(b)(3). See R&R, ECF No. 110. Defendants timely filed their objections to the R&R on January 25, 2022. See Def. Obj. Br., ECF No. 111. CAAT responded to the objections on February 8, 2022. See Pl. Opp. Br., ECF No. 112. Finally, Defendants filed a reply on February 15, 2022. See Def. Obj. Rep., ECF No. 114.

## **LEGAL STANDARDS**

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). The court reviews *de novo* "those portions of the report . . . to which objection is made." § 636(b)(1)(C). As for the portions to which no objections are made, the court reviews the magistrate's recommendations for clear error. White v. W. Beef Props., Inc., No. 07-cv-2345, 2011 WL 6140512, at *2 (E.D.N.Y. Dec. 9, 2011) (Dearie, J.); see also § 636(b)(1)(A).

Before certifying a class action, a district court must conclude that the class satisfies Rule 23(a)'s four requirements — numerosity, commonality, typicality, and adequacy — and one of the three sub-sections of Rule 23(b). FED. R. CIV. P. 23. CAAT seeks certification under Rule 23(b)(3), which allows certification when (i) questions common to the class predominate over questions affecting only individual members and when (ii) a class action is the superior method

for fairly and efficiently adjudicating the controversy. Id. Rule 23 also contains an implicit "ascertainability" requirement. See In re Petrobras Secs., 862 F.3d 250, 264 (2d Cir. 2017).

**DISCUSSION**

The parties do not object to the R&R's conclusions as to five of the seven Rule 23 requirements: numerosity, commonality, typicality, superiority, and ascertainability. The R&R's conclusion that CAAT has satisfied all five of these requirements is sound and not clearly erroneous. The Court adopts these portions of the R&R in full. The parties also do not object to the recommendation that the motion for appointment as class counsel and class representative be denied as moot. As the R&R explains, on May 13, 2019, Judge Bulsara issued an order appointing CAAT as Lead Plaintiff and Kaplan Fox & Kilsheimer LLP as Class Counsel. ECF No. 35. Seeing no reason to reevaluate this status quo, the Court adopts this conclusion as well.

Defendants raise four objections to the R&R. The first three objections go to Rule 23(b)(3) predominance and the fourth objection pertains to adequacy under Rule 23(a). The Court, based on its *de novo* review, finds all four objections are without merit.

### I. Rule 23(b)(3) Predominance

A plaintiff seeking class certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23. "[A]n issue is common to the class when it is susceptible to generalized, class-wide proof." In re Nassau Cnty. Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006). The purpose of the predominance inquiry is to test whether the class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 594 (1997).

3

Defendants argue that the R&R errs because three types of individual questions will predominate over class-wide questions in this case: reliance questions, domesticity questions, and damages questions. None of these objections is persuasive.

### a. *Individual Reliance Questions Will Not Predominate for the ADSs or the Notes.*

To recover damages for violations of Section 10(b) of the Securities and Exchange Act and SEC Rule 10b-5, as CAAT seeks to do, a plaintiff must prove that she relied upon the defendant's misrepresentation or omission when purchasing the security. Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014). In Basic Inc. v. Levinson, 485 U.S. 224 (1988), the Supreme Court held that, in certain circumstances, securities fraud plaintiffs can satisfy the reliance requirement on a class-wide basis via the "fraud-on-the-market" presumption of reliance. Id. at 246-47. To invoke the Basic presumption, a plaintiff must prove, *inter alia*, that the security traded in an efficient market, meaning that "prices of the [security] incorporate most public information rapidly" because "market professionals generally consider most publicly announced material statements about [the company], thereby affecting stock prices." Waggoner v. Barclays PLC, 875 F.3d 79, 94 (2d Cir. 2017) (internal quotation marks and citations omitted).

To assess whether a security traded in an efficient market, courts routinely consider the five factors set forth in Cammer v. Bloom, 711 F.Supp. 1264 (D.N.J. 1989): (1) the average weekly trading volume of the security; (2) the number of analysts following the security; (3) the extent to which market makers traded in the security; (4) the eligibility of the issuer to file an SEC Form S-3 or F-3; and (5) a demonstrated cause-and-effect relationship between unexpected, material disclosures about the company and changes in the security's price. See Waggoner, 875 F.3d at 94. Courts also consider the three factors set forth in Krogman v. Sterritt, 202 F.R.D. 467 (N.D. Tex. 2001): (1) market capitalization of the company; (2) bid-ask spread of the security; and (3) percentage of the security not held by insiders. Waggoner, 875 F.3d at 94-95. Cammer

4

factor five is referred to as a "direct" measure of market efficiency, while the other seven factors are "indirect" indicia of efficiency. Id. at 94. The burden to prove market efficiency "is not an onerous one." Petrobras, 862 F.3d at 278.

