**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
                                                          :
In re Vale S.A. Securities Litigation                     :          No. 19 Civ. 526 (LDH) (SJB)
                                                          :
                                                          :          <u>**ORAL ARGUMENT REQUESTED**</u>
                                                          :
                                                          :
                                                          :
                                                          :
----------------------------------------------------------x

**VALE'S MEMORANDUM OF LAW**
<u>**IN SUPPORT OF CLASS DECERTIFICATION**</u>

GIBSON, DUNN & CRUTCHER LLP

Christopher M. Joralemon
Akiva Shapiro
Mary Beth Maloney
David M. Kusnetz

200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...........................................................................................................4

    I.      District Court Proceedings...................................................................4

          A.      Plaintiff's Motion for Class Certification ..................................4

          B.      The Report & Recommendation ...............................................5

          C.      Vale's Objections to the R&R ...................................................6

          D.      The District Court's Memorandum and Order Adopting the R&R .............6

    II.     Expert Report of Dr. Sumon Mazumdar...............................................7

DISCUSSION ..............................................................................................................9

    I.      Standards Governing This Motion........................................................9

          A.      The Law Applicable to Class Decertification.............................9

          B.      Rule 23(b)(3) And Market Efficiency.......................................11

    II.     Plaintiff Is Not Entitled to the *Basic* Presumption of Reliance Because the Markets for Vale Securities were Inefficient Throughout the Class Period ..........13

          A.      The Market for Vale ADSs Was Inefficient .............................14

          B.      The Market for Vale Notes Was Inefficient .............................17

CONCLUSION.............................................................................................................18

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Ct. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ................................................................................................10

*Basic v. Levinson*,
    485 U.S. 224 (1988) ...................................................................................1, 2, 4, 11

*Boucher v. Syracuse Univ.*,
    164 F.3d 113 (2d Cir. 1999) .....................................................................................10

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) .............................................................................12

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ..................................................................................................10

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) .......................................................................................10

*In re Credit Suisse First Bos. Corp. (Lantronix, Inc.) Analyst Sec. Litig.*,
    250 F.R.D. 137 (S.D.N.Y. 2008) .............................................................................14

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
    281 F.R.D. 174 (S.D.N.Y. 2012) ...........................................................2, 4, 14, 15

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................10

*George v. China Auto. Sys., Inc.*,
    2013 WL 3357170 (S.D.N.Y. July 3, 2013) .....................................................12, 15

*Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*,
    54 F.4th 115 (2d Cir. 2022) .....................................................................................11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) .....................................................................................14, 16, 18

*Hargrove v. Sleepy's LLC*,
    974 F.3d 467 (3d Cir. 2020) .....................................................................................11

*Henderson ex rel. Henderson v. Shinseki*,
    562 U.S. 428 (2011) ..................................................................................................3

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*In re Initial Pub. Offering Sec. Litig.*,
483 F.3d 70 (2d Cir. 2007)............................................................................................11

*In re Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006)..............................................................................................2

*Jin v. Shanghai Original, Inc.*,
990 F.3d 251 (2d Cir. 2021)...........................................................................3, 4, 10, 14

*In re KIND LLC "Healthy & All Natural" Litig.*,
627 F. Supp. 3d 269 (S.D.N.Y. 2022)......................................................................4, 10

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ..................................................................................12

*Mazzei v. Money Store*,
829 F.3d 260 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1332 (2017) ......................2, 10

*Mendez v. The Radec Corp.*,
260 F.R.D. 38 (W.D.N.Y. 2009)....................................................................................11

*Monaco v. Hogan*,
2016 WL 1322431 (E.D.N.Y. Mar. 31, 2016), *aff'd sub nom. Monaco v. Sullivan*, 737 F. App'x 6 (2d Cir. 2018) ...............................................................................11

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017).................................................................................3, 12, 13

*Rodriguez v. It's Just Lunch Int'l*,
2018 WL 3733944 (S.D.N.Y. Aug. 6, 2018) .................................................................11

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
546 F.3d 196 (2d Cir. 2008).....................................................................................12, 14

*In re Vale S.A. Sec. Litig.*,
2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) .........................................................2, 5, 6, 12

*In re Vale S.A. Sec. Litig.*,
2022 WL 969724 (E.D.N.Y. Mar. 31, 2022).....................................................2, 6, 7, 13, 17

*In Re: Vale S.A. Sec. Litig.*,
No. 22-809, ECF No. 1 (April 14, 2022) ........................................................................7

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)......................................................................3, 4, 6, 12, 13, 14

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)............................................................................................9, 10

*Wu v. Pearson Educ. Inc.*,
  2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012) .........................................................10

**Other Authorities**

Ferrillo et al., *The "Less Than" Efficient Capital Markets Hypothesis: Requiring
  More Proof from Plaintiffs in Fraud-on-the-Market Cases*, 78 St. John's L.
  Rev. 81 (2004) ........................................................................................................15

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:6 (19th ed.) (Westlaw
  2022) .......................................................................................................................11

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:26 (19th ed.)
  (Westlaw 2022)........................................................................................................12

**Rules**

Fed. R. Civ. P. 23............................................................................................................10

Fed. R. Civ. P. 23(b) .........................................................................................................2

Fed. R. Civ. P. 23(b)(3)..................................................................................................4, 11

Defendants Vale S.A., Murilo Ferreira, Fabio Schvartsman, Luciano Siani Pires, Gerd Peter Poppinga, and Luiz Eduardo Froes do Amaral Osorio (collectively, "Vale") respectfully submit this Memorandum of Law in support of their Motion for Class Decertification.

