**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

IN RE VALE S.A. SECURITIES LITIGATION

Case No.: 19-cv-526-EK-SJB

JURY TRIAL DEMANDED

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR CLASS DECERTIFICATION**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     BACKGROUND ....................................................................................................... 6

       A.  Class Certification Was Granted Based on Overwhelming Indirect
             Evidence of Market Efficiency .......................................................................... 6

       B.  Judge Dearie Adopted the R&R Certifying the Class ........................................ 8

       C.  The Second Circuit Summarily Denied Defendants' Petition for an Appeal
             Under Rule 23(f) ............................................................................................... 9

       D.  The Belated Mazumdar Report Changes Nothing ............................................. 9

III.    APPLICABLE LEGAL STANDARDS ..................................................................... 11

       A.  Law of the Case Doctrine and Class Certification ............................................ 11

       B.  Market Efficiency and Defendants' Burden to Rebut the Presumption of
             Reliance ............................................................................................................ 12

IV.     ARGUMENT ............................................................................................................ 14

       A.  Defendants Have Provided No Basis For Reopening The Court's Finding
             of Market Efficiency ........................................................................................ 14

       B.  Defendants' Flawed Report Fails to Rebut the Evidence of Market
             Efficiency for Vale Securities and Presumption of Reliance Under *Basic* ........... 17

             i.   The Indirect Factors Demonstrate Market Efficiency ............................. 17

             ii.  The Mazumdar Report Conclusions Are Unreliable; Properly
                   Designed FDT Tests Support Market Efficiency ..................................... 19

             iii. The Mazumdar Report Presents Substantially Similar Evidence to
                   that Previously Found Insufficient by Judge Dearie ................................ 24

V.      CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)................................................................................................ *passim*

*Betances v. Fischer*,
403 F. Supp. 3d 212 (S.D.N.Y. 2019).................................................................... 15

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
No. 3:16-CV-2127 (AWT), 2023 WL 2932485 (D. Conn. Apr. 13, 2023)............. 14

*Brown v. China Integrated Energy Inc.*,
No. CV-1102559, 2014 WL 12576643 (C.D. Cal. Aug. 4, 2014)........................... 22

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ........................................................................... *passim*

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) .............................................................................. 14

*Cosby v. KPMG, LLP*,
No. 3:16-CV-121-TAV-DCP, 2020 WL 3548379 (E.D. Tenn. June 29, 2020)....... 23

*Entek GRB, LLC v. Stull Ranches, LLC*,
840 F.3d 1239 (10th Cir. 2016) ............................................................................. 15

*Fero v. Excellus Health Plan, Inc.*,
304 F. Supp. 3d 333 (W.D.N.Y. 2018) ................................................................... 14

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
141 S. Ct. 1951 (2021).................................................................................... 3, 12, 13

*Gortat v. Capala Bros.*,
949 F. Supp. 2d 374 (E.D.N.Y. 2013)
*aff'd without opinion*, 568 Fed. Appx. 78 (2d Cir. 2014)........................................ 2

*Gulino v. Bd. of Educ.*,
907 F. Supp. 2d 492 (S.D.N.Y. 2012)..................................................................... 12

*In re Allergan PLC Secs. Litig.*,
No. 18-cv-12089, 2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) .............................. 4, 13, 21, 25

*In re Aluminum Warehousing Antitrust Litig.*,
520 F. Supp. 3d 455 (S.D.N.Y. 2021)..................................................................... 1

*In re City of Philadelphia Litig.*,
    158 F.3d 711 (3d Cir. 1998)................................................................................ 16

*In re Countrywide Fin. Corp. Sec. Litig.*,
    273 F.R.D. 586 (C.D. Cal. 2009) ...................................................................... 24

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
    No. 10 Civ. 3461 (PAC), 2018 WL 3854757 (S.D.N.Y. Aug. 14, 2018)................................. 25

*In re KIND LLC "Healthy & All Natural" Litig.*,
    627 F. Supp. 3d 269 (S.D.N.Y. 2022)................................................................. 17

*In re NIO, Inc. Sec. Litig.*,
    No. 19-CV-1424-NGG-JRC, 2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023) ...................... 13, 25

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)................................................................. 9, 13, 18, 19

*In re Signet Jewelers Ltd. Secs. Litig.*,
    No. 16-cv-6728, 2019 WL 3001084 (S.D.N.Y. July 10, 2019)......................................... 13, 18

*In re Teva Sec. Litig.*,
    No. 3:17-cv-558 (SRU), 2021 WL 872156 (D. Conn. Mar. 9, 2021)...................................... 13

*Jermyn v. Best Buy Stores, L.P.*,
    276 F.R.D. 167 (S.D.N.Y. 2011) ...................................................................... 15

*Jin v. Shanghai Original, Inc.*,
    990 F.3d 251 (2d Cir. 2021).................................................................. 1, 11, 16, 17

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) .................................................................. *passim*

*Laurent v. PricewaterhouseCoopers LLP*,
    565 F. Supp. 3d 543 (S.D.N.Y. 2021)................................................................ 1, 11

*Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*,
    397 F.3d 77 (2d Cir. 2005)............................................................................. 16

*LPD New York, LLC. v. Adidas Am., Inc.*,
    No. 15-CV-6360-MKB-RLM, 2020 WL 9886308 (E.D.N.Y. Mar. 31, 2020) *on reconsideration in part*, 2020 WL 9816008 (E.D.N.Y. July 24, 2020)................................... 16

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016)........................................................................... 17

*Stinson v. City of New York*,
    No. 10 CIV. 4228 RWS, 2014 WL 4742231 (S.D.N.Y. Sept. 23, 2014) ............................... 12

*United States v. Agofsky*,
    516 F.3d 280 (5th Cir. 2008) ................................................................................ 15

*United States v. Tenzer*,
    213 F.3d 34 (2d Cir. 2000)............................................................................... 11, 16

*United States v. Trabelsi*,
    28 F.4th 1291 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 345 (2022) ...................... 14

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    333 F.R.D. 39 (S.D.N.Y. 2019) ..................................................................... 14, 23

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)............................................................................ *passim*

*Wilder v. Bernstein*,
    645 F. Supp. 1292 (S.D.N.Y. 1986), *aff'd,* 848 F.2d 1338 (2d Cir. 1988) ............... 15

*Woe v. Cuomo*,
    729 F.2d 96 (2d Cir. 1984)................................................................................ 12

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................... 6

Fed. R. Civ. P. 23(b)(3).......................................................................................... 6

Fed. R. Civ. P. 23(c)(1)(C) .................................................................................... 11

Fed. R. Civ. P. 23(f)........................................................................................... 2, 9

