# Attachment 3

Hon. Jesse M. Furman
United States District Court, Southern District of New York
40 Foley Square
New York, New York 10007

Re:     The City of Philadelphia v. Bank of Am. Corp., 19-cv-1608 (JMF)

Dear Judge Furman:

We write in response to Defendants' December 22nd letter, Dkt 493 ("Ltr."). This Court has certified a class that includes state entities, directed Plaintiffs to serve notice, and approved (with Defendants' support) a notice plan. But now Defendants seek to block the issuance of notice to the state entities in the Court-certified class, based on a meritless argument about "sovereign immunity" that Defendants not only failed to raise before, but actually previously characterized as irrelevant to the class makeup. The Court should deny this untimely, meritless request in full.

**A.      *The Court has already found that the notice program adequately addresses the supposed sovereign-immunity issue.*** Defendants now argue that the Court-approved notice program might lead to "confusion." Ltr. at 2. But just weeks ago Defendants opposed a third party who made this same claim, including on sovereign immunity grounds. *See* Dkts. 470 at 1, 478 at 2. Defendants argued that (1) there was no risk of confusion because recipients of the notice were "perfectly capable of understanding the consequences" of this action and (2) now is not the proper time for the resolution of the preclusive effect of this action vis-à-vis any particular class member. Dkt. 471. The Court effectively agreed and affirmed the notice plan— with one modification proposed by Plaintiffs to have the notice state that failure to opt out "may" impair future rights. Dkt. 479 at 2. That was, and still is, an accurate statement.

Defendants' last-minute bid to derail the notice program relies on the same speculative and hypothetical risks that Defendants just argued do not need to be resolved now. Defendants surmise that one day there may be a judgment that might be adverse to the interests of some state class member who may claim exclusion from the class in some future proceeding. That theoretical possibility need not derail proceeding with the Court-approved notice plan now. Nor is this issue made any less theoretical by one state's citing sovereign immunity as one of a number of general objections to Defendants' document subpoenas. That state's discovery objections bear no connection to class notice or class membership and, in any event, are not before this Court—nor will they ever be, given that "top off" discovery is closed, *see* Dkt. 494.

Defendants suggest they were forced into Court by a refusal by Plaintiffs to confer. Not so. Plaintiffs repeatedly met and conferred with Defendants. Plaintiffs declared an impasse only after, despite numerous requests, Defendants refused to propose *any* specific changes to the notice materials. The only change Defendants would accept was the elimination of states from the class definition. This confirms that, in actuality, Defendants' letter has nothing to do with the notice program, and is merely a belated and improper effort to have this Court reconsider class certification based on arguments that were previously available to and rejected by Defendants.[1]

---

[1]  Defendants assert that indefinitely delaying the notice program would not "prejudice any party." Ltr. at 2. But this fails to meet the standards for reconsideration, which requires more than "no harm, no foul." *See* Dkt. 466 ¶ 13 (notice only to be modified for "good cause"). Defendants also ignore that the "general rule" is that "notice should issue swiftly after class certification" in order to protect absent class members. *Chaney v. Vermont Bread Co.*, 2022 WL 3443973, at *7 (D. Vt. Aug. 17, 2022); Wright & Miller, Fed. Prac. & Proc. Civ. § 1786.

**B.** ***Decertification is a drastic remedy, not a mechanism for Defendants to raise new or contradictory arguments.*** Defendants' bid to get another shot at opposing class certification based on "sovereign immunity" should be denied. After certifying a class, a court "may not disturb its prior findings absent some significant intervening event or a showing of compelling reasons to reexamine the question." *Mazzei v. Money Store*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015), *aff'd,* 829 F.3d 260 (2d Cir. 2016).[2] "Such a compelling reason includes an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 814074, at *18 (S.D.N.Y. Mar. 17, 2022). Absent such a showing, the "factual underpinnings of a court's prior certification order are deemed to be the law of the case." *Stinson v. City of New York*, 2014 WL 4742231, at *2 (S.D.N.Y. Sept. 23, 2014). None of Defendants' arguments satisfy this standard.

