# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Christopher M. Joralemon
Direct: +1 212.351.2668
Fax: +1 212.351.5268
CJoralemon@gibsondunn.com

January 19, 2024

The Honorable Eric Komitee
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Courtroom 6G North
Brooklyn, New York 11201

Re:     *In re: Vale S.A. Securities Litigation*, No. 19 Civ. 526 (EK) (SJB)

Dear Judge Komitee:

Pursuant to the Court's October 24, 2023 Scheduling Order and Section III.B.1. of the Court's Individual Rules and Practices, Defendants in the above-referenced action respectfully write to request a pre-motion conference for their anticipated motion for summary judgment. Also, as directed by Section III.B.2. of the Court's Rules, Defendants respectfully advise the Court that they intend to file motions pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) seeking to exclude (in whole or in part) purported expert testimony proffered by five individuals retained by Plaintiff.

## I.     Summary Judgment

Defendants intend to move for summary judgment based on Plaintiff's failure to establish several critical elements[1] of its claim under Section 10(b) of the Exchange Act. Each of these failures independently should end the case in Defendants' favor.

### A.     No Loss Causation or Damages

To survive summary judgment on loss causation, Plaintiff "must establish two causal connections:  [1] a connection between the alleged false or misleading statements and one or more events disclosing the truth concealed by that fraud, and [2] a connection between these events and actual share price declines." *In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552, at *35 (S.D.N.Y. Mar. 30, 2023) (citation and quotation marks omitted).

Plaintiff cannot establish the first "connection" because the undisputed material facts demonstrate that the alleged misrepresentations are highly generic when compared with the specificity of the corrective disclosures. This significant "gap in genericness" severs any connection between the two as it "reduces the likelihood that investors would understand the specific disclosure to have actually corrected the generic misrepresentation." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp.*, 77 F.4th 74, 99 (2d Cir. 2023) (quotation marks and alteration omitted). In addition, it is beyond dispute that the market contemporaneously interpreted at

---

[1] Defendants have moved to decertify the class (ECF 132), with oral argument scheduled for February 26, 2024. If that motion is granted, Defendants also intend to move for summary judgment on reliance grounds.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

January 19, 2024
Page 2

least some of the cited disclosures as an arbitrary response to the collapse of Dam I as opposed to being "corrective" of any prior misstatement.

In an effort to establish the second requisite connection, Plaintiff relies solely on fatally flawed opinions offered by one of its experts (Steven Feinstein) whose previous event study in this case was rejected by the Court as "black box-like, unverifiable, standardless, and subjective." *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *11 (E.D.N.Y. Jan. 11, 2022). Feinstein's loss causation analysis fares no better, as he relies on a series of indefensible *ipse dixit* assumptions (including, for example, the existence of maximum and unchanging artificial price inflation *before any alleged misstatement even was uttered*), and he also refuses to "disaggregate the declines or some rough percentage of the declines from [l]osses[] resulting from . . . non-fraud related events." *Mylan*, 2023 WL 2711552, at *35 (citation omitted).

### B.    No Scienter

Plaintiff's scienter allegations only survived the motion to dismiss stage due to the alleged existence of "red flags" "reasonably available" to Vale's leadership. *In re Vale S.A. Sec. Litig.*, 2020 WL 2610979, at *16 (E.D.N.Y. May 20, 2020). But the discovery record indisputably establishes that these "flags" were neither "reasonably available" nor even "red." None of the information available at the time—to Vale's leadership *or otherwise*—suggested that dam-related risks somehow were greater than the risks Vale disclosed to the public. To the contrary, Vale's leadership consistently was informed throughout the relevant period that all dams were safe, stable and operating normally. Because Plaintiff can offer no "hard evidence" that "the danger [of Dam I's collapse] was either known to the defendant[s] or so obvious that the defendant[s] must have been aware of it," Defendants are entitled to summary judgment. *Mylan*, 2023 WL 2711552, at *3, 9 (citations omitted).

