**KAPLAN FOX**

Frederic S. Fox
Kaplan Fox & Kilsheimer LLP
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212.687.1980
Fax: 212.687.7714
ffox@kaplanfox.com

**_Via ECF_**                                    January 19, 2024

Hon. Eric R. Komitee
United States District Court
for the New York Eastern District
225 Cadman Plaza East
Brooklyn, NY 11201

>           RE:      _In re: Vale S.A. Securities Litigation_, No. 19-cv-526 (EK) (SJB) (E.D.N.Y.)

Dear Judge Komitee:

On behalf of Lead Plaintiff, I write pursuant to Rule III.B. of Your Honor's Individual Rules and Practices to request a pre-motion conference or schedule for Lead Plaintiff's anticipated motions for partial summary judgment and expert preclusion, which we respectfully submit should be heard at the same time. The bases of Lead Plaintiff's motions are described below.

***Summary Judgment***

"[T]his case implicates the Supreme Court's directive that 'when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" _Pugh v. Casimir_, 2021 WL 4463103, at *14 (E.D.N.Y. Sept. 29, 2021) (Komitee, J.).[1] Because Lead Plaintiff's claims are so strongly supported by the record, we will move for summary judgment on the following issues: (1) Defendants made materially false and misleading statements; (2) Defendants acted with scienter; and (3) the January 25, 2019 collapse of Dam 1 satisfies loss causation.

_Material Misrepresentations and Omissions_. Throughout the Class Period, Defendants made materially false and misleading statements to investors about: (1) the stability of Vale's dams, including Dam 1; (2) Vale's adherence to the best practices in dam safety management and the strictest international standards, (3) Vale's commitment to safety and the value that "life matters most," and (4) its operational risk management policies providing a clear understanding of major risks, which Vale mitigated.

Overwhelming evidence establishes the falsity of these statements. Based on the same evidence relied on by Plaintiff, Vale's own Board Report found that: (1) Vale knew Dam 1 was "fragile" throughout the Class Period (Board Rep. Exec. Summary at 15); (2) "regulatory compliance and [stability declarations] were prioritized, regardless of the actual safety situation of the dam" (_id_. at 35); (3) Vale did little to mitigate the known risk of Dam 1 (_id_. at 26), (4) Dam 1's safety factor close to 1 "indicat[ed] a situation of imminent failure" (_id_. at 18); (5) external

---

[1] All internal citations are omitted unless otherwise indicated.

_NEW YORK, NY_                    _LOS ANGELES, CA_                    _OAKLAND, CA_

_MORRISTOWN, NJ_                    _CHICAGO, IL_



auditors "were not able to act truly independently" (*id*. at 41); and (6) Vale's "leaders . . . communicate[d] and disseminate[d] the idea that production must come above all other priorities" and there was a "general understanding that 'risk is not our problem'" (Vale_Dam1_00079086 ("Board Rep.") at 410). Thus, falsity is amply supported by the record.

Defendants' false statements were highly material to investors, particularly in the wake of the Fundão Dam failure. Defendant Schvartsman admitted that "the condition of Vale's dams was important to the people who invested in Vale." Schvartsman Dep. Vol. I at 167:21-25. In instances such as this, where "an omission or misstatement is 'so obviously important . . . to a reasonable investor that reasonable minds cannot differ on the question of materiality'," the issue is "appropriately resolved as a matter of law by summary judgment." *SEC v. Jankovic*, 2017 WL 1067788, at \*10 (S.D.N.Y. Mar. 21, 2017).

*Scienter*. "A court may infer recklessness at the summary judgment stage if it finds that a defendant exhibited an 'egregious refusal to see the obvious, or to investigate the doubtful.'" *Sec. & Exch. Comm'n v. Laura*, 2023 WL 4238153, at \*9 (E.D.N.Y. June 28, 2023). Defendant Poppinga, who was in charge of Vale's ferrous business and dams, had ample basis to know that Dam 1 was unstable and that the stability certifications were a mere fig leaf because, among other things, he closed Dam 1 on July 7, 2016 due to "doubts" that arose during its extraordinary audit and liquefaction analysis, and he received reports showing the failure probability of Dam 1 and other dams were above acceptable tolerance limits. The other Individual Defendants received information contradicting their statements, but recklessly relied on boilerplate assurances that Vale's dams were "safe" despite knowing the Fundão Dam failed under similar circumstances.

