

Frederic S. Fox
Kaplan Fox & Kilsheimer LLP
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212.687.1980
Fax: 212.687.7714
ffox@kaplanfox.com

_**Via ECF**_                                                      January 24, 2024

Hon. Eric R. Komitee
United States District Court
for the New York Eastern District
225 Cadman Plaza East
Brooklyn, NY 11201

    RE:    _In re: Vale S.A. Securities Litigation_, No. 19-cv-526 (EK) (SJB) (E.D.N.Y.)

Dear Judge Komitee:

Pursuant to Rule III.B.4. of Your Honor's Individual Rules and Practices, I write on behalf of Lead Plaintiff in response to Defendants' January 19, 2024 letter concerning their anticipated motions for summary judgment and expert preclusion. As described below, we believe their motions are entirely meritless and we will vigorously oppose them.

### _Summary Judgment_

Defendants have indicated their intention to move for summary judgment on the same legal elements as Plaintiff, to wit, material misrepresentations and omissions, scienter, and loss causation/damages. Although we believe the evidence so overwhelmingly supports Plaintiff's claims that we are entitled to judgment as a matter of law, at a bare minimum, Plaintiff will show genuine issues of material fact on each of these elements precluding summary judgment for Defendants.

_Loss Causation and Damages_. Defendants argue that Plaintiff cannot show the connection between the alleged misrepresentations and the corrective disclosures or share price declines because, purportedly: (1) the misrepresentations are too "generic;" (2) some of the market response to the collapse of Dam 1 was "arbitrary;" and (3) Plaintiff's damages analysis is flawed. These arguments are wrong.

First, there is no "gap in genericness" between the misrepresentations and disclosures. For instance, Plaintiff alleges that Defendants repeatedly assured investors that all of Vale's dams were stable despite knowing information indicating Dam 1 was not stable. On January 25, 2019, Dam 1 collapsed, and on February 6, 2019, reports by _The Guardian_ and _The Wall Street Journal_ revealed that Defendants had earlier warnings of Dam 1's instability, citing the critical leakage event of July 2018 and an auditor's report from September 2018 flagging issues at the dam. It is hard to imagine more closely aligned misrepresentations and disclosures.



Second, whatever "arbitrary" market response Defendants may intend to argue, they have presented no evidence of it. Their expert on these issues, Glenn Hubbard, did not conduct any empirical study to demonstrate that the market response was irrational or arbitrary, and hearsay analyst commentary—if that is what Defendants will rely on—is neither admissible nor compelling evidence.

Finally, Defendants' criticism of Dr. Feinstein's damages analysis is meritless. Dr. Feinstein's opinions are backed up by the empirical studies he presents, and his assumptions have academic support—unlike Dr. Hubbard's opposing opinions. Contrary to Defendants' claim, there was only fraud-related news on the disclosure dates, so there was nothing to disaggregate. And their quotation to the Court's description of ***Defendants' criticism*** of Dr. Feinstein's prior report is inapplicable as it concerned the event selection procedure, and there can be no doubt here that the events to be studied were the alleged corrective disclosures.

*Scienter*. Defendants argue that scienter cannot be established because there were no red flags signaling higher dam risks than those disclosed publicly. This claim strains credulity. Vale's own investigation found that the Company knew about Dam 1's fragility throughout the entire Class Period, admitting that Dam 1's low factor of safety scores warned of "imminent failure." Board Rep. Exec. Summary at 18. And, among many other facts, the evidence is clear that Defendant Poppinga closed Dam 1 in July 2016 due to stability concerns, and starting in 2017, the results of the ferrous dam stability analyses—which showed multiple dams with unacceptable failure probabilities—were being reported to the Executive Director level (the level of the Individual Defendants). The Defendants' claimed reliance on boilerplate statements that "all dams were safe" does not excuse their gross failure to investigate the obvious risks that were being reported, and were readily available, to them.

*Material Misrepresentations and Omissions*. Defendants argue that some of the alleged misrepresentations are inactionable "vague statements and optimistic opinions," and the remainder are not false. Not so.

Defendants' failed motion to dismiss arguments about purportedly vague or inactionable opinion statements have only deteriorated with discovery. For instance, Defendants previously argued that the word "anomalies" in one alleged misrepresentation was too vague to be material.[1] But "anomalies" is defined in the relevant Brazilian dam legislation, and several witnesses, including some of the Individual Defendants, testified to its meaning. Defendants' further contention that the Second Circuit recently clarified the law on puffery in *In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) is wrong; that case merely applied the longstanding precedent of *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015) under facts distinct from those here.

Additionally, the alleged misrepresentations were patently false or misleading, as described more fully in Plaintiff's January 19th pre-motion letter. For instance, despite the fact that Vale

---

[1] The alleged misrepresentation stated: "[w]e have conducted extraordinary audits on the stability conditions of our upstream dams, and no anomalies were identified." *In re Vale S.A. Secs. Litig.*, 2020 WL 2610979, at *10 (E.D.N.Y. May 20, 2020) (rejecting argument that statement was too vague to be material because it "signaled to investors that Vale's upstream dams were assessed to be in good shape, while omitting" other negative information).



obtained stability certifications for most of its ferrous dams during the Class Period, its representations about those certifications and the stability of its dams were materially misleading because Defendants knew that some dams were unstable and that the stability certifications had been obtained by pressuring auditors, using unreliable data to achieve satisfactory factor of safety scores, and applying factor of safety minimums far below international standards and best practices. Those same facts prove the falsity of Defendants' repeated proclamations of Vale's commitment to safety, sustainability, and risk management.

### *Expert Preclusion*

Plaintiff will oppose Defendants' baseless attacks on our experts. Defendants grossly mischaracterize Dr. Feinstein's report; the reality is that Dr. Feinstein reliably applied a damages model that is "the generally accepted method for measuring damages in a securities fraud class action." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *20 (S.D.N.Y. July 10, 2019). Defendants' main knock against his damages analysis—that he failed to disaggregate a hypothetical portion of the stock price drop that might be due to "materialization of the disclosed risk" of dam failure—is nonsensical. The financial fallout of a dam failure, such as interruptions of operations and increased legal expenses, is part and parcel of the risk that was misrepresented and concealed. There is no legal, evidentiary, or even common-sense basis to claim that such fallout is distinct from the damages caused by the fraud and must be disaggregated. Defendants' other "arguments that the expert's assumptions 'are unfounded go to the weight, not the admissibility, of the testimony.'" *Robinson v. Suffolk Cnty. Police Dep't*, 544 F. App'x 29, 32 (2d Cir. 2013) (internal citation omitted).

Defendants' attacks on Plaintiff's other experts are likewise meritless. Contrary to their claim that one of our experts speculated about Vale's knowledge or recklessness, that expert (in dam risk management) opined that Vale's portfolio of dams was high risk and Vale failed to take appropriate mitigative actions based on the risk analyses it possessed. Defendants' claims that any of our experts relied on insufficient facts or data are wrong, and at most, would go to the weight of the evidence, not its admissibility. *Aventis Env't Sci. USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 514 (S.D.N.Y. 2005). Finally, their contention that any of our experts are not qualified is likewise faulty: all of Plaintiff's experts have doctoral degrees in relevant fields, and have taught and written extensively on the issues covered in their reports.

\* \* \*

On these bases, as will be more fully described in Plaintiff's anticipated brief, Plaintiff will oppose in full Defendants' anticipated motions for summary judgment and expert preclusion.

Respectfully,

/s/ *Frederic S. Fox*
Frederic S. Fox