**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Christopher M. Joralemon
Direct: +1 212.351.2668
Fax: +1 212.351.5268
CJoralemon@gibsondunn.com

January 24, 2024

The Honorable Eric Komitee
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Courtroom 6G North
Brooklyn, New York 11201

Re:    *In re: Vale S.A. Securities Litigation*, No. 19 Civ. 526 (EK) (SJB)

Dear Judge Komitee:

Defendants in the above-referenced action respectfully submit this letter in response to Plaintiff's January 19, 2024 letter concerning anticipated motions for partial summary judgment and expert preclusion. ECF No. 135. Defendants will oppose Plaintiff's anticipated motions. Also, as explained in Defendants' January 19, 2024 letter ("Defendants' Pre-Motion Letter"), ECF No. 134, Defendants respectfully suggest that the parties first brief expert preclusion issues so as to preserve the Court's valuable resources and also streamline any subsequent summary judgment motion practice.

## I.    Summary Judgment

For substantially the reasons set forth in Defendants' letter, Plaintiff cannot obtain summary judgment.

*Loss Causation and Damages*. Plaintiff cannot establish loss causation for multiple reasons, including by failing to disaggregate price declines resulting from non-fraud related events. ECF 134 at 1–2. Plaintiff tries to paper over this fatal flaw by claiming that its retained expert Steven Feinstein "conducted an event study that isolated non-fraud related securities price movements." ECF 135 at 2. But as Plaintiff knows, Feinstein insisted under oath that his "model doesn't call for . . . disaggregati[ng]" losses attributable to "the realization of a disclosed risk." Feinstein Deposition at 271:7-23. Plaintiff's mischaracterization of its own expert's testimony underscores why Defendants will prevail on loss causation at summary judgment.

*Scienter*. Despite gaining access to millions of pages of Vale documents and obtaining sworn deposition testimony from dozens of fact and expert witnesses, Plaintiff remains reliant on hindsight-biased observations and speculations from a report written a year after the dam collapse. Plaintiff also grossly mischaracterizes the Report as "Vale's own Board Report." ECF 135 at 1. To the contrary, the inadmissible Report was the byproduct of an independent external investigation, and in no way was authored by Vale or its Board of Directors. And even if the Report were entirely admissible against Defendants (it is not), its contents do not support Plaintiff's arguments. Indeed, the Report consistently states that Vale's leadership was repeatedly told that "100% of the Ferrous dams had a certified safety condition," and that "[a]ll the dams are safe, stable and are operating normally." Vale_Dam1_0079086_T.0001 at

**GIBSON DUNN**

January 24, 2024
Page 2

T.0040-41.  While antithetical to Plaintiff's claims, those observations *are* fully consistent with the SEC's assent to the dismissal of all scienter-based claims against Vale.  *See SEC v. Vale, S.A.*, No. 22-cv-02405 (E.D.N.Y. Apr. 14, 2023), ECF 52.

Plaintiff also alternatively points to Defendant Peter Poppinga's decision to close Dam I as somehow evincing scienter.  ECF 135 at 2.  But even assuming *arguendo* that Plaintiff is correct about Poppinga's motivation—and it is not—the alleged class period here did not begin until October 27, 2016.  By that point, an independent dam safety auditor, Geoconsultoria, reported to Vale that the safety factors for the then-closed Dam I met the standard that *Plaintiff* now claims was required.

Recognizing that it cannot impute scienter via the Individual Defendants, Plaintiff plummets down the corporate ladder in search of someone who might have possessed the highly specialized geotechnical knowledge that purportedly contravened the Company's challenged statements.  ECF 135 at 2.  But the undisputed evidence will show that any purported "danger" related to Dam I was "[n]either known to [these Vale Employees] [n]or so obvious that [they] must have been aware of it."  *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (quotation marks omitted).  And in any event, Plaintiff fails to cite a single case to support its assertion that the scienter of lower-level employees can be imputed to Vale.  Because no such case exists.

*Falsity and Materiality*.  Plaintiff's entire basis for summary judgment on its burden of proving falsity rests on a handful of inadmissible and hindsight-biased speculations in the Report.  By contrast, the relevant record here is the contemporaneous pre-collapse documents, which undisputedly supports summary judgment in favor of Defendants.  ECF 134 at 1–3; *Pugh v. Casimir*, 2021 WL 4463103, at *14 (E.D.N.Y. Sept. 29, 2021) (Komitee, J.) (noting "a court should not adopt [a] version of the facts" that "is blatantly contradicted by the record") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  As for materiality, Plaintiff—unable to cite any of its own experts—clings to a snippet of testimony from former Vale CEO Fabio Schvartsman in which he expressed a general *post hoc* belief that investors cared about the condition of Vale's dams.  ECF 135 at 2.  But Plaintiff has failed to adduce any evidence that the vague and aspirational statements *Vale actually made* mattered to investors.  This is not surprising, as the Second Circuit has made clear that such statements are inactionable.  ECF 134 at 2.

