**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE VALE S.A. SECURITIES LITIGATION | Case No.: 19-cv-526-EK-SJB |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GLENN HUBBARD**

**April 19, 2024**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................................... iii

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     LEGAL STANDARDS .................................................................................................... 3

III.    GLENN HUBBARD'S TESTIMONY SHOULD BE EXCLUDED ............................... 5

        A.      Hubbard's Testimony About the Proper Measure of Damages Should Be
                Excluded As Unrealistic and Contrary to the Evidence ...................................... 6

        B.      Hubbard's Testimony About the Proper Scope of Damages Should Be
                Excluded Because It Is Irrelevant and Unhelpful. ............................................... 7

        C.      Hubbard's Testimony Concerning a Possible Non-Fraud Related Price Effect
                Must Be Excluded As Speculative, Unreliable, and Irrelevant. ......................... 10

        D.      Hubbard's Unsupported Criticism of Feinstein's Constant Inflation Ribbon
                Should Be Excluded. ........................................................................................... 13

        E.      Hubbard's Remaining Opinions Should Be Excluded As Either Unreliable or
                Moot. ................................................................................................................... 14

IV.     CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
137 F. Supp. 2d 147 (E.D.N.Y. 2001) ................................................................ 3, 8

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ................................................................................ 4

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996) ........................................................................... 4, 7, 10

*Bragdon v. Abbott,*
524 U.S. 624 (1998) ............................................................................................ 4

*Buckley v. Deloitte & Touche USA LLP*,
2012 WL 3538733 (S.D.N.Y. Aug. 16, 2012) .................................................. 11

*Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*,
239 F.3d 179 (2d Cir. 2001) ................................................................................ 8

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) .................................................................................. *passim*

*Edmondson v. RCI Hospitality Holdings, Inc.*,
2020 WL 1503452 (S.D.N.Y. March 30, 2020) .............................................. 13

*Gen. Elec. Co. v. Joiner,*
522 U.S. 136 (1997) ..................................................................................... 4, 10

*In re Vale S.A. Sec. Litig.*,
2022 WL 969724 (E.D.N.Y. Mar. 31, 2022) .................................................. 15

*In re Zyprexa Prods. Liab. Litig.*,
489 F. Supp. 2d 230 (E.D.N.Y. 2007) ............................................................. 10

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
2021 WL 4810266 (S.D.N.Y. Sept. 30, 2021) ................................................ 13

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) ............................................................................................ 4

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ................................................................................ 8

*Lickteig v. Cerberus Cap. Mgmt., L.P.*,
  589 F. Supp. 3d 302 (S.D.N.Y. 2022).................................................................... 3

*LinkCo, Inc. v. Fujitsu Ltd.*,
  2002 WL 1585551 (S.D.N.Y. July 16, 2002) ........................................................ 13

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008).................................................................................. 10

*Monroe Cnty. Employees' Ret. Sys. v. S. Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019)..................................................................... 14, 15

*Pirnik v. Fiat Chrysler Autos., N.V.*,
  327 F.R.D. 38 (S.D.N.Y. 2018) ............................................................................. 14

*Pugh v. Casimir*,
  2021 WL 4463103 (E.D.N.Y. Sept. 29, 2021) ..................................................... 4, 8

*Ruggiero v. Warner-Lambert Co.*,
  424 F.3d 249 (2d Cir. 2005).................................................................................. 11

*Scentsational Techs., LLC v. Pepsi, Inc.*,
  2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018).......................................................... 11

*Scentsational Techs., LLC v. PepsiCo, Inc.*,
  773 F. App'x 607 (Fed. Cir. 2019) ........................................................................ 11

*Scott v. Chipotle Mexican Grill, Inc.*,
  315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................. 11

*Sec. & Exch. Comm'n v. Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013)................................................................ 11, 13

*Thor Equities, LLC v. Factory Mut. Ins. Co.*,
  627 F. Supp. 3d 330 (S.D.N.Y. 2022)..................................................................... 9

*Washington v. Kellwood Co.*,
  105 F. Supp. 3d 293 (S.D.N.Y. 2015)................................................................. 7, 11

*Zaccaro v. Shah*,
  746 F. Supp. 2d 508 (S.D.N.Y. 2010)..................................................................... 11

