# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In Re VALE S.A. SECURITIES LITIGATION

No. 19 Civ. 526 (LDH) (SJB)

EXPERT REPORT OF RANDAL STEPHENSON

March 10, 2023

CONFIDENTIAL

*Confidential*

## Table of Contents

I.  INTRODUCTION .................................................................................................. 1

    A.  Qualifications ........................................................................................... 1

    B.  Background ............................................................................................... 5

        1.  Vale S.A. and the Collapse of Dam 1 .......................................... 5

        2.  Summary of Allegations ............................................................... 7

    C.  Assignment .............................................................................................. 9

II.  SUMMARY OF OPINIONS ................................................................................. 9

III.  OVERVIEW OF INVESTING IN MAJOR MINING COMPANIES .................. 10

    A.  General Investment Thesis for Major Mining Company Stocks ................ 10

    B.  Commonly Used Valuation Models for Major Mining Companies ............. 12

        1.  DCF Analysis .............................................................................. 13

        2.  Comparable Publicly Traded Companies Analysis ...................... 15

    C.  How a Valuation of Major Mining Companies Typically Factors in Risk ....... 16

IV.  POTENTIAL DAM FAILURE WAS A DISCLOSED AND KNOWN RISK, PARTICULARLY AFTER THE FUNDÃO DAM INCIDENT ............................. 21

    A.  Risk Disclosures Associated with Safety Events, including Potential Dam Failures, in SEC Filings and Earnings Call Are, in My Experience, Typically Reviewed and Considered by Investors in the Mining Space ......................... 21

    B.  Potential Dam Failures Are a Known Risk of Investing in Mining Companies ....... 26

V.  DISCLOSURE OF THE ALLEGEDLY OMITTED INFORMATION WOULD NOT HAVE AFFECTED INVESTORS' ASSESSMENTS OF VALE'S VALUATION IN ANY MEANINGFUL MANNER ................................................. 29

    A.  Information about Dam 1's Allegedly Higher Failure Risk Would Not Have Affected Investors' Assessments of Vale's Valuation in Any Meaningful Manner ...................................................................................................... 30

    B.  Information about Vale's Internal Analysis of Dam 1 and Other Dams in the Attention Zone as of 2018 Would Not Have Affected Investors' Assessments of Vale's Valuation in Any Meaningful Manner ........................................... 34

    C.  Information about Dam 1's Allegedly Lower Factor of Safety Would Not Have Affected Investors' Assessment of Vale's Valuation in Any Meaningful Manner ...................................................................................................... 38

VI.  CONCLUSION .................................................................................................... 38

*Expert Report of Randal Stephenson*

*Confidential*

## I.    INTRODUCTION

### A.    Qualifications

1.    I am an investment banker, independent director, lawyer, and private equity investor with over 25 years of professional experience in mergers and acquisitions ("M&A"), private debt and equity placements, and bankruptcy, distressed, and "turnaround" situations. I co-founded a Financial Industry Regulatory Authority ("FINRA") licensed broker-dealer investment banking firm in 2012, and previously was employed as a senior investment banker at Jefferies & Company, Inc., CIT Group, Inc., Merrill Lynch & Co., and Duff & Phelps, LLC. I have completed over 225 M&A, corporate financing, and privatization transactions valued at over $40 billion during my 25 plus years of experience. I have advised clients and been an investment principal in approximately 53 mining and mining-related transactions and projects throughout the world, including projects in South American countries, and have significant experience in the broader natural resources extractive sector, including construction aggregates, water, timber, and oil and gas. I have been an Independent Director of the Board of Directors of a NASDAQ listed mining company, as well as Chairperson of the Audit Committee and member of the Executive Compensation Committee and am now the Chairperson of the Advisory Board of that NASDAQ mining company.

2.    I specialize in advising companies in merger, acquisition, sale, and capital raising transactions. I have significant experience with the exclusive sale and divestiture of businesses or assets (where I have completed over 100 such transactions), and with large-scale privatization or development projects where I have advised governments and leading corporations. My industry experience has included but is not limited to defense and aerospace, basic industrial, chemicals, energy, metals and mining, manufacturing, and transportation; for the past 14 years, I have been focused almost exclusively in the mining and natural resources sectors. I have been a contributor to and have been quoted by *The Wall Street Journal, Institutional Investor, The Deal, The Daily Deal, Mergers & Acquisitions, Mergers & Acquisitions Advisor, M&A Journal, Private Equity Week, Alpha, Bloomberg.com, CNBC.com, Dow Jones News Service, Buyouts,* and *CFO Magazine,* among others.

