# Exhibit D

*Confidential*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re VALE S.A. SECURITIES LITIGATION | No. 19-cv-526-RJD-SJB |

REPLY REPORT ON LOSS CAUSATION AND DAMAGES

PROFESSOR STEVEN P. FEINSTEIN, PH.D., CFA

May 12, 2023

*Confidential*

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF PRIOR WORK IN THIS MATTER ...............1

II.     SCOPE OF PROJECT AND REPORT ........................................................................4

III.    CONCLUSIONS...........................................................................................................6

IV.     CRITIQUE OF THE STEPHENSON REBUTTAL REPORT .......................................13

        A.      Areas of Agreements.........................................................................................13

        B.      Mr. Stephenson Wrongly Asserts That I Have Not Described the But-For
                Disclosure; Mr. Stephenson Mischaracterizes Lead Plaintiff's Allegations
                and Conceptualizes a Too Minimal But-For Disclosure.......................................15

        C.      The Probability Magnitude That Mr. Stephenson Asserts to Be True Is
                Unrealistically Low...........................................................................................17

V.      CRITIQUE OF THE HUBBARD REBUTTAL REPORT .............................................19

        A.      Uncontested Opinions and Areas of Apparent Agreement....................................19

        B.      Professor Hubbard Proffers Unsupported and Erroneous Opinions about
                Analytic Methodology .....................................................................................24

                1.      Exact Probabilities ................................................................................25

                2.      One-to-One Mapping of Misrepresentations and Corrective
                        Disclosures...........................................................................................26

                3.      But-For Disclosures Need Not Be Identical to the Actual
                        Corrective Disclosures ...........................................................................28

        C.      Professor Hubbard's Characterization of Lead Plaintiff's Allegations Is
                Too Narrow and Incomplete; He Fails to Consider the Economic Impact
                of All the Allegations........................................................................................29

                1.      The Correct But-For Scenario Is Articulated in the Feinstein LCD
                        Report...................................................................................................29

                2.      Professor Hubbard's Far Too Narrow Characterization of Lead
                        Plaintiff's Allegations Leads to His Incorrect But-For Scenario..............30

                3.      Professor Hubbard Misreads the Complaint and the Feinstein LCD
                        Report...................................................................................................33

        D.      The Alleged Misrepresentations and Omissions Are Economically
                Material and Responsible for Artificial Inflation in the Vale Securities'
                Prices................................................................................................................34

                1.      Abundant Evidence Establishes the Economic Materiality of the
                        Alleged Misrepresentations and Omissions.............................................34

                2.      Abundant Evidence Establishes That the Misrepresentations and
                        Omissions Caused Artificial Inflation in the Vale Security Prices............37

*Confidential*

E.    My Inflation Ribbon Was Computed Correctly and Is Supported by the Facts of the Case, the Academic Literature, and Proper Analysis..........................39

    1.    The Artificial Inflation Dissipated by the Corrective Disclosure Events Was in the Vale Securities' Prices at the Start of the Class Period .......................................................................................................39

    2.    The Inflation Ribbon Presented in the Feinstein LCD Report Does Not Assume a 100% Probability of Dam 1 Failure ...................................42

F.    Professor Hubbard Misinterprets the Corrective Disclosures and Repeatedly Makes the Same Mistake in His Event-By-Event Analysis................43

    1.    25 January 2019 .....................................................................................46

    2.    4 February 2019 .....................................................................................52

    3.    6 February 2019 .....................................................................................55

G.    Differences in Vale Notes' Price Reactions Does Not Indicate Inefficiency ........61

H.    The Vale Preferred ADRs.............................................................................64

VI.    PROFESSOR SUTCLIFFE'S CRITICISMS OF THE FEINSTEIN LCD REPORT ARE MERITLESS ............................................................................65

VII.    LIMITING FACTORS AND OTHER ASSUMPTIONS....................................66

*Confidential*

This may cause the market to break down, or at least force the sale of the asset at a price lower than it would command if all buyers and sellers had full information."[98]

88.    Professor Hubbard is wrong to eschew the academic and professional finance literature (and he apparently disavows his own work), which embodies peer-reviewed research and generally accepted principles. If he disagrees with my conclusions on the economic materiality of the alleged misrepresentations and omissions, then he disagrees with the literature.

