# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In Re VALE S.A. SECURITIES LITIGATION | No. 19-cv-526-LDH-SJB |

**RESPONSIVE REPORT OF STEVEN H. EMERMAN, PH.D.**

**April 7, 2023**

## TABLE OF CONTENTS

I. EXECUTIVE SUMMARY                                                          2

II. TUTORIAL ON FACTOR OF SAFETY                                             9

III. REBUTTAL OPINIONS                                                       18

   *A. Instability of Upstream Dams*                          18

   *B. Lack of Appropriate Drainage for Dam 1*                26

   *C. Lack of Appropriate Response to June 11, 2018 Hydraulic Fracturing Event*   37

   *D. Consultant and Auditor Reports Showed Dam 1 Was Not Stable*   40

      *1. Inappropriate Choice for Undrained Shear Strength Ratio*   41

      *2. Inappropriate Minimum Undrained Factor of Safety*   49

   *E. State of Distress of Dam 1 Prior to Catastrophic Failure*   54

   *F. Catastrophic Failure of Dam 1 was Foreseeable*       61

IV. SUMMARY CONCLUSIONS                                                      63

REFERENCES                                                                  66

### F.  *Catastrophic Failure of Dam 1 was Foreseeable*

Professor Stark argues that the catastrophic failure of Dam 1 was not "foreseeable" because the final incident that would trigger the liquefaction of Dam 1 was not known in advance. It is my opinion that the catastrophic failure of Dam 1 was foreseeable.

According to the Stark Report (¶¶ 201-211 (emphasis added)):

> Since the collapse of Dam I, three groups of experts have evaluated the causes of the collapse and published extensive reports: (1) the Robertson [Panel] Report [2019a], (2) the CIAEA [2020] Report, and (3) the CIMNE [2021] Report. **Based on my review of these reports, the trigger(s) of collapse identified by each of these expert teams are plausible. Moreover, under each of these trigger mechanisms, the collapse of Dam I could not have been foreseeable.**

The concluding sentence of the Stark Report (¶ 222 (emphasis added)) then states:

> Based on my review of the reports by the Robertson Panel, the CIAEA, and the CIMNE Team regarding the causes of the collapse, the trigger(s) of the collapse identified by each of these expert teams are plausible and indicate the collapse of Dam I **could not have been foreseen**.

First, whether an accident is "foreseen" and whether an accident is "foreseeable" are different concepts. Thus, with regard to the failures of the Edenville and Sanford dams, the Independent Forensics Team (2022) wrote, "With respect to the human judgments, decisions, actions, and inactions during the project history leading up to the May 2020 event, the dam failures were foreseeable and preventable … The instability failure was unforeseen, but not unforeseeable." An accident is foreseen if the sequence of events that will eventually culminate in failure is known in advance, even without a detailed knowledge of the sequence of events. On that basis, very few accidents can be said to be "foreseen."

By contrast, an accident is foreseeable when well-known safety practices are not carried out. A basic concept in workplace health and safety is the "accident waiting to happen," which

61

occurs when well-known safety practices are not carried out. In the case of Dam 1, a partial list of these practices would include the following:

1) the avoidance of the upstream method of dam construction;

2) the installation of appropriate drainage, especially in the starter dike;

3) the proper maintenance of the internal and surficial drainage systems;

4) the reporting to the appropriate regulatory agency of surges of water with solid particles from the dam slope followed by a comprehensive safety inspection and other appropriate emergency measures;

5) the correct calculation of the factor of safety based upon reliable data;

6) the use of conservative estimates for the factor of safety, especially in the light of known dam deficiencies, such as the lack of an adequate drainage system;

7) the correct interpretation of the factor of safety; and

8) the correct interpretation of the state of distress of a dam.

When the above well-known safety practices were not followed, the eventual catastrophic failure became "foreseeable," even without knowing the sequence of events that would precede the failure. By the simplest analogy, if mineworkers are not wearing hard hats, an accident is "waiting to happen," that is, it is "foreseeable." It is hardly relevant as to whether the accident will be "foreseen," that is, which rock will fall on the head of which mineworker.

62

## IV.    SUMMARY CONCLUSIONS

The seven points made by Professor Stark are now repeated followed by very brief responses. More complete responses can be found in the preceding "Rebuttal Opinions" section.

1) *The construction of Dam 1 using the upstream method was reasonable and in conformance with industry standards.*

   I disagree with Professor Stark's opinion that Dam 1's upstream construction method was reasonable and in conformance with industry standards insofar as it ignores the vast body of knowledge concerning the heightened risks of upstream tailings dams and the fact that the mining industry has been moving away from the upstream construction method since at least the 1970s.

2) *The drainage features incorporated into Dam 1 were reasonable and in conformance with industry standards.*

   I disagree with Professor Stark's opinion that the drainage features incorporated into Dam 1 were reasonable and in conformance with industry standards because, among other things, all of the investigation reports into the catastrophic failure of Dam 1 have identified the lack of drainage as one of the root causes of the failure.

3) *The response by Vale to the hydraulic fracturing incident that occurred during the installation of the 15th Deep Horizontal Drain ("DHP") on June 11, 2018, was appropriate.*

   I disagree with Professor Stark's opinion that the response by Vale to the hydraulic fracturing incident on June 11, 2018, was appropriate because the incident constituted a Level 1 Emergency, which should have triggered a Special Safety Inspection.

63

4) *The choice by the consulting company Geoconsultoria of a value of 0.36 for the undrained strength ratio was appropriate, as were the subsequent applications of the same value by Tractebel.*

I disagree with Professor Stark's opinion that 0.36 was an appropriate undrained strength ratio because the undrained strength ratio should have been based upon the reliable data only (the field SPT and CPT measurements), so that the choice of 0.24, as was recommended by Professor Olson, was appropriate.

5) *Any undrained factor of safety greater than 1.00 would have been a sufficient guarantee of stability.*

I disagree with Professor Stark's opinion because the best estimate for the undrained factor of safety should be much larger (such as the value of 1.3 that was recommended by the Vale advisory panel) in order to ensure that the probability that the true value of the undrained factor of safety is less than 1.0 is sufficiently small.

6) *The undrained factor of safety for Dam 1 must have been greater than 1.05 because the dam did not show any sign of distress.*

I disagree with Professor Stark's opinion because the absence of signs of distress is not an indicator that the undrained factor of safety is greater than 1.05. Liquefaction is a brittle phenomenon that occurs without warning or precursors. Even so, the biweekly inspections documented numerous cases of settlements, cracks, gullies and erosions on the dam slope.

7) *The catastrophic failure of Dam 1 on January 25, 2019 was unforeseeable.*

The catastrophic failure of Dam 1 was foreseeable because well-known safety practices were not carried out, making the collapse an accident "waiting to happen."

64

This report is furnished solely for the purpose of court proceedings in the above referenced matter and may not be used or referred to for any other purpose. The analysis and opinions contained in this report are based on information available as of the date of this report. I reserve the right to supplement or amend this report if additional information becomes available to me.

Signed: *Steven H. Emerman*

**Steven H. Emerman, Ph.D.**