**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                           :

In re Vale S.A. Securities Litigation     :        No. 19 Civ. 526 (EK) (SJB)

                                           :       **ORAL ARGUMENT REQUESTED**

                                           :

                                           :
------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO EXCLUDE EXPERT TESTIMONY OF STEVEN P. FEINSTEIN**

GIBSON, DUNN & CRUTCHER LLP

Christopher M. Joralemon
Akiva Shapiro
Mary Beth Maloney
David M. Kusnetz
Jason Bressler
H. Chase Weidner

200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

DISCUSSION .......................................................................................................................... 2

I.    Plaintiff's Opposition *Confirms* that Feinstein's Entire Approach to Calculating Artificial Inflation Is Unreliable .......................................................... 2

II.    In Trying to Salvage Feinstein's Disqualifying Opinions on Loss Causation and Damages, Plaintiff Misstates the Law and Mischaracterizes the Principles and Methods He Applied ................................................................. 4

    A.    Contrary to Plaintiff's Suggestion, Governing Law Requires Feinstein to Disaggregate Investment Losses Caused by Non-Fraud Factors ................................................................................................................ 4

    B.    Plaintiff's Opposition Does Not—and Cannot—Cure the Many Infirmities Plaguing Feinstein's Opinions Concerning the Alleged Corrective Events ................................................................................................ 6

III.    Plaintiff Fails in Its Defense of Feinstein's Indefensible "But-For" World .......... 7

CONCLUSION ........................................................................................................................ 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BP p.l.c. Sec. Litig.*,
    2014 WL 2112823 (S.D. Tex. May 20, 2014) ........................................................................3, 6

*In re BP p.l.c. Sec. Litig.*,
    2016 WL 3090779 (S.D. Tex. May 31, 2016) ........................................................................4, 5

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*,
    853 F. Supp. 2d 181 (D. Mass. 2012) ........................................................................................4

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..................................................................................................................5

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
    594 U.S. 113 (2021) ..................................................................................................................3

*Menorah Mivtachim Ins. Ltd. v. Sheehan*,
    2024 WL 1613907 (2d Cir. Apr. 15, 2024) ..............................................................................4

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
    563 F. Supp. 3d 259 (S.D.N.Y. 2021) ......................................................................................5

*Persian Gulf, Inc. v. BP West Coast Products, Inc.*,
    2020 WL 7427057 (S.D. Cal. Dec. 17, 2020) ..........................................................................7

*In re Vivendi Universal, S.A., Sec. Litig.*,
    634 F. Supp. 2d 352 (S.D.N.Y. 2009) ......................................................................................6

**Rules**

Fed. R. Evid. 702 ..............................................................................................................................3

Defendants respectfully submit this Reply Memorandum of Law in further support of their motion to exclude the testimony of Steven P. Feinstein.

If ever there was an expert opinion on loss causation and damages that should be tossed out before trial, Feinstein's is it. The flaws in his analysis are staggering both in number and in severity. Most glaring is his unprecedented approach to calculating damages—based on a "but-for" world with ongoing fraud and "information asymmetry"—that is designed to maximize Plaintiff's potential recovery and to save Feinstein the hard work of calculating how much (if at all) investors actually overpaid due to the alleged fraud. But this approach runs counter to basic principles of economics and binding precedent, to say nothing of Plaintiff's own allegations and the facts of this case.

Plaintiff surely recognizes these deficiencies and the existential risks they present. That is why its opposition brief reads like a post-production edit of Feinstein's opinions—rewriting his conclusions, recasting his methodologies, and burying his many errors under inapplicable case law and irrelevant facts. Plaintiff even goes so far as to offer a declaration with information Feinstein never considered, in a curious attempt to rebut Defendants' point that there is information Feinstein never considered. Perhaps sensing the futile nature of its efforts, Plaintiff ultimately retreats to the tired "weight-not-admissibility" cliché as an excuse for all of the many inexcusable flaws in Feinstein's opinions.

But a trial judge is the gatekeeper, and the recent amendments to Rule 702 make clear that a court must exclude an expert's opinions that do not reflect the reliable application of reliable principles and methods. That is exactly what the Court should do here. Indeed, if admitted, Feinstein's venal approach soon would infect federal courthouses across the country, eviscerating the

element of loss causation and converting securities class actions into broad insurance reimburse-ments for all investment losses.