The record in this case reveals a "battle of the experts" on the issue of whether the Vale securities traded in an efficient market. CAAT's expert, Dr. Steven Feinstein, submitted a report purporting to demonstrate that all eight Cammer and Krogman factors are met for the Vale ADSs and the Vale Notes. See Corrected Feinstein Report, ECF No. 97-2. In rebuttal, Defendants submitted a report from their own expert, Dr. Walter Torous, arguing that Dr. Feinstein's conclusions are methodologically unsound and incorrect for both the ADSs and Notes. See Torous Report, ECF No. 107-1. The R&R displays a careful review of the many submissions, ultimately concluding that CAAT met its burden of demonstrating market efficiency for the Vale securities. Defendants object as to both securities, which we now address in turn.

    (i)    The Vale ADSs

All sides agree that the first four Cammer factors and all three Krogman factors are met for the ADSs. See R&R at 15-17. The following facts from the Feinstein Report are undisputed:

- The Vale ADSs had an average weekly trading volume of approximately 9.9%, far exceeding the threshold for a strong presumption of efficiency. Feinstein Report ¶ 75.

- Analysts from at least 35 firms covered Vale during the class period. Id. ¶¶ 78-80.

- The ADSs had at least 140 market makers during the class period. Id. ¶ 93. The ADSs traded on the NYSE, under the supervision of a lead market maker. Id. ¶ 90.

- Vale was eligible to file the SEC Form F-3 throughout the class period. Id. ¶ 104.

- The market capitalization of the ADSs averaged $15.3 billion during the class period, larger than 94% of all publicly traded companies in the United States. Id. ¶ 107.

5

- The ADSs had a narrow average bid-ask spread of 0.09%. Id. ¶ 113.
- During the class period, none of Vale's 1.3 billion ADSs were held by insiders. Id. ¶ 109.

Defendants' objections hinge on Cammer factor five. Even though Judge Bulsara disregarded Dr. Feinstein's event study as too subjective, leaving CAAT without any credible direct evidence of market efficiency under factor five, the R&R nevertheless concluded that the Vale ADSs traded in an efficient market due to the overwhelming indirect evidence of efficiency described above. See R&R at 32-33. Defendants object to this conclusion, arguing that Second Circuit precedent *requires* a district court to consider direct evidence of efficiency via an event study when a defendant presents conflicting evidence of *in*efficiency. Def. Obj. Br. at 10-11.[1] Defendants also insist that Dr. Torous submitted "substantial evidence" of inefficiency, id. at 11, and rebuke the R&R for "erroneously claim[ing] that Defendants did not offer evidence that the market was efficient," id. at 7. CAAT disagrees, emphasizing that the R&R correctly concluded Defendants had not put forth evidence of inefficiency because Dr. Torous refused to opine at his deposition as to whether the ADSs were efficient or not. Pl. Opp. Br. at 11-12.

The Court recognizes why Defendants have hinged their objection on this point: Defendants' purported evidence of inefficiency is their only logical argument for distinguishing the facts here from Waggoner, in which the Second Circuit affirmed a finding of market

---

[1] Defendants implore the Court that a plaintiff may prove market efficiency without direct evidence under Cammer factor five "*only if*: (a) all the indirect factors 'so clearly' point to efficiency; and (b) there are no indications of inefficiency that would require scrutiny of direct evidence." Def. Obj. Br. at 6 (citing Waggoner, 875 F.3d at 97-98). But this objection exaggerates Waggoner, which, in the Court's reading, says nothing about what a plaintiff *must* present to prove market efficiency in the absence of a persuasive event study; rather, the holding of Waggoner is that courts *may* find market efficiency is satisfied based on the indirect factors alone. 875 F.3d at 97-99. Indeed, far from mandating certain inquiries, Waggoner emphasizes that district courts must conduct a holistic review. Id. at 98.

efficiency without direct evidence when, as here, "[a]ll seven of the indirect factors . . . weighed so clearly in favor of concluding that the market . . . was efficient that the Defendants did not even challenge them." 875 F.3d at 98. Yet, Defendants' argument is overblown. The Court does quibble slightly with Judge Bulsara's statement that Defendants have not presented *any* evidence that the market for ADSs was inefficient. We recognize that portions of the Torous Report do note that the ADSs behaved inefficiently on certain dates based on certain tests. See Def. Obj. Br. at 12. However, we interpret the R&R to be making the uncontroversial observation that Dr. Torous' task was to rebut Dr. Feinstein's conclusions of market efficiency, not to provide his own assessment that the market was *in*efficient. See Torous Report ¶ 13 ("I have been retained . . . [to] *evaluate Dr. Feinstein's opinions* relating to market efficiency . . . .") (emphasis added).