## PRELIMINARY STATEMENT

At the risk of "burying the lede," Vale wishes to make clear at the outset two things that this motion decidedly is *not*.

*First*, notwithstanding the imminent protestations from Plaintiff's counsel, this motion is not just another proverbial "bite at the apple" in opposition to class certification. Instead, it raises a novel issue never before addressed in this Circuit that turns on new—and irrefutable—evidence adduced at the implicit invitation of this Court.

*Second*, in no sense does this motion seek discretionary or permissive relief. Instead, Rule 23 of the Federal Rules of Civil Procedure and controlling Second Circuit authority mandate the Court's consideration of the issue raised, and, more important, compel the issuance of an order decertifying this case as a class action.

\* \* \*

This motion concerns whether Plaintiff can continue to enjoy a class-wide presumption of reliance based on the "fraud-on-the-market" theory recognized by the Supreme Court in *Basic Inc. v. Levinson* in the face of overwhelming evidence that the markets for Vale American Depositary Shares ("ADSs") and the seven Vale debt issuances (the "Notes") at issue (collectively, the "Vale Securities") were *inefficient* throughout the class period. *See* 485 U.S. 224 (1988). It cannot. Without such a presumption, Plaintiff cannot meet its burden of demonstrating that—with respect to the critical element of reliance—questions of law or fact common to class members will

predominate over questions affecting individual members, and thus the class must be decertified. *See* Fed. R. Civ. P. 23(b).

Consistent with a "district court['s] . . . affirmative duty of monitoring its class decisions in light of the evidentiary development of [a] case," *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (quotation marks omitted), *cert. denied*, 137 S. Ct. 1332 (2017), Vale has adduced new direct and unassailable economic evidence that the markets for Vale Securities were *inefficient* throughout the Class Period. Mazumdar Report ¶ 21. The existence of an inefficient market necessarily defeats a class-wide presumption of reliance, and precludes a finding of predominance under Rule 23. *See, e.g.*, *Basic v. Levinson*, 485 U.S. 224 (1988); *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 182 (S.D.N.Y. 2012) ("Because [plaintiff] has not shown by a preponderance of the credible evidence that the market . . . was efficient, the fraud on the market presumption of collective reliance does not apply.").

In initially certifying the proposed class here, this Court correctly observed that the task of Vale's prior expert was to "rebut Dr. Feinstein's conclusion of market efficiency, not to provide his own assessment that the market was *in*efficient." *In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *3 (E.D.N.Y. Mar. 31, 2022) (emphasis in original). And Magistrate Judge Bulsara further suggested that "it would be a different story if Defendants presented evidence that the market for Vale ADSs was *inefficient*." *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *9 (E.D.N.Y. Jan. 11, 2022) (emphasis in original).

Notwithstanding that it was—and is—*Plaintiff's* burden to demonstrate market efficiency by a preponderance of the evidence, *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006), Vale took heed of the Court's observations and engaged Dr. Mazumdar to assess the full scope of evidence concerning the efficiency of markets for Vale Securities throughout the class

2

period.[1]  This newly adduced expert evidence definitively resolves the question of market efficiency, proving that class certification is not appropriate because "the markets for each of the Vale Securities were inefficient throughout the Class Period."  Mazumdar Report ¶ 21.  Indeed, employing widely accepted statistical methods that represent the "gold standard" in economics for directly testing market efficiency (repeatedly adopted by Plaintiff's own expert in other cases), Dr. Mazumdar's analysis reveals, *inter alia*, that:

- Over the course of the 572 trading days during the class period, Vale Securities almost never experienced statistically significant abnormal returns (*i.e.*, price changes *not* attributable to broader market, industry, and other explanatory factors on the same day) on days when Vale-specific news was released, including on days—*e.g.*, credit rating actions, earnings, and production announcement days—when price movement plainly would be expected.  In other words, company-specific news concerning Vale did *not* cause the Vale Securities' prices to change in a statistically discernible manner.

- A "collective event study" of all trading days during the class period further confirms that the markets for Vale Securities were inefficient, as the percentage of abnormal returns on *news days* was not statistically distinguishable from the percentage of abnormal returns on *non-news* days.  In other words, there was no identifiable relationship between Vale-specific news and abnormal returns by Vale Securities throughout the class period.