**Other Authorities**

Alon Brav & J.B. Heaton, *Event Studies in Securities Litigation: Low Power,*
    *Confounding Effects, and Bias*, 93 Wash. U. L. Rev. 583 (2015) ........................... 19

David Tabak, *Making Assessments About Materiality Less Subjective Through The Use*
    *of Content Analysis*, NERA Economic Consulting (March 13, 2007) ........................ 5

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.)............................. 12

Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478 (3d ed.)................................ 3

## I.    PRELIMINARY STATEMENT

Defendants have presented no new or compelling evidence warranting decertification of the Class or even justifying the waste of judicial resources to hear their motion. Neither the facts nor the law has changed since Defendants' petition for an appeal of class certification was rejected on September 7, 2022. During class certification briefing, Defendants made a strategic choice to attack Plaintiff's event study as purportedly providing "some evidence" of inefficiency rather than presenting their own study. That strategy failed, and now, with a new judge assigned to the matter, they seek a do-over. But even with class certification, where a court enjoys broad discretion, on a motion for decertification "it may not disturb its prior findings, absent some significant intervening event or a showing of compelling reasons to reexamine the question." *Laurent v. PricewaterhouseCoopers LLP*, 565 F. Supp. 3d 543, 548 (S.D.N.Y. 2021);[1] *see also*, *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262 n.18 (2d Cir. 2021) ("district courts in this Circuit . . . have held that the defendant must show a sufficient change in law or circumstances" on a motion to decertify). "Fidelity to the law of the case is as important, if not more so, when one judge is asked to consider the ruling of a different judge." *In re Aluminum Warehousing Antitrust Litig.*, 520 F. Supp. 3d 455, 482 (S.D.N.Y. 2021).

The flawed expert report Defendants now submit does not provide any basis to break from the law of the case; their new report merely reiterates the same unsuccessful arguments Defendants made in class certification briefing with the addition of their own event study for support. Specifically, Defendants previously submitted an expert report that found Vale Securities prices did not respond to Vale earnings or production announcements or Vale Form 6-Ks containing "new, material news," which Defendants described as "the very definition of market inefficiency."

---

[1] All internal quotations and citations omitted unless otherwise indicated.

ECF No. 111 at 12. Considering this, they argued, market efficiency could not be established by indirect evidence alone. Magistrate Judge Bulsara thoroughly reviewed the arguments and evidence, including at a two-hour oral argument, and found in a 51-page opinion that market efficiency was established by the overwhelming indirect evidence. ECF No. 110 at 17, 39. Defendants objected, but Judge Dearie agreed, finding "[o]n this record, the undisputed indirect factors prove that the market for the ADS was efficient, regardless of whether Defendants presented some countervailing evidence of inefficiency." ECF No. 116 at 8; *see id.* at 10 (holding that "the indirect factors support a finding of efficiency" and "satisfy the Court that the Notes traded in an efficient market, even in the face of some countervailing indicators of inefficiency."). Judge Dearie also noted that the evidence here is virtually indistinguishable from *Waggoner v. Barclays PLC*, 875 F.3d 79, 99 (2d Cir. 2017) ("*Waggoner*"), "in which the Second Circuit affirmed a finding of market efficiency without direct evidence when, as here, '[a]ll seven of the indirect factors ... weighed so clearly in favor of concluding that the market ... was efficient that the Defendants did not even challenge them.'" ECF No. 116 at 6-7 (quoting *Waggoner* at 98). Undeterred, Defendants petitioned for an appeal pursuant to Rule 23(f), which was summarily denied.

Defendants' claim that an incredible ***fourth*** bite at the apple is warranted based on purported "novel" and "irrefutable" proof that Vale Securities markets are inefficient is belied by the evidence. Their new expert report by Dr. Sumon Mazumdar, presenting analyses which Defendants could have submitted before, does not change the substance of their arguments or the evidence and does not constitute a sufficient basis to reopen the issue of market efficiency. *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 382–83 (E.D.N.Y. 2013) (Glasser, Sr. J.) *aff'd without opinion*, 568 Fed. Appx. 78 (2d Cir. 2014) (denying decertification motion because "[d]efendants

2

have made no showing of any significant intervening event or any compelling reason to revisit the issue."); Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478 (3d ed.) (under law of the case doctrine, "[e]vidence that could have been presented earlier commonly is not considered, in keeping with the general rules that discourage slovenly or ill-considered approaches to the first trial.").

But even if the Court considers Defendants' belatedly submitted report, the report falls far short of satisfying Defendants' burden to rebut the presumption of reliance. To rebut the presumption, "the Court requires defendants to do more than merely produce evidence that *might* result in a favorable outcome; they must demonstrate that the misrepresentations did not affect the stock's price by a preponderance of the evidence." *Waggoner*, 875 F.3d at 101; *see also*, *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1963 (2021) (citing *Waggoner* with approval). Contrary to Defendants' incredible claim that the burden remains **with Plaintiff** to prove market efficiency (Defs.' Br. at 2, 10-11), Mr. Joralemon has previously acknowledged—in open court in this very case—that it is ***Defendants' burden*** to rebut: JORALEMON: "[T]he question [is] of plaintiff's threshold obligation to establish that they're entitled to the presumption of reliance on a class-wide basis and ***defendant's burden after that presumption is established ... then to rebut it.***" ECF No. 110 at 19 (quoting Hr'g Tr. at 63:6–13) (emphasis added). Mr. Joralemon's attempt to dodge the applicable test now can only be understood as a tacit acknowledgement that his evidence fails it.

Dr. Mazumdar's analyses do not come close to carrying Defendants' burden because they are riddled with flaws and errors that render his conclusions unreliable. Most importantly, Dr. Mazumdar identified 37% of the days in his analyses—roughly every third day—as days when unexpected, value-relevant news was released based on earnings and production announcements,

3

credit ratings changes, and his subjective review of Vale's Form 6-Ks and news referencing "Vale." Mazumdar Rep. Ex. 6. But the notion that there would be such frequent unexpected, material news about one of the world's largest iron ore producers over a roughly three-year period is dubious on its face, and a close look at Dr. Mazumdar's selection process and "news" confirms that doubt.

As discussed in more detail below and in Plaintiff's opposing expert report, Dr. Mazumdar included numerous dates that should have been excluded by his own description of his procedure, including "stale" (duplicate) announcements of the same information, and information that was "obviously not value relevant". Dr. Mazumdar's admittedly "subjective assessment" (Mazumdar Tr. 51:20-22 and 50:2-14) is not replicable and undermined by the inclusion of plainly immaterial news such as the monthly releases of identical corporate shareholding information, and announcements that the well-capitalized Vale made scheduled interest payments on debentures. Highlighting the questionable and unscientific review Dr. Mazumdar conducted is the fact that the *same review* of Form 6-Ks was conducted by Defendants' previous expert, Dr. Walter Torous, who found roughly *21% less 6-K "news" days* than did Dr. Mazumdar. *See infra* p. 21.