Defendants already extensively litigated the question of who should be members of this class, both at the certification stage and when previously opposing a request to modify the notice program to assure states they would be exempt from this Court's future orders. Whether this about-face was driven by ignorance of the law, or strategy, does not matter. Neither provide grounds for reconsideration or decertification. Defendants' alternative view would lead to nonsensical results, enabling defendants to repeatedly "requir[e] that a court and its adversary revisit an earlier decision . . . . without any showing whatsoever" and challenge certification ad seriatim. Newberg, Class Actions § 7:39; *Parish v. Sheriff of Cook Cnty.*, 2016 WL 1270400, at *4 (N.D. Ill. Mar. 31, 2016) (denying decertification motion where "Defendants failed to even mention this issue anywhere in their brief in opposition to class certification").

Citing *Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021), Defendants argue they do in fact get infinite "do-overs" on certification. But the court in *Jin* acted *sua sponte*, making clear it was not overruling the requirement that defendants must demonstrate a "sufficient change in law or circumstances" before bringing a decertification motion. *Id.* at 262 n. 17, 18. Defendants also cite *In re AXA Equitable Life Ins. Co. COI Litigation*, 2022 WL 3018104 (S.D.N.Y. July 29, 2022), but there the court merely found that the issue of "Article III standing" of the named plaintiff was not foreclosed on the specific facts of that case. There is no "Article III standing" dispute here; Article III is satisfied "so long as at least one named plaintiff" can demonstrate standing. *Hyland v. Navient Corp.*, 48 F.4th 110, 117 (2d Cir. 2022). Rather, the Eleventh Amendment at most limits a court's ability to resolve suits "commenced or prosecuted against" a state entity, which this case certainly is not. *See generally Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1153-54 (9th Cir. 2004) ("Eleventh Amendment immunity does not implicate a federal court's subject matter jurisdiction in any ordinary sense" and "should be treated as an affirmative defense.").[3]

For these reasons, the Court should deny Defendants' belated request to cut down the class, and the parties should proceed forthwith based on the Court-approved class definition. This would in

---

[2] *See also, e.g.*, *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016) (the "policy principles" underlying the "'law of the case' doctrine should inform decertification motions"); *Hendricks v. Total Quality Logistics, LLC*, 2023 WL 6217073, at *2 (S.D. Ohio Sept. 25, 2023); *Portillo v. Nat'l Freight, Inc.*, 2023 WL 1794873, at *2 (D.N.J. Feb. 7, 2023); *Maldonado v. Apple, Inc*, 2021 WL 1947512, at *2 (N.D. Cal. May 14, 2021).

[3] Indeed, it is questionable whether Defendants even have standing to raise sovereign immunity concerns on the states' behalf. *See Oracle Am., Inc. v. The Oregon Health Ins. Exch. Corp.*, 2015 WL 3562231, at *4 (D. Or. June 5, 2015) (rejecting defendants' attempt to raise another entity's sovereign immunity because a "defendant who asserts Eleventh Amendment immunity must have standing to do so").

2

no way prejudice the state or local actors; they would still retain their sovereign-immunity and local-law arguments in the (unlikely) event that they wish to deploy them to challenge future (hypothetical) Court rulings. Which is to say, just as Defendants previously argued, keeping the Court's existing orders in place would mean states could still fully "litigate the preclusive effect of a final judgment," they just would have to do so "at the conclusion of this action." Dkt. 471 at 2. To the extent Defendants now believe telling states to wait will undermine *Defendants'* arguments at *this* trial, Defendants have only themselves to blame. *See Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 618 (2d Cir. 2012) (affirming judicial estoppel of party taking "clearly inconsistent" positions in the same litigation).

**C.      *Defendants' immunity-based arguments conflict with the text and purpose of the Eleventh Amendment.*** Even if the Court were to consider the merits of Defendants' arguments—which it should not—their request should be denied in full.

*First*, Defendants' position would have immense and far-reaching implications for federal class actions generally. Defendants argue that states are categorically incapable of participating in *any* federal class action. Defendants make this assertion notwithstanding that many large-scale certified classes of commercial actors inevitably contain state entities as absent class members, including state pension funds that are part of almost any securities class. Indeed, accepting Defendants' arguments—including their (inaccurate) assertion that their so-called immunity issues implicate the Court's Article III jurisdiction—would be tantamount to holding that virtually every federal court has *for decades* neglected its duty to ensure it has jurisdiction over the class actions over which it presides. Notably, this means Defendants here are arguing *this Court* previously failed its constitutional mandate in approving *Defendants' own* prior settlements.[4] That is plainly not the case.