### C.    No Materiality or Falsity

At the pleadings stage, the Court dismissed as non-actionable nearly half of the alleged misstatements cited in Plaintiff's complaint. Discovery has confirmed that the remaining statements also must be dismissed. For example, the Second Circuit recently clarified that vague statements and optimistic opinions—particularly in a technical context like those at issue here—are immaterial under federal securities laws. *See In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 417 (2d Cir. 2023). Indeed, Plaintiff's own experts have failed to establish the materiality of such statements challenged here.

The undisputed facts adduced in discovery also confirm that the remaining statements were neither false nor misleading. The evidence confirms, for example, that: Vale's dams were certified as stable in compliance with all relevant laws and regulations; Vale was committed in both word and deed to safety, sustainability, and risk-management; Vale's policies and practices were not "insufficiently implemented;" and Vale continuously monitored—and undertook efforts to improve—the stability of its tailings dams.

**GIBSON DUNN**

January 19, 2024
Page 3

## II.    <u>Rule 702 and *Daubert*</u>

Defendants intend to move to partially or wholly exclude Plaintiff's expert testimony under Rule 702 and *Daubert*. Broadly speaking, these individuals rely on insufficient facts or data, employ unreliable methodologies, seek to usurp the roles of the judge or jury (or both), and/or are not qualified.

For example, Plaintiff's loss causation expert Feinstein (apparently undeterred by the Court's prior rebuke) now offers a report that: (i) posits an oxymoronic "but-for world" that both assumes no fraud and incorporates an ongoing fraud; (ii) adds a "corrective event" nowhere alleged in Plaintiff's complaint; (iii) assumes Vale's stock contained maximum and unchanging artificial inflation on Day 1 of the class period but cannot explain how or why; (iv) invents unsupported inferences about investors' views of Vale and Dam I's collapse; and (v) expressly declines to disaggregate fraud-related losses (if any) from non-fraud-related materializations of previously disclosed risks. This last error alone mandates rejection of Feinstein's entire testimony. *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*, 853 F. Supp. 2d 181, 190 (D. Mass. 2012) ("An event study that fails to disaggregate . . . must be excluded."), *aff'd*, 752 F.3d 82 (1st Cir. 2014).

Much of the testimony of Plaintiff's other experts also should be excluded. For example, one hypothesizes as to what Vale supposedly "knew" or "understood," speculates about Vale's motives, and characterizes its actions as "reckless." *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 505 (S.D.N.Y. 2009) (expert "may not opine" on whether a "defendant acted . . . recklessly"); *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469–70 (S.D.N.Y. 2005) (expert cannot speculate as to party's "knowledge" and "motive[s]"). Two other experts retained by Plaintiff rely on wholly insufficient facts and data, with one admitting at his deposition that he would have changed his testimony if he had reviewed a more complete set of information. Another expert lacks the expertise to offer his opinions, as his relevant training amounted to a handful of brief webinars.

The Court's resolution of these *Daubert* motions would significantly clarify and streamline—*if not obviate the need for*—the parties' anticipated motions for summary judgment. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (cautioning that, in deciding any motion for summary judgment, courts must "properly consider[] only evidence that would be admissible at trial"). Thus, to conserve judicial and party resources, Defendants respectfully suggest that the Court should set a briefing schedule for *Daubert* motions first. *See, e.g.*, *Milord v. Schindler Elevator Corp.*, No. 21-cv-1362 (E.D.N.Y. July 27, 2023) (text order) ("[G]iven that Plaintiff's *Daubert* motion likely must be addressed before the Court rules on a motion for summary judgment, the Court adjourns all deadlines *sine die* for the summary judgment pre motion conference.").

**GIBSON DUNN**

January 19, 2024
Page 4

Respectfully submitted,


/s/ Christopher M. Joralemon


cc: All Counsel of Record (*via ECF*)