The knowledge of the Individual Defendants is indisputably imputed to Vale, as is the knowledge of other senior management. Directors Silmar Silva and Lucio Cavalli and Executive Manager Alexandre Campanha were directly responsible for ferrous dam safety and risk management. They were involved in the discussions about closing Dam 1 in July 2016, they received emails and presentations regarding Dam 1's instability, they monitored the results of the dam risk analyses, were involved in efforts to obtain stability certifications for unstable dams, and attended expert panel meetings that discussed Dam 1's instability. Indeed, the widely known evidence of Dam 1's instability led Vale's Board Report to conclude that "Vale was aware of the insufficient and fragile condition of stability at [Dam] 1." Board Rep. at 264.

*Loss Causation*. Plaintiff's expert, Dr. Feinstein, conducted an event study that isolated non-fraud related securities price movements and demonstrated that the collapse of Dam 1 on January 25, 2019 caused Plaintiff's and the Class's losses. This showing satisfies loss causation because "Dam's 1 collapse was within the 'zone of risk' concealed by Vale's misrepresentations as to the likelihood of a Vale dam collapsing. And, the resultant loss—a decline in stock price— was foreseeable." *In re Vale S.A. Sec. Litig.*, 2020 WL 2610979, at \*18 (E.D.N.Y. May 20, 2020).

### Expert Preclusion

"[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). Additionally, "expert testimony that 'usurp[s] . . . the role of the jury in applying



th[e] law to the facts before it,' . . . by definition does not 'aid the jury in making a decision'" and should be excluded. *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). Under Rule 403, expert testimony "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* at 397. Defendants' expert testimony violates each of these core tenets of admissibility and should be excluded.

*Glenn Hubbard*. Dr. Hubbard is an economist who criticized Plaintiff's loss causation and damages evidence based on sheer speculation—without any supporting study or authority—claiming some part of the share price drop following Dam 1's collapse might be due to the materialization of the disclosed risk of a dam failure and should have been "disaggregated" from the fraud-related drop. But "[t]he expert's assertions must be grounded in the methods and procedures of science and must amount to more than 'subjective belief or unsupported speculation.'" *Pugh*, 2021 WL 4463103, at \*14. And, contradicting his own opinion, Dr. Hubbard testified that Vale's risk disclosures had no valuation impact (Hubbard Dep. 43:15-21), and that all material public information would have been priced into Vale securities (*id*. at 40:4-9). Thus, the disclosed dam risk could not possibly be the cause of a later price drop.

*Randal Stephenson, Kathleen Sutcliffe, and Jonathan Macey*. Each of these experts provides extended narrative descriptions of record documents that are equally comprehensible by lay jurors, including Vale's risk disclosures, various policies, and the testimony of Individual Defendants. Because these sections of their reports "simply dress[] up [Defendant]'s view of the underlying factual evidence in expert garb," they "must be excluded." *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 332 (S.D.N.Y. 2013). Dr. Sutcliffe also improperly usurped the role of the jury by opining on the legal issue of whether Defendants made false or misleading statements. And Mr. Stephenson opined on the irrelevant and misleading question of whether one piece of the dam risk information Plaintiff alleges was concealed—certain figures regarding dam failure probabilities and consequences—would have affected a reasonable investor's valuation of Vale. Because he failed to consider the totality of Plaintiff's alleged misrepresentations, his opinion is not probative of a fact at issue and should be excluded.

*Timothy Stark*. Dr. Stark is an engineering expert with no credentials in risk management. He is therefore unqualified to opine on risk management in rebuttal to one of Plaintiff's experts. Additionally, his opinions concerning "triggering" factors of safety—which are not at issue and will only confuse the jury—is "precisely the type of opinion evidence that is connected to existing evidence only by the *ipse dixit* of the expert and therefore inadmissible under Rule 702 and *Daubert*." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2023 WL 2711417, at \*17 (S.D.N.Y. Mar. 30, 2023).

Accordingly, we respectfully request that the Court set a briefing schedule for summary judgment and expert preclusion motions.

Respectfully,

*/s/ Frederic S. Fox*
Frederic S. Fox