## II.   Rule 702 and *Daubert*

Plaintiff has indicated that it will seek to exclude certain testimony from Defendants' experts, and asks that such motions be briefed in tandem with its anticipated motion for summary judgment.  Plaintiff, however, provides no legal support or common sense rationale for its requested approach.  Indeed, Plaintiff's own submission supports Defendants' request to brief *Daubert* motions first.  Plaintiff's loss causation argument, for instance, relies exclusively on Feinstein's fatally flawed report and testimony that, even if just partially

**GIBSON DUNN**

January 24, 2024
Page 3

excluded, would streamline—if not obviate the need for—summary judgment briefing.  ECF 135 at 2; ECF 134 at 3.  As for Plaintiff's critiques of Vale's experts, all lack merit.

*Hubbard*.  Plaintiff anticipates moving to exclude the testimony of Professor Hubbard, but fails to articulate any valid basis for doing so.  For example, Plaintiff objects to Professor Hubbard's observation that "some part of the share price drop following Dam 1's collapse might be due to the materialization of [a] disclosed risk."  ECF 135 at 3.  But Professor Hubbard explained his rationale at length, and one of Plaintiff's *own experts* also opined that "some portion [of the price drop] relates to the realization of the risk of dam failure" as opposed to Plaintiff's allegations.  Cain Report ¶ 25 n.54.  Case law from analogous circumstances, such as securities class actions arising from industrial accidents, also confirms Professor Hubbard's observation.  *See, e.g., In re: BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at *33 (S.D. Tex. May 31, 2016) (regarding Deepwater Horizon oil spill where "the chances of failure" of the oil containment dome "were less than 100%," plaintiffs were "not permitted to claim 100% of the stock decline . . . upon the materialization of that understated risk").

*Stephenson, Sutcliffe, and Macey*.  Plaintiff takes issue with what it characterizes as "extended narrative descriptions of record documents."  ECF 135 at 3.  But "courts have allowed experts to present some narrative testimony where that narrative 'underl[ies]' or is 'intertwine[d]' with the expert's opinion testimony." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2022 WL 15044626, at *47 (E.D.N.Y. Oct. 26, 2022); *see, e.g.*, *SAS Inst., Inc. v. World Programming Ltd.*, 125 F. Supp. 3d 579, 587 (E.D.N.C. 2015) ("[I]t is permissible to allow the expert to summarize . . . [complex or technical documentary] evidence . . . to educate the jury."), *aff'd,* 874 F.3d 370 (4th Cir. 2017).  In addition, Mr. Stephenson's report, which discusses information that Plaintiff alleges Vale concealed, is hardly "irrelevant" or lacking in probative value.  ECF 135 at 3.  And as for Dr. Sutcliffe's opinion that references alleged misstatements, Plaintiff forgets that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704.

*Stark*.  Professor Stark's opinions concerning "triggering" factors of safety are precisely the kind of testimony a jury would need to hear.  Plaintiff has repeatedly claimed that Dam I was unsafe because the *undrained* safety factor was below 1.3.  *See, e.g.*, Compl. ¶ 10(b) n.6.  As Professor Stark explained, however, the safety factor calculations that Plaintiff points to were actually "*triggering*" factors of safety, which are evaluated based on a different threshold than *undrained* safety factors.  The methodology that Vale used for its safety factor calculations clearly is at issue here.  And expert testimony is needed precisely for this type of highly technical concept, which is "clearly beyond the ken of the average juror."  *Nicholas v. Bratton*, 376 F. Supp. 3d 232, 291 (S.D.N.Y. 2019) (quotation marks omitted).  There is also no merit to Plaintiff's incredible claim that Professor Stark lacks the credentials to opine on dam risk management.  He has taught courses on tailings dam risk management, has conducted extensive research regarding quantitative risk assessment, and has published multiple academic papers on the subject.  Stark Deposition at 22:3-10, 29:19-21, 31:4-10.

**GIBSON DUNN**

January 24, 2024
Page 4

Respectfully submitted,


/s/ Christopher M. Joralemon


cc: All Counsel of Record (*via ECF*)