**Rules**

Fed. R. Evid. 401 .................................................................................... 2, 3, 9, 12

Fed. R. Evid. 403 ............................................................................................... 4, 5

Fed. R. Evid. 702 ....................................................................................... *passim*

**Other Authorities**

Fed. Jud. Ctr., *Reference Manual on Scientific Evidence* 47 (1994) .............................................. 3

## I.       PRELIMINARY STATEMENT

Defendants cannot satisfy their burden to establish by a preponderance of the evidence the admissibility of the proffered testimony of Glenn Hubbard ("Hubbard"). Rule 702 was recently amended "to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment. Hubbard far exceeds those bounds, warranting exclusion of his testimony.

Hubbard, a professor of economics offered to rebut Plaintiff's loss causation and damages evidence, argues that damages should not be based on the stock price drops that occurred when the truth was revealed—the standard measure of fraud-based inflation and damages in securities fraud cases—but rather, should be based on stock valuation calculations using investors' changed perception of the probability of a dam failure after Dam 1's collapse.[1] This probability-based valuation method is so unrealistic and contrary to the evidence that Hubbard admitted he would need an engineer to make the calculation, and that Vale never spoke publicly about dam failure probabilities. Moreover, according to another of Defendants' experts, the risk of dam failure "is typically not explicitly modeled in the expected cash flows" by investors in mining companies,[2] so there is no rational basis to limit investors' damages by a calculation that they could not, and did not, perform.

Additionally, Hubbard argues that some part of the stock price drops following the collapse of Dam 1 *could* relate to the financial impacts of the dam failure and should be considered non-

---

[1] The Rebuttal Expert Report of Glenn Hubbard, April 7, 2023 (the "Hubbard Report"), is attached as Exhibit A to the Declaration of Frederic S. Fox in Support of Lead Plaintiff's Motion to Exclude the Expert Testimony of Glenn Hubbard (the "Fox Declaration"), submitted herewith. All citations to exhibits in this brief refer to documents attached to the Fox Declaration, unless otherwise indicated.
[2] Ex. B at ¶45.

fraud related because those impacts may occur in a dam break without fraud. But Hubbard ignores the relevant issue in the Second Circuit—whether those financial impacts ***are within the zone of risk misrepresented and concealed by the alleged fraud***—and his argument absurdly implies that the alleged fraud concealed the true probability of dam failure but ***not*** the true probability of incurring ***the financial costs*** of dam failure. Moreover, he ignores that if there were no fraud—if Vale had timely disclosed all of what Plaintiff alleges was misrepresented and concealed (including, for instance, that Dam 1's stability test results suggested "imminent failure," and that Vale was not following international standards for dam safety management)—investors would have anticipated a likely dam failure and Vale's share prices would have dropped precipitously well before Dam 1's collapse. Because Hubbard's opinions are speculative and fail to address the relevant issues, they are inadmissible under both Federal Rule of Evidence 702 and Rule 401.

Hubbard not only neglects the relevant issues and evidence, but references nothing—not a study, no academic literature, nor any other support—for his opinions about the proper damages methodology besides "Econ. 101."[3] He carries this same depth of analysis to his criticism of Plaintiff's use of a constant inflation ribbon for calculating investors' damages, which is based on nothing but his interpretation of record evidence and "basic economic logic."[4] These *ipse dixit* opinions, positing a factual narrative and logical inferences that a lay juror can construct without "expert" assistance, are inadmissible. And finally, Hubbard levels the spurious claim that, with respect to the Vale Notes event studies, the lack of statistically-significant price movements for certain Notes on certain dates calls into question the market efficiency of those Notes. That claim is based on a statistical fallacy that has been repeatedly rejected by courts. For these reasons, and as further described below, Hubbard's testimony should be excluded.

---

[3] Ex. C at 48:15-49:2.
[4] *Id*. at 93:11-16.

## II.   LEGAL STANDARDS

Pursuant to Federal Rule of Evidence 702, expert testimony is admissible only if the proponent demonstrates "that it is more likely than not" that the following conditions are satisfied:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In the Notes to the 2023 Amendments to Rule 702, the Committee emphasized that "[j]udicial gatekeeping is essential," and stated that it was "an incorrect application of Rules 702 and 104(a)" to hold "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility[.]" Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment.