3.    For the past three years I have been a Managing Director of GLC Advisors & Co., LLC and GLCA Securities, LLC (together, "GLC") a leading boutique investment banking and restructuring advisory firm with offices in New York, Denver, Los Angeles, and San Francisco,

*Confidential*

45. It is possible that the above-mentioned risks (including the failure of a tailings dam) could occur but not with enough frequency, foreseeability, or predictive impact that company management could precisely budget and plan for these. Accepted corporate finance valuation methodology risk-adjusts the returns expected by equity investors in a stock through amending the company's pro forma financial forecast or modifying the cost of equity and the cost of debt (the returns demanded by lenders to the company for the possible default risk of the company).[67] In my experience, investors do not consider the above-mentioned risks to be likely. Therefore, the mere remote possibility of occurrence of an improbable safety and health incident for a Major mining company is typically not *explicitly* modeled in the expected cash flows.[68]

## IV. POTENTIAL DAM FAILURE WAS A DISCLOSED AND KNOWN RISK, PARTICULARLY AFTER THE FUNDÃO DAM INCIDENT

### A. Risk Disclosures Associated with Safety Events, including Potential Dam Failures, in SEC Filings and Earnings Call Are, in My Experience, Typically Reviewed and Considered by Investors in the Mining Space

46. The SEC requires companies to include risk disclosures in their filings.[69] In my experience, such risk disclosures in a mining company's SEC filings convey important information to investors in the mining space. Before, during, and after the Class Period, Vale repeatedly

---

2018, p. 12; Gerdau Form 20-F for FY ended December 31, 2019, p. 12. Note that from 2018 onwards, Gerdau only had one tailings dam.

- CSN stated that they have standards and programs in place to "mitigate [] risks, including in relation to our tailing dams." CSN Form 20-F for FY ended December 31, 2015, p. 15.

[67] Damodaran, Aswath, "Value and Risk: Beyond Betas," *Financial Analysts Journal*, Volume 61, 2005, Issue 2, p. 41.

[68] However, cash flow projections for mining companies typically take into account temporary mine shutdowns due to planned, routine inspection, maintenance, and repairs. Following a safety incident, the expected effect on the company's future financial performance, particularly future revenues and EBITDA, will be reflected in the forecast future cash flows and therefore the valuation (which will thus decline).

[69] Prior to revisions which went into effect on November 9, 2020, the SEC had the following requirement: "Requires disclosure of the most significant factors that make an investment in the registrant or offering speculative or risky and specifies that the discussion should be concise, organized logically, and furnished in plain English. . . . Additionally, Item 105 directs registrants to explain how each risk affects the registrant or the securities being offered and discourages disclosure of risks that could apply to any registrant." The updated requirements call for a "summary risk factor disclosure of no more than two pages if the risk factor section exceeds 15 pages" as well as further revisions to "[r]efine the principles-based approach" and "[r]equire risk factors to be organized under relevant headings in addition to the subcaptions currently required." *See* Securities and Exchange Commission, "Modernization of Regulation S-K items 101, 103, and 105," Release Nos. 33-10825;34-89670, available at https://www.sec.gov/rules/final/2020/33-10825.pdf, p. 9.

*Confidential*

- Investors would have been aware of the risks associated with potential dam failures, including because they were disclosed by Vale before and during the Class Period. Such risks were discussed in numerous publications and acknowledged by equity analysts following Vale prior to Dam 1's collapse.

- Had Vale disclosed the allegedly omitted information (that Dam 1's probability of failure was 3 in 10,000, or three times Vale's purported maximum risk tolerance; that ten dams including Dam 1 had a failure probability in Vale's Attention Zone, and that Dam 1's undrained Factor of Safety allegedly was greater than purported best practices), investors' valuation of Vale would still not have meaningfully changed.

*Randal Stephenson*

Randal Stephenson

March 10, 2023