89.    The alleged misrepresentations and omissions were objective (but allegedly false) statements of fact, not subjective puffery. They were far-reaching, important, and related to conditions and conduct that mattered to investors. The broad reach of the alleged misrepresentations makes them more material, and not less material as Professor Hubbard suggests.[99]

90.    One way to demonstrate that the alleged misrepresentations were highly valuation relevant is to test their economic materiality analytically. The test, derived from the inversion analytics of German mathematician Carl Gustav Jacob Jacobi,[100] and espoused by Charles Munger,[101] is to recast the statements at issue in the negative, and then assess whether the resulting ***unexpected*** announcement on the same topic would grab investors' attention and likely move the security price. If, consistent with the but-for world described in the Feinstein LCD Report,[102] the Company had announced on the first day of the Class Period that the Company's tailings dams were "***not*** impeccable" and were "***not*** of impressive quality," "Safety is ***not*** our top priority," or "We are ***not*** committed to doing what is right," or "we are ***not*** committed to protecting people and preserving the environment," or "we are engaged in deceptive conduct to deceive investors and regulators," investors would

---

[98] *Asymmetric Information, Corporate Finance, and Investment,* by The University of Chicago Press, edited by R. Glenn Hubbard, National Bureau of Economic Research, 1990, p. 2.

[99] Hubbard Rebuttal Report, ¶¶40-46.

[100] "Bulletin of the American Mathematical Society; Current Tendencies of Mathematical Research," by Edward Van Vleck, vol. 23, no. 1, 1916, pp. 3 and 11. "The great mathematician Jacobi is said to have inculcated upon his students the dictum: Man muss immer umkehren. One must always seek a converse, turn a thought the other end to." "*Man muss* immer umkehren" is loosely translated to "invert, always invert."

[101] *Damn Right! Behind the Scenes with Berkshire Hathaway Billionaire Charlie Munger,* by Janet Lowe, John Wiley & Sons, Inc., 2000.

[102] Feinstein LCD Report, ¶¶22-24, and 217-224.

*Confidential*

155. Professor Hubbard is wrong to contend that the news articles and license cancellation had nothing to do with the alleged fraud. They had everything to do with the alleged fraud. They conveyed what the Company could have disclosed at the start of the Class Period with the but-for announcement.

### G.  Differences in Vale Notes' Price Reactions Does Not Indicate Inefficiency

156. Regarding my event study for the Vale Notes, Professor Hubbard observes, "some Vale Notes have a statistically significant price reaction on a given Alleged Corrective Date while others do not."[164] Professor Hubbard argues, that in his opinion, such event study results call into question the reliability of the event study and whether the market for the Vale Notes was efficient during the Class Period.[165] Professor Hubbard cites no authority, economic or legal, to support his opinion that a company's different debt securities must react in exactly the same fashion in order for an event study to be reliable or in order for the market for such securities to be efficient. Despite their similarities, the Vale Notes did have differentiating characteristics, which result in differences in their valuations.

157. Moreover, my determination of market efficiency was based on numerous factors, not solely the empirical tests. Among these factors are volume, institutional ownership, float, and the Notes' listings on the NYSE. Given these specific factors, it is clear that if there were any economically significant mispricings, the developed market's mechanisms were in place to exploit and correct those discrepancies. Professor Hubbard may believe the prices were incorrect, but the market participants producing the equilibrium did not to any appreciable degree.

158. Importantly, one cannot determine from a nonsignificant price response whether or not the security in general fails to capture the new information. A nonsignificant result is an indeterminate result. Nonsignificance can result from volatility obscuring the price reaction caused by the news, it does not mean the price did not react to the news. Professor Hubbard is wrong to suggest otherwise.

---

[164] Hubbard Rebuttal Report, ¶103.

[165] Hubbard Rebuttal Report, ¶103.

159. Professor Hubbard notes that only one Note fell statistically significantly on 4 February 2019. Professor Hubbard states, "Professor Feinstein does not address why he believes that allegedly concealed information revealed on February 4, 2019 'caused losses to investors' on that day for investors holding TAP8, but not for investors in the other Vale Notes."[166]

160. The reason is simple. TAP8 fell significantly, while the others did not. While all of the Notes may have had a negative reaction to the news, somewhat obscured or countervailed by random volatility, it is conservative to ascribe to damages only losses that are so pronounced as to be above a threshold for statistical significance despite the effects of volatility. It would be justified under many situations to ascribe all observed price declines to damages, even those that are not greater than the threshold for statistical significance. To provide a conservative measure of damages in this case, however, I did not do so.