**DISCUSSION**

**I.      Plaintiff's Opposition *Confirms* that Feinstein's Entire Approach to Calculating Artificial Inflation Is Unreliable**

Despite Plaintiff's obfuscation efforts, its opposition brief only illuminates further the problems with Feinstein's opinions on artificial inflation.  For example, as Feinstein himself has conceded, he made no attempt to verify his speculative assumptions that maximum artificial inflation in all Vale securities existed on Day One of the class period and remained unchanged for over two years until the dam collapsed.  *See, e.g.*, Ex. B. 64:15-65:08, 81:13-25, 100:24-101:22, 104:14-105:14 (Feinstein admitting he "d[id not] know" what the market thought "prior to the class period" about subjects addressed in challenged statements), 115:5-20; 117:23-118:8, 122:5-125:8.[1]  Plaintiff now belatedly attempts to retrofit Feinstein's disqualifying approach with a misleading collection of pre-class period snippets that Plaintiff suggests are consistent with at least a few of the 26 class period statements at issue.  Pl.'s Br. at 5-6 nn.3 & 4.  But Plaintiff misses the point: *Feinstein never even reviewed such materials—to say nothing of the abundant evidence to the contrary—in forming his opinions*.  *E.g.*, Ex. B at 100:24-101:22, 104:14-107:9.

Plaintiff next argues that Feinstein was excused from assessing whether the alleged misrepresentations caused inflation in the prices of Vale's securities because he could just work "backward[s]" based on the "assumption" that inflation equals the price decline on the corrective disclosure dates.  Pl. Br. at 5-6.  That is incorrect.  As the Supreme Court recently has explained, an expert cannot always just assume that "back-end price drop equals front-end inflation."

---

[1] Citations to "Ex. _" are to the Declaration of Christopher M. Joralemon in Support of Defendants' Motion to Exclude Expert testimony of Steven P. Feinstein.

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 123 (2021) (explaining that this "inference" "break[s] down" when, for example, there is a "mismatch between the contents of the misrepresentation and the corrective disclosure"). And where—as here—an understated risk materializes and the probability of that risk materializing was "less than 100 percent," "the stock price correction after [the understated] risk materializes"—*i.e.*, back-end price drop—"will be *larger* than the [front-end] inflation." *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at \*10 (S.D. Tex. May 20, 2014). Thus, Feinstein's faulty "assumption" does not hold.

Plaintiff also tries to excuse Feinstein's failure to evaluate whether the *perceived* or *true* risk of a dam collapse ever changed during the class period simply by declaring that "critical stability issues existed the entire time." Pl.'s Br. at 6 n.5. But again, Plaintiff misses the point. Feinstein's justification for holding inflation at a maximum and constant level has nothing to do with "critical stability issues." According to Feinstein, "the fact of . . . concealment" alone "would maintain the artificial inflation level" throughout the class period, irrespective of any changes in the risk of collapse. Ex. B 122:5-125:8 (claiming artificial inflation depends upon the "campaign to deceive" only and any "gap" between what Vale and the market knew about the so-called campaign); *see* Fed. R. Evid. 702 advisory committee's note to 2023 amendments (explaining "the critical question[] of the sufficiency of an expert's basis . . . [is a] question[] of . . . admissibility").

In addition, Plaintiff's own allegations belie its argument that "the discrepancy between what the market was being told and what Defendants knew was substantially the same from the start of the class period until the first corrective event." Pl.'s Br. at 6. For example, much of Plaintiff's case rests on developments that *post-date* the start of the class period, including: (1) alleged conflicts of interest involving third-party auditors, *e.g.*, Compl. ¶ 10(c); (2) PIESEM panel reports, *e.g.*, *id.* ¶¶ 10(b) n.6, 75, 78-79 & n.24; (3) a DHP drilling "leak," *id.* ¶ 98; (4) new safety

3

factor calculations, *id.* ¶¶ 88, 91; and (5) draft ALARP charts, *id.* ¶ 74. But now Plaintiff argues that none of those developments impacted artificial inflation? That makes no sense.

## II.     In Trying to Salvage Feinstein's Disqualifying Opinions on Loss Causation and Damages, Plaintiff Misstates the Law and Mischaracterizes the Principles and Methods He Applied

### A.     Contrary to Plaintiff's Suggestion, Governing Law Requires Feinstein to Disaggregate Investment Losses Caused by Non-Fraud Factors

A plaintiff's damages in a federal securities law case are limited to losses actually caused by the alleged fraud, and thus "an event study that fails to disaggregate the effects of confounding factors must be excluded." *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*, 853 F. Supp. 2d 181, 190 (D. Mass. 2012); *see also Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907, at \*2 (2d Cir. Apr. 15, 2024) ("[A] plaintiff must disaggregate those losses caused by changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, from disclosures of the truth behind the alleged misstatements." (citation and quotation marks omitted)). Here, Feinstein himself explicitly conceded that "some components of [the Vale securities' price declines] might be a realization of disclosed risk." Ex. B 280:15-19. Nevertheless, Feinstein refused to disaggregate from his damages analysis the price declines that would have resulted from a dam collapse *even if the alleged fraud had not occurred*. This failure alone warrants exclusion of his opinions.