Moreover, even if the Court were persuaded that Defendants presented some direct evidence of inefficiency, we would still agree with the R&R that CAAT has proven market efficiency. This conclusion is compelled by the strength of the seven unrebutted indirect factors alone. See, e.g., In re Allergan PLC Secs. Litig., No. 18-cv-12089, 2021 WL 4077942, at *10 (S.D.N.Y. Sept. 8, 2021) (when the indirect factors "so strongly support a presumption of market efficiency" this "obviates the need to examine the empirical evidence necessary to evaluate the fifth Cammer factor"); In re Signet Jewelers Ltd. Secs. Litig., No. 16-cv-6728, 2019 WL 3001084, at *13 (S.D.N.Y. July 10, 2019) (where the indirect Cammer and Krogman factors "all point toward market efficiency, a court can dispose of Cammer's fifth factor completely"). Defendants make much of Ohio Public Employees Retirement Systems v. Federal Home Loan Mortgage Corp., No. 4:08-cv-160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ("OPERS"), but OPERS' discussion of Cammer factor five is out of step with Second Circuit precedent, so it is not persuasive as to the Court's assessment of this issue. Compare id. at *17 (concluding that

7

"the fifth factor is the most important factor" and that the indirect "factors are not enough, alone, to establish market efficiency") with Waggoner, 875 F.3d at 97 (a plaintiff may demonstrate market efficiency without evidence under factor five based on the indirect factors only).

Here, the ADSs traded on the NYSE, had very high trading volume, were covered by dozens of analysts, and had a massive market capitalization. On this record, the undisputed indirect factors prove that the market for the ADS was efficient, regardless of whether Defendants presented some countervailing evidence of inefficiency.

(ii) The Vale Notes

For the Vale Notes, the R&R concluded that five of the indirect factors support market efficiency (with one providing slight support), one indirect factor does not support efficiency, and one indirect factor could not be calculated. See R&R at 34-37. Specifically, Judge Bulsara found that the following facts were suggestive of market efficiency for the Notes:

- The average weekly trading volume for all seven Vale Notes exceeded the threshold for a substantial presumption of efficiency. Id. at 34-35.[2]

- The Notes were covered by 15 underwriters, which serve as market makers for bonds, including major investment banks. The Notes also traded on the NYSE. Id. at 36.

- The Notes had a very large aggregate par value of $12.05 billion. Id. at 36-37.

The parties did not object to this portion of the R&R,[3] and the Court agrees with Judge Bulsara's summation of the evidence.

---

[2] Because Dr. Feinstein's methodology for calculating trading volume of the Notes may have included duplicate trades, the R&R held that this factor provides limited support for efficiency.
[3] Although CAAT did not file any objections to the R&R, CAAT does urge the Court to find Cammer factor two satisfied for the Notes. See Pl. Opp. Br. at 15. However, Dr. Feinstein does not point to any analysts or reports who covered the Vale Notes specifically. "[I]f there are no analysts specifically following a given debt security, Cammer factor two provides little support for market efficiency." In re Glob. Brokerage, Inc., No. 17-cv-916, 2021 WL 1160056, at *14

8

As for the direct evidence, the R&R observed that Dr. Feinstein's event study suffers from the same methodological flaws for the Notes as it did for the ADSs, so the event study is "entitled to no weight." Id. at 38. But even without direct evidence the R&R concluded that the Vale Notes traded in an efficient market based on the significant weight of the indirect evidence. Id. at 39. Defendants object to this conclusion, arguing that precedent does not permit the Court to conclude that the Notes were efficient based on the indirect factors alone because not all seven factors clearly point towards efficiency and because Defendants presented evidence of market inefficiency for the Notes. Def. Obj. Br. at 13-15.

The Court disagrees, for several reasons. First, because the Cammer and Krogman factors were designed to test market efficiency for equity securities, they are considered less instructive when applied to debt securities like the Notes. See R&R at 33-34 (collecting cases). As other courts have observed, denying the Basic presumption for a debt security like the Vale Notes because they do not behave the way equity securities behave "is throwing out oranges because they are not apples." In re Enron Corp. Secs., 529 F.Supp.2d 644, 768 (S.D. Tex. 2006); see also Petrobras, 862 F.3d at 276 (noting that the Cammer and Krogman factors have routinely been applied to bond markets with a recognition of the differences in market behavior for debt bonds and equity securities). With the Notes, even more so than with the ADSs, it is important for the Court to conduct a "holistic analysis based on the totality of the evidence presented." Waggoner, 875 F.3d at 97 (quoting Petrobras, 862 F.3d at 277).