In sum, the findings in the Mazumdar Report "entirely resolve the question" of market efficiency through "direct evidence" that the markets for Vale Securities were inefficient throughout the class period.  *In re Petrobras Sec.*, 862 F.3d 250, 278 (2d Cir. 2017).  And in much the same way that "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore . . . must raise and decide jurisdictional questions," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011), district courts "must ensure that a certified class satisfies Rule 23 throughout the litigation," *Jin v. Shanghai Original, Inc.*,

---

[1]  To be clear, Vale respectfully believes that the Court's initial class certification ruling was inconsistent with binding Second Circuit precedent, including *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017), and respectfully reserves all rights to appeal that interlocutory decision at the appropriate time to the extent necessary.

990 F.3d 251, 262 (2d Cir. 2021), and "may—and should—decertify a class when the standards of Rule 23 have not been met," *In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269, 295 (S.D.N.Y. 2022) (citation omitted). Here, Vale's "demonstrati[on] [of] . . . inefficiency," *Waggoner*, 875 F.3d at 100, means Plaintiff cannot invoke the *Basic* presumption of reliance, individualized reliance issues will predominate, and a critical requirement of Rule 23 is "lacking." *Jin*, 990 F.3d at 262.

Based on the foregoing, Vale respectfully moves this Court for an order decertifying this case as a class action.

## BACKGROUND

### I.    DISTRICT COURT PROCEEDINGS

#### A.    Plaintiff's Motion for Class Certification

Plaintiff sought to certify a class under Rule 23(b)(3) consisting of all persons who purchased Vale Securities between October 27, 2016 and February 6, 2019. *See* D. Ct. ECF No. 97. In seeking to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), Plaintiff claimed that the Vale Securities were sold in an efficient market, thus entitling it to a "fraud on the market" presumption of reliance under *Basic v. Levinson*, 485 U.S. 224 (1988). D. Ct. ECF No. 97 at 12-19. Plaintiff predicated this argument on a purported expert report prepared by Dr. Steven P. Feinstein. D. Ct. ECF No. 97-2 at 21-84.

Vale countered that Dr. Feinstein's analysis that attempted to demonstrate "a cause-and-effect relationship between unexpected news and market price," *Freddie Mac*, 281 F.R.D. at 182, suffered from pervasive methodological flaws that rendered his conclusions unreliable. *See* D. Ct. ECF No. 106 at 6-9. To that end, Vale submitted the Rebuttal Expert Report of Walter N. Torous, who used Dr. Feinstein's own study to show why Plaintiff failed to meet its burden. *See, e.g.*, D.

4

Ct. ECF No. 107-1 at 9 ("Dr. Feinstein's own analysis . . . suggest[s] inefficiency in the market for Vale ADRs, inefficiency in the market for Vale Notes, or both.").

Vale further noted that the seven "indirect factors" considered by courts in assessing market efficiency were patently insufficient here because Vale presented evidence that "suggest[ed] market *inefficiency*." D. Ct. ECF No. 106 at 2 (quoting D. Ct. ECF No. 107-1 at 33-38); D. Ct. ECF No. 107-1 at 35-38. In addition, at least four of those indirect factors (trading volume, analyst coverage, market makers, and bid-ask spread) did not support a finding of efficiency with respect to the Vale Notes. *See* D. Ct. ECF No. 106 at 12. Specifically, Vale explained that three Notes did not meet the two percent threshold for a "strong presumption" of market efficiency; Plaintiff provided no evidence that the Notes were covered by analysts; the number of market makers Plaintiff identified (three) was insufficient, particularly given that Plaintiff assumed, without evidence, that underwriters were market makers; and the bid-ask spread factor could not possibly support efficiency because Plaintiff's expert admitted to not analyzing it. *Id.*

**B.     The Report & Recommendation**

Plaintiff's motion for class certification was referred to Magistrate Judge Sanket J. Bulsara. *See* Dkt., June 8, 2021. Following oral argument, Judge Bulsara issued a Report and Recommendation ("R&R") that the motion be granted and the proposed class certified. *In re Vale S.A. Sec. Litig.*, 2022 WL 122593 (E.D.N.Y. Jan. 11, 2022). The R&R criticized Plaintiff's expert's event study methodology as "black box-like, unverifiable, standardless, and subjective," *id.* at *11, and concluded that Plaintiff proffered "no direct evidence of an efficient market," *id.* at *14. Nevertheless, the R&R concluded that there was sufficient evidence of efficiency based on the indirect factors alone. *Id.* at *14, *16. The R&R further suggested (incorrectly) that the record did not contain any evidence that the market was *inefficient*. *See id.* at *9 (noting that "it would

5

be a different story if Defendants presented evidence that the market for Vale ADSs was *inefficient*").