This misidentification of material news caused Dr. Mazumdar's event study and Ferillo-Dunbar-Tabak Test (or "FDT Test", a comparison of price movements on "news days" and "non-news days"), to find that many "news days" did not show significant price responses, leading to his incorrect conclusions that the markets for Vale Securities were inefficient. But "[o]ne would generally not expect any price impact following events that did not reveal any new information, meaning that an absence of significant price impact for some of the dates in question was unsurprising and not probative of anything." *In re Allergan PLC Secs. Litig.*, No. 18-cv-12089, 2021 WL 4077942, at *13 (S.D.N.Y. Sept. 8, 2021).

In short, the Mazumdar Report conclusions are simply wrong. Plaintiff retained Dr. David Tabak, one of the authors of the FDT Test, to re-run the test with a proper, objective identification of news. Dr. Tabak's results found strong evidence of market efficiency. Dr. Tabak used "content analysis" to identify material news and assess price response. This method recognizes that material news tends to be reported more than immaterial news (by additional news sources or repetitions in the same sources). *See* Ex. A (Rebuttal Expert Report of David I. Tabak, Ph.D.) at ¶ 41 n.33.[2] Thus, the number of news stories on a given day is used as a proxy for the materiality of the news. *Id*. Magistrate Judge Bulsara cited Dr. Tabak's work in content analysis approvingly in the R&R on class certification, stating "[i]t is possible to conduct objective content-based analyses of news reports." ECF No. 110 at 28 n.17.[3]

When Dr. Tabak ran the FDT Tests for Vale ADS and Vale Notes using objectively selected news dates, he found all but one of the Vale Notes responded to material news, demonstrating market efficiency. Tabak Rep. ¶¶ 46-47, 58. Thus, not only does Defendants' unreliable analysis fail to provide direct evidence of inefficiency, but a corrected version of the same tests provides further evidence of ***efficiency***.

Additionally, considering Vale's significant position in the iron ore industry as one of the top global producers, Dr. Tabak analyzed whether Vale earnings announcements impacted the industry indices used as explanatory variables in the Mazumdar Report event studies and FDT Tests, which would contaminate the results. Tabak Rep. ¶¶ 35-36. He found sufficient evidence of impact to "discount, if not place no reliance, on FDT Tests and event studies of Vale's earnings announcements" in the Mazumdar Report. *Id*. ¶ 38.

---

[2] All references to "Ex. __" are to exhibits to the Declaration of Frederic S. Fox in Support of Plaintiff's Opposition to Defendants' Motion for Class Decertification, submitted

[3] *See id*. citing David Tabak, *Making Assessments About Materiality Less Subjective Through The Use of Content Analysis*, NERA Economic Consulting (March 13, 2007).

For these reasons and as further explained below, none of Defendants' new evidence is sufficient to override the overwhelming evidence of market efficiency for Vale Securities or to justify the Court's reexamination of the issue at this juncture. Because the weight of the evidence continues to support the finding that Vale Securities' markets are efficient, Defendants' motion should be denied.

## II.    BACKGROUND

### A.    Class Certification Was Granted Based on Overwhelming Indirect Evidence of Market Efficiency

With its motion for class certification, Plaintiff submitted evidence that every element of Fed. R. Civ. P. 23(a) and 23(b)(3) was established with substantial support. To satisfy predominance and entitlement to the *Basic* presumption of reliance, Plaintiff submitted the expert report of Professor Steven P. Feinstein, PhD, CFA, demonstrating that Vale Securities trade in efficient markets. ECF No. 97-2. Vale Securities trade on the NYSE with market capitalizations in the top ten percent of all companies listed on U.S. exchanges and are widely followed by analysts and news outlets. These facts are encapsulated in Plaintiff's evidence on the indirect *Cammer* factors (one through four) and *Krogman* factors (one through three) in support of market efficiency. Additionally, Dr. Feinstein conducted event studies to provide direct evidence under *Cammer* factor five that the markets for Vale Securities were efficient because share prices responded significantly to new, material news. ECF. No. 97-2 at 52-54 (ADS); 81-82 (notes).

In opposition, Defendants argued that Plaintiff's evidence of market efficiency was insufficient. Although they conceded that all indirect factors supported efficiency for Vale ADS, they claimed that the indirect factors alone were not enough because Dr. Feinstein's event study provided some evidence of inefficiency. They also argued that some indirect factors were not met for some Vale Notes. In support of their arguments, they submitted an expert report by Dr. Walter

6

Torous. Regarding the direct evidence provided by Dr. Feinstein's event study, Dr. Torous argued that a lack of a significant price reaction on some dates, such as earnings announcements, "suggested inefficiency." However, Defendants did not ask Dr. Torous to conduct any event studies of his own, and in his deposition, he testified that "evaluating whether the market for Vale ADRs or notes was inefficient or not was not a task that I was assigned, so that was not something that I investigated in this report." ECF No. 101-3 (Torous Dep. at 23:7-17). At oral argument on Plaintiff's motion, defense counsel likewise argued that "[i]t's not Dr. Torous' burden to show [market inefficiency], but plaintiffs put forward an expert that actually demonstrated market inefficiency[.]" ECF No. 110 at 19.

In reply, Plaintiff countered that the lack of significant price movements on the dates identified by Dr. Torous was consistent with an efficient market because the corresponding news was either expected, immaterial, or contained offsetting positive and negative information. ECF No. 101 at 10; see also, ECF No. 97-2 at 54-65.

On January 11, 2022, Magistrate Judge Bulsara issued the R&R certifying the Class. ECF No. 110. He conducted a thorough, holistic review of the evidence regarding market efficiency, and found that the indirect evidence alone was more than sufficient to demonstrate efficiency for all Vale Securities (*id*. at 17 ("…the evidence is so conclusive and undisputed, the Court can and does find that the market for Vale ADSs was efficient during the class period…"); at 39 ("…the weight of the indirect evidence under *Krogman* and the first four *Cammer* factors, which tip in favor of efficiency, suggest that Vale Notes, too, traded in an efficient market.")). Magistrate Judge Bulsara also scrutinized the direct evidence under *Cammer* factor five, but determined it was inconclusive because, despite purported "problems with the direct evidence proffered by

[Plaintiff,] Defendants' rebuttal does not offer a comparative study that suggests the market for Vale ADSs was inefficient." *Id*. at 32.

### B. Judge Dearie Adopted the R&R Certifying the Class

Defendants objected to the R&R, claiming it committed multiple "material errors." ECF No. 111. Relevant here, they argued that *Waggoner* did not permit a finding of market efficiency if: (1) all seven indirect factors strongly support efficiency but there is some direct evidence cutting the other way, or (2) less than all seven indirect factors support market efficiency of bonds. *Id.* at 1-2. Plaintiff countered these arguments in an opposing brief filed on February 8, 2022 (ECF No. 112) and Defendants replied on February 15, 2022 (ECF No. 114).