*Second*, the Eleventh Amendment does not require these drastic results. The text of the Eleventh Amendment speaks only of a very specific prohibition: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, *commenced or prosecuted against* one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." As the Second Circuit has explained, these "dignity" concerns are implicated by suits "*against* states that forced them to defend actions prosecuted by private parties." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 119 (2d Cir. 2007) (removal of state entity's claims did not implicate sovereign immunity); *see also Richey v. Axon Enterprises, Inc.*, 2020 WL 3800524, at *2 (D. Nev. July 6, 2020) (expressing skepticism as to the relevance of absent class members' sovereign immunity because "the Eleventh Amendment is generally used as a defense from suit—not as a bar to bring suit").

Consistent with this controlling authority, there is no unconstitutional indignity in this class action including—*for their own benefit*—state actors as class members, as long as they are able to make an informed choice about whether to opt-out. *See Southern. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip.*, 241 F.R.D. 85, 93 (D. Mass. 2007) (states and local agencies may be part of a class "so long as they are afforded the opportunity to opt out of the class"). The standard opt-out procedure does not invade the Eleventh Amendment and bears no

---

[4]  *See Alaska Electrical Pension Fund v. Bank of America*, No. 14-cv-7126 (S.D.N.Y.) ("*ISDAfix*") (Furman, J.), Dkts. 667-1, 699 (approving class of anyone who traded an "interest rate derivatives," without any state carve-out, in case with state and local actors even as named plaintiffs). *See also, e.g.*, *LIBOR*, 11-md-2262 (S.D.N.Y.), Dkt. 1138 §3(a) (Barclays settlement class including anyone who traded LIBOR-based instruments).

resemblance to the involuntary joinder setting Defendants analogize to.[5]  Indeed, in the only appellate decision that Defendants cite discussing the class context, the Third Circuit concluded only that waiver did not occur when the state did not opt out after receiving only a "CAFA notice."  *In re Flonase Antitrust Litigation*, 879 F.3d 61, 69 (3d. Cir. 2017).  That is, the state was not given individualized notice that *it* was a class member in a drug-related action.  But here, Plaintiffs are giving individualized notice to class members, including state entities, giving them all the right to opt out.

*Third*, it is *Defendants'* position that poses the real threat to states' autonomy and legal rights, not this Court's orders or the notice program.  Under Defendants' arguments, a large number of willing class members, including states who have already expressed a desire to participate in the class, would be barred from participating.  It is not "respectful" of state autonomy to prevent these entities from participating as absent class members, against their will.  Indeed, the ability of these states, as supposed non-class members, to bring claims in their own right would be severely prejudiced due to the passage of time and potential unavailability of class-action tolling.  In other words, Defendants' arguments in the name of these states' rights would have the effect of *evaporating* them.  These and other obstacles to future litigation make Defendants' parade of horribles—that a state could "sit on the sidelines" and then file its own suit claiming to be excluded from the class in the wake of an adverse class judgment—fanciful at best.

To be clear, Plaintiffs' understanding is that class members (both state and non-state) in the certified class do want to be a part of this case, and do not want to be forced out by Defendants.  Indeed, Plaintiffs have heard strong support from state class members, whose voices Defendants would affirmatively seek to silence in this process.  These states have confirmed that they regularly participate in federal class actions as absent class members, and intend to so here.

*Finally*, Defendants' scant out-of-circuit cases do not support the windfall Defendants seek.  Defendants rely principally on a district court case from West Virginia that is over 25 years old, *Walker v. Liggett Group*, 982 F. Supp 1208 (S.D. W. Va. 1997).  Ltr. at 3.  As an initial matter, the *Walker* class certification order was fundamentally flawed from the get-go.  The court's order certified a *mandatory* class—that is, with no opt-out rights[6]—that would supposedly resolve every type of tobacco-related litigation.  *See Walker v. Liggett Group*, 1997 WL 33635571 (S.D. W. Va. May 1997).  The proposed class and settlement terms were so flawed, in fact, that the entire certification order was vacated *in its entirety*—not just for states—as violative of due process rights in a subsequent decision.  *See Walker v. Liggett Grp., Inc.*, 175 F.R.D. 226, 233 (S.D. W. Va. 1997).  But even if *Walker* were still somehow viewed as being relevant, it is not binding and not persuasive.  *Walker* merely stated —without any citation or explanation—that to treat a state as a class member would be "analogous to that of a defendant," as to implicate the Eleventh Amendment's concerns.  982 F. Supp 1208, 1210 (S.D. W. Va. 1997).  That holding is a large jump and is logically flawed—as discussed above, it is more of an "indignity" to states to bar them from benefitting from every class action.  To the extent *Walker* is read to suggest

---

[5]  Defendants cite *Thomas v. FAG Bearings Corp.*, 50 F.3d 502 (8th Cir. 1995), which held that involuntary joinder of a state violated its sovereign immunity.  But Defendants' other authority recognizes that the involuntary joinder context is different because an absent class member can still "retain complete control of its claims."  *In re Flonase Antitrust Litig.*, 2015 WL 9273274, at *5 n.7 (E.D. Pa. 2015).