In applying Rule 702, district courts must ensure the scientific or technical evidence admitted is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevance can be expressed as a question of 'fit'—'whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 329 (S.D.N.Y. 2022) (quoting *Daubert*, 509 U.S. at 591). "A proffered expert opinion may fail to meet the fit requirement if it relates to 'facts or data that have not been adequately established in the case.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 163 (E.D.N.Y. 2001), *aff'd*, 303 F.3d 256 (2d Cir. 2002) (quoting Fed. Jud. Ctr., *Reference Manual on Scientific Evid.* 47 (1994)).

3

"To be found reliable, expert testimony and the scientific evidence on which it is based must have 'a traceable, analytical basis in objective fact.'" *Pugh v. Casimir*, 2021 WL 4463103, at *14 (E.D.N.Y. Sept. 29, 2021) (Komitee, J.) (quoting *Bragdon v. Abbott,* 524 U.S. 624, 653 (1998)). A court should consider whether the expert employs the level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire Co.*, *Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id*. at 157.

"[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). Even if a methodology is sound, a court may conclude that "there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). "[E]xpert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison ...." *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir. 1996) (per curiam) (citations and quotations omitted).

Even when a party offers relevant and reliable expert testimony, such testimony may nevertheless be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice

4

against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citation omitted).

## III.    GLENN HUBBARD'S TESTIMONY SHOULD BE EXCLUDED

The Hubbard Report should be wholly excluded. The bulk of the report concerns his opinion that Plaintiff's damages expert, Steven Feinstein, incorrectly calculated damages by using the share price drops following the alleged corrective events. Feinstein applied this commonly accepted damages methodology in securities fraud cases, calculating damages based on the fraud-induced inflation in Vale's share prices as measured by the price drops when Dam 1 collapsed on January 25, 2019 and the corrective news was released on February 4, 2019 and February 6, 2019. Hubbard argues that damages should instead be based on the "changes to investors' cash flow expectations caused by a difference between investors' assessed probability of a safety incident occurring and the 'true' probability of a safety incident occurring[.]" Ex. A at ¶24. Thus, he argues that Feinstein should have performed a discounted cash flow ("DCF") analysis incorporating this probability differential to determine what Vale's share price would have been absent the fraud. He also claims that a portion of the price drop caused by Dam 1's failure and subsequent corrective events should be considered non-fraud related, because it may relate to the financial impacts of dam failure, which could have been incurred without fraud. He claims that Feinstein's analysis is flawed because it did not disaggregate this purportedly non-fraud related portion of the share price drop from damages. He did not perform any DCF analysis or other calculations or studies to support any of his opinions.

Hubbard's opinions suffer from fatal flaws which warrant exclusion: (1) his probability-based valuation method—which he advocates but did not perform—is unrealistic and contradicted by his testimony and evidence of how investors value dam risks; (2) the methodology does not address the relevant loss causation issues under binding Second Circuit law or fit the scope of the

5

alleged fraud; and (3) his unsupported opinion about a possibility of a non-fraud related price movement is unreliable and inadmissible speculation.

Additionally, Hubbard criticizes Feinstein's analysis for using a constant inflation ribbon, based on nothing but his interpretation of record evidence and "basic economic logic." Ex. C at 93:11-16. Such *ipse dixit* factual narrative is inadmissible. And Hubbard criticizes Feinstein's event studies of the Vale Notes because the Notes did not respond uniformly to the corrective events. This criticism is unsupported and based on a statistical fallacy that is routinely rejected by courts. As further explained below, the Hubbard Report should be excluded from evidence.

## A. Hubbard's Testimony About the Proper Measure of Damages Should Be Excluded As Unrealistic and Contrary to the Evidence.

Hubbard's assertion that investors would have estimated the probability of a safety incident and discounted cash flows accordingly is contradicted by the evidence and his own testimony. In his deposition, Hubbard admitted that the probability of a safety incident cannot be estimated without the help of an engineer: "[T]he methodology I would use, ***if an engineer were helping me as a valuation expert***, would be how does that change my probability of a safety incident times the cost of the safety incident, that would be a change in value." Ex. C at 85:4-9 (emphasis added); *see also*, *id*. at 90:25-91:2 (when asked whether he had an opinion of the value according to his method: "I'm saying for me as an economist[,] I'd have to be an engineer to do that, so no, I don't.").