161. Professor Hubbard points to seemingly inconsistent results for 6 February 2019 for three of the Vale Notes with similar maturities.

> "Professor Feinstein has not described any structural differences or other characteristics of these bonds, all of which were between approximately 15 and 25 years to maturity at the time of the Alleged Corrective Dates, that could potentially explain these observed differences in statistical significance. Similarly, he fails to address why nearly half of the Vale Notes (three of the seven) did not exhibit statistically significant price movements on February 6, 2019. Nor does he attempt to explain why he believes the allegedly concealed information caused losses only to investors in the other four of the seven Vale Notes on February 6, 2019."
> **Hubbard Rebuttal Report, ¶106.**

162. As explained in the Feinstein Rebuttal Report, each of the Vale Notes has its own unique features, coupon rates, and time to maturity. These differences, as well as random volatility, allow for a range of independent movement.[167] A 25-year maturity bond reacts differently than does a 15-year bond to interest rates and company news. Differences in coupon rates also matter. For example, if investors believe it is very likely a bond issuer will satisfy its obligations over the next 15 years, but are less confident about a 25-year timeframe, then the bonds will have substantially different price reactions to adverse news. Similarly, bonds

---

[166] Hubbard Rebuttal Report, ¶104.

[167] Feinstein Rebuttal Report, ¶114.

*Confidential*

with higher coupon rates derive more of their value from near-term coupons and less from the distant principal payment, as compared to bonds with lower coupon rates.

163. Professor Hubbard has provided no proof or analysis suggesting that the pricing of the Notes violated fundamental principles of bond pricing. And with good reason. The measured characteristics of the market for the Vale Notes was such that if bond valuation principles had been violated by any of these Notes to any appreciable degree, market participants could have quickly capitalized on the discrepancy, and in the process, quickly restore correct pricing.

164. Professor Hubbard observes that the TAN3 Notes did not trade on 25 January 2019 and thus I could not measure whether there was a statistically significant decline that day for that Note. Professor Hubbard argues that I provided no explanation for why the TAN3 Note did not trade that day, and the lack of trading "calls into question" whether the market for this Vale Note was efficient. Professor Hubbard fails to consider that holders of a security sustain a loss when news erodes the security's value, regardless of whether the loss is realized and recorded by a trade, or alternatively, the security is held and not traded. Just because the holders of any particular security chose not to trade on any particular day does not call into question the efficiency of the security's market. Moreover, as explained in the Feinstein Report, it is a well understood feature of bond markets that bonds trade less frequently than do stocks.[168]

165. As the thorough analysis in the Feinstein Report demonstrates, the market in which the TAN3 Notes traded was a well-developed and efficient market. That existing TAN3 Note investors chose to hold rather than sell the TAN3 Note on 25 January 2019 is intriguing, but it is no reason to question market efficiency in light of the evidence establishing market efficiency.

166. Professor Hubbard observes that the TAM5 Note was not deemed statistically significant by the test presented in the Feinstein Report but was statistically significant in the Feinstein LCD Report. Professor Hubbard acknowledges that the regression models are different, but states that I did not explain why the regression specification changed.[169]

---

[168] Feinstein Report, ¶225.

[169] Hubbard Rebuttal Report, ¶109.

*Confidential*

173.     Further, she notes that I cite to authority in the literature for the appropriateness of assuming Lead Plaintiff's factual allegations: "Additionally, Professor Feinstein includes a footnote indicating that it is a generally accepted practice in loss causation and damages analysis to assume factual allegations."[175]

174.     Clearly, by Professor Sutcliffe's own account, her criticism that I independently verified Lead Plaintiff's allegations or reached my own conclusions about Vale's safety and risk management practices, or claimed to do so, is erroneous.

## VII.   LIMITING FACTORS AND OTHER ASSUMPTIONS

175.     This report is furnished solely for the purpose of court proceedings in the above referenced matter and may not be used or referred to for any other purpose. The analysis and opinions contained in this report are based on information available as of the date of this report. I reserve the right to supplement or amend this report if additional information becomes available to me.

Steven P. Feinstein, Ph.D., CFA

---

[175] Sutcliffe Rebuttal Report, FN 118.

66