Plaintiff first tries to gaslight the Court by suggesting Defendants have "made up" this well-established disaggregation requirement. Pl.'s Br. at 9. In the *next sentence* of its brief, however, Plaintiff concedes that a federal court handling a securities class action similar to this case arising from the Deepwater Horizon oil spill applied precisely this requirement in rejecting plaintiffs' damages claims. *In re: BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at \*33 (S.D. Tex. May 31,

2016) (finding "[p]laintiffs' damages model [wa]s flawed," and concluding plaintiffs "not permitted to claim 100% of the stock decline as damages" where plaintiffs' expert "admit[ted] that the chances of failure were less than 100%").  Then, in an effort to distinguish the *BP* decision and its obvious impact here, Plaintiff offers an egregiously false interpretation of the *BP* court's reasoning.  According to Plaintiff, the *BP* court purportedly limited the disaggregation requirement to "consequential" damages claims in contrast to the "out-of-pocket" damages sought here.  Pl.'s Br. at 9.  That is incorrect.  The *BP* court *explicitly* stated it was addressing "out-of-pocket" damages.  *BP*, 2016 WL 3090779, at *32-33 (S.D. Tex. May 31, 2016) (discussing calculation of a "but-for price" in traditional securities fraud loss causation/damages model).

Plaintiff then argues—without basis—that courts within this circuit have rejected the disaggregation requirement.  Pl.'s. Br at 9-10.  To be clear, the disaggregation requirement is grounded in the jurisprudence of no less an authority than the United States Supreme Court.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005).  But Plaintiff nevertheless insinuates that a recent district court decision—on a motion to dismiss—somehow calls into question this bedrock principle.  Pl.'s Br. at 10.  As the *Omega* decision makes clear, however, while "plaintiffs ha[d] sufficiently alleged loss causation to survive a motion to dismiss notwithstanding [defendant's] disclosures, it is conceivable that [they] may struggle to establish as a factual matter that these statements did not cut off the chain of causation at some point or would otherwise limit the damages that plaintiffs can recover."  *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 271 n.9 (S.D.N.Y. 2021).  To state the obvious, this case is long past the Rule 12 motion stage, and the record plainly reveals that Vale investors' awareness of the risk of a dam collapse "cut off the chain of causation at some point" or "otherwise limit[ed]" the exorbitant damages now sought by Plaintiff.

5

Plaintiff's reliance on the *Vivendi* case also misses the mark.  *See In re Vivendi Universal, S.A., Sec. Litig.*, 634 F. Supp. 2d 352 (S.D.N.Y. 2009).  At a minimum, *Vivendi* is inapposite here on the issue of disaggregation.  And, to the extent instructive at all, *Vivendi* actually bolsters *Defendants'* arguments.

The *Vivendi* court found no need for disaggregation because the market was completely unaware of any of the liquidity risks at issue, and because "the probability of a liquidity crisis was basically a hundred percent."  *Vivendi*, 634 F. Supp. 2d at 371 (alterations adopted).  Here, by contrast, the risk of a dam collapse was less than 100% and the market was aware of its existence, so *Vivendi* is "uninstructive."  *BP*, 2014 WL 2112823, at *10 n.9.

Indeed, to the extent relevant here to the issue of disaggregation, the *Vivendi* court observed that an investor who purchases a stock while aware of a risk "assume[s] the risk that the stock price w[ill] suffer if" the risk occurs.  634 F. Supp. 2d at 371.  The court further made clear that "it may be incumbent on plaintiffs to produce evidence establishing roughly how much of the price decline was due to" alleged fraud and non-fraud-related factors.  *Id.* at 370.  These are precisely the points Defendants are making here (and ignored by Feinstein in his loss causation and damages opinions).

**B.      Plaintiff's Opposition Does Not—and Cannot—Cure the Many Infirmities Plaguing Feinstein's Opinions Concerning the Alleged Corrective Events**

According to Feinstein, "all three of the corrective disclosures revealed to the marketplace to some extent that . . . the collective import of the misrepresentations and omissions was false."  Ex. B at 192:13-18.  Of course, this vague and conclusory pronouncement fails to identify what was falsely conveyed to the market through the challenged statements or how the alleged curative disclosures corrected the market's misimpressions.