Additionally, as explained in Petrobras, the weight of the "indirect evidence is particularly valuable in situations where direct evidence does *not* entirely resolve the question."

---

(S.D.N.Y. March 18, 2021) (cleaned up), report and recommendation adopted, 2021 WL 1105367 (S.D.N.Y. Sept. 16, 2021). Thus, we concur with Judge Bulsara that CAAT has not demonstrated that factor two supports market efficiency.

9

862 F.3d at 278 (emphasis in original). This instruction suggests that where event studies are unpersuasive or conflicting, courts should turn to the indirect factors and see where they point. That is exactly what Judge Bulsara did. Here, the indirect factors support a finding of efficiency: the Notes traded on the NYSE, had many underwriters, including prominent investment banks, and had a high aggregate par value, larger than the total capitalization of many public companies. See R&R at 36-37. These facts satisfy the Court that the Notes traded in an efficient market, even in the face of some countervailing indicators of inefficiency.

The Court thus concurs with the R&R and adopts its finding that CAAT has shown market efficiency for both Vale securities.

### b. *Individual Domesticity Questions Will Not Predominate for the Notes.*

The reach of U.S. securities laws is limited to domestic transactions. See Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 267 (2010). Before certifying a class in a securities fraud action, a district court must give careful scrutiny to whether individual questions of domesticity under Morrison will defeat predominance. Petrobras, 862 F.3d at 271-73. The R&R considered this question and concluded that domesticity issues do not defeat predominance for the Vale Notes. R&R at 41-42. Defendants object, arguing that CAAT's proposed class is incompatible with Petrobras because CAAT has not provided a class-wide method for determining which Vale Notes were traded domestically. Def. Obj. Br. at 16-17. If certified, Defendants argue, individual questions will predominate because the case will require plaintiff-by-plaintiff investigations into the location of each class member's transaction.

Defendant's argument overlooks the fact that the proposed class is limited to include only those Notes that traded on the NYSE "or other U.S. exchanges or in a U.S. transaction." Pl. Cert. Br. at 9. As the R&R observes, this class definition should largely limit potential claims to

domestic transactions eligible under Morrison. See R&R at 41. Moreover, there is no reason to speculate that individualized domesticity inquiries will predominate when the record does not indicate that foreign transactions account for a large proportion of the class. Petrobras explicitly mused that class certification in a securities case involving a foreign company may be proper if a district court "carefully weigh[s] the relationship between common and individual questions in the case and determine[s] that any variation across plaintiffs is, on balance, insufficient to defeat predominance." 862 F.3d at 274 n. 27. Given the multitude of important common questions in this case, some indeterminate number of individual domesticity questions will not overwhelm the cohesiveness of the class to defeat predominance. See Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied if common questions susceptible to generalized proof are more substantial than questions subject only to individualized proof). The R&R's recommendations as to domesticity under Morrison are sound and adopted in full.

### c. *Individual Damages Questions Will Not Predominate.*

A plaintiff seeking class certification under Rule 23(b)(3) must put forth a model showing that "damages are capable of measurement on a class-wide basis." Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013). The Second Circuit interprets Comcast as requiring plaintiffs to offer a class-wide model that measures damages resulting from the class's asserted theory of liability, see Waggoner, 875 F.3d at 106, a burden that most courts observe is relatively modest, see Roach, 778 F.3d at 407; Strougo v. Barclays PLC, 312 F.R.D. 307, 313 (S.D.N.Y. 2016).

Judge Bulsara concluded that CAAT has satisfied this requirement. As the R&R noted, Dr. Feinstein explained that he would calculate damages by preparing a four-step model to measure "the difference between the amount of security price inflation at purchase and the amount of inflation in the security price at sale or, if held, at the end of the Class Period . . . ."

11

Feinstein Report ¶ 290. This model tracks CAAT's theory of liability, which is that investors were harmed when the price they paid for the Vale securities was inflated by Defendants' alleged misstatements. We agree with the R&R that this model satisfies the burden articulated in Comcast. See Martinek v. AmTrust Fin. Servs., No. 19-cv-8030, 2022 WL 326320, at *18-19 (S.D.N.Y. Feb. 3, 2022) (endorsing the R&R's damages analysis and concluding that a similar damages methodology proposed by Dr. Feinstein was sufficient for class certification purposes).