### C.    Vale's Objections to the R&R

Vale timely objected to the R&R.  D. Ct. ECF No. 111.  As relevant here, Vale contested the R&R's finding that the markets for Vale Securities were efficient, arguing, *inter alia*, that the R&R disregarded controlling Second Circuit authority instructing that direct evidence of efficiency becomes "*more critical*" when, as here, the indirect evidence is "less compelling," and that, in these circumstances, a court cannot simply presume efficiency, as the R&R did here.  *Id.* at 1-2. (emphasis added) (quoting *Waggoner*, 875 F.3d at 98).  Indeed, Vale pointed out that the R&R appeared to be the *only* post-*Waggoner* decision *ever* to conclude that a plaintiff is not required to provide any direct evidence of market efficiency, even though several indirect factors did not weigh in favor of efficiency.  *Id.* at 2, 9.

### D.    The District Court's Memorandum and Order Adopting the R&R

The district court (Dearie, J.) agreed that Plaintiff's proffered event study was "entitled to no weight" due to "methodological flaws."  *In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *4 (quoting *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *16).  Judge Dearie also "quibble[d] slightly with Judge Bulsara's statement that Defendants h[ad] not presented *any* evidence that the market for ADSs was inefficient," recognizing that Vale's expert report did "note that the ADSs behaved inefficiently on certain dates based on certain tests."  *Id.* at *3.  Despite finding no direct evidence of efficiency and "some direct evidence" of inefficiency, the Court nonetheless affirmed the R&R's finding that Plaintiff established market efficiency for the Vale ADSs based solely on the indirect factors.  *Id.* at *3-*4.  With respect to the Vale Notes, the Court reasoned that the indirect factors are "considered less instructive when applied to debt securities," and adopted the R&R's finding of efficiency in those markets "even in the face of some countervailing indicators

6

of inefficiency." *Id.* at \*5.  In rendering these conclusions, Judge Dearie explained that he "interpret[ed] the R&R to be making the uncontroversial observation that Dr. Torous' task was to rebut Dr. Feinstein's conclusions of market efficiency, not to provide his own assessment that the market was *in*efficient." *Id.* at \*3 (emphasis in original).[2]

## II.   **EXPERT REPORT OF DR. SUMON MAZUMDAR**

Dr. Mazumdar is a financial economist and a member of the finance faculty at the Haas School of Business, University of California, Berkeley, and he has published widely on many topics, including issues central to federal securities laws. *See* Mazumdar Report App'x A.  He holds Masters and Ph.D. degrees in Economics from Southern Methodist University, Dallas. *See* Mazumdar Report App'x A.

As explained in greater detail in his accompanying expert report, Dr. Mazumdar assessed the market efficiency of Vale Securities using methods that are widely accepted among economic and statistical experts (including Plaintiff's own expert) who have used such methods to support expert testimony in courts throughout the country. For example, Dr. Mazumdar's analysis of market efficiency for Vale ADSs comprised three steps.  First, Dr. Mazumdar tested the ADSs for serial correlation.  Mazumdar Report ¶¶ 48-49.  Second, he conducted event study tests to assess whether and to what extent Vale ADSs experienced statistically significant abnormal returns on days with and without Vale-specific news.  Mazumdar Report ¶¶ 60-66.  Dr. Mazumdar defined Vale-specific "news" as all 6-K Report days, credit rating announcement days, and other news

---

[2]   Vale filed a Petition for Permission to Appeal Pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. *In Re: Vale S.A. Sec. Litig.*, No. 22-809, ECF No. 1 (April 14, 2022).  The Second Circuit denied the petition, noting only that "an immediate appeal [wa]s not warranted." *In Re: Vale S.A. Sec. Litig.*, No. 22-809, ECF No. 47, (Sept. 7, 2022); *see also* D. Ct. ECF No. 119 (Sept. 7, 2022).

days based on Factiva, and employed both his own model and Dr. Feinstein's.[3]  Mazumdar Report ¶¶ 58-59; Exs. 3, 4.  Third, Dr. Mazumdar employed the "Ferrillo Dunbar Tabak Test," or FDT Test, in which he calculated the difference between the percentage of Vale-specific news days on which Vale's ADSs experienced statistically significant abnormal returns (*i.e.*, the number of Vale-specific news days on which statistically significant movement occurred divided by the total number of Vale-specific news days) and the percentage of *non*-Vale-specific news days on which Vale's ADSs experienced statistically significant abnormal returns (*i.e.*, the number of days on which statistically significant movement occurred on non-Vale-specific news days divided by the total number of non-Vale-specific news days), and then determined whether the difference was statistically significant.  Mazumdar Report ¶¶ 54.iii, 66 & Ex. 6; *see also id.* ¶¶ 82-84.

For Vale Notes, Dr. Mazumdar likewise assessed market inefficiency in several ways.  Dr. Mazumdar first tested the Notes for serial correlation.  Mazumdar Report ¶¶ 48-50.  Next, Dr. Mazumdar conducted a "matched-portfolio" analysis.[4]  Mazumdar Report ¶¶ 71-81.  He also employed the FDT Test by calculating the difference between the percentage of Vale-specific news days on which Vale Notes experienced statistically significant abnormal returns (*i.e.*, the number of Vale-specific news days on which statistically significant movement occurred divided by the total number of Vale-specific news days) and the percentage of *non*-Vale-specific news days on which Vale's Notes experienced statistically significant abnormal returns (*i.e.*, the number of days on which statistically significant movement occurred on non-Vale-specific news days divided by

---

[3]    Professor Mazumdar also conducted several sensitivity analysis—*e.g.*, conducted similar studies using different data and different models—the results of which largely mirrored his primary findings.