On March 31, 2022, Judge Dearie, on *de novo* review, found Defendants' objections were without merit and entered the R&R in full. ECF No. 116. Regarding the finding of market efficiency for Vale ADS, Judge Dearie agreed that "[t]his conclusion is compelled by the strength of the seven unrebutted indirect factors alone." *Id*. at 7. Judge Dearie noted the strong similarity of the facts here to those in *Waggoner*, stating:

> Defendants' purported evidence of inefficiency is their only logical argument for distinguishing the facts here from *Waggoner*, in which the Second Circuit affirmed a finding of market efficiency without direct evidence when, as here, "[a]ll seven of the indirect factors . . . weighed so clearly in favor of concluding that the market . . . was efficient that the Defendants did not even challenge them."

*Id*. at 6-7. Regarding Defendants' argument about purported evidence of inefficiency, Judge Dearie "recognize[d] that portions of the Torous Report do note that the ADSs behaved inefficiently on certain dates based on certain tests" but found "Defendants' argument is overblown." *Id*. at 7.

Similarly, for Vale Notes, Judge Dearie found that "the indirect factors support a finding of efficiency: the Notes traded on the NYSE, had many underwriters including prominent investment banks, and had a high aggregate par value, larger than the total market capitalization of many public companies." *Id*. at 10. Judge Dearie noted that the *Cammer* and *Krogman* factors

are often modified when applied to bonds, and "as explained in *Petrobras*, the weight of the 'indirect evidence is particularly valuable in situations where direct evidence does *not* entirely resolve the question.'" *Id*. at 9 (quoting *In re Petrobras Sec.*, 862 F.3d 250, 278 (2d Cir. 2017)).

### C. The Second Circuit Summarily Denied Defendants' Petition for an Appeal Under Rule 23(f)

On April 14, 2022, Defendants petitioned for an appeal pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, arguing that the lower court rulings represented a dramatic misinterpretation and expansion of *Waggoner*. This argument hinged on the weight attributed to their expert's opinions that Plaintiff's event studies did not prove market efficiency and purportedly provided evidence "suggesting" inefficiency due to the lack of statistically significant price movements on certain dates.

In opposition, Plaintiff submitted that Defendants were wrong on the facts and the law, and that the lower courts' rulings were consistent with *Waggoner* and numerous cases decided in its wake, finding market efficiency on the strength of the indirect factors. On September 7, 2022, the Second Circuit summarily denied Defendants' petition, finding an immediate appeal was not warranted. ECF No. 119.

### D. The Belated Mazumdar Report Changes Nothing

On June 27, 2023—long past all deadlines for merits expert reports—Defendants served Plaintiff with the Mazumdar Report and a motion for class decertification. The Mazumdar Report opines that the market for Vale Securities was inefficient based on event studies, FDT tests, and serial correlation tests. It also opines that the indirect factors "provide little to no insight" regarding market efficiency, implying that the Second Circuit standard for proving efficiency is wrong.

As explained in the opposing report by Dr. Tabak, the Mazumdar analyses suffer from at least four fatal flaws: (1) errors in his classification of news events that substantially biased the

results against finding significance; (2) errors in his regression analyses for the Notes; (3) failure to consider the effect of Vale's announcements on the metals and mining industry, which contaminates the abnormal returns of earnings announcements; and (4) failure to consider whether any serial correlation was associated with *profitable* trading strategies, which is necessary in order to demonstrate market inefficiency. Among other things, Dr. Tabak explained that the "[m]isclassifications of news and non-news days (i.e., either misclassifying a date with material news as a non-news day or misclassifying a day without material news as a news day) will tend to bias the FDT Test *against* a finding of market efficiency." Tabak Rep. ¶ 44. "Given these and other errors in the Mazumdar Report's selection of news stories, all of the analyses in the Mazumdar report that rely on its selection of news events are unreliable." *Id*. at ¶ 34.

To objectively identify material news in the Class Period, Dr. Tabak applied Dr. Mazumdar's search term ("Vale") to *Dow Jones Newswires* (all of which have time stamps) and sorted the news days by the number of stories on each date. He looked at the top 50%, 25%, and 10% of days with the highest number of news stories, as dates when more sources report on news or the same source issues multiple stories about news would be a proxy for more material news. Finally, he ran the FDT Test on (1) Vale earnings dates, (2) the Mazumdar dates, including the full set of dates, the top 50%, the top 25%, and the top 10% of dates, and (3) the *Dow Jones Newswire* dates, again including the full set of dates, the top 50%, the top 25%, and the top 10% of dates. He found that all Vale Securities except Note 1 responded significantly to the material news dates (the top 25% and 10%). Specifically, there was strong evidence of market efficiency for Vale ADSs and Notes 2, 3, 5, and 6, and moderate evidence of efficiency for Notes 4 and 7.

Additionally, regarding Dr. Mazumdar's analysis of Vale ADS's response to earnings announcements, Dr. Tabak analyzed whether Vale earnings announcements impacted the relevant

industry indices, which could contaminate the results of Dr. Mazumdar's findings. Dr. Tabak did find evidence of such effects, which warrants discounting, if not wholly disregarding, the Mazumdar Report findings regarding earnings announcements. Tabak Rep. ¶¶ 35-38.

Dr. Tabak also identified numerous obvious errors in the Mazumdar Notes regressions that "call[] into question whether one should rely on Dr. Mazumdar's other decisions . . . that should depend on a facility with understanding and interpreting event-study analyses." Tabak Rep. ¶ 15

Finally, regarding serial correlation, Dr. Tabak observed that the Mazumdar Report tests are not complete and do not demonstrate market inefficiency because they fail to consider whether any serial correlation was associated with profitable trading strategies—a necessary condition to evidencing market inefficiency.

## III.    APPLICABLE LEGAL STANDARDS

### A.    Law of the Case Doctrine and Class Certification

The law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case absent "cogent" and "compelling" reasons such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Tenzer,* 213 F.3d 34, 39 (2d Cir. 2000). Thus, even though Federal Rule of Civil Procedure 23(c)(1)(C) allows a class certification order to be "altered or amended before final judgment," a court "may not disturb its prior findings absent some significant intervening event or a showing of compelling reasons to reexamine the question." *Laurent*, 565 F. Supp. 3d at 548; *see also*, *Jin*, 990 F.3d at 262 n.18 ("district courts in this Circuit . . . have held that the defendant must show a sufficient change in law or circumstances" on a motion to decertify). Absent such a showing, "the factual underpinnings of a court's prior

11

certification order are deemed to be law of the case." *Stinson v. City of New York*, No. 10 CIV. 4228 RWS, 2014 WL 4742231, at \*2 (S.D.N.Y. Sept. 23, 2014).[4]

"A defendant seeking to decertify a class bear[s] a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class." *Gulino v. Bd. of Educ.*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012). "Decertification is an 'extreme step,' particularly at a late stage in the litigation, 'where a potentially proper class exists and can easily be created.'" *Id.* (quoting *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984)).