[6]  While the settlement agreement referred to the potential for "opt out" states, the restraining order the plaintiffs secured had no exceptions, and there was no court-approved procedure explaining how state could actually opt out.  *See Walker v. Liggett Group*, 1997 WL 33635571 (S.D. W. Va. May 1997).

otherwise, it is incompatible with the Second Circuit's defense-side-of-the-"v." approach to the Eleventh Amendment from *MBTE*.

If the *Walker* court nonetheless heralded in a new era in which state actors had to be expressly excluded from each and every class definition, nobody else seems to have noticed. Over 25 years later, Defendants only manage to scrape together a few cases applying its (flawed) logic. For instance, Defendants also point to *In re Automotive Parts Antitrust Litigation*, 2015 U.S. Dist. LEXIS 176492 (E.D. Mich. Apr. 30, 2015), but that court merely adopted without any further analysis the reasoning of *Walker*. And *In re McKesson Governmental Entities Average Wholesale Price Litigation*, 767 F. Supp. 2d 263 (D. Mass. 2011), is even further afield. Far from adopting a mandatory-exclusion-for-all-cases rule, the *McKesson* court merely found that the "superiority" prong of the normal Rule 23 analysis weighed against certification because numerous states had already filed their own lawsuits. *Id.* at 271. Here, Defendants did not challenge—and still do not challenge—"superiority" on the grounds of extensive parallel state actions, and any challenge at this point would be too late.

**D.      *Local laws cannot dictate the class definition.*** Defendants also argue that certain *state statutes* separately require certain state and local entities to be affirmatively jettisoned from every class action. *See* Ltr. at 5. This argument fails out of the gates because the statutes Defendants rely on govern who can enter into arrangements in the name of the state. *See, e.g.*, Tex. Gov't Code § 2254.103 (specifying when a "state governmental entity" can "enter into a contingent fee contract" in its own name). That is, even on their face the statutes have no bearing on whether or not the state can benefit from class-action litigation. *See also Southern States*, 241 F.R.D. at 93 (certifying class of police departments "so long as they are afforded the opportunity to opt out" and rejecting Defendants' argument as well as the implication that state agencies could never be part of a class).

Moreover, again, if Defendants wanted to argue otherwise, they should have done so in the course of Plaintiffs' motion for class certification. They did not. Defendants did not challenge the adequacy of Lead Counsel in opposing class certification, on this or any other grounds. Nor did they use state statutes in any other relevant way. Instead, Defendants argued *against* the relevance of state statutes, urging the Court to issue notice telling all class members their rights "will" be lost if they do not opt out. Dkt. 471.

As also was the case with the sovereign immunity issue, if Defendants were now right, *every* class action would require local-law carve-outs, given that governmental actors routinely engage in commercial activity that renders them class members in a great variety of actions. Yet Defendants again cite only a few out-of-circuit cases, including primarily the flawed (and inapposite) *Walker* decision discussed above.

*      *      *

For the reasons set forth above, Defendants' request to stay the notice program so the Court can consider a *de facto* motion to partially de-certify the class based on speculative and hypothetical arguments that Defendants could have raised previously, but did not, should be denied. As Defendants themselves previously argued, the time to "litigate the preclusive effect of a final judgment" is "at the conclusion of this action," by way of litigation between the actual parties to any such future dispute. Dkt. 471 at 2.

5

Respectfully submitted,

| | | |
|---|---|---|
| /s/ Daniel L. Brockett | /s/ David H. Wollmuth | /s/ William C. Carmody |
| Daniel L. Brockett | David H. Wollmuth | William Christopher Carmody |
| **Quinn Emanuel Urquhart** | **Wollmuth Maher** | **Susman Godfrey LLP** |
| **& Sullivan, LLP** | **& Deutsch LLP** | |

cc:     All counsel of record (via ECF)