Moreover, according to another of Defendants' experts, Randal Stephenson, an investment banker claiming expertise in mining industry investment, Hubbard's damages analysis conflicts with how investors value dam risks. Specifically, Stephenson opines that "investors do not consider [dam failure] risks to be likely." Ex. B at ¶45. "Therefore, the mere remote possibility of occurrence of an improbable safety and health incident for a Major mining company is typically

*not explicitly modeled in the expected cash flows*." *Id*. (emphasis added). Thus, the evidence suggests that no investor actually performed the convoluted probability calculation Hubbard contends is required.

And finally, Hubbard admitted that Vale never publicly disclosed any failure probabilities,[5] and acknowledged that the alleged misstatements conveyed broad risk information: "that the dams are safe within some confidence interval," (Ex. C at 53:13-14), "that dams are within some accepted zone of safety," (*id*. at 61:3-4), that the risk management process "has an outcome of an acceptable level of risk," (*id*. at 61:13-14); and the probability of a dam safety incident is "likely a small one" (*id*. at 65:6-8). Thus, there would have been no factual basis for investors to perform the type of detailed calculation Hubbard claims they would have performed, and by extension, that he claims Feinstein should have performed when calculating damages.

In sum, Hubbard's opinion that investors would have (and Feinstein should have) performed an analysis that Hubbard, as a Columbia professor of economics, *could not perform*, that another of Defendants' experts asserted investors *do not perform*, and that is inconsistent with the way Defendants spoke about their dam risks during the Class Period is "so unrealistic and contradictory as to suggest bad faith" and should be excluded. *Boucher*, 73 F.3d at 21. "In the absence of *any* evidence undergirding [Hubbard]'s assumption on this point," his testimony "stemming from it must be excluded." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 324 (S.D.N.Y. 2015).[6]

### B. Hubbard's Testimony About the Proper Scope of Damages Should Be Excluded Because It Is Irrelevant and Unhelpful.

Hubbard's opinion that damages must be limited by investors' purportedly changed

---

[5] *See* Ex. C. at 45:11-12 ("I don't recall any probability being disclosed.").
[6] All emphasis in the original unless otherwise indicated.

probability assessments of a dam safety incident should be excluded as irrelevant because it does not address the applicable loss causation and damages issues in this circuit and is based on an incomplete view of the claims. "*Daubert's* second criterion of 'fit' is essentially a requirement of relevance: 'Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Amorgianos*, 137 F. Supp. 2d at 163 (quoting *Daubert*, 509 U.S. at 591–92); *Pugh*, 2021 WL 4463103, at *14 ("... a trial court must evaluate an expert's opinions and methodology for reliability and relevancy."). Testimony is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001).

Here, Hubbard's damages methodology is based, in part, on his supposition that the financial impacts of a dam collapse (such as interrupted operations and increased legal liabilities) could occur even without the alleged fraud, and therefore should be considered non-fraud related and excluded from damages.[7] But in this circuit, "a misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk **concealed** by the misrepresentations and omissions." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005). Assuming the truth of Hubbard's contention that a dam failure could cause financial impacts absent fraud, it tells us nothing about the relevant issue: whether the allegedly misrepresented and concealed zone of risk includes the probability of Vale incurring the financial impacts of a dam failure.

Hubbard's opinion does not address the zone of risk at all; he did not consider the alleged

---

[7] *See, e.g.*, Ex. A ¶56 (stating that "a portion, if not all, of the price declines following the Dam 1 collapse was due to, among other things, reduced cash flow expectations resulting from operations interruptions, output reductions, fines, and lawsuits that are to be expected given the occurrence of a safety incident" and "thus represent[] materializations of disclosed risks that could occur given a safety event even absent any misrepresentations or omissions.").

misstatements in reaching his opinions, much less analyze the zone of risk created by them. *See* Ex. C at 54:21-25 (did not consider any alleged misrepresentations in 2016 Sustainability Report in forming his opinions); *id*. at 63:3-65:18 (did not consider Schvartsman's alleged misrepresentations regarding "impeccable" and "impressive" quality of dams); *id*. at 65:21-66:9 (did not consider misrepresentations in 2017 Sustainability Report). His testimony therefore fails "to make the existence of any fact that is of consequence to the determination of [loss causation or damages] more probable or less probable than it would be without the evidence" (Fed. R. Evid. 401) and should be excluded because "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotation marks omitted); *Thor Equities, LLC v. Factory Mut. Ins. Co.*, 627 F. Supp. 3d 330, 339 (S.D.N.Y. 2022) (excluding testimony where expert's model did not answer the relevant question).