Once again, Plaintiff—through its brief—tries to paper over its expert's shortcomings, this time by touting Feinstein's review of "news and analyst reports on the corrective event dates,"

6

which he "quotes [from] extensively." Pl.'s Br. at 11. Good for him. But, unfortunately for Plaintiff, *nothing* in those extensively quoted news and analyst reports suggests that investors were beginning to question whether Vale had lied to them. Perhaps that is why Plaintiff buried them all in a footnote. *Id.* at 11 n.13.

Plaintiff also tries to obscure the fact that Feinstein's analysis includes additional purported corrective disclosures (on February 4 and 6) *unalleged in the Complaint.* Defs.' Br. at 10-11. Citing nothing, Plaintiff proclaims that the "Laranjeiras dam was the operational dam of the Brucutu mine," and then suggests that "Feinstein's reference *concerned* the same event cited in paragraph 210 of the Complaint." Pl.'s Br. at 12 n.14 (emphasis added). But that paragraph is about "halting some operations at [the Brucutu] *mine*." Compl. ¶ 210 (emphasis added). Plaintiff apparently is asking the Court to declare that anything "concern[ing]" a corrective disclosure alleged by Plaintiff qualifies as an additional corrective disclosure. Setting aside that ridiculous stretch, Plaintiff says *nothing* about Feinstein's treatment as a "corrective event" of the arbitrary cancellation of the Laranjeiras dam license on February 6. Ex. C ¶¶ 93-94, 98, 206. *See, e.g.*, *Persian Gulf, Inc. v. BP West Coast Products, Inc.*, 2020 WL 7427057, at *1 (S.D. Cal. Dec. 17, 2020) ("[P]laintiffs may not amend their complaints . . . through an expert report.").

## III.    Plaintiff Fails in Its Defense of Feinstein's Indefensible "But-For" World

Feinstein's most egregious errors reside in his articulation of a but-for world, which begins—and ends—with his reliance on the concept of "information asymmetry." Defendants do not quibble with the merits of this economic theory in the abstract, but any debate over it here is a red herring. In short, information asymmetry has no role in the proper construction of a but-for world to support an expert's loss causation/damages analysis in a federal securities fraud case. *Indeed, Feinstein himself is the only expert who has ever even suggested as much, and research has not revealed a single court ever blessing such an approach.* The reason is obvious: a proper

7

but-for world assumes full disclosure/correction of any allegedly false or misleading information. But while Feinstein pays lip service to this basic principle, Ex. C ¶ 189, he then ignores it and instead envisions a scenario in which Vale simply tells the market that it is engaged in an "ongoing campaign" of deception about "important" information, thus prompting investors to assume the "worst-case scenario" (pursuant to information asymmetry theory), *see, e.g.*, Ex. B 67:8-68:2, 122:5-125:8, 126:14-127:13, 138:20-25, 259:7-259:11, 272:2-18. Feinstein himself implicitly concedes that his approach is not grounded in accepted expert practice. *See* Ex. C ¶ 189 (acknowledging that a but-for world is supposed to be without fraud or misrepresentation); Ex. B at 156:8-12 ("I understand that there is a little bit of a tension there of things being disclosed, and yet there was a statement here about something ongoing.").

Indeed, Feinstein's only justification for using his unprecedented approach is that it "supersizes" Plaintiff's damages claim. *See* Ex. B at 155:25-156:7 ("[I]f [the but-for world] didn't include [ongoing fraud] . . . you would dramatically underestimate damages."). Unfortunately for Plaintiff, however, avarice does not trump the clear edicts of Rule 702. As previously noted, Feinstein's proposed new paradigm of using an ongoing fraud and information asymmetry to model damages in securities cases—if ever accepted—essentially would eliminate the element of loss causation and convert class actions into broad insurance policies against all investment losses.

## **CONCLUSION**

For all the foregoing reasons, as well as those set forth in Defendants' opening memorandum, Defendants respectfully request that the Court grant in its entirety their motion to exclude the testimony of Steven P. Feinstein.

Dated: New York, New York
June 14, 2024

GIBSON, DUNN & CRUTCHER LLP


By: /s/ Christopher M. Joralemon
  Christopher M. Joralemon
  Akiva Shapiro
  Mary Beth Maloney
  David M. Kusnetz
  Jason Bressler
  H. Chase Weidner

  200 Park Avenue
  New York, NY 10166-0193
  Telephone: 212.351.4000
  Facsimile: 212.351.4035

  *Attorneys for Defendants*

9