Defendants argue that Comcast sets a higher bar, requiring CAAT to provide a damages model that is sufficiently specific for the court to "'understand, concretely, how plaintiffs propose to reliably establish damages.'" Def. Obj. Br. at 19 (quoting Sicav v. Wang, No. 12-cv-6682, 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015)). They argue that Dr. Feinstein's model is "cursory" and "flaw[ed]" because it "fail[s] to specify any valuation tools or methods." Def. Obj. Br. at 8. Defendants again urge that the R&R erred for failure to follow the guidance of OPERS, which rejected a damages model prepared by Dr. Feinstein as too "vague, indefinite, and unspecific." 2018 WL 3861840, at *19. However, OPERS' analysis is contrary to the many recent in-circuit cases concluding that damages models very similar to the one offered here were sufficiently concrete and detailed to pass muster at the class certification stage. See, e.g., Martinek, 2022 WL 326320, at *18-19; Pearlstein v. BlackBerry Ltd., No. 13-cv-7060, 2021 WL 253453, at *22 (S.D.N.Y. Jan. 26, 2021) (citing cases that "have accepted Dr. Feinstein's three-step method of calculating per share damages"). Because CAAT has met its burden of providing a class-wide damages model, the R&R's recommendation on this issue is adopted.

II. **Rule 23(a) Adequacy**

Rule 23(a) adequacy requires the district court to find that the proposed class representative will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

The purpose of this analysis is to protect absent class members by appointing a representative who will "have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006); see also Amchem, 521 U.S. at 625 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). A lead plaintiff's honesty and trustworthiness are relevant to the adequacy assessment. See Savino v. Comput. Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998).

The R&R concluded that the adequacy requirement is met. Defendants object for two reasons, neither of which has merit.

First, Defendants fault the R&R for failing to address CAAT's behavior in another class action, in which Judge Stanton denied CAAT's application to serve as class representative because CAAT's short position on the disputed security made it atypical of the class it sought to represent. In re Grupo Televisa Secs. Lit., No. 18-cv-1979, 2020 WL 3050550, at *7-8 (S.D.N.Y. June 8, 2020). CAAT's counsel in that case was later disqualified for its "fraud" in concealing CAAT's short position from the court. See In re Grupo Televisa Secs. Lit., No. 18-cv-1979, 2021 WL 2000005, at *3 (S.D.N.Y. May 19, 2021).

Defendants accuse the R&R of failing to address these facts, see Def. Obj. Br. at 19, but Judge Bulsara did engage with Grupo, concluding that CAAT's conduct in that case did not require a finding of inadequacy in this case, especially because the basis for Judge Stanton's conclusion was that CAAT was *atypical* of the class, not that it was *inadequate*, see R&R at 10-11. This analysis is sound. In Grupo, CAAT's counsel — which does not represent CAAT here — engaged in behavior found to be fraudulent. It may well be that CAAT knew of this concealment, but even viewed in the worst possible light, CAAT's conduct in Grupo does not

13

convince the Court that CAAT is an inadequate class representative as to the class it seeks to represent here. Cf. In re Pfizer Inc. Secs. Litig., 282 F.R.D. 38, 51 (S.D.N.Y. 2012) ("Courts rarely deny class certification on the basis of the inadequacy of class representatives, doing so only in flagrant cases, where the putative class representatives . . . are so lacking in credibility that they are likely to harm their case.") (internal quotation marks and citations omitted).

Defendants' second objection is equally flawed. When CAAT applied to serve as class representative in this case in March 2019, it stated that it was then serving as lead plaintiff in the Grupo case, which was true at the time. According to Defendants, CAAT should have updated that certification when its motion in Grupo was denied in June 2020. See Def. Obj. Br. at 20. However, Defendants fail to cite any authority for the proposition that parties seeking to serve as class representative have an ongoing obligation to update their certification. The Court agrees with the R&R that there is no candor problem here. See R&R at 10.

The record lacks any indication that CAAT will not vigorously prosecute this case on behalf of absent class members. CAAT sustained damages because of the same alleged misrepresentations as the rest of the class and seeks to recover its losses. CAAT has participated actively in the litigation thus far. As the R&R found, the adequacy requirement is satisfied.

## CONCLUSION

With thanks to Judge Bulsara for his well-reasoned report, the R&R, ECF No. 110, is adopted in full. Plaintiff's Motion for Class Certification, ECF No. 96, is granted.

SO ORDERED

Dated: Brooklyn, New York                  /s/ Raymond J. Dearie\_\_\_\_
       March 31, 2022                       RAYMOND J. DEARIE
                                                 United States District Judge