[4]    As explained in Professor Mazumdar's Report, a matched portfolio analysis is "the preferred approach in economics literature to calculate bonds' abnormal returns."  *See* Mazumdar Report ¶ 82 n.110.  For example, it "[c]ontrols for default risk and bond maturity" and "[a]ccounts for market-wide changes of the term structure."  Mazumdar Report ¶ 71.

the total number of non-Vale-specific news days), and then assessing whether that difference was statistically significant.[5]   Mazumdar Report ¶ 81; *see also id*. ¶¶ 82-84.  Finally, Dr. Mazumdar evaluated the distribution of the number of days on which Vale Notes experienced statistically significant abnormal returns.  *See, e.g.*, Mazumdar Report ¶ 79.

Dr. Mazumdar also conducted a broad review of academic literature addressing market efficiency.  Mazumdar Report ¶¶ 85-92.  As to market efficiency in general, Dr. Mazumdar explains that "it is [] well-understood, based on a large body of research in the decades following *Basic*, that every large public company's securities (common stock and notes) do not *always* trade in an efficient market."  Mazumdar Report ¶ 91.  He further explains that "[a]cademic studies have demonstrated that the actual relationship between the[] indirect indicia and efficiency is non-existent, or even runs counter to the courts' intuition."  Mazumdar Report ¶ 85.

As discussed further below, based on his analyses, Dr. Mazumdar concluded that "the direct economic evidence . . . overwhelmingly indicates that the markets for all the Vale Securities were inefficient throughout the Class Period."  Mazumdar Report ¶ 84.  He also observed that "indirect indicia of market efficiency are not probative from an economic perspective."  Mazumdar Report ¶ 94.

## DISCUSSION

I.     **STANDARDS GOVERNING THIS MOTION**

A.     **The Law Applicable to Class Decertification**

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual[ly] named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

---

[5]     As with the Vale ADSs, Professor Mazumdar conducted sensitivity analyses for the Vale Notes—*e.g.*, he again conducted similar studies using different data and models.  And, again, the results of Professor Mazumdar's sensitivity analyses were largely the same as his primary ones.

348 (2011) (quotation marks and citation omitted).  To take advantage of that exception, a plaintiff "must affirmatively demonstrate [its] compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores*, 564 U.S. at 350).  Class "certifications are not frozen once made," *Amgen Inc. v. Ct. Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013), and "actual, not presumed, conformance" with Rule 23 "remains . . . indispensable," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

A district court is "required to reassess [its] class rulings as [a] case develops," *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999), and "*must* ensure that a certified class satisfies Rule 23 throughout the litigation," *Jin*, 990 F.3d at 262 (emphasis added).  Indeed, a "district court has the affirmative duty of monitoring its class decisions in light of the evidentiary development of [a] case," *Mazzei*, 829 F.3d at 266, and "should . . . decertify a class when the standards of Rule 23 have not been met," *In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d at 295 (quoting *Wu v. Pearson Educ. Inc.*, 2012 WL 6681701, at *5 (S.D.N.Y. Dec. 21, 2012)).

To that end, Rule 23 empowers courts to "alter, or indeed revoke, class certification at any time before final judgment is entered." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 n.9 (2d Cir. 2007); *see also* Fed. R. Civ. P. 23, advisory committee's note to 1966 amendment ("A determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound."); Fed. R. Civ. P. 23, advisory committee's note to 2003 amendment ("Decertification may be warranted after further proceedings.").

The Second Circuit also has made clear, moreover, that a plaintiff "retain[s] the burden to demonstrate that [Rule 23's] requirements [a]re satisfied" "[i]n opposing [a] decertification motion."  *Mazzei*, 829 F.3d at 270.  Thus, the proper standard when "considering the

10

appropriateness of decertification" is "the same as a motion for class certification:  whether the Rule 23 requirements are met." *Monaco v. Hogan*, 2016 WL 1322431, at *2 (E.D.N.Y. Mar. 31, 2016) (Garaufis, J.) (citation omitted), *aff'd sub nom. Monaco v. Sullivan*, 737 F. App'x 6 (2d Cir. 2018); *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 43 (W.D.N.Y. 2009) (same); *Rodriguez v. It's Just Lunch Int'l*, 2018 WL 3733944, at *2 (S.D.N.Y. Aug. 6, 2018) (noting decertification is appropriate if "the reasons for granting class certification no longer exist or never existed" (citation omitted)); *see also Hargrove v. Sleepy's LLC*, 974 F.3d 467, 470 (3d Cir. 2020) ("District courts should treat renewed motions for class certification as they would initial motions under Rule 23." (citing *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007))).  And "[a]ny fact that develops or comes to light between the certification decision and entry of final judgment that calls into serious question the satisfaction of any of the requirements of Rule 23(a) or (b) . . . will justify immediate decertification or revision of the class."  1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:6 (19th ed.) (Westlaw 2022).