**B.      Market Efficiency and Defendants' Burden to Rebut the Presumption of Reliance**

*Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988) established a presumption of reliance that defendants may rebut by "rebut[ting] proof of the elements giving rise to the presumption[.]" To rebut the presumption, defendants "must demonstrate that the misrepresentations did not affect the stock's price by a preponderance of the evidence." *Waggoner*, 875 F.3d at 101. Defendants cannot prevail by "simply producing *some* evidence of market inefficiency, but not demonstrating its inefficiency to the district court." *Id.* at 100. The Supreme Court explicitly endorsed *Waggoner*, affirming that "the defendant must carry that burden by a preponderance of the evidence." *Goldman Sachs*, 141 S. Ct. at 1963.

To determine whether the market for an individual security is efficient, courts in the Second Circuit assess the five factors in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) and three factors in *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001), which are, respectively: (1) the stock's average trading volume; (2) the number of analysts that followed and reported on

---

[4] "[T]here is no requirement that the court alter its class-action order when the circumstances surrounding its initial determination change. The decision to amend a class-certification order is discretionary." Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.).

the stock; (3) the number of market makers; (4) eligibility to file an S-3 Registration Statement; and (5) the reaction of the stock price to unexpected news events; (6) the company's market capitalization; (7) the stock's float; and (8) the typical bid-ask spread. However, "[t]he *Cammer* and *Krogman* factors are simply tools to help district courts analyze market efficiency" and "certain factors will be more helpful than others in assessing particular securities and particular markets for efficiency." *Waggoner*, 875 F.3d at 98.

"[T]he Second Circuit has explained that *Cammer* 5 is least important when the indirect *Cammer* factors clearly point towards a conclusion of market efficiency." *In re Teva Sec. Litig.*, No. 3:17-cv-558 (SRU), 2021 WL 872156, at *9 (D. Conn. Mar. 9, 2021); *see also*, *In re Petrobras*, 862 F.3d at 278 (rejecting argument that proof of *Cammer* 5 was required: "Defendants are attempting to relabel a *sufficient* condition as a *necessary* one."). When the indirect factors "strongly support a presumption of market efficiency" this "obviates the need to examine the empirical evidence necessary to evaluate the fifth Cammer factor." *In re Allergan*, 2021 WL 4077942, at *10; *see also*, *In re NIO, Inc. Sec. Litig.*, No. 19-CV-1424-NGG-JRC, 2023 WL 5048615, at *13 (E.D.N.Y. Aug. 8, 2023) (Garaufis, J.) ("As the seven indirect factors addressed above all weigh in their favor—some significantly so—Plaintiffs have demonstrated an efficient market, even without considering the event study."); *In re Signet Jewelers Ltd. Secs. Litig.*, No. 16-cv-6728, 2019 WL 3001084, at *13 (S.D.N.Y. July 10, 2019) (where the indirect *Cammer* and *Krogman* factors "point toward market efficiency, a court can dispose of *Cammer's* fifth factor completely").

It is a rare case in which a defendant will be able to prove market inefficiency by a preponderance of the evidence: "The defendant's burden of persuasion will have bite only when the court finds the evidence in equipoise—*a situation that should rarely arise*." *Goldman Sachs*,

141 S. Ct. at 1963 (emphasis added). The caselaw bears this out. *See Waggoner*, 875 F.3d at 104 (defendants failed to rebut the presumption with evidence that alleged misrepresentations did not cause statistically-significant price movements); *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, No. 3:16-CV-2127 (AWT), 2023 WL 2932485, at *12 (D. Conn. Apr. 13, 2023) (presumption not rebutted because the "lack of statistical significance does not prove an absence of price impact"); *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 55 (S.D.N.Y. 2019) (evidence of serial correlation insufficient to rebut presumption of reliance); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 95 (S.D.N.Y. 2015) (presumption not rebutted because "[t]he failure of an event study to find price movement does not prove lack of price impact with scientific certainty").

## IV.   ARGUMENT

### A.   Defendants Have Provided No Basis For Reopening The Court's Finding of Market Efficiency

Defendants have not presented any "compelling reason" or "significant new evidence, not earlier obtainable in the exercise of due diligence" to justify an exception to the law of the case doctrine. *United States v. Trabelsi*, 28 F.4th 1291, 1298 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 345 (2022). The only "new" evidence they have provided is an expert report that admittedly could have been submitted during class certification briefing had Defendants opted to do so. As Dr. Mazumdar acknowledged in his deposition, all the facts upon which his analyses are based existed when the opposition to class certification was briefed by Defendants in April 2021, and if asked, he could have performed the exact same event study then. Mazumdar Tr. 98:19-102:14. Defendants have cited no case, and Plaintiff is aware of none, where class certification was reconsidered on such a thin basis as that offered here. *See Fero v. Excellus Health Plan, Inc.*, 304 F. Supp. 3d 333, 343 (W.D.N.Y. 2018) ("[W]here . . . a party seeks to avoid the law of the case by

reopening factual issues based upon new evidence" the party must show that it was "justifiably ignorant of [the evidence] despite due diligence . . . .").

To the contrary, courts routinely reject efforts to decertify a class where defendants are merely rehashing arguments they previously made. *See, e.g.*, *Betances v. Fischer*, 403 F. Supp. 3d 212, 238 (S.D.N.Y. 2019) (denying motion to decertify where "Defendants invoke the same argument they made in the previous motion to decertify the class[.]"); *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 172 (S.D.N.Y. 2011) (denying motion for reconsideration of class certification where "the arguments and the analysis on this motion are essentially identical" to class certification arguments which "only serves to highlight the futility of Defendant's motion[.]"); *Wilder v. Bernstein*, 645 F. Supp. 1292, 1311–12 (S.D.N.Y. 1986), *aff'd,* 848 F.2d 1338 (2d Cir. 1988) (rejecting renewed challenge to class representatives where "defendants simply recast the arguments they originally made against class certification" and "[t]he Court's response to those arguments . . . holds true today.").

The Court should decline Defendants' invitation to reconsider Judge Dearie's class certification ruling because it is an unwarranted break from the law of the case. As then-Judge Gorsuch has explained, the law of the case doctrine is "a pretty important thing" because:

> Without something like it, an adverse judicial decision would become little more than an invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if at first you don't succeed, just try again. A system like that would reduce the incentive for parties to put their best effort into their initial submissions on an issue, waste judicial resources, and introduce even more delay into the resolution of lawsuits that today often already take long enough to resolve. All of which would gradually undermine ... public confidence in the judiciary.

*Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016); *see also*, *United States v. Agofsky*, 516 F.3d 280, 283 (5th Cir. 2008) ("Without [the law of the case] doctrine, cases would end only when obstinate litigants tire of re-asserting the same arguments over and over

15

again."). The Second Circuit has likewise noted that the doctrine is especially important when, as here, "one judge or court is asked to consider the ruling of a different judge or court." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005).

Here, class certification was granted by Judge Dearie based on the strength of the indirect factors demonstrating market efficiency, notwithstanding Defendants' arguments that there was "some evidence of inefficiency" in the direct evidence. *Waggoner*, 875 F.3d at 100. There has been no change in the indirect evidence upon which class certification was based, and Defendants' belated submission of additional expert evidence that is fundamentally flawed, but at most, revives their contention of some direct evidence of inefficiency does not change the analysis or warrant rehearing. *See United States v. Tenzer*, 213 F.3d 34, 40–41 (2d Cir. 2000) (concluding "that the new evidence does not warrant reconsideration of this court's previous decision in this case" because it did not undermine that decision); *In re City of Philadelphia Litig.*, 158 F.3d 711, 720 (3d Cir. 1998) (rejecting renewed challenge to the sufficiency of evidence where the new evidence was purportedly stronger, but was not the basis of the panel's decision); *LPD New York, LLC. v. Adidas Am., Inc.,* No. 15-CV-6360-MKB-RLM, 2020 WL 9886308, at *7 (E.D.N.Y. Mar. 31, 2020) (Brodie, J.), *on reconsideration in part*, 2020 WL 9816008 (E.D.N.Y. July 24, 2020) (rejecting request to break from law of the case where new declaration was based on evidence the party already possessed).

The cases cited by Defendants are inapposite. Defendants rely heavily on *Jin*, 990 F.3d 251 to argue that class certification should be reconsidered (Defs.' Br. at 3, 4, 10, 14), but that case concerned the district court's *sua sponte* decertification (based on inadequate representation of counsel). The *Jin* Court expressly stated that this was a distinct circumstance from a motion to decertify: "In contrast to when a district court *sua sponte* decertifies a class, when a defendant

16

moves to decertify, the issue of what the defendant must show is a burden-of-proof issue." 990 F.3d at 262, n.18. It further noted that, "[l]ike some district courts in this Circuit, other courts have held that the defendant must show a sufficient change in law or circumstances." *Id*. (citing cases). Thus, *Jin* does not support Defendants' argument that reconsideration of certification is required on their motion here, much less that decertification is appropriate.

Similarly, *Mazzei v. Money Store,* 829 F.3d 260 (2d Cir. 2016) and *In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269 (S.D.N.Y. 2022) involved situations where the plaintiffs either lost an element at trial or abandoned a claim that was critical to the commonality ruling supporting class certification. In summary, none of the cases cited by Defendants support reopening class certification based on evidence that a party could have submitted previously.

**B.      Defendants' Flawed Report Fails to Rebut the Evidence of Market Efficiency for Vale Securities and Presumption of Reliance Under *Basic***

Defendants' flawed Mazumdar Report fails to prove by a preponderance of the evidence that the markets for Vale Securities were inefficient for at least three reasons: (1) it does not challenge the Court's findings on the indirect factors, which was the basis of finding market efficiency; (2) its findings of inefficiency are unreliable and controverted by valid scientific tests; and (3) its analyses mirror tests that were previously found insufficient to demonstrate inefficiency.

### *i.      The Indirect Factors Demonstrate Market Efficiency*

The Mazumdar Report does not challenge the indirect factors other than to reiterate an argument asserted by Defendants' previous expert that the indirect factors alone do not establish market efficiency according to economics literature. *Compare* Mazumdar Rep. at ¶¶ 85-92 to Torous Rep. (ECF No. 107-1) at ¶¶ 23-30. That argument is contrary to the binding law of the Second Circuit and was properly rejected during class certification briefing. *See* ECF No. 110 at

17

20, n.14. Just as in its previous iteration, "this weak assertion cites to nothing about Vale" and is "decidedly unhelpful." *Id*. As Magistrate Judge Bulsara explained:

> Besides being inconsistent with the legal framework for using these factors, which requires a holistic analysis that does not prioritize direct evidence over indirect evidence . . . using a few examples to illustrate a larger point demonstrates, at best, that there are exceptions to the general rule. But without evidence or discussion about the security in question, there is no reason to think that Vale ADSs fit within that exception. And in any event, an economic opinion-which prioritizes direct over indirect evidence-that is [at] odds with the law is of little assistance.

*Id*. Moreover, as described in the Feinstein Report in support of class certification (ECF No. 97-2 at ¶¶ 60-71), there is ample support in the finance literature establishing that the *Cammer* and *Krogman* factors are "indicators of stock price reactivity to information and therefore informational market efficiency." The indirect "*Cammer* factors focus on elements that would logically appear in, or contribute to, an efficient securities market." *In re Petrobras*, 862 F.3d at 278. The Mazumdar Report therefore fails to diminish the strength of the indirect evidence supporting market efficiency.

That evidence provides compelling proof of market efficiency here. For the ADSs, all seven indirect factors so overwhelmingly support market efficiency that, just as in *Waggoner*, Defendants did not even contest them. Similarly, for Vale Notes, Judge Dearie found that five of the seven indirect factors are met and "support a finding of efficiency: the Notes traded on the NYSE, had many underwriters including prominent investment banks, and had a high aggregate par value, larger than the total market capitalization of many public companies." ECF No. 116 at 10. Given the strength of the indirect evidence supporting market efficiency for the Vale ADSs and Notes, this Court "can dispose of *Cammer's* fifth factor completely." *In re Signet Jewelers*, 2019 WL 3001084, at *13.

Further, Defendants' argument that direct evidence under *Cammer* five is more probative of market efficiency than the indirect evidence is not only wrong, but backwards. "Defendants'

18

proposed evidentiary hierarchy unreasonably discounts the potential probative value of indirect evidence of market efficiency." *In re Petrobras Sec.*, 862 F.3d at 278. It also substantially exaggerates the ability of event studies to accurately measure a price response in the context of securities litigation. The *Petrobras* Court observed that "[e]vent studies offer the seductive promise of hard numbers and dispassionate truth, but methodological constraints limit their utility in the context of single-firm analyses." 862 F.3d at 278. It explained:

> Notably, small sample sizes may limit statistical power, meaning that only very large-impact events will be detectable. In addition, it can be extremely difficult to isolate the price impact of any one piece of information in the presence of confounding factors, such as other simultaneously released news about the company, the industry, or the geographic region.