Moreover, it is nonsensical to posit, as Hubbard's argument implicitly does, that the alleged fraud concealed the probability of dam failure but not the probability of incurring ***the financial costs*** of dam failure. Indeed, Hubbard acknowledges that "potential legal and financial liabilities, and cash flow uncertainties due to operations interruptions and output reductions . . . ***are to be expected given a safety event occurring***[.]" Ex. A ¶61 (emphasis added). Thus, if a safety event is not expected to occur because the safety event risk was misrepresented and concealed, the financial consequences would likewise not be expected and would plainly fall within the misrepresented zone of risk.

Additionally, Hubbard's damages measure fails to address pertinent loss causation and damages questions because it is based on an inaccurately narrow view of the claims: "[a]s I understand the allegations in this case, Plaintiff claims that the Alleged Misrepresentations resulted in a difference between investors' assessed probability of a safety incident occurring (such as the

9

Dam 1 collapse) during the Class Period and the "true" probability investors would have assessed absent the alleged fraud (*i.e.*, Plaintiff's theory of harm)." Ex. A ¶47. But that is only one part of the allegedly misrepresented information. Plaintiff also alleged, among other things, that Defendants misrepresented or failed to disclose that: (1) Vale's dam risk management and risk mitigation policies and practices were insufficient or insufficiently implemented in light of the known risks posed by Dam 1; (2) Vale systematically acted to get Stability Condition Statements for dams that were not stable and did not meet Vale's own purported safety standards; (3) at least as early as 2018, Vale's third-party dam safety auditor had a financial conflict of interest, and issued Stability Condition Statements under fear of economic reprisal from Vale; and (4) Defendants were not committed to prioritizing safety first as they claimed.[8] Hubbard's reduction of all of Plaintiff's allegations to a mere probability calculation is "insufficiently connected to the facts of the case," which is "grounds for rejection of [his] expert testimony." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007); *Joiner*, 522 U.S. at 137 ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

## C. Hubbard's Testimony Concerning a Possible Non-Fraud Related Price Effect Must Be Excluded As Speculative, Unreliable, and Irrelevant.

Hubbard's opinion that some part of the share price drop following Dam 1's collapse may have occurred even if there were no misrepresentations, and that Feinstein's damages analysis is flawed for failing to disaggregate this hypothetical part of the share price drop, is inadmissible speculation. In accordance with *Daubert*, the Second Circuit has long held that "proffered 'expert testimony should be excluded if it is speculative or conjectural,'" and the "'[a]dmission of expert testimony based on speculative assumptions is an abuse of discretion." *Major League Baseball*

---

[8] Compl. ¶11 (ECF No. 47).

*Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (quoting *Boucher*, 73 F.3d at 18, 21-22). "Expert testimony must rest on 'more than subjective belief or unsupported speculation.'" *Washington*, 105 F. Supp. 3d at 323 (quoting *Daubert,* 509 U.S. at 599). Adhering to this settled principle, courts in this Circuit commonly preclude expert testimony based on speculation. *See Buckley v. Deloitte & Touche USA LLP*, 2012 WL 3538733, at *6 (S.D.N.Y. Aug. 16, 2012); *Zaccaro v. Shah*, 746 F. Supp. 2d 508, 516-18 (S.D.N.Y. 2010) (excluding expert's testimony because the "analysis relie[d] almost exclusively on speculation.").[9]