### B.    Rule 23(b)(3) And Market Efficiency

To meet its burden under Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  A court's predominance inquiry "entails 'careful scrutiny' of the nature and significance of a case's common and individual issues." *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 121 (2d Cir. 2022).

Recognizing that "proof of individualized reliance . . . effectively . . . prevent[s] [a plaintiff] from proceeding with a class action" because "individual [reliance] issues . . . overwhelm[] the common ones," the Supreme Court in *Basic Inc. v. Levinson* established a rebuttable presumption of reliance that a plaintiff can invoke if it demonstrates, among other things, market efficiency. 485 U.S. at 242, 248 n.27.  "An efficient market is 'one in which the prices of the [stock]

11

incorporate most public information rapidly.'" *Waggoner*, 875 F.3d at 94 (quoting *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 204 (2d Cir. 2008)).

Courts within the Second Circuit evaluate market efficiency using the factors described in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) and *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001). And while the Second Circuit has declined to adopt an "evidentiary hierarchy" for these factors, it has made clear that "direct evidence" (*Cammer* factor 5) can "entirely resolve the question." *Petrobras*, 862 F.3d at 278.[6] Indeed, evidence "suggest[ing] the inefficiency of the market" makes the importance of direct evidence of efficiency even "greater." *Waggoner*, 875 F.3d at 97; *see also George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *13 (S.D.N.Y. July 3, 2013) (plaintiffs must show direct evidence when there are results "supportive" of inefficiency); 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 5:26 (19th ed.) (Westlaw 2022) (noting the fifth *Cammer* factor—"whether unexpected corporate events or financial information cause an immediate response in the price of the security—is *the* most important factor because it is the only direct measure of efficiency; 'the essence of an efficient market and the foundation for the fraud on the market theory.'" (emphasis added) (quoting *Bombardier*, 546 F.3d at 207)). Additionally, it bears repeating that academics have cast substantial doubt on whether the indirect factors do, in fact, shed any meaningful light on market efficiency. *See* Mazumdar Report ¶¶ 85-92.

---

[6] The Second Circuit is yet to address a circumstance like the one here—*i.e.*, where a defendant puts forth substantial, direct evidence of market inefficiency. Plaintiff previously cited *Waggoner v. Barclays PLC*, 875 F.3d 79, 98 (2017), where the Second Circuit held that *affirmative* "evidence of price impact under *Cammer* [factor] 5" is not required when the "indirect" factors "weigh[] so clearly in favor" of market efficiency. But that holding in *Waggoner* does not control here. The question of whether affirmative evidence under *Cammer* factor 5 is always required is distinct from the question of whether the indirect factors can overcome substantial evidence of inefficiency. *Cf. id.* at 90 (noting defendants' expert did not "conduct his own event study to demonstrate the inefficiency of the market for . . . ADS"); *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *9 ("Of course, it would be a different story if Defendants presented evidence that the market for Vale ADSs was inefficient.").

II.     **PLAINTIFF IS NOT ENTITLED TO THE *BASIC* PRESUMPTION OF RELIANCE BECAUSE THE MARKETS FOR VALE SECURITIES WERE INEFFICIENT THROUGHOUT THE CLASS PERIOD**

As demonstrated by Dr. Mazumdar, throughout the class period, Vale Securities rarely experienced statistically significant price movement on days when Vale-specific news was released, never experienced statistically significant price movement on earnings and production release days when such movement would be expected, almost never experienced statistically significant price movement on credit rating announcement days, and varied on non-Vale-specific news days the same way it varied on Vale-specific news days. Additionally, despite the Notes' similarities, there was no evidence of any consistent price reactions to news across the Vale Notes.

This newly adduced evidence does not merely suggest inefficiency, it conclusively establishes that the markets for Vale Securities were inefficient throughout the class period. Thus, while Vale respectfully disagrees with the Court's prior finding of market efficiency given the existence of "some" direct evidence of inefficiency already in the record and the fact that some indirect factors were barely met or even suggested inefficiency, the current record is distinct from the one previously before this Court. The Mazumdar Report "provide[s] [its] own assessment that the market[s] w[ere] inefficient," *In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *3, based on numerous tests across the class period. Indeed, the Mazumdar Report "entirely resolve[s] the question" of efficiency through "direct evidence." *Petrobras*, 862 F.3d at 278.