*Id.* at 278–79 (*citing* Alon Brav & J.B. Heaton, *Event Studies in Securities Litigation: Low Power, Confounding Effects, and Bias*, 93 Wash. U. L. Rev. 583 (2015)).[5] Due to these constraints, an event study may be a ***less*** reliable indicator of market efficiency than the indirect factors.

### ii.   The Mazumdar Report Conclusions Are Unreliable; Properly Designed FDT Tests Support Market Efficiency

The Mazumdar Report fails to provide evidence of inefficiency due to critical flaws in the design and implementation of its studies of price response to "news" and earnings and production announcements, and failure to fully implement the serial correlation test, which render its conclusions unreliable. By contrast, properly designed FDT Tests by Dr. Tabak provide further evidence of market efficiency.

---

[5] As Brav and Heaton explain:

> [T]he methodology that litigants use in court differs from the methodology used in academic research. In particular, securities litigation event studies are almost always single-firm event studies . . . that examine the price moves of the security of the single firm involved in the litigation, while almost all academic research event studies are multi-firm event studies . . . that examine large samples of securities from multiple firms. Importing a methodology that economists developed for use with multiple firms into a single-firm context creates three substantial difficulties: low statistical power, confounding effects, and bias.

Alon Brav & J.B. Heaton, *Event Studies in Securities Litigation: Low Power, Confounding Effects, and Bias*, 93 Wash. U.L. Rev. 583, 586 (2015).

*Flaws in the selection of "value-relevant" news*. Dr. Mazumdar admittedly employed a subjective approach of identifying value-relevant news, in which he reviewed a set of news concerning "Vale" and Form 6-Ks and eliminated only those that were "stale" (duplicative) or, in his opinion, "obviously not value relevant." Mazumdar Tr. 51:20-22 and 50:2-14. However, the "news" Dr. Mazumdar selected fails to meet his own purported criteria, as it includes many duplicate announcements, such as articles on at least three separate days about Vale selling its cobalt business which all contained the same information (Mazumdar Rep. at B-30 (lines 235, 242, 243; *see also*, lines 246, 250)), and a Moody's rating announcement plus an article the following day commenting on the announcement (*id*. at OE1-15 (July 23 and July 24, 2018 entries). *See also*, Tabak Rep. at ¶¶ 26-30. In his deposition, Dr. Mazumdar could not explain why he included any of this stale "news" in his analysis. *See* Mazumdar Tr. at 186:3-189:21 (testifying he did not recall why duplicative articles were included and speculating that there may have been additional information in the later publications).

Moreover, for Vale's Form 6-Ks, Dr. Mazumdar "rel[ied] on the company's judgment and the SEC's guidelines to deem th[is] information to be material to start with." Mazumdar Tr. at 52:24-53:3. But Dr. Mazumdar's reliance was clearly misplaced, as even he identified a total of 94 duplicative and obviously immaterial 6-Ks concerning "administrative matters," like shareholder meeting announcements. *Id*. at 53:4-13. Although he removed those two types of immaterial 6-Ks from his final set, he nevertheless retained numerous other plainly immaterial ones, such as many 6-Ks confirming that Vale made a scheduled interest payment,[6] and several more that merely reiterated the same shareholding information for management month after month.

---

[6] "[I]t is hard to see how one classifies the payment of scheduled debt by a well-capitalized company as a news day for an FDT Test . . . without introducing a bias against a finding of price response to news (i.e., it is likely that such a 'news day' would, in fact, not be associated with a statistically significant price movement." Tabak Rep. ¶ 31.

Underlining the unreliability of his highly subjective review is the fact that Defendants' previous expert, Dr. Torous, conducted the exact same review of Vale's 6-Ks and found there were new, material 6-Ks on 122 trading days of the period (*see* ECF No. 107-1 (Torous Rebuttal) at ¶¶ 57-58), compared to Dr. Mazumdar's finding of 156 trading days with such filings (Mazumdar Rep. ¶ 58)—*a difference of more than 21%*. At his deposition, Dr. Mazumdar acknowledged "it's possible" that he mischaracterized days as value-relevant news days when they should have been non-news days. Mazumdar Tr. at 113:4-13.

Additionally, Dr. Mazumdar used news sources without time stamps but did not attempt to determine whether the news was published before the close of trading (which changes the date on which you would expect a price reaction). Mazumdar Tr. at 142:15-20; *see also, id*. at 82:2-9 (testifying he did not check whether news commentary on analyst reports was released the same day as the analyst reports); *id*. at 138:5-9 (he did not look at any underlying news sources commented on by the primary news aggregator he used). Such a sloppy and incomplete process of identifying the date when news was first released to the market "discredit[s] the expert's price impact analysis insofar as it was studying the wrong dates." *In re Allergan*, 2021 WL 4077942, at *13 (finding defense expert "misidentified the date of the first public release of at least four of the fifteen sources he analyzed for his report").

Dr. Mazumdar's misclassifications of news and non-news days biases his FDT Tests *against* finding a statistically significant price response and results in incorrect findings of market inefficiency for all Vale Securities. Tabak Rep. ¶ 44. "Given these and other errors in the Mazumdar Report's selection of news stories, all of the analyses in the Mazumdar report that rely on its selection of news events are unreliable." *Id*. at ¶ 34. As Dr. Tabak demonstrated, when material news was properly selected using objective criteria, corrected FDT Tests found strong

evidence of market efficiency for Vale ADSs and Notes 2, 3, 5, and 6, and moderate evidence of efficiency for Notes 4 and 7. *Id*. at ¶¶ 46-47, 58. Accordingly, Dr. Mazumdar's analyses that depend on his identification of "value-relevant" news should be entirely discarded. *See Brown v. China Integrated Energy Inc.*, No. CV-1102559, 2014 WL 12576643, at *7 (C.D. Cal. Aug. 4, 2014) (discounting and excluding expert whose criteria for inclusion was whether news was "of the import necessary to change the price" of security).