Hubbard's opinion that there "could" have been a share price drop following the collapse of Dam 1 even without fraud due to the financial impacts of the collapse[10] is baseless: he did not conduct any study to determine whether any portion of the share price drop was caused by something other than the alleged fraud, and he did not cite a single authority, in economic literature or elsewhere, to support his theory. *See generally*, Ex. A at IV.B. and V; Ex. C at 48:6-23 (claiming "Econ. 101" as the basis for his opinions). Hubbard's opinions "without benefit of citation to research, studies or other generally accepted support for expert testimony" have "no basis" and should be excluded. *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 50 (S.D.N.Y. 2016); *see also*, *Sec. & Exch. Comm'n v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013) (testimony "based on 'economic logic' is simply a form of inadmissible *ipse dixit.*"); *Scentsational Techs., LLC v. Pepsi, Inc.*, 2018 WL 1889763, at *6 (S.D.N.Y. Apr. 18, 2018) (excluding expert testimony as "*ipse dixit*, pure speculation, or both" where the expert's "assertions are neither supported by data or analysis nor clearly connected to underlying facts."), *aff'd*, 773 F. App'x 607 (Fed. Cir. 2019).

---

[9] Similarly, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005).

[10] Ex. A ¶40; *see also*, Ex. C at 28:15-17 ("The opinion I offer is that a portion of the damages that professor Feinstein identified **could** reflect factors other than the allegations.") (emphasis added).

11

Moreover, Hubbard's contention that Vale's share price could have dropped after Dam 1's collapse absent any fraud fails to account for the share price drop(s) that would have occurred if Vale had timely and truthfully disclosed what Plaintiff alleges was misrepresented and concealed. Specifically, in this world without fraud, investors would have been apprised that: (1) Vale was not following best practices or international standards for dam safety management; (2) Dam 1 had stability test results that suggested imminent failure; (3) several of Vale's dams had failure probabilities above acceptable limits; (4) Vale was concealing the true stability conditions of its dams from regulators by pressuring auditors to certify unstable dams; (5) Vale did not prioritize safety first, and; (6) it was not mitigating a known risk of catastrophic dam failure.

Disclosures such as these plainly would have been important to investors and negatively impacted Vale's share prices, and academic literature confirms the economic materiality of disclosures regarding environmental, social, and governance practices and risk management to investors in high-risk industries like mining. *See* Ex. E ¶¶111-114. Even Defendants' own purported expert on materiality, an investment banker with experience in mining companies, had to admit that disclosures such as these "probably would affect a reasonable [investor]—they probably wouldn't like that, a reasonable investor wouldn't[.]" Ex. F at 112:24-113:7; *see also*, Ex. G. at 167:21-25 (Defendant Schvartsman testifying that "the condition of Vale's dams was important to the people who invested in Vale.").

Thus, in the world where there is no fraud, Vale's share prices would already be substantially lower ***prior*** to Dam 1's collapse, making it less likely that there would be a significant share price drop—or any drop at all—afterward. Hubbard completely fails to address what Vale's share prices would have been without the fraud. And his baseless opinion that a non-fraud related price drop is ***possible*** fails to make it ***more probable than not*** that there was an actual, non-fraud

12

related price effect, making it inadmissible under Federal Rule of Evidence 401.

**D. Hubbard's Unsupported Criticism of Feinstein's Constant Inflation Ribbon Should Be Excluded.**

Hubbard criticizes Feinstein's damages analysis for using a constant inflation ribbon (rather than adjusting inflation when alleged misrepresentations or other events occurred) and argues that the inflation ribbon is based on speculative assumptions. *See* Ex. A at VI.C. His only support for these opinions is his narrative interpretation of the record evidence, which "does no more than counsel for [Defendants] will do in argument, i.e., propound a particular interpretation" of the evidence. *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (internal quotation omitted); *see also*, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2021 WL 4810266, at *16 (S.D.N.Y. Sept. 30, 2021) ("[A]n expert who is qualified as to certain subjects is not for that reason permitted to serve as an all-purpose 'color commentator' on the evidence[.]"). Hubbard's factual narrative is not a proper subject of expert testimony and should be excluded.

Moreover, Hubbard cites no authority in the economic literature or elsewhere to substantiate his argument about what constitutes a proper inflation ribbon, and he testified that his basis was "basic economic logic[.]" Ex. C at 93:15-16. But the jury is capable of employing logic without Hubbard's assistance. *Tourre*, 950 F. Supp. 2d at 678 (expert's "testimony that his opinion as to 'economically material' information is based on 'economic logic' is simply a form of inadmissible *ipse dixit*"). "Because [the expert]'s opinion is one that the jury could reach with their own common knowledge and common sense, no expert testimony is warranted." *Edmondson v. RCI Hospitality Holdings, Inc.*, 2020 WL 1503452, at *6 (S.D.N.Y. March 30, 2020) (internal quotation marks omitted). For these reasons, Section VI.C. of the Hubbard Report should be excluded.