This clear, comprehensive "demonstrati[on] [of] inefficiency," *Waggoner*, 875 F.3d at 100, means there is no need to "turn to the indirect factors [to] see where they point," *In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *5. But even looking to the indirect factors makes no difference given the strength of the direct evidence of inefficiency here and the limited explanatory value of the indirect factors. *See* Mazumdar Report ¶¶ 84-94. Plaintiff therefore cannot invoke the presumption of reliance, individualized reliance issues will predominate, and the class should be

13

decertified because Plaintiff cannot meet the requirements of Rule 23. *Jin*, 990 F.3d at 262; *cf. In re Credit Suisse First Bos. Corp. (Lantronix, Inc.) Analyst Sec. Litig.*, 250 F.R.D. 137, 140 (S.D.N.Y. 2008) (decertifying a class where the "*Basic* presumption [wa]s not properly applicable").

### A.    The Market for Vale ADSs Was Inefficient

Assuming material, company-specific news is released with some consistency, the price of a company's stock would be expected to change in statistically significant ways in response with some regularity in an efficient market. *See, e.g.*, Mazumdar Report ¶ 64.i ("[A] study found that the vast majority (97.5%) of the companies included in the S&P 500 index reacted to at least one of the four quarterly earnings announcements in one year (2018)."); *id.* ¶¶ 23, 63, 64.iii; D. Ct. ECF No. 107-1 ¶ 51 ("[T]he expectation would be that at least some of these dates [containing value-relevant information] would exhibit a statistically significant price reaction."); *cf. In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 180 (S.D.N.Y. 2012) ("A plaintiff must show that the market price responds to most new, material news."). After all, "[a]n efficient market is 'one in which the prices of the [stock] incorporate most public information rapidly.'" *Waggoner*, 875 F.3d at 94 (quoting *Bombardier*, 546 F.3d at 204); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014) (explaining the presumption is premised on the notion that the "stock market price" is "affected" by the fact that "market professionals generally consider most publicly announced material statements about companies").

In addition, in an efficient market, a company's stock would be expected to experience statistically significant abnormal returns more often on company-specific news days than on days without company-specific news. *See, e.g.*, Mazumdar Report ¶ 21.ii.b., 32-45, 63, 64 & n.75; *see also id.* ¶ 33 ("Stock prices vary randomly even in the absence of news."). In the absence of such a difference, there "would be no basis for saying that the defendant's stock price is affected by

news."  Ferrillo et al., *The "Less Than" Efficient Capital Markets Hypothesis: Requiring More Proof from Plaintiffs in Fraud-on-the-Market Cases*, 78 St. John's L. Rev. 81, 121 (2004).  And "[i]f the stock price does not generally respond to news," that indicates "the stock was not affected by any false news and may not have responded to allegedly omitted information."  *Id.* at 119.

Here, neither expected finding is present.  Vale ADSs experienced statistically significant abnormal returns on a trivial percentage of Vale-specific news days—no greater than 5.1% and 4.7%—in Dr. Mazumdar's and Dr. Feinstein's  models, respectively.  *See* Mazumdar Report ¶ 64.iii.  As Dr. Mazumdar explains, "[t]he absence of a statistically significant price reaction to most news released throughout the Class Period indicates that the Vale ADS did not consistently react to news throughout the Class Period, *i.e.*, this economic evidence indicates that the Vale ADS' market over the Class Period was inefficient."  Mazumdar Report ¶ 64.iii.  Indeed, courts have rejected assertions of market efficiency when presented with considerably higher percentages.  *Cf. George*, 2013 WL 3357170, at *12 ("[S]howing that only seven out of sixteen days resulted in a market reaction is an insufficient foundation upon which to pronounce market efficiency."); *Freddie Mac.*, 281 F.R.D. at 180-81 ("[Plaintiff's] showing that the market reacted to news 28% of the time is insufficient to satisfy the most important *Cammer* factor.").  Further, Vale's ADSs did not experience statistically significant abnormal returns on days when it would be expected.  *See, e.g.*, Mazumdar Report ¶¶ 58.ii, 63-64.i-ii & nn.78-82.  "The Vale ADS' abnormal return was statistically insignificant following all nine earnings announcements, and all eight production announcements that occurred during the Class Period."  Mazumdar Report ¶ 21.  Again, as Dr. Mazumdar opines, "[t]his economic evidence indicates that the Vale ADS' market over the Class Period was inefficient."  Mazumdar Report ¶ 64.i-ii.

In addition to these facts, the difference between the percentage of Vale-specific news days on which Vale ADSs experienced statistically significant abnormal returns and the percentage of non-Vale-specific news days on which Vale ADSs experienced statistically significant abnormal returns is, in all models, statistically insignificant—*i.e.*, the Vale ADSs fail the FDT Test. Mazumdar Report ¶ 66 & Exs. 6, 14. Thus, not only did the price of Vale ADSs rarely change in statistically significant ways on days with Vale-specific news—including on days when it would be expected—but also that reaction was, in effect, statistically indistinguishable from ADSs' reaction when there was *no* Vale-specific news. "This finding also indicates that there was no consistent relationship between news and Vale ADS' abnormal returns throughout the Class Period [and] support[s] [the] conclusion that the market for the Vale ADS was inefficient throughout the Class Period." Mazumdar Report ¶ 66. In fact, "half, *i.e.,* 10 of the top 20, of the [largest] abnormal returns occurred on *non-news* days." Mazumdar Report ¶ 65 & Ex. 5.