*Errors in Return Calculations for the Mazumdar Regression.* Dr. Tabak identified numerous obvious errors that were "immediately apparent" in Dr. Mazumdar's regression analyses for all seven of the Vale Notes. Tabak Rep. ¶ 11. Dr. Mazumdar (or his staff) sloppily miscopied codes and information in several places in these regressions, rendering wrong results. *Id*. at ¶¶ 11-16. After being confronted in his deposition with many of the errors in the regressions, he submitted corrected exhibits in which every single abnormal return and t-statistic was reprinted in red because they were all initially incorrect. *Id*. at ¶ 16. "This failure to even recognize evidence that indicates an almost-certain error calls into question whether one should rely on Dr. Mazumdar's other decisions . . . that should depend on a facility with understanding and interpreting event-study analyses." Tabak Rep. ¶ 15.[7]

*Failure to Consider Impact of Vale Earnings Announcements on the Metals and Mining Industry.* Because Vale is one of the largest metals and mining companies in the world based on market capitalization (according to its filings), announcements by Vale may reveal information that affects investors' views of the metals and mining industry. Tabak Rep. ¶ 35. Therefore, a

---

[7] Similarly, "[b]oth the Mazumdar Report and the Corrected Mazumdar Exhibits contain obvious errors in determining the abnormal returns for the Feinstein Regression." Tabak Rep. ¶ 18. These errors concerned all seven of the Vale Notes on the four dates initially alleged by Plaintiff as corrective disclosures. *Id*. at ¶¶ 18, 20. Although two of these four dates had the largest abnormal returns over the entire Class Period, Dr. Mazumdar listed the abnormal returns as 0.00%. "These inconsistent results are a substantial red flag" that Dr. Mazumdar missed. *Id*. at 18.

researcher must consider whether Vale's earnings statements impacted industry indices used as explanatory variables in event studies and FDT Tests—which Dr. Mazumdar did not do. *Id*. Dr. Tabak conducted analyses which ordered the movements of each industry index used in both the Mazumdar Report and Dr. Feinstein's market efficiency report from most negative to most positive and assigned a percentile rank to each movement based on this ordering. *Id.* at ¶ 36. He then looked at Vale earnings announcements and found that, based on the number of earnings announcements that occurred on days in the outer half of movements (top 25% or bottom 25%) and outer quintile (top 10% or bottom 10%), Vale earnings announcements "tended to affect the industry." *Id*. at ¶ 37. This "raises sufficient questions to again discount, if not place no reliance, on FDT Tests and event studies of Vale's earnings announcements that use only the Mazumdar Industry Index . . . to account for industry effects." *Id*. at ¶ 38.

*Incomplete Serial Correlation Test*. Dr. Mazumdar found serial correlation for one Vale note, Note 1, but his finding is insufficient to rebut market efficiency. As Dr. Tabak explained, to show inefficiency, a researcher must not only show serial correlation, but that the serial correlation was associated with *profitable* trading strategies. Tabak Rep. ¶ 50. Even the academic literature that Dr. Mazumdar relies on—Erenburg *et al.* (2011)—makes it clear that in investigating potential market inefficiency through an analysis of serial correlation, it is looking at whether any serial correlation is profitable after accounting for trading costs. *Id*. at ¶¶ 50-51. The Mazumdar Report does not address whether any serial correlation was associated with profitable trading strategies, and thus, it does not demonstrate Note 1 traded inefficiently. *See Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 55 (S.D.N.Y. 2019) (finding serial correlation alone insufficient to meet defendant's burden of persuasion to rebut the *Basic* presumption); *Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2020 WL 3548379, at *22 (E.D. Tenn. June 29, 2020) (serial

correlation did not establish inefficiency because "there was no consistent pattern that would suggest an arbitrage opportunity"); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 615 (C.D. Cal. 2009) (". . . the presence of serial correlation is not itself determinative of inefficiency").[8]

For these reasons, the Mazumdar Report exemplifies the adage of "garbage in, garbage out," and fails to provide any evidence that Vale Securities' markets were inefficient.

### iii.        *The Mazumdar Report Presents Substantially Similar Evidence to that Previously Found Insufficient by Judge Dearie*

Assuming, *arguendo*, that the Court accepts that the Mazumdar Report provides some evidence of inefficiency, it is substantially the same evidence that was found insufficient by Judge Dearie. Specifically, Defendants previously submitted an expert report by Dr. Torous, who ran "collective event studies" on two sets of dates in Plaintiff's regression analysis: (1) all earnings and production announcements; and (2) Vale Form 6-Ks containing "new, material news." ECF No. 111 at 7. These are the same analyses that Dr. Mazumdar performed with his own regression rather than Plaintiff's. Mazumdar Rep. ¶ 64 (describing event studies of earnings announcements, production announcements, and news). Dr. Torous found that Vale ADS did not respond in a statistically significant manner to either set of news, which Defendants described as "the very definition of market inefficiency." ECF No. 111 at 7. In Judge Dearie's ruling adopting the R&R certifying the class, he acknowledged "that portions of the Torous Report do note that the ADSs behaved inefficiently on certain dates based on certain tests" but nevertheless agreed with Magistrate Judge Bulsara that the conclusion of market efficiency "is compelled by the strength of

---

[8] Dr. Mazumdar also claims to have found some evidence of inefficiency based on serial correlation in one test (out of two tests) concerning Note 7. Mazumdar Rep. ¶ 48 n.53. This is incorrect for the same reason as for Note 1: he did not consider whether there were any profitable trading strategies associated with serial correlation for Note 7. Additionally, combining the two Note 7 tests demonstrates that there was no statistically significant serial correlation. Tabak Rep. ¶¶ 55-56.

the seven unrebutted indirect factors alone." ECF No. 116 at 7; *id.* at 10 ("Here, the indirect factors support a finding of efficiency . . . . These facts satisfy the Court that the Notes traded in an efficient market, even in the face of some countervailing indicators of inefficiency."). And the Mazumdar Report still does not rebut those seven indirect factors.

Moreover, Plaintiff has now added direct evidence in the form of Dr. Tabak's FDT Tests, which further bolster its proof of market efficiency for both Vale ADSs and Vale Notes. Thus, at most, there is competing direct evidence regarding market efficiency and unrefuted indirect evidence supporting efficiency; the weight of this evidence still supports market efficiency. "[A]t this stage of the proceedings it is the Defendants' burden to sever the link between the price impact and the misrepresentation, and the competing record before the court fails to do so." *In re NIO*, 2023 WL 5048615, at *16. For these reasons, the Court should find that "even *if* there was convincing evidence of an absence of price impact . . . (which there is not), that by itself would still be insufficient to rebut the *Basic* presumption." *In re Allergan*, 2021 WL 4077942, at *13; *accord, Waggoner* at 104 (finding lack of statistically-significant price movements on alleged misrepresentation dates insufficient to rebut the presumption of reliance); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 Civ. 3461 (PAC), 2018 WL 3854757, at *4 (S.D.N.Y. Aug. 14, 2018) ("[t]he absence of price movement [ ] in and of itself, is not sufficient to sever the link" and rebut the presumption of reliance).

## V.   CONCLUSION

For all of the foregoing reasons, Defendants' motion to decertify the Class should be denied.

Dated: October 18, 2023                          KAPLAN FOX & KILSHEIMER LLP

                                                 /s/ *Frederic S. Fox*
                                                 Frederic S. Fox
                                                 Donald R. Hall

Melinda Campbell
Aaron Schwartz
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the Class*

26