**E.  Hubbard's Remaining Opinions Should Be Excluded As Either Unreliable or Moot.**

In the three remaining sections of Hubbard's report, he: (1) argues that differences in the price responses of some of Vale's Notes "call into question . . . the conclusion of market efficiency [Feinstein] proffered in the Feinstein Market Efficiency Report," but he expressly disavows that he is opining on the market efficiency of Vale Securities, (*see* Ex. A at Section VII.); (2) criticizes Feinstein for not providing a means of calculating damages for certain investors who are excluded, by definition, from the Class (*id.* at Section VIII.); and (3) criticizes a different Plaintiff expert, retired U.S. Securities and Exchange Commission Chairman Harvey Pitt who, unfortunately, has since passed away and is therefore no longer offering opinions in this case (*id.* at Section IX). None of this testimony should be admitted.

First, Hubbard's criticisms of "inconsistencies" in the event study results for some of Vale's Notes suffer from the same problems as his other opinions: they are utterly unsupported. He provides no proof or analysis backing his contention that the prices of different bonds, with different coupon rates and maturity dates, should move in lockstep with one another, or that their failure to do so violates any fundamental principles of bond pricing. *See, generally*, Ex. A Section VII; *see also*, Ex. D at ¶¶162-163. It is just more inadmissible *ipse dixit*.

And he repeatedly asserts, again without support, that the lack of price movements on some corrective disclosure dates for some bonds "calls into question" Feinstein's finding of market efficiency for particular bonds. *See* Ex. A at ¶¶100, 103, 108, 110. But "courts routinely reject the argument that a non-statistically significant stock price decline proves an absence of price impact." *Monroe Cnty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 394 (N.D. Ga. 2019); *see also*, *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 46 (S.D.N.Y. 2018) (non-statistically significant stock price decline following corrective disclosure "does not prove the *absence* of price impact"); Ex. D at ¶158 ("[O]ne cannot determine from a nonsignificant price response whether

14

or not the security in general fails to capture the new information."). Rather, Hubbard's opinion is based on a "statistical fallacy," because "[n]on-significance means indeterminate with respect to finding the cause of a stock price movement; it does not mean that there was no decline or that the decline was necessarily caused by factors other than the corrective disclosure." *Monroe Cnty. Employees' Ret. Sys.*, 332 F.R.D. at 393. And, importantly, even Hubbard is unwilling to opine that the Notes markets were inefficient on such thin evidence, stating: "I am not providing an opinion on whether the market for Vale Securities was, in fact, efficient during the Class Period." *Id*. at p. 60, n.151.[11] Hubbard's fallacious insinuation of inefficiency will only confuse the jury and should be excluded as both unhelpful and prejudicial.

Finally, Hubbard's criticism that Feinstein did not provide a means of assessing damages for Vale's preferred ADRs, which are admittedly outside of the Class definition, should be excluded as irrelevant. *See* Ex. A at 7, n.29 ("Plaintiff does not mention the preferred ADRs as an at-issue security in the Complaint."). There is no error in not calculating damages for non-class members. And his criticism of an expert whom Plaintiff is no longer using should be excluded as moot.

## IV.   CONCLUSION

For these reasons, Plaintiff's motion to exclude Hubbard's testimony should be granted.

Dated: April 19, 2024                           **KAPLAN FOX & KILSHEIMER LLP**

/s/ *Frederic S. Fox*
Frederic S. Fox
Donald R. Hall
Melinda Campbell
Aaron Schwartz
Brandon Fox
Carihanna Morrison

---

[11] This is the ***second expert*** Defendants have proffered who would not say that the market for Vale Securities was inefficient. Their class certification expert, Walter Torous, likewise failed to "provide his own assessment that the market was ***in***efficient." *In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *3 (E.D.N.Y. Mar. 31, 2022).

15

Chang Hahn
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the Class*

16