Collectively, this evidence overwhelming demonstrates that the market for Vale ADSs was inefficient throughout the class period, and thus the alleged misrepresentations were not "reflected in the market price" of Vale ADSs when class members purchased them. *Halliburton*, 573 U.S. at 278. Consequently, there is "no grounding for [the] contention that [investors] indirectly relied on . . . misrepresentation[s] through [their] reliance on the integrity of the market price." *Id.* Plaintiff therefore cannot invoke the *Basic* presumption of reliance, and the class of ADS purchasers should be decertified because individual questions of reliance will predominate.

16

## B.        The Market for Vale Notes Was Inefficient

For the same reasons and more, the market for Vale Notes was inefficient throughout the class period.[7]  First, one of the Vale Notes showed serial correlation using Dr. Feinstein's VWAPs[8] and two showed serial correlation using Dr. Torous's, which indicates that at least one Note did not trade in a weak-form efficient market, let alone a semi-strong one.  *See* Mazumdar Report ¶¶ 48 n.53, 50.   Second, as with Vale ADSs, Vale Notes seldom experienced statistically significant abnormal returns on Vale-specific news days—for example, none of the Notes exceeded 7.2% in the matched portfolio analysis.  *See* Mazumdar Report ¶ 76 & n.103. Additionally, Vale Notes almost never experienced statistically significant abnormal returns on days when it would be expected—*e.g.*, credit rating days.  *See* Mazumdar Report ¶ 75 & Fig. 2. Third, the difference between the percentage of Vale-specific news days and non-Vale-specific news days on which the Vale Notes experienced statistically significant abnormal returns was statistically insignificant—*i.e.*, the Notes also failed the FDT Test.  *See* Mazumdar Report ¶¶ 80-81.  Further, "[f]or five of the seven Vale Notes, at least half of the top 20 abnormal return days were non-news days," and for the other two, it was nearly half (9 out of the top 20).  Mazumdar Report ¶ 77 & n.105.  As with Vale's ADSs, these results are strongly indicative of market *in*efficiency.  *See* Mazumdar Report ¶¶ 79, 81.

Inefficiency is also evidenced by the fact that Vale Notes were inconsistent in their statistically significant price movements despite "shar[ing] fundamental characteristics (rating, seniority, collateral and in many cases, belong[ing] to the same remaining maturity range)."

---

[7]    As noted by the Court, certain other *Cammer* and *Krogman* factors either do not favor market efficiency for Vale Notes, or do so only slightly.  *See In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *4 & nn.2-3.

[8]    Daily volume-weighted average prices ("VWAPs") are used to calculate Vale Notes' daily returns.

Mazumdar Report ¶ 79. As Dr. Mazumdar's study shows, out of the 417 days when data is available for all seven Vale Notes, only one Vale Note—and none of the other six—experienced statistically significant abnormal returns 74% (49 out of 66 days) of the time. Mazumdar Report ¶ 79 & Fig. 3. And on the remaining 17 days when at least two Vale Notes experienced statistically significant price movement, 10 were *non*-news days. Mazumdar Report ¶ 79 & Fig. 3. Further, out of those 17 days when at least two Vale Notes experienced statistically significant abnormal returns, there were only two news days on which four or more Vale Notes experienced statistically significant abnormal returns. Mazumdar Report ¶ 79 n.106. "This finding also indicates that there was no consistent relationship between news and the Vale Notes' abnormal returns throughout the Class Period," and "supports [the] conclusion that the markets for the Vale Notes were *inefficient* throughout the Class Period." Mazumdar Report ¶ 79 (emphasis in original).

In sum, Dr. Mazumdar's findings show that the market for Vale Notes, like the market for Vale ADSs, was "inefficient." Mazumdar Report ¶ 84. Accordingly, news about Vale was also not "reflected in the market price" of Vale Notes throughout the class period. *Halliburton*, 573 U.S. at 278. The *Basic* presumption of reliance is thus equally inapplicable to Vale Notes, and the class of notes-holders should also be decertified for failing to meet Rule 23(b)(3)'s requirements.

## CONCLUSION

For the foregoing reasons, Vale respectfully requests that the Court grant Vale's Motion to Decertify the Class.

Dated: New York, New York
       June 27, 2023

                              GIBSON, DUNN & CRUTCHER LLP


                              By:  */s/ Christopher M. Joralemon*
                                  Christopher M. Joralemon
                                  Akiva Shapiro
                                  Mary Beth Maloney
                                  David M. Kusnetz

                                  200 Park Avenue
                                  New York, NY  10166-0193
                                  Telephone:      212.351.4000
                                  Facsimile:      212.351.4035

                                  *Attorneys for Defendants*

19